**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION**

| | | |
|---|---|---|
| THE ESTATE OF LARRY EUGENE PRICE, JR., by and through its Special Administrator, Rodney Price, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | 2:23-cv-02008-PKH |
| | ) | |
| v. | ) | |
| | ) | |
| TURN KEY HEALTH CLINICS, LLC, an Oklahoma corporation; SEBASTIAN COUNTY, ARKANSAS; JAWAUN LEWIS, DO; CHRISTEENA FERGUSON; and J. DOES 1-20, | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT TURN KEY HEALTH CLINICS, LLC'S
ANSWER TO PLAINTIFF'S COMPLAINT (ECF DOC. 2)**

COMES NOW Defendant, Turn Key Health Clinics, LLC (hereinafter "Turn Key"), by and through its undersigned counsel of record, and for its Answer to Plaintiff's Complaint (ECF Doc. 2), generally denies each and every material allegation, except those herein specifically admitted, and answers the numbered paragraphs as followed:

1.      With respect to Paragraph 1 of Plaintiff's Complaint, Defendant admits that an inmate by the name of Larry Eugene Price, Jr. was incarcerated at the Sebastian County Detention Center. Defendant is without sufficient information to form a belief as to the truth of the allegations related to the circumstances surrounding Mr. Price's arrest, bail, or the status of the criminal charges against him during his detention at the Sebastian County Detention Center; therefore, such allegations are deemed denied. Defendant denies all remaining allegations, including but not limited to Plaintiff's allegation that Turn Key medical staff neglected Mr.

Price during his incarceration at the Sebastian County Detention Center.

2.      With respect to Paragraph 2 of Plaintiff's Complaint, Defendant admits that Turn Key medical staff worked with detention staff to monitor Mr. Price's food and fluid intake on multiple occasions during his detention at the Sebastian County Detention Center. Defendant denies all remaining allegations, including but not limited to Plaintiff's allegations that any Turn Key medical staff were ever aware that Mr. Price had "grossly insufficient food and water intake," that Turn Key medical staff provided improper care to Mr. Price, that Turn Key medical staff "ignored" Mr. Price's medical condition, or that Turn Key medical staff were ever aware that Mr. Price's medical condition had deteriorated at any point in time. Instead, the records will show that Mr. Price had normal food and fluid intake when detention staff monitored and reported the same to Turn Key medical staff, that Turn Key medical staff were never aware that Mr. Price's food and fluid intake was not stable, and that Turn Key medical staff were never aware that Mr. Price's medical condition had deteriorated at any point in time during his incarceration at the Sebastian County Detention Center. Turn Key further denies any duty of care for care and treatment for any mental health crises or mental health services beyond psychiatric clinical services owed to any inmates housed at the Sebastian County Detention Center, including Mr. Price. Instead, at all times relevant to Plaintiff's claims, Turn Key's contract with Sebastian County specifically provided that "all crisis management and mental health evaluations/assessments shall be performed by an independent community mental health provider designated by the Agency, not [Turn Key]." Moreover, effective January 1, 2020, the contract between Sebastian County and Turn Key eliminated the position for eight (8) hours per week of mental health coverage for case management and to serve as a clinical liaison between Turn Key's psychiatrist and the local community health provider. Accordingly, Defendant

denies any duty on its part or the part of its medical personnel to monitor the mental health activities or services of the local community health provider at the time of Mr. Price's incarceration at the Sebastian County Detention Center, who is believed, based on Defendant's best information and belief, to have been The Guidance Center. Defendant further denies any knowledge on its part or on the part of its medical personnel that Mr. Price was ever "visibly emaciated" or at imminent risk of harm prior to the time of his medical emergency on August 29, 2021. Defendant further denies that its psychiatrist, Dr. Lewis, owed any ongoing duty of psychiatric care to Mr. Price; instead, the psychiatric-patient relationship was terminated between Mr. Price and Defendant Dr. Lewis on or around November 24, 2020, when Mr. Price refused his psychiatry appointment after months of non-compliance with psychiatric treatment. Turn Key further states that its medical personnel were never requested to provide psychiatric or mental health services to Mr. Price after that date.

3.      With respect to Paragraph 3 of Plaintiff's Complaint, Defendant admits that on August 29, 2021, Mr. Price was discovered by detention staff to be unresponsive, that he was transported via ambulance to Mercy Hospital by Fort Smith EMS, and that Mr. Price passed away at the hospital. Defendant is without sufficient information to form a belief as to the truth of the allegations related to the cause of Mr. Price's death; therefore, such allegations are deemed denied at this time.

4.      With respect to Paragraphs 4 and 5 of Plaintiff's Complaint, Defendant admits that Mr. Price lost weight during his incarceration at the Sebastian County Detention Center. Defendant denies all remaining allegations, including but not limited to the allegations that Mr. Price weighed 90 pounds. To Defendant's best information and belief, Mr. Price weighed approximately 120 pounds at the time of his death. Defendant further denies that the

photographs embedded within Plaintiff's Complaint are a fair representation of Mr. Price's condition at any point in time during Turn Key medical personnel's interactions with him or that any Turn Key medical personnel ever had knowledge of Mr. Price's condition.

5.      With respect to Paragraph 6 of Plaintiff's Complaint, the allegations contained therein do not appear to be directed at this Defendant. Moreover, such allegations contain legal conclusions. Therefore, no response is required. To the extent such allegations are intended to be directed at this Defendant, and inasmuch as the allegations are not mere statements of legal conclusions, then Defendant is without sufficient information to form a belief as to the truth of these allegations; therefore, such allegations are deemed denied. Defendant specifically denies that Turn Key or its personnel had any responsibility for or knowledge of any physical conditions of Mr. Price's cell.

6.      With respect to Paragraph 7 of Plaintiff's Complaint, Defendant denies all allegations therein, including but not limited to the allegations that Turn Key medical staff were deliberately indifferent or negligent toward Mr. Price's medical condition, that Defendant or its personnel were aware of Mr. Price's medical condition, that Turn Key or its personnel denied Mr. Price any medical or mental health care, or that any policies or procedures of Turn Key have any causal connection to Mr. Price's death. Rather, Defendant states that Mr. Price was scheduled to be transferred to the Arkansas State Hospital on September 2, 2021, and Turn Key and its personnel were never aware of a change in Mr. Price's medical or mental health condition which placed him at increased risk of harm.

7.      The allegations contained in Paragraphs 8, 9, and 10 of Plaintiff's Complaint are mere statements of law; thus, no response is required. To the extent these are intended to be allegations directed at Defendant, then Defendant admits that Plaintiff has brought this action

4

under 42 U.S.C. § 1983, and that jurisdiction and venue appear to be proper at this time. Defendant denies all remaining allegations contained therein, including but not limited to Plaintiff's allegations that Defendant Turn Key and its personnel were deliberately indifferent to Mr. Price's condition or caused him harm.

8.      With respect to Paragraph 11 of Plaintiff's Complaint, Defendant admits that Larry Eugene Price, Jr. was an inmate incarcerated at the Sebastian County Adult Detention Center and that Mr. Price is believed to have died on August 29, 2021. Defendant further admits that Rodney Price has filed this lawsuit on behalf of the Estate of Larry Eugene Price, Jr. Defendant is without sufficient information to form a belief as to the truth of the allegations related to the status of Mr. Price's criminal charges contained therein; therefore, such allegations are deemed denied at this time. The remaining allegations contain legal conclusions; thus, no response is required. To the extent a response is required, Defendant denies all remaining allegations.

