**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF ARKANSAS**
**FORT SMITH DIVISION**

| | |
|---|---|
| THE ESTATE OF LARRY EUGENE PRICE JR, by and through its Special Administrator, Rodney Price, <br><br> PLAINTIFF, <br><br> v. <br><br> TURN KEY HEALTH CLINICS, LLC, an Oklahoma corporation; SEBASTIAN COUNTY, ARKANSAS; JAWAUN LEWIS, DO; CHRISTEENA FERGUSON; and J. DOES 1-20, <br><br> DEFENDANTS. | No. 2:23-cv-02008 PKH |

**PLAINTIFF'S MOTION TO COMPEL DISCOVERY FROM DEFENDANT**
**TURN KEY HEALTH CLINICS**

**TABLE OF CONTENTS**

I.     INTRODUCTION & RELIEF REQUESTED....................................................4

II.    STATEMENT OF FACTS....................................................................5

     A.   Plaintiff's Initial Discovery Requests to Turn Key .................................5

     B.   Plaintiff's Subsequent Discovery Requests to Turn Key....................7

III.   RULE 37(a)(1) CERTIFICATION ........................................................7

IV.  ARGUMENT...............................................................................7

     A.   Turn Key's definition of the relevant timeframe for discovery purposes is
         overly narrow and is preventing Plaintiff from gathering relevant
         custom-and-practice evidence, necessary to prove its *Monell* claims. ................8

         1.   Plaintiff is entitled to broad discovery to prove its *Monell* claims. ..........10

         2.   The authority Turn Key is relying on to withhold discovery
             is not on point.............................................................11

         3.   Plaintiff's requests are reasonably calculated to lead to discovery of
             admissible evidence and should be allowed. .............................12

     B.   Turn Key refuses to produce employee training checklists that will show what
         training its employees completed. (Interrogatory No. 9)....................14

     C.   Turn Key refuses to identify who provided training on a
         key corporate practice. (Interrogatory No. 19) ...................................15

     D.   Turn Key refuses to produce relevant information pertaining to patients other
         than Mr. Price........................................................................18

          1.   Information about other Turn Key patients who have died in custody is
             relevant to Plaintiff's *Monell* claims. (Interrogatory No. 13)....................19

         2.   Other patients' food and fluid logs are relevant to show the customs and
             practices Defendants followed to monitor patients whose food and fluid
             intake and output raised concerns. (Request for Production No. 42) ........19

         3.   Information about the three individuals identified by Plaintiff is relevant
             to Plaintiff's *Monell* claims. (Requests for Production Nos. 37, 43, 46)...20

4.  Turn Key's concerns about the privacy of other patients' medical information can be addressed by a protective order, as authorized under the HIPAA regulations.................................................21

E.  Turn Key refuses to provide financial information relevant to Plaintiff's claim for punitive damages. (RFPs 20-22) ........................................22

F.  Turn Key refuses to produce records relevant to the anticipated testimony of one of its witnesses. (RFP 47).............................................................23

G.  Turn Key refuses to provide contact information for witnesses it has identified. (Interrogatory No. 1) ...............................................24

**V.   CONCLUSION** ......................................................................................**25**

**Appendix 1**

## I. INTRODUCTION & RELIEF REQUESTED

This action concerns the 2021 death of Larry Price, Jr., a 51-year-old man with severe mental illness who died from dehydration and malnutrition after spending more than a year locked up in solitary confinement as a pretrial detainee in the Sebastian County Jail. Defendant Turn Key Health Clinics ("Turn Key") is the private correctional healthcare company Sebastian County hired in 2019 to provide constitutionally required medical care to people in the jail's custody, including Mr. Price. Mr. Price's estate filed this lawsuit in January 2023, alleging, among other things, that Turn Key and Sebastian County maintained unconstitutional customs and practices that subjected people in the jail to substantial risks of harm and that caused Mr. Price's death. *See* ECF No. 2 (Complaint) ¶¶ 71-83, 87.

The basis of this discovery motion is Turn Key's failure to fully respond to multiple discovery requests that Plaintiff has served since April 2023. At the root of some of Turn Key's objections is an improperly narrow view of what constitutes relevant discovery in cases involving *Monell* claims, where the plaintiff must prove the existence of policies or well-established customs or practices that caused the plaintiff's harm. Turn Key wrongly asserts that information and documents about patients and incidents other than Mr. Price, or that were generated after Mr. Price's death, are not relevant and not discoverable. Defendant's position violates the principles of broad discovery—particularly with respect to *Monell* claims—and the Court should order it to produce the requested documents and information.

Other objections are purportedly based on patient privacy concerns that can be addressed simply by a protective order. This motion also addresses Turn Key's failure or refusal to produce requested discovery for reasons that are not clear to Plaintiff.

Plaintiff asks the Court to order Turn Key to fully response to the discovery requests addressed in this motion.

## II.  STATEMENT OF FACTS

The discovery requests at issue in this motion are listed in Appendix 1 at the end of this brief. Counsel's efforts to address the disputes over these requests are described below and reflected in the exhibits attached to the Declaration of Hank Balson, filed with this motion.

### A.    Plaintiff's Initial Discovery Requests to Turn Key

Plaintiff served initial discovery requests, including interrogatories and requests for production, on Turn Key on April 7, 2023. Decl. of Hank Balson ¶ 2, Exs. A-B. Turn Key's lawyer requested a 30-day extension to respond to the discovery requests. *Id.* ¶ 3. Plaintiff's counsel agreed, but asked defense counsel to let him know what documents her client intended to withhold based on a claim of privilege or a need for a protective order. *Id.* In response, defense counsel sent Plaintiff's lawyer a letter on May 12, outlining the documents and information her clients intended to withhold in their entirety or to produce only after the entry of a protective order. Ex. C.[1] The list included several relevance objections, including with regard to records dated after the date of Mr. Price's death. *Id.* Plaintiff's counsel responded with a detailed letter disputing several of Defendants' objections and explaining how Plaintiff's requests were relevant to its *Monell* claims. Ex. D.