9.      With respect to Paragraph 12 of Plaintiff's Complaint, Defendant admits that it is a limited liability company with its principal place of business located in Oklahoma City, Oklahoma, and that it does business in the state of Arkansas. Defendant denies all remaining allegations contained within this paragraph, including but not limited to Plaintiff's allegations as to the scope of Turn Key's contracted services within the Sebastian County Detention Center. Turn Key denies any duty of care for care and treatment for any mental health crises or mental health services beyond psychiatric clinical services owed to any inmates housed at the Sebastian County Detention Center, including Mr. Price. Instead, at all times relevant to Plaintiff's claims, Turn Key's contract with Sebastian County specifically provided that "all crisis management and mental health evaluations/assessments shall be performed by an independent community

5

mental health provider designated by the Agency, not [Turn Key]." Moreover, effective January 1, 2020, the contract between Sebastian County and Turn Key eliminated the position for eight (8) hours per week of mental health coverage for case management and to serve as a clinical liaison between Turn Key's psychiatrist and the local community health provider. Accordingly, Defendant denies any duty on its part or the part of its medical personnel to monitor the mental health activities or services of the local community health provider at the time of Mr. Price's incarceration at the Sebastian County Detention Center, who is believed, based on Defendant's best information and belief, to have been The Guidance Center.

10. With respect to Paragraph 13 of Plaintiff's Complaint, the allegations contained therein do not pertain to this Defendant. Therefore, no response is required. To the extent such allegations are intended to be directed at this Defendant, then Defendant admits that at the times relevant to Plaintiff's Complaint, it contracted with Sebastian County to provide limited medical and psychiatric services at the Sebastian County Detention Center, as set forth in the contract and amendment(s) thereto between Turn Key and the County. Defendant denies all remaining allegations, including but limited to any allegation of negligence on the part of Turn Key or its medical personnel.

11. With respect to Paragraph 14 of Plaintiff's Complaint, the allegations contained therein do not pertain to this Defendant. Therefore, no response is required. To the extent such allegations are intended to be directed at this Defendant, then Defendant admits that Jawaun Lewis, D.O. is a psychiatrist employed by Turn Key. Defendant denies all remaining allegations, including but not limited to Plaintiff's allegations as to the scope of Turn Key's contracted services within the Sebastian County Detention Center. Turn Key denies any duty of care for care and treatment for any mental health crises or mental health services beyond

psychiatric clinical services owed to any inmates housed at the Sebastian County Detention Center, including Mr. Price. Instead, at all times relevant to Plaintiff's claims, Turn Key's contract with Sebastian County specifically provided that "all crisis management and mental health evaluations/assessments shall be performed by an independent community mental health provider designated by the Agency, not [Turn Key]."  Moreover, effective January 1, 2020, the contract between Sebastian County and Turn Key eliminated the position for eight (8) hours per week of mental health coverage for case management and to serve as a clinical liaison between Turn Key's psychiatrist and the local community health provider. Accordingly, Defendant denies any duty on its part or the part of its medical personnel to monitor the mental health activities or services of the local community health provider at the time of Mr. Price's incarceration at the Sebastian County Detention Center, who is believed, based on Defendant's best information and belief, to have been The Guidance Center. Defendant further denies that its psychiatrist, Dr. Lewis, owed any ongoing duty of psychiatric care to Mr. Price; instead, the psychiatric-patient relationship was terminated between Mr. Price and Defendant Dr. Lewis on or around November 24, 2020, when Mr. Price refused his psychiatry appointment after months of non-compliance with psychiatric treatment. Turn Key further states that its medical personnel, including Dr. Lewis, were never requested to provide psychiatric or mental health services to Mr. Price after that date.

12.     With respect to Paragraph 15 of Plaintiff's Complaint, the allegations contained therein do not pertain to this Defendant. Therefore, no response is required. To the extent such allegations are intended to be directed at this Defendant, then Defendant admits that at the times relevant to Plaintiff's Complaint, Christeena Ferguson was a nurse employed by Turn Key to provide limited nursing services, as set forth in the contract between Turn Key and Sebastian

7

County, at the Sebastian County Detention Center, until February 12, 2021, when her employment with Turn Key ended. Defendant denies all remaining allegations contained therein, including but not limited to any allegations as to any ongoing duty of care owed by Christeena Ferguson to Mr. Price after Nurse Ferguson's employment relationship ended with Turn Key Health Clinics, LLC.

13.     With respect to Paragraph 16 of Plaintiff's Complaint, the allegations contained therein do not pertain to this Defendant. Therefore, no response is required. To the extent such allegations are intended to be directed at this Defendant, then Defendant is without sufficient information to form an opinion as to the truth of the allegations contained therein; therefore, such allegations are deemed denied at this time.

14.     With respect to Paragraph 17 of Plaintiff's Complaint, the allegations contained therein do not pertain to this Defendant. Therefore, no response is required. To the extent such allegations are intended to be directed at this Defendant, then Defendant admits that Mr. Price had a documented history of mental illness, and that he had a history of psychosis, auditory hallucinations, disordered thinking, combativeness, and violence toward jail and medical staff at the Sebastian County Detention Center, including that Mr. Price physically attacked one of its nurses on September 9, 2020 and told her, "Larry Price, Jr. is gonna kill you, b*tch." Defendant is without sufficient information to form a belief as to the truth of the remaining allegations contained therein; therefore, such allegations are deemed denied at this time.

15.     With respect to Paragraph 18 of Plaintiff's Complaint, Defendant admits that Mr. Price was scheduled to be transferred to the Arkansas State Hospital on September 2, 2021. Defendant is without sufficient information to form a belief as to the truth of the remaining allegations contained therein; therefore, such allegations are deemed denied at this time.

16.     With respect to Paragraphs 19, 20, 21, and 22 of Plaintiff's Complaint, Defendant is without sufficient information to form a belief as to the truth of the allegations contained therein; therefore, such allegations are deemed denied at this time.

17.     With respect to Paragraph 23 of Plaintiff's Complaint, Defendant admits that Mr. Price booked into the Sebastian County Detention Center on or about August 19, 2020, and that Mr. Price reported to the screening detention officer that he did not have any medical conditions. Defendant denies all remaining allegations contained therein.