Meanwhile, Plaintiff served an additional request for production on April 26, asking for documents pertaining to another death at the Sebastian County Jail that occurred two days earlier. Balson decl. ¶ 5. Turn Key responded with objections on May 30 and refused to produce the records. Ex. E.

---

[1] All exhibits cited in this motion are attached to the Declaration of Hank Balson, filed herewith.

Turn Key served responses to Plaintiff's initial discovery requests on June 7. Balson decl. ¶ 6, Ex. F. Later that month, after reviewing the discovery, Plaintiff's counsel sent Turn Key's lawyer a 12-page letter describing numerous problems with her client's responses and asking to schedule a time to discuss the issues. Ex. G. Because certain defense objections were based on federal privacy protections for individual healthcare information, Plaintiff's counsel included a proposed protective order to address those objections. *Id.*, Ex. H.

Counsel conducted a telephone discovery conference on July 17 that lasted over an hour and covered multiple issues. Balson decl. ¶ 7. Later that day, Plaintiffs' lawyer sent defense counsel an e-mail summarizing their discussion. Ex. I.

One topic addressed during the discovery conference was Turn Key's efforts to locate and produce e-mails responsive to Plaintiff's discovery requests. Balson decl. ¶ 8. Defense counsel stated that Turn Key had hired an IT vendor to conduct a search, that she (defense counsel) was currently reviewing the results, and that she would produce the responsive e-mails by July 31. *Id.* Defense counsel told Plaintiff's attorney she would send him the search parameters used by the IT vendor so he could review the scope of the search, which she did. *Id.*, Ex. J. Plaintiff's attorney responded a couple days later, asking that the parameters be broadened to better capture e-mails responsive to Plaintiff's discovery requests. *Id.* Turn Key's lawyer replied that she would ask the IT vendor to run another search with the expanded criteria. *Id.* She stated she wasn't sure how long it would take for her to receive and review any additional e-mails identified through the expanded search, but confirmed she would produce the e-mails already in her possession by July 31. *Id.*

Turn Key served Supplemental Responses to Plaintiff's First Set of Interrogatories and Requests for Production and Second Supplemental Production of Documents on October 18, 2023. Balson decl. ¶ 9, Ex. K. A week later, after reviewing Turn Key's supplemental discovery

responses, Plaintiff's attorney sent defense counsel an e-mail asking certain follow-up questions aimed at minimizing the number of discovery disputes the parties would need to present to the Court for resolution. *Id.* ¶ 10, Ex. L.

**B.     Plaintiff's Subsequent Discovery Requests to Turn Key**

Plaintiff served Turn Key with additional discovery requests on July 20, October 3, October 6, and October 9, 2023. Balson decl. ¶ 11, Exs. M-P. Turn Key responded on August 22, November 2, November 6, and November 7, respectively. *Id.* Counsel for Plaintiff and Defendant conducted a telephone discovery conference on November 20, 2023, to discuss Plaintiff's concerns regarding Turn Key's latest discovery responses, as well as other outstanding issues. Bason decl. ¶ 12, Ex. Q. After a series of follow-up e-mails (*id.*, Ex. R), Plaintiff now files this motion to address those issues counsel have been unable resolve.

### III.  RULE 37(a)(1) CERTIFICATION

Plaintiff's counsel certifies that he has conferred in good faith with the attorneys for Defendant Turn Key by conducting two telephone discovery conferences and exchanging multiple e-mails, as described above.

### IV.  ARGUMENT

Under the Federal Rules of Civil Procedure, parties must serve answers to interrogatories, responses to requests for production, and any objections within 30 days of the date the discovery requests were served. Fed. R. Civ. P. 33(b)(2), 34(b)(2). If a party fails to do so, the requesting party, after attempting in good faith to resolve the issue without court intervention, may move for an order compelling the responding party to answer the interrogatories and produce the requested documents. Fed. R. Civ. P. 37(a)(3)(B).

Defendant Turn Key is withholding relevant records and information in response to many of Plaintiff's discovery requests. The documents and information being withheld are not privileged and fall well within the scope of allowable discovery. They are relevant to the claims and defenses in this lawsuit and are necessary to enable Plaintiff to prosecute its claims for the wrongful death of Larry Price.

**A.     Turn Key's definition of the relevant timeframe for discovery purposes is overly narrow and is preventing Plaintiff from gathering relevant custom-and-practice evidence, necessary to prove its *Monell* claims.**

The scope of allowable discovery in civil litigation is broad and includes "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). Relevance, for purposes of discovery, "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to [any] other matter that could bear on, any issue that is or may be in the case." *Timber Automation v. Fiberpro*, No. 6:20-CV-06076, 2020 U.S. Dist. LEXIS 261096, at *5 (W.D. Ark. Dec. 15, 2020) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). "[I]t is not too strong to say that a request for discovery should be considered relevant if there is *any possibility* that the information sought may be relevant to the subject matter of the action." *Id*. (internal quotation marks and citation omitted; emphasis added). The requested discovery need not be admissible at trial so long as the request appears "reasonably calculated to lead to the discovery of admissible evidence." *Walls v. Starks*, No. 4:19-cv-398-DPM, 2020 U.S. Dist. LEXIS 211772, at *6 (E.D. Ark. Nov. 12, 2020) (quoting *WWP, Inc. v. Wounded Warriors Family Support, Inc.*, 628 F.3d 1032, 1039 (8th Cir. 2011)).