18.     With respect to Paragraph 24 of Plaintiff's Complaint, Defendant admits that Mr. Price had been previously incarcerated at the Sebastian County Detention Center, and that he had a history of mental illness. Defendant denies all remaining allegations contained therein, including but not limited to any allegation that Turn Key or its personnel were involved in or had personal knowledge of Mr. Price's medical care and treatment prior to Turn Key beginning operations within the Sebastian County Detention Center on October 1, 2019. Defendant further denies any duty of care for care and treatment for any mental health crises or mental health services beyond psychiatric clinical services owed to any inmates housed at the Sebastian County Detention Center, including Mr. Price. Instead, at all times relevant to Plaintiff's claims, Turn Key's contract with Sebastian County specifically provided that "all crisis management and mental health evaluations/assessments shall be performed by an independent community mental health provider designated by the Agency, not [Turn Key]." Moreover, effective January 1, 2020, the contract between Sebastian County and Turn Key eliminated the position for eight (8) hours per week of mental health coverage for case management and to serve as a clinical liaison between Turn Key's psychiatrist and the local community health provider. Accordingly, Defendant denies any duty on its part or the part of its medical personnel to

monitor the mental health activities or services of the local community health provider at the time of Mr. Price's incarceration at the Sebastian County Detention Center, who is believed, based on Defendant's best information and belief, to have been The Guidance Center. Furthermore, Defendant denies that Mr. Price was compliant with the psychiatric treatment he was prescribed. To the contrary, Mr. Price refused to consistently take his psychiatric medications and refused mental health and medical appointments during his incarcerations.

19.     With respect to Paragraph 25 of Plaintiff's Complaint, the allegations contained therein are not directed at this Defendant; thus, no response is required. To the extent these allegations are intended to be directed at this Defendant, Defendant denies all allegations, including but not limited to any allegations that Turn Key did not provide adequate training or staffing for the services it was contracted with Sebastian County to provide at the Sebastian County Detention Center.

20.     With respect to Paragraph 26 of Plaintiff's Complaint, the allegations contained therein are not directed at this Defendant; thus, no response is required. To the extent these allegations are intended to be directed at this Defendant, Defendant is without sufficient information to form a belief as to the truth of these allegations; therefore, these allegations are deemed denied at this time, including but not limited to any allegations that Defendant had any responsibility for housing inmates, that Turn Key and its personnel were ever aware of a change in Mr. Price's medical condition which placed him at increased risk of harm, or that Mr. Price was housed in Segregation for the entirety of his incarceration at the jail.

21.     With respect to Paragraph 27 of Plaintiff's Complaint, Defendant admits that a nurse performed an intake medical screening and mental health screening on Mr. Price on August 21, 2020, that the nurse noted Mr. Price's history of mental illness, and that the nurse

implemented a Continuity of Care Plan by creating an appointment for an Urgent Mental Health Referral. Defendant further admits that Mr. Price refused to see the mental health provider the same day. Defendant further admits that Mr. Price was scheduled by the intake screening nurse to be seen in the Chronic Care Clinic, and that Mr. Price refused his Chronic Care Clinic appointment on August 27, 2020. Defendant denies all remaining allegations, including but not limited to any allegations that Mr. Price was denied access to a mental health provider or medical provider, or that Mr. Price was too mentally unstable to make his own medical decisions on August 21, 2020 and on August 27, 2020. Rather, the medical records will show that when the nurse performed his intake screening on August 21, 2020, Mr. Price had appropriate behavior, was alert, and was able to answer questions coherently.

22.     With respect to Paragraph 28 of Plaintiff's Complaint, the allegations contained therein are not directed at this Defendant; thus, no response is required. To the extent these allegations are intended to be directed at this Defendant, Defendant is without sufficient information to form a belief as to the truth of these allegations; therefore, these allegations are deemed denied at this time.

23.     With respect to Paragraph 29 of Plaintiff's Complaint, Defendant admits that a nurse saw Mr. Price in the medical office at the request of an officer due to concerns for his medical condition, and that at the time Mr. Price presented to the nursing office Mr. Price had "speech patterns aggressive and altered speech patterns. Sentences unintelligible. Patient barking and threatening medical staff and officers." Defendant further admits that the nurse and detention staff determined that this was a change in Mr. Price's mental status baseline and, upon further evaluation, the nurse transferred Mr. Price to the local emergency department for assessment of rectal bleeding, altered mental status, unstable vital signs, possible rectal prolapse

and possible dehydration. Defendant admits that Mr. Price was seen at Mercy Ft. Smith Emergency Department, whose medical provider evaluated Mr. Price, including taking labs, diagnosed Mr. Price with hemorrhoids, and deemed him stable and safe for discharge back to the Sebastian County Detention Center. Defendant admits that a nurse assessed Mr. Price after he returned from the hospital, and that Mr. Price was in the same mental condition as before he was transferred to the hospital. Defendant further admits that the nurse scheduled Mr. Price to be seen by a psychiatrist on September 1, 2020. Defendant denies all remaining allegations, including but not limited to Plaintiff's allegations that Mr. Price had any worsening in condition after he was discharged from the emergency room to the jail, or that Mr. Price's medical condition upon discharge from Mercy Ft. Smith was anything other than hemorrhoids.

24.     With respect to Paragraph 30 of Plaintiff's Complaint, Defendant admits that Dr. Lewis had previously prescribed Mr. Price Olanzapine from on or around July 21, 2020 until on or around August 10, 2020. Defendant further admits that a referral was made for Dr. Lewis to see Mr. Price by Tyler Caves, believed to be an employee of The Guidance Center (the community mental health provider believed to have been contracted with the Sebastian County Detention Center to provide mental health services and crisis management services to inmates housed at the Sebastian County Detention Center during Mr. Price's incarcerations), on August 28, 2020, and Dr. Lewis evaluated Mr. Price on or around September 1, 2020. Defendant admits that Dr. Lewis noted at that time that Mr. Price was "actively psychotic and unable to provide information," and that Dr. Lewis further charted his findings that Mr. Price was adequately groomed, had psychomotor agitation behavior, had a labile/fluctuating mood, had a broad affect, had pressured speech, had delusional thought processes/content, had poor insight and judgment, and had "low engagement." Defendant further admits that Dr. Lewis assessed Mr.

12

Price's current symptom severity at that time as "Severe – Marked impact on inmate's ability to function satisfactorily in the current setting." Defendant admits that Dr. Lewis prescribed Mr. Price Olanzapine to treat his psychiatric condition. Defendant denies all remaining allegations, including but not limited to the language quoted out of context from the medical records within the Complaint.

25.     With respect to Paragraphs 31, 32, 33, and 34 of Plaintiff's Complaint, Defendant admits that its medical personnel attempted to administer Mr. Price's psychiatric medications, Olanzapine and Buspirone, as prescribed by Dr. Lewis, and Defendant further admits that Mr. Price sometimes consented to taking his medications and sometimes refused them. Defendant further admits that Dr. Lewis attempted to follow up with Mr. Price regarding his non-compliance with treatment on or around November 24, 2020, and that Mr. Price refused the appointment. Defendant denies all remaining allegations contained therein, including but not limited to any allegations that "no medical professional attempted to address" Mr. Price's refusal to accept his medications "in a meaningful way" or that any of Turn Key's medical personnel, including Dr. Lewis, breached the applicable standard of care. Rather, the records will show that Dr. Lewis attempted to see Mr. Price related to his non-compliance with treatment, but that Mr. Price adamantly refused his appointment and medications. Defendant further denies any knowledge on its part or on the part of its medical personnel, including Dr. Lewis, that Mr. Price was ever at imminent risk of harm prior to the time of his medical emergency on August 29, 2021, or that any of its medical personnel, including Dr. Lewis, were aware of any worsening in Mr. Price's condition. Defendant further denies that its psychiatrist, Dr. Lewis, owed any ongoing duty of psychiatric care to Mr. Price; instead, the psychiatric-patient relationship was terminated between Mr. Price and Defendant Dr. Lewis on or around