Despite the broad definition of relevance for purposes of civil litigation, Turn Key is withholding relevant discovery in response to several of Plaintiff's requests because the responsive

documents and information fall outside the dates of Mr. Price's detention at the Sebastian County

Jail. The discovery requests and objections at issue are as follows:

**Interrogatory No. 13**: This interrogatory seeks information about deaths that have

occurred since 2016 in jails where Turn Key was providing services. Turn Key objected on

multiple grounds, including that the interrogatory is

> overly broad in time and scope, as this case involves the create [sic] and treatment
> of Plaintiff's decedent Larry Eugene Price, Jr. at the Sebastian County Detention
> Center from August 19, 2020 until August 29, 2021. Information related to patients
> at facilities other than Sebastian County Detention Center and after the dates of care
> at issue in this lawsuit have no probative value over the claims and issues in this
> case.

Ex. F at 25-26.[2]

**Request for Production No. 38**: This is a request for Turn Key's current policies and

procedures at the Sebastian County Jail. Turn Key objected as follows:

> Defendant objects to this Interrogatory as being overly broad as to time and scope,
> and as not being reasonably calculated to lead to the discovery of admissible
> evidence, as it seeks discovery into policies which are in effect years after the
> alleged injury. . . . The documents requested by Plaintiff have no probative value
> over any of the claims in *this litigation*, which is limited to the care and treatment
> of Larry Eugene Price, Jr. at the Sebastian County Detention Center from August
> 19, 2020 through August 29, 2021. This is no more than an impermissible fishing
> expedition prohibited by the Federal Rules.

Ex. M at 3 (emphasis in original).

**E-mails**: On July 17, 2023, following the parties' telephone discovery conference, Turn

Key's lawyer sent Plaintiff's counsel an e-mail, stating the search parameters Turn Key used to

locate e-mails responsive to Plaintiff's requests for production. Ex. J. Consistent with its previous

objections, Turn Key limited its search to e-mails dated prior to August 30, 2021—the day after

Mr. Price's death. *Id*. The only instances where Turn Key did not limit the search by dates was

---

[2] To the extent this request raises privacy concerns of patients who are not party to this litigation, that issue is addressed in Section D(4) below.

where the e-mail contained the name "Larry Price," "Larry Eugene Price," or the names of Mr. Price's brother (Rodney) or aunt (Beverly Ann). *Id*. Plaintiff counsel replied, requesting expanded search parameters while acknowledging the parties' dispute regarding the relevant timeframe. *Id*.

### 1.   Plaintiff is entitled to broad discovery to prove its *Monell* claims.

Turn Key's narrow view regarding the scope of relevant discovery ignores the fact that Plaintiff has asserted *Monell* claims against the company and its co-defendant, Sebastian County, requiring Plaintiff to prove the existence of an official policy, an unofficial custom, or a deliberately indifferent failure to train resulting in the plaintiff's injuries. *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018) (internal quotation marks and citation omitted). Documents and information from after the date of Mr. Price's death are highly relevant to these claims. *See, e.g., Whitt v. City of St. Louis*, No. 4:18-CV-1294 RLW, 2020 U.S. Dist. LEXIS 228094, at *19 (E.D. Mo. Dec. 4, 2020) ("[P]ost-incident evidence is relevant to the existence of a custom or policy, from which a plaintiff may argue it was the moving force in the alleged unconstitutional violation."); *Salvato v. Miley*, 790 F.3d 1286, 1297 (11th Cir. 2015) ("To be sure, post-event evidence can shed some light on what policies existed in the city on the date of an alleged deprivation of constitutional right.") (internal quotation marks and citation omitted); *Henry v. County of Shasta*, 132 F.3d 512, 519 (9th Cir. 1997) ("[W]e reiterate our rule that post-event evidence is not only admissible for purposes of proving the existence of a municipal defendant's policy or custom, but may be highly probative with respect to that inquiry."); *Foley v. City of Lowell, Mass.*, 948 F.2d 10, 14 (1st Cir. 1991) ("Contrary to the City's exhortation that the date an incident occurs marks the outside date for evidence-gathering on such an issue, we think that actions taken subsequent to an event are admissible if, and to the extent that, they provide reliable insight into the policy in force at the time of the incident.").

Post-incident facts may also be evidence of a policymaker's indifference. *See Grandstaff v. City of Borger*, 767 F.2d 161, 171 (5th Cir. 1985) ("[T]he subsequent acceptance of dangerous recklessness by the policymaker tends to prove his preexisting disposition and policy.").

Finally, Plaintiff has a claim for punitive damages against Turn Key. *See* Complaint at 29. The two purposes of punitive damages are "(1) to punish willful or malicious conduct; and (2) to deter similar future misconduct." *Haynes v. Stephenson*, No. 5:07CV00295 WRW/JTR, 2008 U.S. Dist. LEXIS 81571, at *61 (E.D. Ark. Sept. 19, 2008). To the extent Turn Key failed to take steps following Mr. Price's death to reduce the risk of other patients suffering similar harm, such as taking corrective action with the involved employees, changing its policies or customs, or improving its training, that information is relevant not only to show the nature and existence of Turn Key's policies and practices at the time of Mr. Price's death, but also to the jury's assessment of the need for punitive damages and the amount it should impose.