November 24, 2020, when Mr. Price refused his psychiatry appointment after months of non-compliance with psychiatric treatment. Turn Key further states that its medical personnel were never requested to provide psychiatric or mental health services to Mr. Price after that date. Turn Key further denies any duty of care for care and treatment for any mental health crises or mental health services beyond psychiatric clinical services owed to any inmates housed at the Sebastian County Detention Center, including Mr. Price. Instead, at all times relevant to Plaintiff's claims, Turn Key's contract with Sebastian County specifically provided that "all crisis management and mental health evaluations/assessments shall be performed by an independent community mental health provider designated by the Agency, not [Turn Key]." Moreover, effective January 1, 2020, the contract between Sebastian County and Turn Key eliminated the position for eight (8) hours per week of mental health coverage for case management and to serve as a clinical liaison between Turn Key's psychiatrist and the local community health provider. Accordingly, Defendant denies any duty on its part or the part of its medical personnel to monitor the mental health activities or services of the local community health provider at the time of Mr. Price's incarceration at the Sebastian County Detention Center, who is believed, based on Defendant's best information and belief, to have been The Guidance Center.

26.     With respect to Paragraph 35 of Plaintiff's Complaint, the allegations contained therein are not directed at this Defendant; thus, no response is required. To the extent these allegations are intended to be directed at this Defendant, Defendant is without sufficient information to form a belief as to the truth of such allegations; therefore, such allegations are deemed denied. Defendant specifically denies any Turn Key medical staff were ever aware that Mr. Price had was "at risk of life-threatening malnutrition and dehydration," that Turn Key

14

medical staff provided improper care to Mr. Price, that Turn Key medical staff ignored Mr. Price's medical condition, or that Turn Key medical staff were ever aware that Mr. Price's medical condition had deteriorated at any point in time. Instead, the records will show that Mr. Price had normal food and fluid intake when detention staff monitored and reported the same to Turn Key medical staff, that Turn Key medical staff were never aware that Mr. Price's food and fluid intake was not stable, and that Turn Key medical staff were never aware that Mr. Price's medical condition had deteriorated at any point in time during his incarceration at the Sebastian County Detention Center. Turn Key further denies any duty of care for care and treatment for any mental health crises or mental health services beyond psychiatric clinical services owed to any inmates housed at the Sebastian County Detention Center, including Mr. Price. Instead, at all times relevant to Plaintiff's claims, Turn Key's contract with Sebastian County specifically provided that "all crisis management and mental health evaluations/assessments shall be performed by an independent community mental health provider designated by the Agency, not [Turn Key]."  Moreover, effective January 1, 2020, the contract between Sebastian County and Turn Key eliminated the position for eight (8) hours per week of mental health coverage for case management and to serve as a clinical liaison between Turn Key's psychiatrist and the local community health provider. Accordingly, Defendant denies any duty on its part or the part of its medical personnel to monitor the mental health activities or services of the local community health provider at the time of Mr. Price's incarceration at the Sebastian County Detention Center, who is believed, based on Defendant's best information and belief, to have been The Guidance Center.

27.     With respect to Paragraph 36 of Plaintiff's Complaint, Defendant admits that Mr. Price submitted a sick call request stating that "I am sick and have lost a lot of weight I

need to see a doctor." Defendant denies all remaining allegations, including but not limited to Plaintiff's allegations quoting portions of the medical records out of context to mislead the Court. Rather, the medical records will show that a nurse scheduled Mr. Price to be seen in Sick Call on January 8, 2021, but Mr. Price refused to be seen. Additionally, the records will show that Mr. Price weighed 150 pounds on January 28, 2021.

28.     With respect to Paragraph 37 of Plaintiff's Complaint, Defendant admis that Nurse Ferguson noted on January 28, 2021 that she "was notified through request manager that pt was eating own feces and drinking own urine. This nurse went to check on pt. Pt noticeably thinner. Pt oriented to month, place, person. Reported year is 2022. Pt became agitated at this nurse. Had deputies weigh pt and start a food log to monitor intake and output. No s/sx of distress noted at this time." Defendant further admits that Mr. Price was found to weigh 150 pounds on January 28, 2021. Defendant denies all remaining allegations contained therein, including but not limited to the allegation that Nurse Ferguson breached the standard of care or was indifferent to Mr. Price's medical condition. Instead, the medical records will show that detention staff monitored Mr. Price's intake and output, that detention staff submitted their Intake/Output Logs to medical staff intermittently during the months of January, February, March, and April 2021, and that the Intake/Output Logs provided to medical personnel were reassuring to medical staff that Mr. Price was eating adequate amounts of food and drinking sufficient amounts of fluids.

29.     With respect to Paragraph 38 of Plaintiff's Complaint, Defendant admits that detention staff weighed Mr. Price on January 28, 2021 and that he weighed 150 pounds. Defendant denies all remaining allegations, including but not limited to any allegations that Turn Key personnel breached the standard of care or were indifferent to Mr. Price's medical

condition, or that Mr. Price's weight of 150 pounds was a "red flag" indicating a more serious medical condition. Rather, the medical records will show that Nurse Ferguson specifically assessed Mr. Price as not having any signs or symptoms of distress on January 28, 2021, despite the finding that he appeared "noticeably thinner," that Mr. Price's weight fluctuated throughout his many incarcerations within the Sebastian County Detention Center (including that Mr. Price in fact weighed 165 pounds on April 10, 2020). The medical records will further show that detention staff monitored Mr. Price's intake and output at the direction of medical staff, that detention staff submitted their Intake/Output Logs to medical staff intermittently during the months of January, February, March, and April 2021, and that the Intake/Output Logs provided to medical personnel were reassuring to medical staff that Mr. Price was eating adequate amounts of food and drinking sufficient amounts of fluids. The medical records will further show that medical personnel were not notified of any deterioration, medical requests, or changes in Mr. Price's condition until the time of his medical emergency on August 29, 2021.

30.     With respect to Paragraph 39 of Plaintiff's Complaint, the allegations contained therein are not directed at this Defendant; thus, no response is required. To the extent these allegations are intended to be directed at this Defendant, Defendant admits that detention staff monitored Mr. Price's intake and output at the direction of medical staff, that detention staff submitted their Intake/Output Logs to medical staff intermittently during the months of January, February, March, and April 2021, and that the Intake/Output Logs provided to medical personnel were reassuring to medical staff that Mr. Price was eating adequate amounts of food and drinking sufficient amounts of fluids. The medical records will further show that medical personnel were not notified of any deterioration, medical requests, or changes in Mr. Price's condition until the time of his medical emergency on August 29, 2021.

17

31.     With respect to Paragraph 40 of Plaintiff's Complaint, Defendant admits that detention staff monitored Mr. Price's intake and output at the direction of medical staff, that detention staff submitted their Intake/Output Logs to medical staff intermittently during the months of January, February, March, and April 2021, and that the Intake/Output Logs provided to medical personnel were reassuring to medical staff that Mr. Price was eating adequate amounts of food and drinking sufficient amounts of fluids. Defendant denies all remaining allegations, including but not limited to the allegations that Turn Key medical staff were aware of any deficiencies and that Turn Key medical personnel "ignored" Mr. Price's medical condition, as the medical records will show that medical personnel were not notified of any deterioration, medical requests, or changes in Mr. Price's condition until the time of his medical emergency on August 29, 2021.