### 2.    The authority Turn Key is relying on to withhold discovery is not on point.

Turn Key cited multiple cases to support its objections to producing discovery from after Mr. Price's death. Ex. E at 3-6. However, the cases Turn Key relies on are not on point. The vast majority of the cases involve rulings on summary judgment motions, motions to dismiss, challenges to judgments following trial, and evidentiary rulings—all of which apply different standards than the one governing the scope of allowable discovery. Only *one* of the cases cited by Turn Key involves a decision about allowable discovery for a *Monell* claim, and that case supports *Plaintiff's* position. *See Walls v. Starks*, No. 4:19-cv-398-DPM, 2020 U.S. Dist. LEXIS 211772 (E.D. Ark. Nov. 12, 2020). In *Walls*, the plaintiff claimed that a police department's allegedly unconstitutional policies, practices, customs, and training pertaining to the use of deadly force led to the death of the decedent. *Id.* at *10-11. The plaintiff sought to question witnesses in their

depositions about other use-of-force incidents that occurred 14-19 years earlier, which the defendants opposed. The district court noted as follows: "*Monell* claims that turn on proving a custom or practice or a failure to train always involve a fact-intensive inquiry into other similar instances or cases which go toward proving the prevalence of the customs and practices, as well as the duration and extent of any failures in training." *Id*. at *11. The court ruled that the discovery the plaintiff sought was potentially relevant and would be allowed. *Id*. at *15-16.[3]

### 3. Plaintiff's requests are reasonably calculated to lead to discovery of admissible evidence and should be allowed.

The documents and information Plaintiff seeks are plainly relevant under the broad standard for discovery—particularly in the context of a *Monell* claim. Whether or not the documents and information would be admissible at trial, their connection to the issues in the case and their potential for assisting Plaintiff to discover admissible evidence are clear.

**Interrogatory No. 13**: The information Plaintiff seeks about deaths that have occurred in jails where Turn Key was providing services will help Plaintiff discover whether other Turn Key patients have died under circumstances similar to those at issue in this case. Once Plaintiff has that information, it can conduct further discovery to determine whether Turn Key's policies, customs, and training at the times and in the locations where those deaths occurred were similar to the company's policies, customs, and training in place at the Sebastian County Jail around the time of Mr. Price's detention and death. If discovery reveals that other Turn Key patients died under similar circumstances or from similar causes *prior* to Mr. Price, that will help show that the company had notice of the serious risks posed by its policies and practices. If discovery reveals

---

[3] As Turn Key noted in its citation, the court required plaintiff's counsel to establish that the defendants were following similar policies, practices, customs, and training regarding the use of deadly force around the time of the earlier incidents. *Walls* at *15. In this case, however, Turn Key is withholding discovery, such as e-mails and policies from after Mr. Price's death, that would enable Plaintiff to answer that question.

other patient deaths under similar circumstances or from similar causes *after* Mr. Price, that will help demonstrate ongoing deliberate indifference to those risks and will support Plaintiff's claim for punitive damages to deter Turn Key from continuing its dangerous policies and practices going forward.

**Request for Production No. 38**: Plaintiff's request for Turn Key's current policies and procedures at the Sebastian County Jail will reveal whether or not Turn Key has made any meaningful changes to its policies and procedures since Mr. Price's death to reduce the risk of future patient deaths from similar causes. If Turn Key has made such changes, Plaintiff will be able to explore the reasons for the changes with Turn Key witnesses, potentially leading to admissible information about deficiencies in the policies and procedures in effect at the time of Mr. Price's detention. If Turn Key has not made any such changes, that may support Plaintiff's allegation of deliberate indifference and its claim for punitive damages against the company.

**E-mails**: Turn Key's refusal to produce e-mails generated after August 30, 2021 violates the principle of broad discovery and is obstructing Plaintiff's access to potentially relevant evidence. For example, Defendant Lewis, Turn Key's director of psychiatry, testified at his deposition that after Mr. Price died, he learned that the jail's outside mental health contractor, Western Arkansas Counseling and Guidance Center, had not been doing weekly rounds in the segregation units, as he had assumed. Ex. S (Lewis dep at 139-50). After learning this, he notified one or more persons at Turn Key's corporate office that he would no longer work with an outside mental health agency. *Id*. at 110:23–111:6. Since Turn Key is refusing to search for e-mails generated after August 30, 2021, it is preventing Plaintiff from discovering Defendant Lewis's notice to the corporate office and likely other e-mails relating to how Turn Key monitors patients with serious mental illness in segregation—a central issue in this litigation. Turn Key's refusal to

produce e-mails from after August 30, 2021 is also preventing Plaintiff from discovering e-mails specifically discussing Mr. Price's death, including e-mails regarding post-death investigations and mortality reviews.[4]

The Court should order Turn Key to search for and produce e-mails responsive to Plaintiff's discovery request, regardless of when they were generated.

**B.     Turn Key refuses to produce employee training checklists that will show what training its employees completed. (Interrogatory No. 9)**

Plaintiff's Interrogatory No. 9 asks Turn Key to describe the training provided to its employees and contractors who worked at the Sebastian County Jail while Mr. Price was held there, including who completed each training and when. Ex. K at 19. Turn Key objected on multiple grounds. *Id*. at 19-20. When counsel conducted their first discovery conference on July 17, Turn Key's lawyer agreed to respond to the interrogatory in part by producing training checklists for employees specifically identified by Plaintiff's counsel. Balson decl. ¶ 7, Ex. I at 1 (Interrogatories 9 and 10). The checklist identifies what training and orientation topics an employee has completed and when. *See* Ex. T. On October 10 Plaintiff's attorney asked defense counsel to produce the training checklists of six Turn Key nurses who worked at the Sebastian County Jail, in anticipation of their depositions. Ex. U. Plaintiff's counsel e-mailed Turn Key's lawyer on October 25, noting that he still had not received the requested training checklists. Ex. V. Still, Turn Key did not produce the checklists and did not offer any explanation for its failure to do so. Balson decl. ¶ 14.