32.     With respect to Paragraph 41 of Plaintiff's Complaint, the allegations contained therein do not appear to be directed at this Defendant. Therefore, no response is required. To the extent such allegations are intended to be directed at this Defendant, then Defendant is without sufficient information to form a belief as to the truth of these allegations; therefore, such allegations are deemed denied. Defendant specifically denies that medical personnel were notified of any deterioration, medical requests, or changes in Mr. Price's condition until the time of his medical emergency on August 29, 2021. Turn Key further denies any duty of care for care and treatment for any mental health crises or mental health services beyond psychiatric clinical services owed to any inmates housed at the Sebastian County Detention Center, including Mr. Price. Instead, at all times relevant to Plaintiff's claims, Turn Key's contract with Sebastian County specifically provided that "all crisis management and mental health evaluations/assessments shall be performed by an independent community mental health

18

provider designated by the Agency, not [Turn Key]."  Moreover, effective January 1, 2020, the contract between Sebastian County and Turn Key eliminated the position for eight (8) hours per week of mental health coverage for case management and to serve as a clinical liaison between Turn Key's psychiatrist and the local community health provider.  Accordingly, Defendant denies any duty on its part or the part of its medical personnel to monitor the mental health activities or services of the local community health provider at the time of Mr. Price's incarceration at the Sebastian County Detention Center, who is believed, based on Defendant's best information and belief, to have been The Guidance Center.

33.     With respect to Paragraph 42 of Plaintiff's Complaint, the allegations contained therein do not appear to be directed at this Defendant. Therefore, no response is required. To the extent such allegations are intended to be directed at this Defendant, then Defendant is without sufficient information to form a belief as to the truth of these allegations; therefore, such allegations are deemed denied. Defendant specifically denies that medical personnel were notified of any deterioration, medical requests, or changes in Mr. Price's condition until the time of his medical emergency on August 29, 2021. Turn Key further denies any duty of care for care and treatment for any mental health crises or mental health services beyond psychiatric clinical services owed to any inmates housed at the Sebastian County Detention Center, including Mr. Price. Instead, at all times relevant to Plaintiff's claims, Turn Key's contract with Sebastian County specifically provided that "all crisis management and mental health evaluations/assessments shall be performed by an independent community mental health provider designated by the Agency, not [Turn Key]."  Moreover, effective January 1, 2020, the contract between Sebastian County and Turn Key eliminated the position for eight (8) hours per week of mental health coverage for case management and to serve as a clinical liaison between

Turn Key's psychiatrist and the local community health provider. Accordingly, Defendant denies any duty on its part or the part of its medical personnel to monitor the mental health activities or services of the local community health provider at the time of Mr. Price's incarceration at the Sebastian County Detention Center, who is believed, based on Defendant's best information and belief, to have been The Guidance Center.

34.     With respect to Paragraphs 43, 44, and 45 of Plaintiff's Complaint, Defendant admits that its medical personnel attempted to provide Mr. Price with medical and psychiatric care during his incarceration at the Sebastian County Detention Center, and that Mr. Price repeatedly refused care. Defendant denies the allegations contained therein as baseless and uninformed assumptions as to the practices within the Sebastian County Detention Center. Defendant denies all remaining allegations, including but not limited to Plaintiff's allegation that there is any duty or requirement that a specific form be filled out when a patient refuses medical care. Rather, the medical records speak for themselves and are replete with documentation of Mr. Price's refusals of care. Defendant further denies all allegations that Turn Key medical staff provided improper care to Mr. Price, that Turn Key medical staff "ignored" Mr. Price's medical condition, or that Turn Key medical staff were ever aware that Mr. Price's medical condition had deteriorated at any point in time. Instead, the records will show that Mr. Price had normal food and fluid intake when detention staff monitored and reported the same to Turn Key medical staff, that Turn Key medical staff were never aware that Mr. Price's food and fluid intake was not stable, and that Turn Key medical staff were never aware that Mr. Price's medical condition had deteriorated at any point in time during his incarceration at the Sebastian County Detention Center. Turn Key further denies any duty of care for care and treatment for any mental health crises or mental health services beyond psychiatric clinical

services owed to any inmates housed at the Sebastian County Detention Center, including Mr. Price. Instead, at all times relevant to Plaintiff's claims, Turn Key's contract with Sebastian County specifically provided that "all crisis management and mental health evaluations/assessments shall be performed by an independent community mental health provider designated by the Agency, not [Turn Key]." Moreover, effective January 1, 2020, the contract between Sebastian County and Turn Key eliminated the position for eight (8) hours per week of mental health coverage for case management and to serve as a clinical liaison between Turn Key's psychiatrist and the local community health provider. Accordingly, Defendant denies any duty on its part or the part of its medical personnel to monitor the mental health activities or services of the local community health provider at the time of Mr. Price's incarceration at the Sebastian County Detention Center, who is believed, based on Defendant's best information and belief, to have been The Guidance Center. Defendant further denies any knowledge on its part or on the part of its medical personnel that Mr. Price was ever "visibly emaciated" or at imminent risk of harm prior to the time of his medical emergency on August 29, 2021. Defendant further denies that its psychiatrist, Dr. Lewis, owed any ongoing duty of psychiatric care to Mr. Price; instead, the psychiatric-patient relationship was terminated between Mr. Price and Defendant Dr. Lewis on or around November 24, 2020, when Mr. Price refused his psychiatry appointment after months of non-compliance with psychiatric treatment. Turn Key further states that its medical personnel were never requested to provide psychiatric or mental health services to Mr. Price after November 24, 2020, nor were any medical services requested for Mr. Price after January 28, 2021.

35.     With respect to Paragraph 46 of Plaintiff's Complaint, the allegations contained therein do not appear to be directed at this Defendant. Therefore, no response is required. To

the extent such allegations are intended to be directed at this Defendant, then Defendant admits that its medical personnel were never requested to provide psychiatric or mental health services to Mr. Price after November 24, 2020, nor were any medical services requested for Mr. Price after January 28, 2021. Defendant is without sufficient information to form a belief as to the truth of the remaining allegations; therefore, such allegations are deemed denied. Defendant specifically denies that medical personnel were notified of any deterioration, medical requests, or changes in Mr. Price's condition until the time of his medical emergency on August 29, 2021. Turn Key further denies any duty of care for care and treatment for any mental health crises or mental health services beyond psychiatric clinical services owed to any inmates housed at the Sebastian County Detention Center, including Mr. Price. Instead, at all times relevant to Plaintiff's claims, Turn Key's contract with Sebastian County specifically provided that "all crisis management and mental health evaluations/assessments shall be performed by an independent community mental health provider designated by the Agency, not [Turn Key]." Moreover, effective January 1, 2020, the contract between Sebastian County and Turn Key eliminated the position for eight (8) hours per week of mental health coverage for case management and to serve as a clinical liaison between Turn Key's psychiatrist and the local community health provider. Accordingly, Defendant denies any duty on its part or the part of its medical personnel to monitor the mental health activities or services of the local community health provider at the time of Mr. Price's incarceration at the Sebastian County Detention Center, who is believed, based on Defendant's best information and belief, to have been The Guidance Center.