---

[4] According to defense counsel, Turn Key's search for e-mails containing the terms "Larry Price" or "Larry Eugene Price" was not limited by time. Ex. J at 3. However, Turn Key's general timeframe limits mean that its search will not identify relevant e-mails that do not use those precise terms. For example, e-mails pertaining to Mr. Price's death may refer simply to "the Price death," "Mr. Price's death," or "the recent death." Turn Key refuses to search for such e-mails.

Counsel conducted a second discovery conference on November 20, 2023 to discuss the checklists and other outstanding discovery issues. *Id*. ¶ 12, Ex. Q. Turn Key's lawyer stated he would look for the checklists among the additional document he received from his client the previous week. *Id*. Having not received the checklists, Plaintiff's lawyer e-mailed defense counsel about the missing checklists on December 1 and again on December 19. Ex. R. As of the date of this motion—more than three months after having specifically requested the training checklists of the six named employees—Plaintiff has received neither the checklists nor any explanation for why they have not been produced. Balson decl. ¶ 14.

The Court should order Turn Key to produce the Orientation and Training Checklists for the six nurses identified by Plaintiff's counsel on October 10: Morgan Matlock, Tierra Franklin Rambo, Abbeygail Jump, Rachelle Anaya, Katie Green, and Misty Williams. If Turn Key claims for the first time in its response to this motion that the checklists do not exist, the Court should require it to describe the efforts it made to locate the documents, including all locations searched and all persons involved in the search.[5]

## C.    Turn Key refuses to identify who provided training on a key corporate practice. (Interrogatory No. 19)

An important issue in this case is whether Turn Key had a custom of relying on untrained corrections officers to monitor patients' food and fluid intake and output for medical purposes, and if so, whether this custom exposed Turn Key patients to a substantial risk of harm. According to Mr. Price's medical chart, Defendant Christeena Ferguson directed jail deputies to monitor his food and fluid intake and output on January 28, 2021, after learning that he had been eating his

---

[5] It appears Turn Key may maintain the training checklists in different places. The checklist Turn Key produced for Defendant Jawaun Lewis was produced as part of his personnel file. Balson decl. ¶ 14. However, Defendant Christeena Ferguson, the former Health Services Administrator at the Sebastian County Jail, indicated in her deposition that the checklists were maintained in a drawer in her desk. Ex. V (Ferguson dep. at 62:5-19).

feces and drinking his urine and noting that he was "noticeably thinner." Balson decl. ¶ 17, Ex. W.

Further, Defendant Ferguson wrote in an interrogatory answer that she "instructed detention staff

on how to fill out the input/output forms." *Id.* ¶ 18, Ex. X (Interrogatory No. 8). However, the logs

completed by the officers were sporadic and incomplete and provided little useful information to

enable a medical provider to know how much food and fluid Mr. Price was ingesting and retaining.

*Id.* ¶ 19, Ex. Y. Moreover, jail deputies testified in their depositions that they did not recall ever

receiving training from Turn Key on how to complete the food/fluid logs. *Id.* ¶ 20-21, Exs. Z and

AA.

In an effort to learn what training, if any, Turn Key provided to jail deputies to monitor

patients' food and fluid intake and output and complete the food logs, Plaintiff issued an

interrogatory asking Turn Key to identify each of its employees and contractors who provided such

training between January 1, 2020 and the present, and to describe details such as who received the

training, where and when it took place, and what written materials, if any, were used. Ex. P at 3-4

(Interrogatory No. 19). Turn Key objected and responded as follows:

> Defendant objects to this Interrogatory as overly broad, unduly burdensome, not
> reasonably calculated to lead to the discovery of admissible evidence, as seeking
> documents not within the possession, custody or control of Defendant Turn Key.
> Specifically, Turn Key not the custodian of nor is it responsible for maintaining
> training records for Sebastian County employees.
>
> Subject to and without waiving the foregoing objections, Defendant states that its
> nurses, including but not limited to Christeena Ferguson, provided training via
> verbal instruction to detention staff responsible for monitoring Mr. Price on how to
> complete the Intake/Output forms. This training took place in person. Nursing staff
> would provide any additional training upon request by detention staff. It is
> impossible to outline every single interaction between nursing and detention staff
> where the Intake/Output forms were discussed. Such form is self-explanatory on its
> face to a layperson. Defendant reserves the right to expound upon such training
> during Christeena Ferguson's testimony, which is currently scheduled for
> November 14, 2023.

*Id.*

Turn Key's answer is deficient in that it fails to identify any specific employees—other than Defendant Ferguson—who provided relevant training, is limited to training provided to officers responsible for monitoring Mr. Price, fails to provide even a rough estimate of when the training(s) occurred, fails to identify any written materials used as part of the training(s), and fails to describe how and where the trainings were documented.

During the parties' telephone discovery conference on November 20, 2023, Plaintiff's counsel raised these deficiencies with Turn Key's lawyer and requested that Turn Key supplement its answer. Balson decl. ¶ 12, Ex. Q. Defense counsel responded that Turn Key was standing by its previous objections and would not respond further. *Id*. He added that Plaintiff's attorney had an opportunity to request further detail during the deposition of Defendant Ferguson. *Id*.