36.    With respect to Paragraph 47 of Plaintiff's Complaint, Defendant admits that detention staff discovered Mr. Price nonresponsive in his cell on or around August 29, 2021.

22

Defendant denies all remaining allegations, including but not limited to Plaintiff's allegation that its medical staff were contracted to be present at the Sebastian County Detention Center at the time that Mr. Price was discovered nonresponsive in his cell, or any allegation that Turn Key had a duty to provide staffing at the Sebastian County Detention Center beyond that for which it was contracted by Sebastian County. Rather, the contract between Sebastian County and Turn Key did not provide for 24-hour nursing or medical provider services at the Sebastian County Detention Center.

37.     With respect to Paragraphs 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, and 58 of Plaintiff's Complaint, Defendant is without sufficient information to form a belief as to the truth of the allegations contained therein; therefore, such allegations are deemed denied at this time. Defendant specifically denies that Mr. Price ever weighed 90 pounds. To Defendant's best information and belief, Mr. Price weighed approximately 120 pounds at the time of his death. Defendant further denies that the photographs embedded within Plaintiff's Complaint are a fair representation of Mr. Price's condition at any point in time during Turn Key medical personnel's interactions with him or that any Turn Key medical personnel ever had knowledge of Mr. Price's condition. Defendant further denies that Turn Key or its personnel had any responsibility for or knowledge of any physical conditions of Mr. Price's cell.

38.     With respect to Paragraphs 59, 60, 61, 62, 63, and 64 of Plaintiff's Complaint, the allegations contained therein do not pertain to this Defendant. Therefore, no response is required. To the extent such allegations are intended to be directed to this Defendant, Defendant is without sufficient information to form a belief as to the truth of the allegations contained therein; therefore, such allegations are deemed denied at this time. Defendant specifically denies that medical personnel were notified of any deterioration, medical requests, or changes in Mr.

Price's condition until the time of his medical emergency on August 29, 2021. Turn Key further denies any duty of care for care and treatment for any mental health crises or mental health services beyond psychiatric clinical services owed to any inmates housed at the Sebastian County Detention Center, including Mr. Price. Instead, at all times relevant to Plaintiff's claims, Turn Key's contract with Sebastian County specifically provided that "all crisis management and mental health evaluations/assessments shall be performed by an independent community mental health provider designated by the Agency, not [Turn Key]." Moreover, effective January 1, 2020, the contract between Sebastian County and Turn Key eliminated the position for eight (8) hours per week of mental health coverage for case management and to serve as a clinical liaison between Turn Key's psychiatrist and the local community health provider. Accordingly, Defendant denies any duty on its part or the part of its medical personnel to monitor the mental health activities or services of the local community health provider at the time of Mr. Price's incarceration at the Sebastian County Detention Center, who is believed, based on Defendant's best information and belief, to have been The Guidance Center.

39.     With respect to Paragraph 65 of Plaintiff's Complaint, Defendant admits that its nurse instructed detention staff to track Mr. Price's intake and output on or about January 28, 2021, and that detention staff monitored Mr. Price's intake and output, that detention staff submitted their Intake/Output Logs to medical staff intermittently during the months of January, February, March, and April 2021, and that the Intake/Output Logs provided to medical personnel were reassuring to medical staff that Mr. Price was eating adequate amounts of food and drinking sufficient amounts of fluids. Defendant further admits that its medical personnel were not notified of any deterioration, medical requests, or changes in Mr. Price's condition until the time of his medical emergency on August 29, 2021. Turn Key is without sufficient

information to form a belief as to the truth of the remaining allegations contained therein; therefore, such allegations are deemed denied at this time.

40.     With respect to Paragraph 66 of Plaintiff's Complaint, Defendant denies all allegations contained therein, including but not limited to any allegations of negligence, deliberate indifference, or knowledge that Mr. Price had a deteriorating medical or mental health condition. Defendant further denies any knowledge on its part or on the part of its medical personnel, including Dr. Lewis, that Mr. Price was ever at imminent risk of harm prior to the time of his medical emergency on August 29, 2021, or that any of its medical personnel, including Dr. Lewis, were aware of any worsening in Mr. Price's condition. Defendant further denies that its psychiatrist, Dr. Lewis, owed any ongoing duty of psychiatric care to Mr. Price; instead, the psychiatric-patient relationship was terminated between Mr. Price and Defendant Dr. Lewis on or around November 24, 2020, when Mr. Price refused his psychiatry appointment after months of non-compliance with psychiatric treatment. Turn Key further states that its medical personnel were never requested to provide psychiatric or mental health services to Mr. Price after that date. Turn Key further denies any duty of care for care and treatment for any mental health crises or mental health services beyond psychiatric clinical services owed to any inmates housed at the Sebastian County Detention Center, including Mr. Price. Instead, at all times relevant to Plaintiff's claims, Turn Key's contract with Sebastian County specifically provided that "all crisis management and mental health evaluations/assessments shall be performed by an independent community mental health provider designated by the Agency, not [Turn Key]." Moreover, effective January 1, 2020, the contract between Sebastian County and Turn Key eliminated the position for eight (8) hours per week of mental health coverage for case management and to serve as a clinical liaison between Turn Key's psychiatrist and the

local community health provider. Accordingly, Defendant denies any duty on its part or the part of its medical personnel to monitor the mental health activities or services of the local community health provider at the time of Mr. Price's incarceration at the Sebastian County Detention Center, who is believed, based on Defendant's best information and belief, to have been The Guidance Center.

41.     With respect to Paragraph 67 of Plaintiff's Complaint, Defendant denies all allegations contained therein, including but not limited to any allegations of negligence, deliberate indifference, or knowledge that Mr. Price had a deteriorating medical or mental health condition. Defendant specifically denies any ongoing duty of care owed by Christeena Ferguson to Mr. Price after Nurse Ferguson's employment relationship ended with Turn Key Health Clinics, LLC on or about February 12, 2021.

42.     With respect to Paragraph 68 of Plaintiff's Complaint, Defendant denies all allegations contained therein, including but not limited to any allegations of negligence, deliberate indifference, or knowledge that Mr. Price had a deteriorating medical or mental health condition. Defendant further denies any knowledge on its part or on the part of its medical personnel that Mr. Price was ever at imminent risk of harm prior to the time of his medical emergency on August 29, 2021, or that any of its medical personnel were aware of any worsening in Mr. Price's condition. Defendant further denies that its psychiatrist, Dr. Lewis, owed any ongoing duty of psychiatric care to Mr. Price; instead, the psychiatric-patient relationship was terminated between Mr. Price and Defendant Dr. Lewis on or around November 24, 2020, when Mr. Price refused his psychiatry appointment after months of non-compliance with psychiatric treatment. Turn Key further states that its medical personnel were never requested to provide psychiatric or mental health services to Mr. Price after that date.