Turn Key's objections lack merit. The interrogatory is neither overbroad nor unduly burdensome. It focuses specifically on a key issue in the litigation: The training and instruction—if any—Turn Key provided to the guards it relied on to monitor and report patients' food and fluid intake and output. Defendant's contention that the request is not reasonably calculated to lead to the discovery of admissible evidence defies reason and common sense. Further, it is difficult to see how answering the interrogatory would be unduly burdensome given the limited number of current and former Turn Key employees who worked at the Sebastian County Jail during the relevant timeframe. At a minimum, Turn Key could send an e-mail to those employees asking them to provide any responsive information they can recall. Defendant's objection that Plaintiff is "seeking documents not within the possession, custody or control of Defendant Turn Key" is also unavailing, as Plaintiff's interrogatory seeks information, not documents. Finally, Turn Key's argument that Plaintiff had an opportunity to request details regarding employee's training efforts during the deposition of Christeena Ferguson (an argument, incidentally, that was not asserted as

17

an actual objection to Interrogatory 19) is not persuasive. First, Defendant Ferguson worked at the Sebastian County Jail for only a fraction of the timeframe covered by Interrogatory 19 and cannot be expected to have complete information responsive to the request. Second, the interrogatory is not limited to training provided by Defendant Ferguson. And third, Plaintiff is unaware of any authority that allows a corporate defendant to avoid answering an interrogatory simply because the plaintiff may be able to obtain some of the responsive information from another witness.

Plaintiff anticipates that Turn Key will dispute the allegation that it relied on untrained corrections officers to monitor and record critical data regarding patients' nutrition and hydration levels. To the extent it intends to do so, Plaintiff has a right to discover details regarding the nature and scope of any such training Turn Key claims to have provided. The Court should order Turn Key to provide a complete answer to Interrogatory No. 19.

**D.    Turn Key refuses to produce relevant information pertaining to patients other than Mr. Price.**

A number of Plaintiff's discovery requests seek information pertaining to other Turn Key patients or Sebastian County Jail detainees. *See* Ex. K at 27-29 (Interrogatory No. 13); Ex. E at 3-6 (Request for Production No. 37); Ex. N (Requests for Production Nos. 42, 43, 46). The purpose of these requests is to discover information about Turn Key and Sebastian County's policies and practices and their impact on other persons who, like Mr. Price, suffered from serious physical or mental illness while in custody. Turn Key objects to these requests on multiple bases, claiming that information about Turn Key's care of other patients has no probative value as to the claims in this case and that the information is protected by the Health Insurance Portability and Accountability Act (HIPAA). *Id*. However, as explained below, Plaintiff's requests are calculated to lead to information about Defendants' policies and customs that expose people in their care to substantial risks of harm, which Plaintiff must show to prove its *Monell* claims. Furthermore,

18

HIPAA allows patient health information to be released for litigation purposes if done so pursuant to a protective order. Plaintiff has proposed such a protective order on multiple occasions, but Turn Key refuses to agree to it.

### 1. Information about other Turn Key patients who have died in custody is relevant to Plaintiff's *Monell* claims. (Interrogatory No. 13)

The information requested in Interrogatory No. 13 about other patients who have died in Turn Key facilities is relevant to Plaintiff's *Monell* claims because it may help Plaintiff demonstrate Turn Key's notice of dangerous customs or policies, its indifference to the serious risks posed by those customs or policies, and the need for punitive damages to deter Turn Key from continuing such customs and policies going forward. *See* Section A(1) at pp. 7-10 above.

### 2. Other patients' food and fluid logs are relevant to show the customs and practices Defendants followed to monitor patients whose food and fluid intake and output raised concerns. (Request for Production No. 42)

Plaintiff has alleged that Defendants relied on untrained detention officers to monitor and document patients' food and fluid intake and output when necessary to address a medical concern. *See* Complaint ¶¶ 37, 39, 65, 67, 68, 73-76. Plaintiff has further alleged that this custom subjected patients with serious illness to a substantial risk of harm and resulted in Mr. Price's death. *Id*. ¶¶ 73-76. In order to discover evidence of this custom, Plaintiff requested the food and fluid intake/output records of Turn Key patients at the Sebastian County Jail since September 11, 2019. Ex. N at 3 (Request for Production No. 42). Turn Key objected, claiming, among other things, that "the food and fluid input/output forms for patients with no relationship to this case have absolutely no probative value as to the claims and healthcare delivery system in effect in August 2021, nearly two years prior." *Id*. However, such records would reveal how Defendants regularly monitored and documented problems related to patients' food and fluid intake and output—a serious medical

issue that is clearly related to Mr. Price's death from dehydration and malnutrition and to Plaintiff's *Monell* claims.

> **3.      Information about the three individuals identified by Plaintiff is relevant to Plaintiff's *Monell* claims. (Requests for Production Nos. 37, 43, 46)**

In Requests for Production Nos. 37, 43, and 46, Plaintiff seeks information about three former Sebastian County Jail detainees whose circumstances, in one way or another, were similar to those of Larry Price, and whose information may shed light on policies or customs of the County or Turn Key that are relevant to Plaintiff's *Monell* claims.

▮▮▮▮▮▮▮▮▮ (RFP No. 37) died in the Sebastian County Jail on or about April 24, 2023. Ex. BB. An undated medical questionnaire from his jail file indicates he had diabetes, a heart defibrillator, and a loss of feeling in his feet and legs, making it hard to walk. Balson decl. ¶ 23, Ex. CC. Plaintiff's counsel was informed by a witness that ▮▮▮▮▮▮ had been complaining about chest pains, but received little or no medical attention. *Id.* ¶ 24. The witness also stated that jail guards were not performing regular cell checks as required. *Id.* These allegations, if true, support Plaintiff's allegations in this lawsuit. *See* Complaint ¶¶ 73, 78. Records showing what medical care ▮▮▮▮▮ received before his death, if any, and whether or not he was monitored as required, are relevant to discovering the policies and practices at the Sebastian County Jail and how they affected people with serious medical needs. Even though ▮▮▮▮▮ died more than a year after Mr. Price, the practices in place at the jail at the time may be relevant to establishing long-standing customs and practices that existed both at the time of Mr. Price's death and ▮▮ ▮▮▮▮▮death.