Turn Key further denies any duty of care for care and treatment for any mental health crises or mental health services beyond psychiatric clinical services owed to any inmates housed at the Sebastian County Detention Center, including Mr. Price. Instead, at all times relevant to Plaintiff's claims, Turn Key's contract with Sebastian County specifically provided that "all crisis management and mental health evaluations/assessments shall be performed by an independent community mental health provider designated by the Agency, not [Turn Key]." Moreover, effective January 1, 2020, the contract between Sebastian County and Turn Key eliminated the position for eight (8) hours per week of mental health coverage for case management and to serve as a clinical liaison between Turn Key's psychiatrist and the local community health provider. Accordingly, Defendant denies any duty on its part or the part of its medical personnel to monitor the mental health activities or services of the local community health provider at the time of Mr. Price's incarceration at the Sebastian County Detention Center, who is believed, based on Defendant's best information and belief, to have been The Guidance Center.

43.     With respect to Paragraphs 69 and 70 of Plaintiff's Complaint, Defendant admits that Mr. Price had an objectively serious medical condition. Defendant denies all remaining allegations, including but not limited to any allegations of negligence, deliberate indifference, or knowledge that Mr. Price had a deteriorating medical or mental health condition. Defendant further denies any knowledge on its part or on the part of its medical personnel that Mr. Price was ever at imminent risk of harm prior to the time of his medical emergency on August 29, 2021, or that any of its medical personnel were aware of any worsening in Mr. Price's condition. Defendant further denies that its psychiatrist, Dr. Lewis, owed any ongoing duty of psychiatric care to Mr. Price; instead, the psychiatric-patient relationship was terminated between Mr. Price

and Defendant Dr. Lewis on or around November 24, 2020, when Mr. Price refused his psychiatry appointment after months of non-compliance with psychiatric treatment. Turn Key further states that its medical personnel were never requested to provide psychiatric or mental health services to Mr. Price after that date. Turn Key further denies any duty of care for care and treatment for any mental health crises or mental health services beyond psychiatric clinical services owed to any inmates housed at the Sebastian County Detention Center, including Mr. Price. Instead, at all times relevant to Plaintiff's claims, Turn Key's contract with Sebastian County specifically provided that "all crisis management and mental health evaluations/assessments shall be performed by an independent community mental health provider designated by the Agency, not [Turn Key]."  Moreover, effective January 1, 2020, the contract between Sebastian County and Turn Key eliminated the position for eight (8) hours per week of mental health coverage for case management and to serve as a clinical liaison between Turn Key's psychiatrist and the local community health provider. Accordingly, Defendant denies any duty on its part or the part of its medical personnel to monitor the mental health activities or services of the local community health provider at the time of Mr. Price's incarceration at the Sebastian County Detention Center, who is believed, based on Defendant's best information and belief, to have been The Guidance Center.

44.     With respect to Paragraphs 71, 72, 73, and 74 of Plaintiff's Complaint, Defendant denies all allegations contained therein, including but not limited to allegations that Turn Key medical staff were deliberately indifferent or negligent toward Mr. Price's medical condition, that Defendant or its personnel were aware of Mr. Price's medical condition, that Turn Key or its personnel denied Mr. Price any medical or mental health care, or that any policies or procedures of Turn Key have any causal connection to Mr. Price's death. Rather,

28

Defendant states that Mr. Price was scheduled to be transferred to the Arkansas State Hospital on September 2, 2021, and Turn Key and its personnel were never aware of a change in Mr. Price's medical or mental health condition which placed him at increased risk of harm. Defendant further denies any knowledge on its part or on the part of its medical personnel that Mr. Price was ever at imminent risk of harm prior to the time of his medical emergency on August 29, 2021, or that any of its medical personnel were aware of any worsening in Mr. Price's condition. Defendant further denies that its psychiatrist, Dr. Lewis, owed any ongoing duty of psychiatric care to Mr. Price; instead, the psychiatric-patient relationship was terminated between Mr. Price and Defendant Dr. Lewis on or around November 24, 2020, when Mr. Price refused his psychiatry appointment after months of non-compliance with psychiatric treatment. Turn Key further states that its medical personnel were never requested to provide psychiatric or mental health services to Mr. Price after that date. Turn Key further denies any duty of care for care and treatment for any mental health crises or mental health services beyond psychiatric clinical services owed to any inmates housed at the Sebastian County Detention Center, including Mr. Price. Instead, at all times relevant to Plaintiff's claims, Turn Key's contract with Sebastian County specifically provided that "all crisis management and mental health evaluations/assessments shall be performed by an independent community mental health provider designated by the Agency, not [Turn Key]." Moreover, effective January 1, 2020, the contract between Sebastian County and Turn Key eliminated the position for eight (8) hours per week of mental health coverage for case management and to serve as a clinical liaison between Turn Key's psychiatrist and the local community health provider. Accordingly, Defendant denies any duty on its part or the part of its medical personnel to monitor the mental health activities or services of the local community health provider at the time of Mr. Price's

incarceration at the Sebastian County Detention Center, who is believed, based on Defendant's best information and belief, to have been The Guidance Center. Defendant further denies any *respondeat superior* liability under 42 U.S.C. § 1983. Defendant further denies that any of its policies, procedures, practices or customs were unconstitutional or that they caused any harm to Mr. Price. Rather, Defendant's policies, procedures, practices, and customs were to provide adequate and appropriate medical care to inmates, including Mr. Price, and were at all times constitutional. Defendant further denies that its training and supervision were insufficient.

45.     With respect to Paragraphs 75, 76, 77, 78, 79, and 80 of Plaintiff's Complaint, the allegations contained therein do not pertain to this Defendant. Therefore, no response is required. To the extent these allegations are intended to be directed at this Defendant, then Defendant is without sufficient information to form a belief as to the truth of such allegations; therefore, such allegations are deemed denied at this time.

46.     With respect to Paragraphs 81, 82, 83, 84, 85, 86, 87, 88, and 89 of Plaintiff's Complaint, Defendant denies all allegations contained therein, including but not limited to allegations that Turn Key medical staff were deliberately indifferent or negligent toward Mr. Price's medical condition, that Defendant or its personnel were aware of Mr. Price's medical condition, that Turn Key or its personnel denied Mr. Price any medical or mental health care, or that any policies or procedures of Turn Key have any causal connection to Mr. Price's death. Rather, Defendant states that Mr. Price was scheduled to be transferred to the Arkansas State Hospital on September 2, 2021, and Turn Key and its personnel were never aware of a change in Mr. Price's medical or mental health condition which placed him at increased risk of harm. Defendant further denies any knowledge on its part or on the part of its medical personnel that Mr. Price was ever at imminent risk of harm prior to the time of his medical emergency on

August 29, 2021, or that any of its medical personnel were aware of any worsening in Mr. Price's condition. Defendant further denies that its psychiatrist, Dr. Lewis, owed any ongoing duty of psychiatric care to Mr. Price; instead, the psychiatric-patient relationship was terminated between Mr. Price and Defendant Dr. Lewis on or around November 24, 2020, when Mr. Price refused his psychiatry appointment after months of non-compliance with psychiatric treatment. Turn Key further states that its medical personnel were never requested to provide psychiatric or mental health services to Mr. Price after that date. Turn Key further denies any duty of care for care and treatment for any mental health crises or mental health services beyond psychiatric clinical services owed to any inmates housed at the Sebastian County Detention Center, including Mr. Price. Instead, at all times relevant to Plaintiff's claims, Turn Key's contract with Sebastian County specifically provided that "all crisis management and mental health evaluations/assessments shall be performed by an independent community mental health provider designated by the Agency, not [Turn Key]."  Moreover, effective January 1, 2020, the contract between Sebastian County and Turn Key eliminated the position for eight (8) hours per week of mental health coverage for case management and to serve as a clinical liaison between Turn Key's psychiatrist and the local community health provider. Accordingly, Defendant denies any duty on its part or the part of its medical personnel to monitor the mental health activities or services of the local community health provider at the time of Mr. Price's incarceration at the Sebastian County Detention Center, who is believed, based on Defendant's best information and belief, to have been The Guidance Center. Defendant further denies that any of its customs or practices were unconstitutional or caused any harm to Mr. Price. Rather, Defendant's customs and practices were at all times constitutional and appropriate.