▮▮▮▮▮ (RFP No. 43) was confined in the Sebastian County Jail in August 2021. Balson decl. ¶ 25, Ex. DD. Like Mr. Price, he suffered from serious mental illness and was awaiting a bed at the Arkansas State Hospital. *Id*. And like Mr. Price, his nutritional intake was supposed to be

monitored with a food log because staff were concerned about his weight loss. *Id*. Records

pertaining to ███████ are relevant to Plaintiff's allegations that Turn Key relied on untrained jail

guards to monitor and report on patients' food and fluid intake, and that this practice exposed

patients with serious medical needs to a substantial risk of harm. *See* Section D(2) at p. 17 above.

Documents showing how Turn Key and the County dealt with concerns about ███████ nutrition

intake are highly relevant to Plaintiff's allegations regarding Defendants' customs and practices

with regard to this issue.

████████ (RFP No. 46) suffered from serious mental illness and occupied the

segregation cell next to Larry Price for several months. Balson decl. ¶ 26, Ex. EE (Smith dep. at

44-45). After Mr. Price died, jail officials worked to secure a furlough for him so that he could

could receive in-patient treatment. *Id*. Documents showing how ███████ was treated by Turn

Key and jail staff are relevant to demonstrate Defendants' customs and practices with regard to the

treatment of detainees in segregation with serious mental illness. Also, to the extent such

documents show which nurses and officers visited ███████ cell and when, Plaintiff can use

that information to questions witnesses about what they heard and saw when they were standing

very close to Mr. Price's cell.

**4.      Turn Key's concerns about the privacy of other patients' medical information can be addressed by a protective order, as authorized under the HIPAA regulations.**

One of Turn Key's objections to producing other patients' medical records is grounded in

state and federal laws protecting the privacy of individual healthcare information. *See*, *e.g.*, Ex. N

(Requests for Production Nos. 42, 43, 46) (citing HIPAA, 45 C.F.R. Part 160, *et seq*. and AR Code

§ 17-97-105).

AR Code § 17-97-105 is limited to "confidential relations and communications between a licensed psychologist or a psychological examiner and a client" and is not applicable here.

The federal HIPAA regulations explicitly allow for the disclosure of otherwise-protected health information in response to a discovery request in a judicial proceeding, particularly if the information is produced under a protective order. 45 C.F.R. § 164.512(e)(ii) and (v). Plaintiff has repeatedly proposed such a protective order to Turn Key's counsel, but Turn Key has been unwilling to agree to it. Ex. G at 2; Ex. I at 1; Ex. N at 4-5 (RFPs 43 and 46).[6] Plaintiff now asks the Court to enter the proposed protective order and order Turn Key to produce the records and information requested in Plaintiff's Interrogatory No. 13 and RFPs 37, 42, 43, and 46.

**E.    Turn Key refuses to provide financial information relevant to Plaintiff's claim for punitive damages. (RFPs 20-22)**

Turn Key refuses to produce documents showing the company's assets, liabilities, revenue, and expenses. *See* Ex. K at 59-62 (RFP Nos. 20-22). Plaintiff requested these records to support its claim for punitive damages against Turn Key. *See* ECF No. 2 (Complaint) at 29. "It is well-established that under federal law, evidence of the defendants' financial worth is relevant to a claim for punitive damages and [a] plaintiff seeking punitive damages is entitled to engage in discovery relating to the defendant's financial worth in advance of trial." *Truong Son Mkt., Inc. v. State Auto Prop. & Cas. Ins. Co.*, No. 2:21-CV-02058, 2022 U.S. Dist. LEXIS 87842, at *9 (W.D. Ark. May 16, 2022) (internal quotation marks and citation omitted). In *Truong Son Mkt*, this Court granted the plaintiff's motion to compel discovery relating to the defendant's financial condition going back three years because it was relevant to the plaintiff's claim for punitive damages. *Id.* The Court should require Turn Key to produce documents responding to Plaintiff's RFP Nos. 20-22 for the same reason.

---

[6] The HIPAA-compliant protective order proposed by Plaintiff can be found at Exhibit H.

**F.      Turn Key refuses to produce records relevant to the anticipated testimony of one of its witnesses. (RFP 47)**

On September 9, 2020, Turn Key nurse Misty Williams alleged in an internal report that Mr. Price grabbed her arm and threatened to kill her while she was at his cell door with an officer, dispensing his medication. Ex. FF. Turn Key has identified Ms. Williams as a potential trial witness, stating that she is expected to testify about multiple subjects, including Mr. Price's "attack on her." Ex. K at 6. In addition, defense counsel raised the incident during a deposition, asking the witness if he was "aware that Mr. Price attempted to kill a nurse in the jail who was passing medications to him," suggesting that counsel viewed this information as relevant to the witness's testimony. Ex. GG (dep. of Tyler Caves at 86:12-87:2). However, when Plaintiff asked Turn Key to produce all documents pertaining to the incident, Turn Key objected and identified two responsive documents that it refuses to produce, claiming they are protected under HIPAA. Ex. O at 3-4. The records being withheld are a worker's compensation form submitted by Ms. Williams and a note from Ms. Williams' physician, authorizing her to return to work. *Id*. As noted above, Plaintiff has offered to stipulate to a protective order to preserve the confidentiality of these records, as authorized under 45 C.F.R. § 164.512(e)(ii) and (v). However, Turn Key refuses to stipulate to the order and continues to withhold the responsive documents.