47.     With respect to the second Paragraph numbered 81 in Plaintiff's Complaint on

page 28, the allegations contained therein do not pertain to this Defendant; therefore, no response is required.

48.     With respect to Paragraph 90 of Plaintiff's Complaint, Defendant also demands a jury trial.

49.     Defendant denies the *Ad Damnum* section (Plaintiff's request for relief) contained within Plaintiff's Complaint and denies that Plaintiff is entitled to the relief requested against Defendant.

## **AFFIRMATIVE DEFENSES**

### I.

Defendant denies any allegations of agency/ostensible agency, apparent agency, vicarious liability, or *respondeat superior* liability.

### II.

Defendant denies that it or its personnel are guilty of any type of professional negligence, constitutional violation, or other wrongdoing, in the care and treatment of Mr. Price. Additionally, Defendant states that all care given to Mr. Price was at all times reasonable and within the applicable standard(s) of care and was not in indifference to Mr. Price's medical condition.

### III.

Plaintiff's Complaint fails to state a claim against this Defendant on any ground upon which relief can be granted

### IV.

Defendant denies that any act or omission by Defendant or its personnel was the proximate cause or "moving force" of any harm or injury to Mr. Price or Plaintiff.

### V.

In an abundance of caution, Defendant affirmatively states that Plaintiff's Complaint should be dismissed because Plaintiff has failed to exhaust his administrative remedies pursuant to the provisions of the Prison Litigation Reform Act.

VI.

Defendant affirmatively asserts that Plaintiff's lawsuit is in violation of the three-strikes provision of 28 U.S.C. § 1915(g).

VII.

Defendant affirmatively states that any care and treatment provided to Mr. Price was conducted with the informed consent of all necessary parties.

VIII.

Defendant affirmatively asserts the defense of qualified immunity.

IX.

Defendant affirmatively asserts the defense of "good faith" immunity.

X.

Defendants affirmatively states that any claim for punitive damages is not properly pled, and the imposition of punitive damages against Defendant would be improper, be unconstitutional, and violate the rights of Defendant under the United States Constitution and the Arkansas Constitution.

XI.

Defendant affirmatively states that any damages allegedly suffered by Mr. Price were caused by the voluntary assumption of the risk by Mr. Price.

XII.

Defendant affirmatively states that any damages allegedly suffered by Mr. Price were

33

caused or contributed to by Mr. Price's own acts, conduct, or negligence.

XIII.

Defendant did not violate any of Mr. Price's constitutional or statutory rights during its care and treatment of Mr. Price.

XIV.

Defendant did not owe a duty of care to Mr. Price.

XV.

The constitutional rights of Mr. Price were not violated.

XVI.

Plaintiff failed to mitigate damages.

XVII.

Defendant did not create, cause, implement, or enforce a policy or custom or practice that was the moving force behind Plaintiff or Mr. Price's alleged injuries

XVIII.

Defendant did not create, cause, implement, or enforce a policy or custom or practice that was the moving force behind a violation of Mr. Price's constitutional rights.

XIX.

Plaintiff has failed to adequately set forth any facts to indicate a custom or practice of this Defendant acting with deliberate indifference toward the constitutional rights of any inmate, including Mr. Price.

XX.

Plaintiff has failed to adequately set forth any facts to indicate that Plaintiff and/or Mr. Price suffered any constitutionally redressable harm or that the harm allegedly suffered by Plaintiff and/or

Mr. Price was causally related to any actions of Turn Key or any Turn Key policy, procedure or custom.

XXI.

Any damages allegedly suffered by the Plaintiff and/or Mr. Price were caused by the acts of a person or persons other than this Defendant or its agents or employees, over whom this Defendant exercises no control or supervision.

XXII.

Any damages allegedly suffered by the Plaintiff and/or Mr. Price were caused by intervening or supervening causes for which this Defendant is not responsible

XXIII.

Any damages allegedly suffered by the Plaintiff and/or Mr. Price were the result of unforeseeable or unavoidable complications due to the underlying conditions of Mr. Price, for which this Defendant is not responsible.

XXIV.

Any damages allegedly suffered by the Plaintiff and/or Mr. Price were caused by a pre-existing or post-developing, unrelated medical condition, disease, illness, or infection of Mr. Price for which this Defendant is not responsible.

XXV.

Plaintiff has sued an improper party.

XXVI.

Release.

XXVII.

Waiver.

35

XXVIII.

Laches.

XXIX.

Setoff.

XXX.

Contribution.

XXXI.

Defendant generally and specifically adopts any and all affirmative defenses available under the United States Constitution, the Arkansas Constitution, common law, or statutory law, including but not limited to those identified herein and under Fed. R. Civ. P., Rules 8 and 12, and the Prison Litigation Reform Act, 42 U.S.C. § 1997.

XXXII.

Defendant further asserts and reserves the right to file amended answer(s) or other appropriate pleadings to allege any affirmative defense that might be available to it after having a reasonable opportunity to investigate the allegations set forth in Plaintiff's Complaint.

WHEREFORE, having answered, Defendant, Turn Key Health Clinics, LLC, respectfully requests that this Court dismiss Plaintiff's Complaint, and for any and all other relief to which it may be entitled.

**JURY TRIAL DEMANDED**

Respectfully submitted,

Alexandra G. Ah Loy, AR #2020020
SWEET DEWBERRY HUBBARD, PLC
24 West Park Place
Oklahoma City, Oklahoma 73103
(405) 601-9400 Office
(405) 601-9444 Facsimile
allie@sdh.law | garrett@sdh.law
*Attorneys for Defendants Turn Key Health
Clinics, LLC, Jawaun Lewis, D.O., and
Christeena Ferguson*

## CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of February, 2023, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing.  Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

M. Darren O'Quinn
Law Offices of Darren O'Quinn, PLLC
B. Ram Suri Professional Building
36 Rahling Circle, Suite 4
Little Rock, AR 72223
darren@darrenoquinn.com

Angela Galvis Schnuerle
Galvis Law, PLLC
5523 JFK Boulevard
North Little Rock, AR 72205

*Attorneys for Plaintiff*

s/ Alexandra G. Ah Loy
ALEXANDRA G. AH LOY

37