To the extent Turn Key may offer evidence at trial pertaining to the incident involving Ms. Williams, the requested records are highly relevant, as they will likely provide information about the nature of the alleged "attack" and Ms. Williams' alleged injuries. Unless Turn Key will stipulate that it will not try to introduce evidence of the incident alleged in Ms. Williams' report at trial, the Court should order it to produce the records it is withholding subject to the HIPAA protective order submitted by Plaintiff.

**G.  Turn Key refuses to provide contact information for witnesses it has identified. (Interrogatory No. 1)**

Plaintiff's first interrogatory asked Turn Key to identify people with knowledge regarding the allegations in Plaintiff's complaint, as well as Turn Key's answer and defenses to the lawsuit. Ex. A at 5. Plaintiff's definition of "identify" called for Turn Key to provide contact information for the people it named, including home and work addresses, e-mail addresses, and phone numbers. *Id*. at 3. Turn Key identified multiple current and former employees in its answer to this interrogatory but declined to provide the required contact information, indicating instead that such witnesses should be contacted through defense counsel. Ex. K at 3-11. When Plaintiff's lawyer asked why the witnesses' contact information was withheld, defense counsel stated that she had representation agreements with most or all of the current and former Turn Key employees listed in the answer, even though they were not parties. Balson decl. ¶¶ 7, 29, Ex. I. She stated she would confirm which ones she represented and would provide contact information for anyone she did not represent. *Id*. She never did so.

Plaintiff did not press the issue while defense counsel was cooperating in scheduling depositions and accepting service of deposition subpoenas for her client's current and former employees. Balson decl. ¶ 29. However, when Plaintiff's lawyer encountered problems or delays in scheduling, he repeatedly asked defense counsel to provide the witness's contact information, as required by the interrogatory. *Id*., Ex. HH. Defense counsel ignored those requests and failed to provide the requested contact information. *Id*. Turn Key did not assert any specific objection to providing contact information for non-party witnesses. *See* Ex. K at 3. Even if the company's lawyer had furnished evidence that she represents some or all of the witnesses, that would not excuse Turn Key from providing their contact information in response to Plaintiff's interrogatory. Plaintiff has a legitimate need for the contact information, including so that it can serve subpoenas

on these witnesses. As of the date of this motion, Plaintiff has been unable to schedule the deposition of witness Misty Williams, in part because Turn Key has failed to provide Plaintiff with her contact information.[7] Balson decl. ¶ 29.

Plaintiff asks the Court to order Turn Key to provide the requested contact information (last-known addresses, phone numbers, and e-mail addresses) for all non-party witnesses.

## V.  CONCLUSION

Plaintiff asks the Court to grant this motion and to order the relief set forth in the proposed order.

Respectfully submitted this 16th day of January, 2024.


                                        BUDGE & HEIPT, PLLC
                                        808 E. Roy St.
                                        Seattle, WA 98102
                                        (206) 624-3060


                                          s/ Hank Balson
                                        Erik J. Heipt  erik@budgeandheipt.com
                                        Hank Balson  hank@budgeandheipt.com
                                        Edwin S. Budge  ed@budgeandheipt.com
                                        *Attorneys for Plaintiff*

---

[7] It is Plaintiff's understanding that Ms. Williams is now a travel nurse. As of November 7, 2023, she was living and working in West Virginia. Defense counsel stated she was working to obtain contact information for Ms. Williams, but so far, no contact information has been provided.

**Appendix 1**

Plaintiff's Discovery Requests at Issue in Plaintiff's Motion to Compel Discovery from
Defendant Turn Key Health Clinics

**Interrogatory No. 1**: Turn Key refuses to produce contact information for non-party witnesses.

**Interrogatory No. 9**: Turn Key refuses to produce requested information about employee training.

**Interrogatory No. 13**: Turn Key refuses to produce requested information about other patient deaths.

**Interrogatory No. 19**: Turn Key refuses to identify employees who provided training to detention staff on how to monitor and document patients' food and fluid intake and output.

**Requests for Production No. 20-22**: Turn Key refuses to produce documents pertaining to the company's finances, relevant to Plaintiff's claim for punitive damages.

**Request for Production No. 37**: Turn Key refuses to produce records pertaining to detainee ███████████ .

**Request for Production No. 38**: Turn Key refuses to produce copies of its policies and procedures currently in effect at the Sebastian County Jail.

**Request for Production No. 42**: Turn Key refuses to produce other examples of patient food and fluid intake/output logs.

**Request for Production No. 43**: Turn Key refuses to produce records pertaining to detainee ████████ .

**Request for Production No. 46**: Turn Key refuses to produce records pertaining to detainee ███████████ .

**Request for Production No. 47**: Turn Key refuses to produce records pertaining to defense witness Misty Williams.

**E-mails**: With limited exceptions, Turn Key refuses to produce e-mails generated after the date of Larry Price's death.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on the date stated below this document was filed with the

Clerk of the Court for the United States District Court for the Western District of Arkansas via

the CM/ECF system, which will send notification of such filing to the following e-mail

addresses:

Alexandra G. Ah Loy
AllieAhLoy@hallboothsmith.com
Zachary Williams
zwilliams@hallboothsmith.com
Julie Hill
jhill@hallboothsmith.com

*Attorneys for Defendants Turn Key Health Clinics, LLC; Jawaun Lewis, DO; and Christeena Ferguson*

Jason Owens owens@jowenslawfirm.com

*Attorney for Defendant Sebastian County, Arkansas*

Dated this 16th day of January, 2024.

 s/ Hank Balson
Hank Balson