# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF ARKANSAS
### FORT SMITH DIVISION

|  |  |
|---|---|
| THE ESTATE OF LARRY EUGENE PRICE JR, by and through its Special Administrator, Rodney Price, <br><br> PLAINTIFF, <br><br> v. <br><br> TURN KEY HEALTH CLINICS, LLC, an Oklahoma corporation; SEBASTIAN COUNTY, ARKANSAS; JAWAUN LEWIS, DO; CHRISTEENA FERGUSON; and J. DOES 1-20, <br><br> DEFENDANTS. | No. 2:23-cv-02008 PKH |

## DECLARATION OF HANK BALSON IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL DISCOVERY FROM DEFENDANT TURN KEY HEALTH CLINICS

I, HANK BALSON, declare as follows:

1.      I am one of the attorneys representing the plaintiff in this matter. I am over the age of 18, am competent to testify, and make this declaration based on my personal knowledge.

2.      I served interrogatories and requests for production on Defendants Turn Key Health Clinics (**"Turn Key"**) by e-mailing them to defense counsel Alexandra Ah Loy on April 7, 2023. (The parties in this case have agreed to accept service of discovery requests and responses via e-mail.) True and correct copies of these requests are attached to this declaration as **Exhibits A and B**.

3.      Ms. Ah Loy contacted me on April 26 and requested a 30-day extension to respond to Plaintiff's discovery requests. I agreed to the extension but asked her to let me know what documents she intended to withhold based on a claim of privilege or a need for a protective order.

4.      I received a letter from Ms. Ah Loy on May 12, outlining the documents and information her clients intended to withhold in their entirety or to produce only after the entry of a protective order. A true and correct copy of that letter, with relevant portions highlighted, is attached as **Exhibit C**. On May 23 I sent Ms. Ah Loy a detailed response, disputing several of her discovery objections and proposing that we schedule a time to talk if the positions she articulated in her letter remained unchanged. A true and correct copy of that letter, with relevant portions highlighted, is attached as **Exhibit D**. Ms. Ah Loy did not respond to my letter.

5.      I served a single additional request for production to Turn Key on April 26, 2023, seeking documents pertaining to a recent death in the Sebastian County Jail. Turn Key responded to the request on May 30, 2023, asserting numerous objections and refusing to produce the requested records. A true and correct copy of that discovery request, along with Turn Key's objections, is attached as **Exhibit E**.

6.      Turn Key served responses to Plaintiff's initial discovery requests on June 7. A true and correct copy of those responses is attached as **Exhibit F**. Later that month, after reviewing Defendants' responses, I sent Ms. Ah Loy a 12-page letter describing numerous problems with her clients' responses and asking to schedule a time to discuss the issues. A true and correct copy of that letter, dated June 30, 2023, with relevant portions highlighted, is attached as **Exhibit G**. I also sent Ms. Ah Loy a proposed protective order that would address objections she raised to producing certain protected health information. A true and correct copy of that proposed protective order is attached as **Exhibit H**.

7.      Ms. Ah Loy and I conducted a telephone discovery conference on July 17 that lasted over an hour and covered multiple issues. Later that day I sent Ms. Ah Loy an e-mail summarizing the results of our discussion. A true and correct copy of that e-mail, with relevant portions highlighted, is attached as **Exhibit I**. I also sent her proposed edits to a draft stipulated protective order she wanted to present to the Court.

8.      **During our discovery conference, Ms. Ah Loy and I discussed Turn Key's efforts** to locate and produce e-mails responsive to our discovery requests. She told me Turn Key had hired an IT vendor to conduct the search, that she was currently reviewing the results, and that she would produce the responsive e-mails by July 31. She also told me she would send me the search parameters used by the IT vendor. She sent me the search parameters shortly after our call, and I responded a couple days later, asking the parameters to be broadened to better capture e-mails **responsive to Plaintiff's discovery requests. Ms. Ah Loy replied that she would ask their IT** vendor **to run another search with the expanded criteria. She stated she wasn't sure how long** it would take for her to receive and review any additional e-mails that were identified through the expanded search, but confirmed she would produce the e-mails already in her possession by July 31. A true and correct copy of this e-mail exchange is attached as **Exhibit J. (Plaintiff's requested additions are reflected in the red additions to Turn Key's counsel's original** e-mail at the bottom of the string.)

9.      **On October 18 I received Turn Key's Supplemental Responses to Plaintiff's First** Set of Interrogatories and Requests for Production and Second Supplemental Production of Documents. A true and correct copy of that document is attached as **Exhibit K**. Ms. Ah Loy also provided a link to a website where I was able to download documents identified in the written responses.

10.     A week later, after reviewing Turn Key's supplemental discovery responses, I sent Ms. Ah Loy an e-mail asking certain follow-up questions aimed at minimizing the number of discovery disputes we would need to present to the Court for resolution. A true and correct copy of that e-mail is attached as **Exhibit L**.

11.     I served Turn Key with additional discovery requests on July 20, October 3, October 6, and October 9, 2023. Turn Key responded on August 22, November 2, November 6, and November 7, respectively. True and correct copies of those requests, along with Turn Key's responses, are attached as **Exhibits M, N, O, and P**.

12.     I conducted a telephone discovery conference with defense counsel Zachary Williams on November 20, 2023, to discuss my concerns regarding Turn Key's latest discovery responses, as well as other outstanding issues. The following day, I sent Mr. Williams an e-mail summarizing our conversation and the agreements we reached. Mr. Williams replied with a confirming e-mail the next day. A true and correct copy of this e-mail exchange is attached as **Exhibit Q**. Mr. Williams and I exchanged follow-up e-mails over the next few weeks, attempting to resolve as many outstanding discovery disputes as possible. True and correct copies of the relevant e-mails area attached as **Exhibit R**.

13.     Attached to this declaration as **Exhibit S** is a true and correct copy of excerpts from the deposition of Defendant Jawaun Lewis, DO, which Plaintiff took on November 17, 2023, with the relevant portions highlighted.

14.     Attached to this declaration as **Exhibit T is a true and correct copy of Turn Key's** 2020 Orientation & Training for Health Care Staff checklist, produced by Turn Key in this lawsuit. Turn Key produced a version of this checklist showing the training completed by Defendant Jawaun Lewis, DO. The checklist was produced as part of Dr. Lewis's personnel file. However,

as of the date of this motion, Turn Key has failed to produce the training checklists for any other employees and has not offered any explanation for its failure to do so.

15.     Attached to this declaration as **Exhibit U** is a true and correct copy of an e-mail I sent to Turn Key's lawyer on October 10, 2023. I highlighted the portion relevant to Plaintiff's motion.

16.     Attached to this declaration as **Exhibit V** is a true and correct copy of excerpts from the deposition of Defendant Christeena Ferguson, RN, which Plaintiff took on November 14, 2023, with the relevant portions highlighted.

17.     Attached to this declaration as **Exhibit W** is a true and correct copy of an excerpt from Mr. Price's electronic medical record, maintained by Turn Key at the Sebastian County Jail. Turn Key produced this record to Plaintiff in the course of this litigation.

18.     Attached to this declaration as **Exhibit X** is a true and correct copy of excerpts from Defendant Christeena Ferguson's interrogatory answers in this lawsuit, with the relevant portion highlighted.

19.     Attached to this declaration as **Exhibit Y** are true and correct copies of the food and fluid input/output records that were completed for Mr. Price at the Sebastian County Jail in 2021. These records were produced by Turn Key as part of the discovery in this litigation.

20.     Attached to this declaration as **Exhibit Z** is a true and correct copy of excerpts from the deposition of former Sebastian County Jail Deputy William Willard, which Plaintiff took on August 28, 2023, with the relevant portions highlighted.

21.     Attached to this declaration as **Exhibit AA** is a true and correct copy of excerpts from the deposition of former Sebastian County Jail Deputy Dakota Arnoldussen, which Plaintiff took on August 30, 2023, with the relevant portions highlighted.

22.     Attached to this declaration as **Exhibit BB** is a true and correct copy of ███ ████████ Sebastian County Jail Release/Transfer Check Sheet, dated April 24, 2023, produced by Sebastian County during the course of this litigation.

23.     Attached to this declaration as **Exhibit CC** is a true and correct copy of an undated Turn Key medical questionnaire. Although the document does not include a name, it was produced by Sebastian County during the course of this litigation in a file that only contained jail records pertaining to ██████████.

24.     As part of my investigation related to this case, I interviewed a witness who was in the Sebastian County Jail in April 20203, at the same time as ████████████. The witness told me that ██████████ had been complaining about chest pains, but received little or no medical attention. He also stated that jail guards were not performing regular cell checks as required.

25.     Attached to this declaration as **Exhibit DD** is a true and correct copy of an e-mail dated August 18, 2021, pertaining to a Sebastian County Jail detainee named ████████. Although ████████ name is redacted in this exhibit, the author of the e-mail, Morgan Matlock, confirmed during her deposition that he is the subject of the e-mail. This e-mail was produced by Turn Key during the course of this litigation.

26.     Attached to this declaration as **Exhibit EE** is a true and correct copy of excerpts from the deposition of Sebastian County Jail Sergeant Edward Smith, which Plaintiff took on September 28, 2023, with the relevant portions highlighted.

27.     Attached to this declaration as **Exhibit FF** is a true and correct copy of an incident report submitted by former Turn Key nurse Misty Williams. Turn Key produced this record to Plaintiff in the course of this litigation.

28.     Attached to this declaration as **Exhibit GG** is a true and correct copy of excerpts from the deposition of Guidance Center counselor Tyler Caves, which Plaintiff took on September 26, 2023, with the relevant portions highlighted.

29.     Turn Key identified multiple current and former employees in its answer to Plaintiff's Interrogatory No. 1, but declined to provide the witnesses' contact information. During our telephone discovery conference on July 17, 2023, I asked Turn Key's lawyer Allie Ah Loy why the witnesses' contact information was withheld. Ms. Ah Loy stated that she had representation agreements with most or all of the current and former Turn Key employees listed in the answer, even though they were not parties. She stated she would confirm which ones she represented and would provide contact information for anyone she did not represent. She never did so. I did not press the issue while defense counsel was cooperating in scheduling depositions and accepting service of deposition subpoenas for her client's current and former employees. However, when I encountered problems or delays with scheduling, I repeatedly asked Ms. Ah Loy to provide the witnesses' contact information, as required by the interrogatory. Attached to this declaration as **Exhibit HH** are true and correct copies of my requests to Ms. Ah Loy that she provide me with witness contact information (with irrelevant information redacted). Ms. Ah Loy never responded to those requests and never provided the requested contact information. As of this date, I have been unable to schedule the deposition of Turn Key witness Misty Williams, in part because Turn Key has failed to provide me with Ms. Williams' contact information.

I declare under penalty of perjury under the laws of the United States that the foregoing statements are true and correct.

Executed this 16th day of January, 2024, at Palm Springs, California.

BUDGE & HEIPT, PLLC

_s/ Hank Balson_____
Hank Balson, WSBA No. 29250
hank@budgeandheipt.com
*Attorney for Plaintiff*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on the date stated below this document was filed with the

Clerk of the Court for the United States District Court for the Western District of Arkansas via

the CM/ECF system, which will send notification of such filing to the following e-mail

addresses:

Alexandra G. Ah Loy
AllieAhLoy@hallboothsmith.com
Zachary Williams
zwilliams@hallboothsmith.com
Julie Hill
jhill@hallboothsmith.com

*Attorneys for Defendants Turn Key Health Clinics, LLC; Jawaun Lewis, DO; and Christeena Ferguson*

Jason Owens owens@jowenslawfirm.com

*Attorney for Defendant Sebastian County, Arkansas*

Dated this 16th day of January, 2024.

 s/ Hank Balson
Hank Balson

<u>The Estate of Larry Eugene Price v. Turn Key Health Clinics, LLC, et al.</u>

Case No. 2:23-cv-02008-PKH

Exhibit A

## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF ARKANSAS
## FORT SMITH DIVISION

| | |
|---|---|
| THE ESTATE OF LARRY EUGENE PRICE JR., by and through its Special Administrator, Rodney Price, <br><br> PLAINTIFF, <br><br> v. <br><br> TURN KEY HEALTH CLINICS, LLC, an Oklahoma corporation; SEBASTIAN COUNTY, ARKANSAS; JAWAUN LEWIS, DO; CHRISTEENA FERGUSON; and J. DOES 1-20, <br><br> DEFENDANTS. | No. 2:23-cv-02008 PKH |

## PLAINTIFF'S FIRST INTERROGATORIES TO DEFENDANT
## TURN KEY HEALTH CLINICS, LCC

**TO: DEFENDANT TURN KEY HEALTH CLINICS, LLC ("TURN KEY")**

**AND TO:  Its attorneys**

Plaintiff issues the following interrogatories to Defendant Turn Key Health Clinics, LLC pursuant to the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Western District of Arkansas. The defendant to whom these interrogatories are directed must provide written answers within 30 days of service of these interrogatories. Defendant should deliver the his/her/its answers within that time to Budge & Heipt, PLLC, 808 E. Roy St., Seattle, WA 98102. Alternatively, Defendant may serve the answers by e-mailing them to the following e-mail addresses: hank@budgeandheipt.com, erik@budgeandheipt.com, and sally@budgeandheipt.com.

1

## DEFINITIONS AND INSTRUCTIONS

1.      The term "DOCUMENTS" means every instrument, writing, photograph, recording or other thing used for the purpose of documenting, conveying, retaining, or transmitting information, thought or expression. The term shall be construed in its broadest sense and specifically includes, without limitation, kites, medical request forms, other medical forms, screening forms, facility forms, booking forms, inmate forms, inmate-to-staff communication forms, inventories of evidence, use of force reports, transfer reports, cell assignment reports, jail logs, medical records, notes, log books, written or recorded statements, interviews, transcripts, inter-office and inter-agency communications, memoranda, reports, instructions, specifications, notebooks, diaries, calendars, plans, drawings, sketches, diagrams, photographs, photocopies, charts, descriptions, drafts (whether or not they resulted in a final document), meeting minutes, audio recordings, video recordings, telephone voice messages, notices, and all forms of electronic/computerized documents and records, including e-mails, text messages, and other contents of computer hard drives, external drives, network drives, backup drives, and other storage media and devices.

A copy of a DOCUMENT that has any notation, comment, or written mark of any kind, making it different from another copy of the document, is a separate document and must be produced.

The term "DOCUMENTS" includes DOCUMENTS prepared by you or by any other person that are in your possession, custody, or control.

2.      The terms "YOU," "YOUR," or "DEFENDANT" means the defendant(s) to whom these requests are directed and each such defendant's attorneys, representatives, agents, and all other persons acting for it, on its behalf, or at its direction.

2

3.      The term **"TURN KEY"** refers to Turn Key Health Clinics, LLC, its employees, representatives, attorneys, agents, and all other persons acting for it, on its behalf, or at its direction.

4.      The term **"IDENTIFY"** means to state a person's full name and present or last known home and work addresses, personal and work e-mail addresses, and personal and work telephone numbers (including cell phone numbers), together with the partnership, firm, association, corporation, or other business, government, or legal entity by which that person is employed or with which he or she is affiliated, and his or her position there if known.

5.      Any other words used in these discovery requests are defined according standard American use, as shown in a dictionary of the English language.

6.      If any DOCUMENT IS withheld from production on grounds of privilege or otherwise, please provide all discoverable information that may be useful or necessary for the Court or counsel to analyze the asserted basis for non-production, including (without limitation):

(a) the author(s) of the DOCUMENT;

(b) the identity of everyone who received copies;

(c) the subject matter of the DOCUMENT;

(d) the date of the DOCUMENT; and

(e) the grounds for withholding the DOCUMENT.

7.      If a DOCUMENT called for by a request is known to have existed, but cannot now be located, identify the DOCUMENT and state:

(a) Whether the missing DOCUMENT has been in your possession, custody, or control;

(b) When and where the missing DOCUMENT was known to be in your possession, custody, or control; and

3

(c) In whose possession, custody, or control such DOCUMENT may be found or, as applicable, whether the DOCUMENT has been destroyed or has otherwise ceased to exist.

8.      After each request, state whether all DOCUMENTS responsive to that request have been produced.

9.      These requests are continuing and must be supplemented as set forth in the applicable civil rules.

10.     If you contend that any DOCUMENT or information called for by these discovery requests is protected by HIPAA or a similar state or local law, please redact all information identifying the patient and produce the DOCUMENT or information in redacted form, subject to further discussions and/or court order about whether the document, material or request for information should be produced subject to an appropriate protective order in an unredacted form.

## INTERROGATORIES

INTERROGATORY NO. 1: Please IDENTIFY every person you believe may have knowledge pertaining to the allegations in Plaintiff's complaint, your answer to the complaint, or your defenses to this lawsuit. For each person you identify, please summarize the knowledge you believe the person has or may have.

ANSWER:

INTERROGATORY NO. 2: Please IDENTIFY all Turn Key employees and contractors who had any responsibility with respect to Turn Key's contractual duties at the Sebastian County Jail between August 19, 2020 and August 29, 2021. Your answer should include all Turn Key employees and contractors who worked at the jail during that period, as well as company managers, directors, administrators, and others whose responsibilities included tasks related to Turn Key's performance under the contract (e.g., regional managers, nursing directors, medical directors, account managers, client liaisons, etc.). For each person you identify, please state any professional licenses held by the person, describe the person's responsibilities with respect to Turn Key services at the Sebastian County Jail during the relevant timeframe, and provide the dates of the person or entity's employment or contractual relationship with Turn Key.

ANSWER:

5

<u>INTERROGATORY NO. 3</u>: Please IDENTIFY all Turn Key employees and contractors who provided any medical or mental health evaluation, treatment, advice, or consultation with respect to Larry Price, Jr. between August 19, 2020 and August 29, 2021. For each person you identify, please state all professional licenses held by the person, describe the person's responsibilities with respect to Mr. Price's care, and provide the dates of the person or entity's employment or contractual relationship with Turn Key.

<u>ANSWER</u>:

<u>INTERROGATORY NO. 4</u>: Please identify and describe each action taken, each observation made, each order given or received, and each interaction engaged in by a Turn Key employee or contractor with regard to Larry Price, Jr.'s physical or mental health between August 19, 2020 and August 29, 2021. Please include in your descriptions the date and time of each such action, observation, order, or interaction.  If you are unable to state the precise date and time, please provide your best estimate.

<u>ANSWER</u>:

<u>INTERROGATORY NO. 5</u>: Please IDENTIFY every person who had responsibility for investigating the facts and circumstances pertaining to Larry Price, Jr.'s death or his treatment in

the Sebastian County Jail between August 19, 2020 and August 29, 2021. For each person you identify, please describe his or her role and responsibilities with respect to any such investigation.

ANSWER:

INTERROGATORY NO. 6: Please IDENTIFY every person you believe violated a Turn Key policy, procedure, or expected practice with regard to the treatment of Larry Price, Jr. between August 19, 2020 and August 29, 2021. For each person you identify, please state what policy, procedure, or expected practice you believe the person violated and briefly explain how the person violated the policy, procedure, or expected practice.

ANSWER:

INTERROGATORY NO. 7: Please IDENTIFY every Turn Key employee or contractor who received any form of discipline or corrective action (including warnings or corrective counseling) due to their actions or inactions pertaining to Larry Price, Jr.'s treatment in the Sebastian County Jail between August 19, 2020 and August 29, 2021. For each person you identify, please describe the discipline or corrective action the person received, the date(s) the discipline or corrective action was imposed, and the reason(s) for the discipline or corrective action.

ANSWER:

7

INTERROGATORY NO. 8: Following Mr. Price's death on August 29, 2021, did you make any changes to Turn Key policies, protocols, training, standing orders, or procedures to improve the treatment of incarcerated people with mental illness, improve the monitoring of patients with serious medical or mental health concerns, or reduce the risk of death to patients with serious medical or mental health concerns? If yes, please describe every such change, IDENTIFY the person(s) responsible for making the change, and state the actual or approximate date on which the change was implemented at the Sebastian County Jail.

ANSWER:

INTERROGATORY NO. 9: Please describe all training provided to Turn Key employees and contractors who provided services at the Sebastian County Jail between August 19, 2020 and August 29, 2021. For each training component you describe, please IDENTIFY who provided the training. Please also IDENTIFY all persons who completed the training and state the date(s) on which each person completed the training.

ANSWER:

8

INTERROGATORY NO. 10: Please describe all training provided <u>by</u> Turn Key to Sebastian County Jail employees and contractors. You may limit your response to training provided to county employees and contractors who worked at the jail between August 19, 2020 and August 29, 2021. For each training component you describe, please state the subject of the training and IDENTIFY who provided the training. Please also IDENTIFY all persons who completed the training and state the date(s) on which the training was provided.

<u>ANSWER</u>:

INTERROGATORY NO. 11: Please IDENTIFY every Turn Key employee or Sebastian County employee you are aware of who expressed a concern about any of the following subjects prior to August 30, 2021:

- Mental health services for people confined at the Sebastian County Jail;

- Medical services for people confined at the Sebastian County Jail;

- The monitoring or observation of people confined at the Sebastian County Jail with medical or mental health concerns;

- Overcrowding or understaffing at the Sebastian County Jail.

For each person you identify, please describe the concern(s) expressed by that person, the approximate date(s) on which the person expressed his or her concern(s), the form in which the concern was expressed (e.g., orally, by letter, by e-mail, etc.), and the person(s) to whom the concern(s) were expressed.

<u>ANSWER</u>:

9

INTERROGATORY NO. 12: If you contend that any person or entity other than Turn Key was responsible for providing or arranging for mental health treatment for Larry Price, Jr. between August 19, 2020 and August 29, 2021, please IDENTIFY the person(s) or entity(ies) you believe held such responsibility. For each person or entity you identify, please state the actual or approximate date on which the person or entity assumed the responsibility and fully describe the person or entity's responsibilities with regard to Mr. Price's mental health care.

ANSWER:

INTERROGATORY NO. 13: Please IDENTIFY every Turn Key patient who has died since January 1, 2016 following confinement in a city or county jail where Turn Key was providing services. Please include every person who has died during that timeframe in a hospital after being transferred there from the jail where they were confined. For each person you identify, please state the name and location of the jail where the person was confined at or just before the time of his or death, the actual or approximate date of the person's death, the cause of the person's death, and whether the death resulted in a claim for compensation by the person's family or estate against Turn Key or a Turn Key employee. To preserve the confidentiality of the people you identify, you may replace the name of each patient with a unique coded identifier.

ANSWER:

INTERROGATORY NO. 14: Please IDENTIFY every lawsuit filed since January 1, 2016 in which Turn Key or a Turn Key employee has been named as a defendant. You may limit your response to lawsuits filed by a former Turn Key patient or a patient's estate or family member. For each lawsuit you identify, please provide the following information:

(a) The names of all plaintiffs and defendants

(b) The name of the court in which the lawsuit was filed

(c) The date the lawsuit was filed

(d) The case number

(e) The primary allegations (e.g., negligent medical care, wrongful death)

(f) The outcome of the lawsuit (e.g., settled, dismissed prior to trial without settlement, judgment for plaintiff, judgment for defendant, etc.)

ANSWER:

INTERROGATORY NO. 15: Please IDENTIFY every person who had any responsibility for drafting, approving, or modifying the Turn Key policies, protocols, and procedures in effect at the Sebastian County Jail between August 19, 2020 and August 29, 2021. Please describe the role and responsibilities of each person you identify, including the role he or she played in drafting, approving, or modifying the policies or procedures.

ANSWER:

11

INTERROGATORY NO. 16: Did Turn Key conduct a mortality review in connection with Larry Price, Jr.'s death? If so, please IDENTIFY every person who participated in the review, every person who provided information relevant to the review, and every person to whom Turn Key provided information about the results of the review.

ANSWER:

INTERROGATORY NO. 17: Please IDENTIFY every person or entity that conducted an audit or review of the medical or mental health services at the Sebastian County Jail since January 1, 2016.

ANSWER:

INTERROGATORY NO. 18: Please identify every jail, prison, or other facility where Turn Key has had a contract to provide medical or mental health services since 2015 and state whether Turn Key still has a contract to provide services for each identified facility.

ANSWER:

Discovery requests dated this 7th day of April, 2023.

BUDGE & HEIPT, PLLC
808 E. Roy St.
Seattle, WA 98102
(206) 624-3060

s/ Hank Balson
Erik J. Heipt erik@budgeandheipt.com
Hank Balson hank@budgeandheipt.com
Edwin S. Budge ed@budgeandheipt.com
*Attorneys for Plaintiff*

13

## **<u>VERIFICATION</u>**

I, _____, declare that I have personal knowledge of the matters expressed in Turn Key Health Clinic's answers to Interrogatories 1-18. I have reviewed those answers and declare that they are true and correct.

I make these declarations under penalty of perjury under the laws of the United States.

Executed this ___ day of May, 2023 at _____, Arkansas.


_____
Signature


_____
Printed Name


_____
Title/Position

## <u>CERTIFICATION</u>

The undersigned attorney for Defendant Turn Key Health Clinics certifies as follows:

I have read the forgoing answers and objections to Plaintiff's First Interrogatories to Defendant Turn Key Health Clinics, and affirm that those answers and objections are in compliance with Fed. R. Civ. P. 26(g).

Dated this ___ day of May, 2023.

SWEET DEWBERRY HUBBARD, PLC
24 W. Park Place
Oklahoma City, OK 73103
(405) 601-9400

_____
Alexandra G. Ah Loy allie@sdhlaw.com
*Attorneys for Defendants Turn Key Health Clinics, LLC;*
*Jawaun Lewis, DO; and Christeena Ferguson*

15

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on the date stated below, a copy of this document was served on all defendants by e-mailing it to defense counsel (with counsel's consent) at the e-mail addresses listed below:

Alexandra G. Ah Loy allie@sdhlaw.com

*Attorney for Defendants Turn Key Health Clinics, LLC; Jawaun Lewis, DO; and Christeena Ferguson*

Jason Owens owens@jowenslawfirm.com

*Attorney for Defendant Sebastian County, Arkansas*

Dated this 7th day of April, 2023.

 s/ Hank Balson
Hank Balson

<u>The Estate of Larry Eugene Price v. Turn Key Health Clinics, LLC, et al.</u>

Case No. 2:23-cv-02008-PKH

Exhibit B

## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF ARKANSAS
## FORT SMITH DIVISION

| | |
|---|---|
| THE ESTATE OF LARRY EUGENE PRICE JR., by and through its Special Administrator, Rodney Price, <br><br> PLAINTIFF, <br><br> v. <br><br> TURN KEY HEALTH CLINICS, LLC, an Oklahoma corporation; SEBASTIAN COUNTY, ARKANSAS; JAWAUN LEWIS, DO; CHRISTEENA FERGUSON; and J. DOES 1-20, <br><br> DEFENDANTS. | No. 2:23-cv-02008 PKH |

## PLAINTIFF'S FIRST REQUESTS FOR PRODUCTION TO DEFENDANT TURN KEY HEALTH CLINICS, LLC

**TO: DEFENDANT TURN KEY HEALTH CLINICS, LLC ("TURN KEY")**

**AND TO:  Its attorneys**

Plaintiff issues the following requests for production to Defendant Turn Key Health Clinics, LLC pursuant to the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Western District of Arkansas. The defendant to whom these discovery requests are directed must respond and produce the requested documents within 30 days of service of these requests. Defendant should deliver the requested documents and responses within that time to Budge & Heipt, PLLC, 808 E. Roy St., Seattle, WA 98102. Alternatively, Defendant may serve the responses by e-mailing them to the following e-mail addresses: hank@budgeandheipt.com, erik@budgeandheipt.com, and sally@budgeandheipt.com. Defendant

1

may serve the responsive documents by e-mailing them to the same e-mail addresses or by uploading them to a filesharing website (such as Dropbox) and providing Plaintiff's counsel with a link to where they can download the materials.

## DEFINITIONS AND INSTRUCTIONS

1.     The term "**DOCUMENTS**" means every instrument, writing, photograph, recording or other thing used for the purpose of documenting, conveying, retaining, or transmitting information, thought or expression. The term shall be construed in its broadest sense and specifically includes, without limitation, kites, medical request forms, other medical forms, screening forms, facility forms, booking forms, inmate forms, inmate-to-staff communication forms, inventories of evidence, use of force reports, transfer reports, cell assignment reports, jail logs, medical records, notes, log books, written or recorded statements, interviews, transcripts, inter-office and inter-agency communications, memoranda, reports, instructions, specifications, notebooks, diaries, calendars, plans, drawings, sketches, diagrams, photographs, photocopies, charts, descriptions, drafts (whether or not they resulted in a final document), meeting minutes, audio recordings, video recordings, telephone voice messages, notices, and all forms of electronic/computerized documents and records, including e-mails, text messages, and other contents of computer hard drives, external drives, network drives, backup drives, and other storage media and devices.

A copy of a DOCUMENT that has any notation, comment, or written mark of any kind, making it different from another copy of the document, is a separate document and must be produced.

The term "DOCUMENTS" includes DOCUMENTS prepared by you or by any other person that are in your possession, custody, or control.

2

2.     The terms **"YOU," "YOUR,"** or **"DEFENDANT"** means the defendant(s) to whom these requests are directed and each such defendant's attorneys, representatives, agents, and all other persons acting for it, on its behalf, or at its direction.

3.     The term **"TURN KEY"** refers to Turn Key Health Clinics, LLC, its employees, representatives, attorneys, agents, and all other persons acting for it, on its behalf, or at its direction.

4.     The term **"IDENTIFY"** means to state a person's full name and present or last known home and work addresses, personal and work e-mail addresses, and personal and work telephone numbers (including cell phone numbers), together with the partnership, firm, association, corporation, or other business, government, or legal entity by which that person is employed or with which he or she is affiliated, and his or her position there if known.

5.     Any other words used in these discovery requests are defined according standard American use, as shown in a dictionary of the English language.

6.     If any DOCUMENT IS withheld from production on grounds of privilege or otherwise, please provide all discoverable information that may be useful or necessary for the Court or counsel to analyze the asserted basis for non-production, including (without limitation):

> (a) the author(s) of the DOCUMENT;
>
> (b) the identity of everyone who received copies;
>
> (c) the subject matter of the DOCUMENT;
>
> (d) the date of the DOCUMENT; and
>
> (e) the grounds for withholding the DOCUMENT.

7.     If a DOCUMENT called for by a request is known to have existed, but cannot now be located, identify the DOCUMENT and state:

(a) Whether the missing DOCUMENT has been in your possession, custody, or control;

(b) When and where the missing DOCUMENT was known to be in your possession, custody, or control; and

(c) In whose possession, custody, or control such DOCUMENT may be found or, as applicable, whether the DOCUMENT has been destroyed or has otherwise ceased to exist.

8.    After each request, state whether all DOCUMENTS responsive to that request have been produced.

9.    These requests are continuing and must be supplemented as set forth in the applicable civil rules.

10.    If you contend that any DOCUMENT or information called for by these discovery requests is protected by HIPAA or a similar state or local law, please redact all information identifying the patient and produce the DOCUMENT or information in redacted form, subject to further discussions and/or court order about whether the document, material or request for information should be produced subject to an appropriate protective order in an unredacted form.

4

## REQUESTS FOR PRODUCTION

REQUEST FOR PRODUCTION No. 1: Please produce all DOCUMENTS that refer or pertain to Larry Price, Jr. (See definition of "DOCUMENTS" above.)

RESPONSE:

REQUEST FOR PRODUCTION No. 2: Please produce the audit trail for Mr. Price's electronic medical record.

RESPONSE:

REQUEST FOR PRODUCTION No. 3: Please produce all written policies, procedures, protocols, guidelines, directives, and standing orders pertaining to Turn Key's services and operations at the Sebastian County Jail that were in effect between August 19, 2020 and August 29, 2021. Please include all memoranda, e-mails, notices, and other DOCUMENTS that were provided to Turn Key employees or contractors to supplement, clarify, or amend any of the policies, procedures, protocols, or other materials produced.

RESPONSE:

REQUEST FOR PRODUCTION No. 4: Please produce all notices, memoranda, e-mails, and other DOCUMENTS provided by Turn Key (or any of its employees) to Sebastian County (or any of its employees) pertaining to jail employees' responsibilities related to medical or mental health services at the Sebastian County Jail.

RESPONSE:

REQUEST FOR PRODUCTION No. 5: Please produce all DOCUMENTS pertaining to any and all investigations that were conducted to examine the circumstances of Larry Price, Jr.'s death and/or the medical or mental health treatment he received in the Sebastian County Jail between August 19, 2020 and August 29, 2021. Your response should include investigative reports, notes, interview transcripts and recordings, e-mails, and all other DOCUMENTS created or collected for such investigations.

RESPONSE:

REQUEST FOR PRODUCTION No. 6: Please produce all DOCUMENTS pertaining to the mortality review, morbidity report, root cause analysis, or similar type of internal audit or review that you identified in your answer to Interrogatory No. 16, including any policies or written materials governing or requiring the post-death reviews and how they are to be conducted. Your

response should include all DOCUMENTS considered as part of the review, and all DOCUMENTS created or collected by any person in connection with the review.

RESPONSE:

REQUEST FOR PRODUCTION No. 7: Please produce all DOCUMENTS pertaining to mortality reviews, morbidity reports, root cause analyses, or similar types of internal audits or reviews of the deaths you identified in your answer to Interrogatory No. 13. Your response should include all DOCUMENTS considered as part of such reviews, and all DOCUMENTS created by any person in connection with such reviews. To preserve the confidentiality of the patients named in these documents, you may replace the name of each patient with a unique coded identifier.

RESPONSE:

REQUEST FOR PRODUCTION No. 8: Please produce all reports, e-mails, meeting minutes, memoranda, letters, notes, and other DOCUMENTS pertaining to the audits or reviews identified by you in your answer to Interrogatory No. 17.

RESPONSE:

REQUEST FOR PRODUCTION No. 9: Please produce DOCUMENTS that show each time a Turn Key employee or contractor conducted a wellness check, safety check, segregation check, monitoring check, or other similar observation of Larry Price, Jr. between August 19, 2020 and August 29, 2021.

RESPONSE:

REQUEST FOR PRODUCTION No. 10: Please produce all DOCUMENTS pertaining to your answer to Interrogatories 9 and 10, including (a) materials used by trainers or shown or provided to trainees in conjunction with the training described in your answers, and (b) documents showing who completed the trainings you described and when.

RESPONSE:

REQUEST FOR PRODUCTION No. 11: Please produce all DOCUMENTS pertaining to your answer to Interrogatory No. 11.

RESPONSE:

REQUEST FOR PRODUCTION No. 12: To the extent they were not produced in response to other requests, please produce all DOCUMENTS you provided to any person, agency, or organization in response to requests for information pertaining to Larry Price, Jr.'s death or his medical or mental health treatment in the Sebastian County Jail between August 19, 2020 and August 29, 2021.

RESPONSE:

REQUEST FOR PRODUCTION No. 13: Please produce the most recent photograph in your custody or control (such as a badge ID photo) of Jawaun Lewis and Christeena Ferguson.

RESPONSE:

REQUEST FOR PRODUCTION No. 14: Please produce all insurance agreements (primary and excess) under which any insurer may be liable to satisfy part or all of a judgment that may be entered in this action against any defendant, or to indemnify or reimburse for payments made to satisfy the judgment, as well as any DOCUMENTS affecting coverage (such as denying coverage, extending coverage, or reserving rights) from or on behalf of such insurers to any of the defendants in this case. It is not enough to produce the declarations pages; please produce all responsive DOCUMENTS.

RESPONSE:

REQUEST FOR PRODUCTION No. 15: Please produce all letters, e-mails, notes, complaints, and other DOCUMENTS that refer or pertain to any allegation that a person confined in the Sebastian County Jail did not receive adequate medical or mental health care. You may limit your response to DOCUMENTS created or received since January 1, 2019 and you may omit written kites and grievances submitted by people while confined in the jail.

RESPONSE:

REQUEST FOR PRODUCTION No. 16: Please produce all e-mails, letters, memoranda, and other communications between Sebastian County (or any County employee or representative) and Turn Key Health Clinics, LLC (or any Turn Key employee or representative) regarding alleged deficiencies in, or the quality or adequacy of, medical or mental health services at the Sebastian County Jail. You may limit your response to DOCUMENTS created or received since January 1, 2019.

RESPONSE:

REQUEST FOR PRODUCTION No. 17: Please produce all e-mails, letters, memoranda, meeting minutes, and other DOCUMENTS that pertain to efforts by Turn Key to coordinate services with the Western Arkansas Counseling & Guidance Center. You may limit your response to DOCUMENTS that address coordination of services generally or with regard to Larry Price, Jr. (as opposed to services for other specific patients).

RESPONSE:

REQUEST FOR PRODUCTION No. 18: Please produce DOCUMENTS showing the amounts of money Turn Key budgeted and spent for medical and mental health care at the Sebastian County Jail for each year since 2019. Please produce DOCUMENTS that show this information in the greatest detail available (e.g., budgets and expense sheets showing the specific line items).

RESPONSE:

REQUEST FOR PRODUCTION No. 19: Please produce all DOCUMENTS expressing or pertaining to any concerns or questions relating to budget overages (whether in whole or specific to any line-item or category of expense) in connection with Turn Key's agreement to provide services at the Sebastian County Jail since 2019.

RESPONSE:

REQUEST FOR PRODUCTION No. 20: Please produce DOCUMENTS showing Turn Key's annual revenue and costs pertaining to its contract with Sebastian County for each year the contract has been in effect.

RESPONSE:

REQUEST FOR PRODUCTION No. 21: Please produce DOCUMENTS showing Turn Key's <u>total</u> annual revenue and expenses for each year since 2019. Please produce DOCUMENTS that show this information in the greatest detail available (i.e., broken down by specific revenue sources and expense categories).

RESPONSE:

REQUEST FOR PRODUCTION NO. 22: Please produce all annual reports, balance sheets, profit and loss statements, income statements, and other DOCUMENTS showing Turn Key's current financial condition, assets, liabilities, and net worth.

RESPONSE:

REQUEST FOR PRODUCTION No. 23: Please produce all letters, reports, and other DOCUMENTS that discuss (a) the prevalence of mental illness in the Sebastian County Jail (i.e., the actual or estimated number or proportion of people with a mental illness confined in the jail) for each year since 2019, or (b) challenges faced by Sebastian County and its jail employees, or Turn Key and its employees, in providing adequate mental health services to people confined in the jail.

RESPONSE:

REQUEST FOR PRODUCTION No. 24: Please produce all call logs, notes, letters, e-mails, and other DOCUMENTS documenting communications between Turn Key employees and any member of Larry Price, Jr.'s family, including Mr. Price's brother, Rodney Price, and his aunt, Beverly Ann Releford.

RESPONSE:

REQUEST FOR PRODUCTION No. 25: Please produce DOCUMENTS showing which Turn Key employees and contractors worked in the Sebastian County Jail between August 19, 2020 and August 29, 2021 and the hours they worked there during those dates.

RESPONSE:

REQUEST FOR PRODUCTION No. 26: Please produce all orientation manuals for Turn Key nurses, physicians, physician assistants, psychologists, and other types of medical and mental health providers working at the Sebastian County Jail at any time between August 19, 2020 and August 29, 2021.

RESPONSE:

REQUEST FOR PRODUCTION No. 27: Please produce all nursing protocols and clinical guidelines applicable at the Sebastian County Jail between August 19, 2020 and August 29, 2021.

RESPONSE:

REQUEST FOR PRODUCTION No. 28: Please produce the personnel file of Christeena Ferguson, including all training records, certifications, contracts, complaints, grievances,

14

performance reviews, disciplinary records, position descriptions, and records reflecting employment dates, changes in title or position, and bonus compensation structure. Exclude from your answer purely personal information such as date of birth, home address, social security number, and information that is purely related to base compensation and employment benefits.

RESPONSE:




REQUEST FOR PRODUCTION No. 29: Please produce the personnel file of Jawaun Lewis, including all training records, certifications, contracts, complaints, grievances, performance reviews, disciplinary records, position descriptions, and records reflecting employment dates, changes in title or position, and bonus compensation structure. Exclude from your answer purely personal information such as date of birth, home address, social security number, and information that is purely related to base compensation and employment benefits.

RESPONSE:




REQUEST FOR PRODUCTION No. 30: Please produce the personnel file of any other Turn Key medical or mental health providers who worked at the Sebastian County Jail between August 19, 2020 and August 29, 2021, including all training records, certifications, contracts, complaints, grievances, performance reviews, disciplinary records, position descriptions, and records reflecting employment dates, changes in title or position, and bonus compensation

structure. Exclude from your answer purely personal information such as date of birth, home address, social security number, and information that is purely related to base compensation and employment benefits.

RESPONSE:

REQUEST FOR PRODUCTION No. 31: Please produce all DOCUMENTS pertaining to quality improvement/CQI efforts at the Sebastian County Jail from the time you first began providing services there to the present time.

RESPONSE:

REQUEST FOR PRODUCTION No. 32: Please produce all documents signed by Christeena Ferguson acknowledging the receipt and/or review of orientation materials, policies, procedures, nursing protocols, or clinical guidelines.

RESPONSE:

REQUEST FOR PRODUCTION No. 33: Please produce all contract bids or proposals (including all attachments) that led to Turn Key providing healthcare services at the Sebastian County Jail.

RESPONSE:

REQUEST FOR PRODUCTION No. 34: Please produce all DOCUMENTS evidencing communications between Turn Key and Sebastian County regarding monitoring and caring for people confined in segregation in the Sebastian County Jail.

RESPONSE:

REQUEST FOR PRODUCTION No. 35: Please produce all expert reports produced to you by a plaintiff in connection with any lawsuit since 2016 alleging negligent or otherwise inadequate medical or mental health care by Turn Key employees or contractors. You may limit your response to expert reports addressing medical or mental health care for someone confined in a city or county jail.

RESPONSE:

17

REQUEST FOR PRODUCTION No. 36: To the extent not already produced, please produce all DOCUMENTS related to the subject of insufficient food or fluid consumption by an incarcerated person, including all policies, procedures, protocols, guidelines, directives, standing orders, blank input/output forms, and training materials on that subject provided to employees of Turn Key or Sebastian County.

RESPONSE:

Discovery requests dated this 7th day of April, 2023.

> BUDGE & HEIPT, PLLC
> 808 E. Roy St.
> Seattle, WA 98102
> (206) 624-3060

> _s/ Hank Balson_
> Erik J. Heipt erik@budgeandheipt.com
> Hank Balson hank@budgeandheipt.com
> Edwin S. Budge ed@budgeandheipt.com
> *Attorneys for Plaintiff*

## **CERTIFICATION**

The undersigned attorney for Defendant Turn Key Health Clinics, LLC certifies as follows:

I have read the forgoing responses and objections to Plaintiff's First Requests for Production to Defendant Turn Key Health Clinics, LLC, and affirm that those responses and objections are in compliance with Fed. R. Civ. P. 26(g).

Dated this ___ day of May, 2023.

SWEET DEWBERRY HUBBARD, PLC
24 W. Park Place
Oklahoma City, OK 73103
(405) 601-9400

_____
Alexandra G. Ah Loy allie@sdhlaw.com
*Attorneys for Defendants Turn Key Health Clinics, LLC;*
*Jawaun Lewis, DO; and Christeena Ferguson*

19

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned certifies that on the date stated below, a copy of this document was served on all defendants by e-mailing it to defense counsel (with counsel's consent) at the e-mail addresses listed below:

| | |
|---|---|
| Alexandra G. Ah Loy allie@sdhlaw.com | Jason Owens owens@jowenslawfirm.com |
| *Attorney for Defendants Turn Key Health Clinics, LLC; Jawaun Lewis, DO; and Christeena Ferguson* | *Attorney for Defendant Sebastian County, Arkansas* |

Dated this 7th day of April, 2023.

      s/ Hank Balson
Hank Balson

20

<u>The Estate of Larry Eugene Price v. Turn Key Health Clinics, LLC, et al.</u>

Case No. 2:23-cv-02008-PKH

Exhibit C

 **HALL BOOTH SMITH, P.C.**
ATTORNEYS AT LAW

Alexandra G. Ah Loy
Phone: 405.513.7211
AllieAhLoy@hallboothsmith.com

6301 Waterford Boulevard
Suite 200
Oklahoma City, OK 73118

Office: 405.513.7111
Fax: 405.768.1414
www.hallboothsmith.com

May 12, 2023

*Via E-Mail Delivery*

Eric J. Heipt
Hank Balson
Edwin S. Budge
BUDGE & HEIPT, PLLC
808 East Roy Street
Seattle, Washington 98102

RE:    *The Estate of Larry Eugene Price, Jr. v. Turn Key Health Clinics, LLC, et al.*
         Turn Key Defendants' Responses to Plaintiff's First Set of Discovery Requests

Dear Counsel:

        We appreciate your agreement to give the Turn Key Defendants an extension of time until June 7, 2023, for submitting their written responses and objections to Plaintiff's first set of written discovery requests. Pursuant to our agreement, and to the extent that such information is known at this time with consideration to the fact that the Turn Key Defendants are still working diligently to prepare their responses to Plaintiff's discovery requests, the following is an outline of categorical objections to certain information requested in discovery which Turn Key Defendants do not believe are discoverable, intend to withhold from production, and/or require the entry of an agreed protective order prior to producing the same.

        First, Turn Key Defendants will only produce portions of employee personnel files, time detail reports, job descriptions, policies, procedures, protocols, training records, and other confidential and proprietary business information upon the entry of an agreed protective order in this matter protecting the same from disclosure. We have enclosed with this correspondence a proposed protective order for your consideration.

        Second, with respect to Plaintiff's request for personnel files, Turn Key Defendants will only agree to produce portions of personnel files which existed prior to August 30, 2021 for the specific medical personnel whose care Plaintiff contends is actually at issue in this litigation. Any production of personnel files would include any documents, to the extent any exist, which specifically pertain to or reference Larry Eugene Price, Jr., regardless of the time frame. Production of personnel files will also exclude health information of the employees (such as workers' compensation claims, doctor notes, etc.). We agree to produce both Christeena Ferguson's and Dr. Lewis's personnel files, as limited in time above. It is unreasonable to demand production of the personnel files for every single employee at Sebastian County for an entire year. Therefore, we request that Plaintiff please narrow her request to specify which employees' personnel files she is

OKLAHOMA CITY

ALABAMA | ARKANSAS | COLORADO | FLORIDA | GEORGIA | MONTANA | NEW JERSEY | NEW YORK
NORTH CAROLINA | OKLAHOMA | SOUTH CAROLINA | TENNESSEE

HALL BOOTH SMITH, P.C.

BUDGE & HEIPT, PLLC
May 12, 2023
Page 2

requesting. Plaintiff can supplement her request for additional personnel files in the future if she has a good faith reason to believe additional employees' care may be at issue.

Third, with respect to policies, procedures, protocols, practices, etc., and communications related to the same, Turn Key Defendants will only agree to produce those which were in effect at Sebastian County Detention Center prior to and inclusive of the dates of care at issue in this lawsuit (i.e., prior to August 29, 2021).

Fourth, with respect to training records, Turn Key Defendants will agree to produce the orientation and training materials used at the Sebastian County Detention Center prior to August 29, 2021. Additional training records can be found within the personnel files of specific employees, with our objection as to personnel file discovery outlined above.

Fifth, with respect to time detail reports (which are time records which indicate who worked and when), Plaintiff's request for over a year of time records is overly broad. We request that Plaintiff narrow this request in time and scope. We would propose starting with time detail records from January 8, 2021 through August 29, 2021, which is still over seven months of time records and overly broad.

Sixth, with respect to Plaintiff's request for a list of all lawsuits filed against Turn Key Defendants, we believe this request is too broad and request that Plaintiff narrow the scope. Turn Key Defendants will agree to produce a list of all lawsuits filed against Turn Key and its employees arising out of Sebastian County at any period of time and arising out of Arkansas prior to August 29, 2021.

Seventh, with respect to Plaintiff's request for a list of all deaths of inmates at all Turn Key facilities, we believe this request is too broad and request that Plaintiff narrow the scope. No other facility is relevant. Turn Key Defendants will agree to produce a list of inmate deaths within the Sebastian County Detention Center prior to August 29, 2021, of whom Turn Key bas knowledge.

Eighth, with respect to Plaintiff's request for contracts between Turn Key and Sebastian County, Turn Key will agree to produce the contract, amendments thereto, and relevant communications regarding amendments, which existed and/or were in effect prior to August 29, 2021.

Ninth, with respect to Plaintiff's request for communications related to Sebastian County, Turn Key Defendants are in the process of determine whether such communications exist. However, Plaintiff's requests related to communications are excessively broad as to time and scope. Turn Key Defendants at this time will agree to produce non-privileged communications, to the extent they exist, which existed prior to August 30, 2021. Specific to Plaintiff's request for communications related to

Tenth, with respect to Plaintiff's Interrogatories Nos. 11 and 12 to Dr. Lewis, these requests are too broad, seek information wholly unrelated to Mr. Price or the care and treatment at issue at Sebastian County, and are unduly burdensome to respond to due to the expansive timeframe

HALL BOOTH SMITH, P.C.

BUDGE & HEIPT, PLLC
May 12, 2023
Page 3

requested. Defendant will agree to provide the requested information only related to Sebastian County for a limited period of time. However, we invite further discussion if Plaintiff can establish a good faith basis for requesting such overly broad, unrelated information.

Eleventh, with respect to Plaintiff's request for documents referring to or pertaining "to any allegation that a person confined in the Sebastian County Jail did not receive adequate medical or mental health care," Turn Key Defendants will agree to produce documents reasonably within their possession, custody, or control which existed prior to August 29, 2021, after conducting a diligent search for responsive documents. This would exclude inmate written requests, grievances, or statements made within medical records, as it would be impossible for Defendants to retrieve such information due to the fact that medical records are not maintained in a format which would enable Defendants to perform a search within responsive parameters, and inmate sick call requests, kite requests, kiosk requests, and grievances are within the custody and control of detention staff.

Finally, with respect to Plaintiff's Requests for Production to Turn Key numbered 18, 19, 20, 21, 22, and 35, Turn Key does not agree to produce the requested information and/or documents, as the scope of requested discovery is too broad, has no probative value over the claims or defenses, and Plaintiff's interest in them does not outweigh their confidential and highly sensitive nature. However, we do invite further discussion for Plaintiff to explain the basis for such discoverability and the possibility of producing certain documents upon the entry of an agreed protective order after narrowing Plaintiff's requests.

The submission of this correspondence is made in a good faith attempt to prevent delays in discovery; however, in no way is this correspondence intended to operate as a waiver of any defenses or objections to discovery not specifically outlined herein. These are categorical, expedited objections which, as we previously discussed, are known at this time. Turn Key Defendants reserve the right to state their specific objections to Plaintiff's written discovery requests at the time they serve their responses to Plaintiff.

Again, we sincerely appreciate Plaintiff's agreed upon extension of time to further prepare the Turn Key Defendants' responses to Plaintiff's first set of discovery requests, and we will submit the same to you no later than the agreed-upon deadline of June 7, 2023. Please review the enclosed proposed protective order. Ideally, we would like to have an agreed protective order on file prior to June 7, 2023, which would prevent delays in document production. If Plaintiff does not agree to an agreed protective order, please advise at your earliest convenience.

Sincerely,

Alexandra G. Ah Loy
*Counsel for the Turn Key Defendants*

<u>The Estate of Larry Eugene Price v. Turn Key Health Clinics, LLC, et al.</u>

Case No. 2:23-cv-02008-PKH

Exhibit D

# BUDGE⊕HEIPT, PLLC

ATTORNEYS AT LAW

808 East Roy Street
Seattle, WA 98102
Telephone 206-624-3060

**Hank Balson**                                                                    www.budgeandheipt.com
**hank@budgeandheipt.com**

May 23, 2023

**Via e-mail to** allieahloy@hallboothsmith.com

Allie G. Ah Loy
Hall Booth Smith, P.C.
6301 Waterford Blvd., Suite 200
Oklahoma City, OK 73118

      Re:    *Estate of Larry Eugene Price, Jr. v. Turn Key Health Clinics, et al.*
              Plaintiff's first discovery requests

Dear Allie:

Thank you for your letter dated May 12, 2023, outlining certain objections to Plaintiff's first discovery requests and identifying information and documents your clients intend to withhold or produce only pursuant to a protective order. Your letter raises several issues, which I will address below. Although Plaintiff disputes the majority of your objections, I'm hopeful we can resolve most areas of disagreement without the Court's assistance.

There is one overarching issue I would like to address first because it is common to many of your objections. The issue concerns the relevant timeframe for Plaintiff's discovery requests. At several points in your letter, you state that Turn Key will only produce responsive documents and information for the period prior to August 29, 2021 (the date of Mr. Price's death). Although you did not articulate a specific objection apart from overbreadth, I assume your position is that information and documents from after that date are not relevant to Plaintiff's claims. That is not the case.

Mr. Price's estate has asserted *Monell* claims against Turn Key and Sebastian County, requiring it to prove the existence of an official policy, an unofficial custom, or a deliberately indifferent failure to train resulting in the plaintiff's injuries. *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). Documents and information from after the date of Mr. Price's death are highly relevant to these claims. *See, e.g., Whitt v. City of St. Louis*, No. 4:18-CV-1294 RLW, 2020 U.S. Dist. LEXIS 228094, at *19 (E.D. Mo. Dec. 4, 2020) ("[P]ost-incident evidence is relevant to the existence of a custom or policy, from which a plaintiff may argue it was the moving force in the alleged unconstitutional violation."); *Salvato v. Miley*, 790 F.3d 1286, 1297 (11th Cir. 2015) ("To be sure, post-event evidence can shed some light on what policies existed in the city on the

date of an alleged deprivation of constitutional right.") (internal quotation marks and citation omitted); *Henry v. County of Shasta*, 132 F.3d 512, 519 (9th Cir. 1997) ("[W]e reiterate our rule that post-event evidence is not only admissible for purposes of proving the existence of a municipal defendant's policy or custom, but may be highly probative with respect to that inquiry."); *Foley v. City of Lowell, Mass.*, 948 F.2d 10, 14 (1st Cir. 1991) ("Contrary to the City's exhortation that the date an incident occurs marks the outside date for evidence-gathering on such an issue, we think that actions taken subsequent to an event are admissible if, and to the extent that, they provide reliable insight into the policy in force at the time of the incident.").

Post-incident facts may also be evidence of a policymaker's indifference. *See Grandstaff v. City of Borger*, 767 F.2d 161, 171 (5th Cir. 1985) ("As subsequent conduct may prove discriminatory motive in a prior employment decision . . . and subsequent acts may tend to prove the nature of a prior conspiracy, . . . so the subsequent acceptance of dangerous recklessness by the policymaker tends to prove his preexisting disposition and policy.").

In addition, Plaintiff has a claim for punitive damages against Turn Key. *See* Complaint at 29. The two purposes of punitive damages are "(1) to punish willful or malicious conduct; and (2) to deter similar future misconduct." *Haynes v. Stephenson*, No. 5:07CV00295 WRW/JTR, 2008 U.S. Dist. LEXIS 81571, at *61 (E.D. Ark. Sept. 19, 2008). To the extent Turn Key failed to take steps following Mr. Price's death to reduce the risk of other patients suffering similar harm, such as taking corrective action with the involved employees, changing its policies or customs, or improving its training, that information is relevant not only to show the nature and existence of Turn Key's policies and practices at the time of Mr. Price's death, but also to the jury's assessment of the need for punitive damages and the amount it should impose.

For these reasons, Plaintiff does not agree to limit the timeframe of its discovery requests as you indicated.

My responses to your specific positions are below, with each numbered paragraph corresponding to the numbered points in your letter.

1. You state that your clients will produce the following records only upon the entry of an agreed protective order: "portions of employee personnel files, time detail reports, job descriptions, policies, procedures, protocols, training records, and other confidential and proprietary business information." I disagree that a protective order is warranted for most of these items. The records Plaintiff has requested are relevant to Turn Key's operations in performing a quintessential government function—providing constitutionally mandated healthcare to persons confined in a county jail. The public certainly has an interest in knowing what policies, protocols, training requirements, job descriptions, etc. govern the operations of its tax-funded institutions, whether those records were created by the government or by a private company fulfilling the government's duty.

   Most or all of the Turn Key records we requested presumably are available to be reviewed by Sebastian County officials, and according to Turn Key's contract with the County, they are not subject to any sort of non-disclosure agreement. Moreover, to the extent these documents have ever been produced to another party in litigation without a protective order, or have

been filed with a court or used in trial without being sealed, that further undermines any claim of confidentiality.

We have no problem with Turn Key redacting certain private information that has no relevance to this litigation, such as employees' dates of birth and Social Security numbers. Also, I am happy to consider any authority you can provide in support of your position that documents such as policies, protocols, training materials, time details, etc. should be subject to a protective order when they pertain directly to the operations of a public institution. Absent such authority, we will not agree to a protective order for these documents.

2. I agree it is appropriate for your clients to redact employee health information from the documents they produce. However, I disagree with Turn Key limiting its production of Defendants Lewis and Ferguson's personnel files to exclude documents created or obtained after August 30, 2021. To the extent Ms. Ferguson's personnel file does not contain any documents from after that date because her employment ended earlier, there is no issue. However, Dr. Lewis's personnel file should be produced in its entirety, as information about Dr. Lewis's roles, responsibilities, practices, grievances, etc., both before and after Mr. Price's death, are relevant to Plaintiff's *Monell* claims and claim for punitive damages. See above.

With regard to the personnel files of other Turn Key employees who worked at the jail while Mr. Price was there, for now it will be sufficient for Turn Key to limit its response to Request for Production No. 30 to just those employees who were involved in Mr. Price's care, whether that was through observation, assessment, evaluation, treatment, supervision/chart review, or otherwise. We may seek a fuller response to this RFP later.

3. I disagree that Turn Key may properly withhold policies, procedures, protocols, etc. that came into effect after August 29, 2021. Whether or not Turn Key made changes to its policies and practices following Mr. Price's death is relevant to Plaintiff's *Monell* claims and claim for punitive damages. See above.

4. I disagree that Turn Key may withhold orientation and training materials in use after August 29, 2021. Whether or not Turn Key made changes to its orientation and training following Mr. Price's death is relevant to Plaintiff's *Monell* claims and claim for punitive damages. See above.

5. I don't understand the basis for your assertion that Plaintiff's Request for Production No. 25 (documents showing which Turn Key employees worked at the jail while Mr. Price was confined there and the hours they worked) is overbroad. This case concerns Mr. Price's medical and mental health needs from August 19, 2020 through August 29, 2021 and alleges that one cause of his death was inadequate staffing. *See* Complaint ¶ 25. The information sought through RFP No. 25 will help Plaintiff determine the number and type of medical staff available to meet the needs of Mr. Price and other people confined in the jail during the relevant time period. It also will help Plaintiff to identify potential witnesses. The request is not overbroad.

3

6. I disagree that Plaintiff's Interrogatory No. 14, seeking information about lawsuits filed against Turn Key or its employees, is overbroad. The interrogatory does not ask Turn Key to identify "all lawsuits" filed against it, as you stated. It seeks information about lawsuits filed by former Turn Key patients or their estates or family members since 2016. This information may lead to evidence of other instances where a Turn Key patient was injured or killed as a result of policies, customs, practices, or actions similar to the ones at issue in this case. Thus, the information is relevant to Plaintiff's *Monell* claims, and I disagree that the timeframe of the request—6.5 years—is overbroad. I also disagree that your client may properly limit its answer to lawsuits arising out of Arkansas. Evidence of other injuries and deaths in Turn Key facilities caused by factors similar to those we allege caused Mr. Price's death is relevant regardless of the state in which the injuries or deaths occurred.

Despite the relevance of the information sought by Interrogatory No. 14, Plaintiff is willing to narrow its scope by limiting it to lawsuits in which the plaintiff(s) was represented by counsel at some point during the litigation—i.e., you may omit information about lawsuits filed by plaintiffs who proceeded *pro se* for the entire course of the litigation.

7. Like Interrogatory No. 14, Interrogatory No. 13 is intended to discover instances where a Turn Key patient died as a result of policies, customs, practices, or actions similar to the ones at issue here. Such instances would be relevant to Plaintiff's *Monell* claim, whether they occurred at the Sebastian County Jail or any of the other jails where Turn Key provides services. This information is also relevant to Plaintiff's claim for punitive damages, as evidence of other deaths caused by similar factors (regardless of location) would support arguments of "reckless disregard for human safety" and that Turn Key's conduct posed a risk of harm to others. *See* Eighth Cir. Civil Jury Instr. § 4.72 (factors to consider in determining amount of punitive damages award include whether there was "reckless disregard for human health or safety" and "whether the defendant's conduct that harmed the plaintiff also posed a risk of harm to others"). Plaintiff does not agree to narrow the scope of this interrogatory as you proposed.

8. I am not sure which request you are referring to in paragraph 8 of your letter. Can you please clarify?

9. I disagree that Plaintiff's requests for communications are overly broad with respect to timeframe. Communications made after Mr. Price's death are among the most important, as they are the ones that would actually address his death and its causes. They also may be relevant to Plaintiff's *Monell* claims. See above. The last sentence of paragraph 9 in your letter got cut off, so I'm not sure what you intended to say.

10. Interrogatories 11 and 12 to Dr. Lewis are intended to help us understand Dr. Lewis's roles, responsibilities, time commitments, and availability during the period that Larry Price was confined in the Sebastian County Jail. They are also aimed at identifying potential witnesses.

To clarify Interrogatory No. 12, we are not asking Dr. Lewis to provide us with an accounting of every minute of every day from August 19, 2020 through August 29, 2021. It will be sufficient for him to summarize generally how his time was allocated during that period—

4

e.g., where his "home base" was (if he had one); how much time he spent there; which facilities he visited, how often, and for how long; etc. Below are examples of the type of information such a summary might include:

> *Between August 19, 2020 and August 29, 2021, I worked at Turn Key headquarters in Oklahoma City two days a week. During that period, I typically spent one full day a week at the _____ Jail in _____, Oklahoma, and two days a week visiting other facilities. The facilities I visited during this period were as follows: _____. I visited each facility once a month. Occasionally (roughly twice a month) I worked from home, catching up on paperwork. In February, March, and April 2021, I spent one week a month at the _____ Jail in _____, Arkansas. Approximately once every other month I would travel to jails where Turn Key was bidding on a contract to talk with potential clients about our mental health program.*

Dr. Lewis also must provide the specific information requested in this interrogatory regarding the time he spent at the Sebastian County Jail. The availability of psychiatric services at that jail throughout Mr. Price's confinement is clearly relevant to the issues in this lawsuit.

11. As explained above, documents and information from after Mr. Price's death are relevant to Plaintiff's *Monell* claims and claim for punitive damages. Therefore, we cannot agree to limit the timeframe for RFP No. 15 to documents that existed prior to August 29, 2021.

12. You state that Turn Key will not produce the financial information and expert reports we requested because "the scope of requested discovery is too broad, has no probative value over the claims or defenses, and Plaintiff's interest in them does not outweigh their confidential and highly sensitive nature." I disagree. "It is well-established that under federal law, evidence of the defendants' financial worth is relevant to a claim for punitive damages and [a] plaintiff seeking punitive damages is entitled to engage in discovery relating to the defendant's financial worth in advance of trial." *Truong Son Mkt., Inc. v. State Auto Prop. & Cas. Ins. Co.*, No. 2:21-CV-02058, 2022 U.S. Dist. LEXIS 87842, at *9 (W.D. Ark. May 16, 2022). In *Truong Son Mkt*, decided just last year, Judge Holmes granted the plaintiff's motion to compel production of documents relating to the defendant's financial condition going back three years because they were relevant to the plaintiff's claim for punitive damages. The documents we requested in RFPs 20-22 are discoverable for the same reason.

The documents requested in RFPs 18, 19, and 35 are relevant to Plaintiff's *Monell* claims. Documents responsive to RFPs 18 and 19 will help Plaintiff determine whether Turn Key budgeted sufficient funds to ensure it could satisfy minimal constitutional standards in providing medical and mental health care to people at the Sebastian County Jail. A correctional healthcare provider may be liable for budgetary decisions that pose a substantial risk of harm to incarcerated persons. *Cabrera v. Clarke*, No. 4:05cv3121, 2006 U.S. Dist. LEXIS 35733, at *7 (D. Neb. May 30, 2006). See also *Cooper v. City of Cottage Grove*, No. 6: 13-CV-0551-TC, 2014 U.S. Dist. LEXIS 116359, at *20 (D. Or. Aug. 21, 2014) (an inadequate budget for jail operations can support a finding of *Monell* liability).

I don't understand the basis for your objection to producing the expert reports requested in RFP No. 35. Such reports, which would identify the causes of certain Turn Key patients' injuries and deaths, have obvious probative value with regard to Plaintiff's *Monell* claims, as they may reveal policies, practices, or patterns of mistreatment that have subjected Turn Key patients (including Mr. Price) to substantial risks of serious harm. Although I can understand why Turn Key would not want to share these reports, I do not see how they can be considered confidential since they were created by other parties and exist outside of Turn Key's custody and control. If you have authority to support Turn Key withholding the expert reports, I will gladly consider it. Otherwise, they must be produced. Because these reports likely contain individual patients' personal health information, Plaintiff will stipulate to a protective order that (1) prohibits the parties from using or disclosing this information for any purpose other than this litigation, and (2) requires Plaintiff to destroy this information at the conclusion of this litigation, as provided under 45 C.F.R. § 164.512(e)(1)(ii)(B), (e)(1)(iv), and (e)(1)(v).

As you know, the scope of allowable discovery under Fed. R. Civ. P. 26 is extremely broad. Given the types and seriousness of the claims in this case, I believe Plaintiff's discovery requests fall well within that scope.

Thank you in advance for considering the points made in this letter. If the positions you articulated in your letter remain unchanged, I propose we schedule a time to talk to see if we can resolve—or at least narrow—our areas of disagreement.

Sincerely,

s/ Hank Balson

cc (via e-mail):       Jason Owens, counsel for Defendant Sebastian County

<u>The Estate of Larry Eugene Price v. Turn Key Health Clinics, LLC, et al.</u>

Case No. 2:23-cv-02008-PKH

Exhibit E

## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF ARKANSAS
## FORT SMITH DIVISION

| | |
|---|---|
| THE ESTATE OF LARRY EUGENE PRICE JR., by and through its Special Administrator, Rodney Price, | |
| PLAINTIFF, | No. 2:23-cv-02008 PKH |
| v. | |
| TURN KEY HEALTH CLINICS, LLC, an Oklahoma corporation; SEBASTIAN COUNTY, ARKANSAS; JAWAUN LEWIS, DO; CHRISTEENA FERGUSON; and J. DOES 1-20, | |
| DEFENDANTS. | |

## TURN KEY HEALTH CLINIC, LLC'S RESPONSES TO PLAINTIFF'S SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS

COMES NOW, Defendant, Turn Key Health Clinic, LLC ("Defendant"), and for its Responses to Plaintiff's Second Set of Requests for Production of Documents ("Plaintiff's Discovery), responds and states as follows:

### GENERAL OBJECTIONS

These general objections are asserted with respect to all requests answered herein, and in addition to the specific objections set forth below:

1.     Pursuant to the Federal Rule of Civil Procedure 26(b)(1) and the Federal Rule of Evidence 401, Defendant objects to any and all Requests that are not relevant to the subject matter of the pending action and not reasonably calculated to lead to the discovery of admissible evidence.

2.     Defendant objects to Plaintiff's discovery requests to the extent they purport to

1

impose duties or obligations in addition to, inconsistent with, or different from the requirements set forth in the Federal Rules of Civil Procedure and Federal Rules of Evidence.

3.      Pursuant to the attorney/client privilege, Defendant objects to the production or disclosure of any information or document that pertains to or consists of confidential communications made for the purpose of facilitating the rendition of legal services to Defendant which are, therefore, subject to the attorney/client privilege. Defendant also objects to the production or disclosure of any document or information that constitutes attorney work product or was prepared in anticipation of litigation or trial for Defendant or any of its representatives, or that is otherwise beyond the scope of discovery or admitted by the Federal Rules.

4.      Defendant objects to Plaintiff's discovery requests to the extent they purport to require Defendant to identify or produce information or documents that are not in its custody or control. Defendant may identify and produce relevant non-privileged and non-protected information or documents that are presently in the custody or control of Defendant.

5.      Defendant does not concede the relevancy of any document or information requested by Plaintiff nor the relevancy or admissibility of any information provided, or documents produced in response thereto. The fact that information is provided, or documents produced in response to a particular Request does not mean that it such information and/or documentation is probative of any particular issue in this matter or admissible at trial.

6.      Information provided herein is based upon the knowledge of Defendant, but the words used in the answering of Plaintiff's discovery requests are those of Defendant's counsel.

7.      Defendant objects to any Request to the extent it exceeds the allowable scope of discovery under the Federal Rules of Civil Procedure.

8.      If any work product or privileged document or information is inadvertently

produced in responses to these or other discovery requests, Defendant reserves the privilege with respect to the document or information so inadvertently produced, as well as its right to object to inspection and copying of such document or information, and its right to demand return of such document or information or object to the admissibility thereof.

9.      Defendant reserves the right to supplement, modify, and/or correct its Responses contained herein.

Subject to the foregoing objections, Defendant responds as follows:

## RESPONSES TO REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 37**: Please produce all DOCUMENTS that refer or pertain to Michael Don Cooper, who died at the Sebastian County Jail on or about April 24, 2023. Your response should include the following:

- All of Mr. Cooper's medical records (including those from prior periods of detention at the Sebastian County Jail);

- All e-mails that refer or pertain to Mr. Cooper;

- All telephone text messages that refer or pertain to Mr. Cooper;

- All voicemail messages that refer or pertain to Mr. Cooper;

- All handwritten notes that refer or pertain to Mr. Cooper; and

- All other DOCUMENTS that refer or pertain to Mr. Cooper, his confinement in the Sebastian County Jail in April 2023, or his death.

You may redact identifying information from these records, such as Mr. Cooper's name, address, and date of birth.

**RESPONSE**: Defendant objects to Plaintiff's Request No. 37 as overly broad as to scope, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence,

3

nor proportional to the needs of this case, as the death of an inmate in April 2023 has absolutely no probative value as to the claims and healthcare delivery system in effect in August 2021, nearly two years prior. *See* Fed. R. Civ. P. 26(b)(1).

While discovery involving *Monell* claims are broad, this lawsuit involves the death of an inmate in August 2021; consequently, discovery regarding Plaintiff's *Monell* claim against Defendant Turn Key in this case would be limited in probative value to the policies, practices, and/or customs which existed prior to contemporaneously with Mr. Price's death in August 2021. Any policies, practices, customs, and/or conduct that occurred *subsequent* to August 2021 could not be said to have placed Defendant on notice of any alleged deficiencies in the healthcare delivery system at the time of Mr. Price's death in August 2021, such that any such alleged deficiencies could be the "moving force" behind Mr. Price's alleged injury. That is, no policies, practices, or customs *after* Mr. Price's death can be said to have contributed or caused the death of Mr. Price, and Plaintiff is not entitled to discovery of the same. *See Connick v. Thompson*, 563 U.S. 51, 63, 131 S. Ct. 1350, 1360, 179 L. Ed. 2d 417 (2011) ("contemporaneous or subsequent conduct cannot establish a pattern of violations that would provide 'notice to the cit[y] and the opportunity to conform to constitutional dictates ....'"), *citing City of Canton, Ohio v. Harris*, 489 U.S. 378, 395, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989); *also*, *e.g.*, *Walls v. Starks*, No. 4:19-CV-398-DPM, 2020 WL 6675632, at *6 (E.D. Ark. Nov. 12, 2020) (allowing discovery into *prior incidents* only with a proper foundation of causal connection, such that the plaintiff could establish that the injury at issue was allegedly under the same policies, practices, or customs); *Brewington v. Keener*, 902 F.3d 796, 802 (8th Cir. 2018) (a plaintiff must show causation between the alleged injury and the alleged custom or policy); *Mettler v. Whitledge*, 165 F.3d 1197, 1205 (8th Cir. 1999) (explaining that an inadequate investigation after-the-fact "could not have caused" the excessive

4

use of force alleged in the lawsuit: "In addition, an inadequate investigation into the January 22 shooting could not have caused Deputies Haltiner and Whitledge to use excessive force. Rather, Ms. Mettler would need to show that Ramsey County had failed to investigate *previous incidents* before a court could conclude the deputies *at the time of the shooting* believed a municipal custom allowed them to violate Shawn's rights with impunity")(emphasis added); *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1286–87 (10th Cir. 2019) ("**Incidents** that occurred **subsequent** to the **incident** at issue in this **case** cannot have provided Denver with notice of a deficiency in its training program before that incident, and thus they cannot be used as evidence that, prior to Deputy Lovingier's use of force against Mr. Waller, Denver "decisionmakers ... **deliberately** chose[ ] a training program that w[ould] cause violations of constitutional rights." *Connick*, 563 U.S. at 62, 131 S.Ct. 1350; see also \*1287 id. at 64, 131 S.Ct. 1350 (noting that **deliberate indifference** generally requires "proof of a pre-existing pattern of violations")) (emphasis in original); *Hinds v. Barela*, No. 20-CV-01011 MV/JFR, 2022 WL 1565268, at \*6 (D.N.M. May 18, 2022), *report and recommendation adopted*, No. CV 20-01011 MV/JFR, 2022 WL 2355452 (D.N.M. June 30, 2022); *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989) ("To prove a pattern or practice, the plaintiff must present evidence of "sufficiently numerous prior incidents of police misconduct."); *Henderson v. Anderson*, No. H-09-548, 2011 WL 13182873, at \*4 (S.D. Tex. Feb. 15, 2011) (stating that evidence of later incidents is not probative), aff'd, 463 F. App'x 247 (5th Cir. 2012); *Harvey v. Hankins*, 681 F. Supp. 622 (W.D. Mo. 1988) (evidence of subsequent incidents of excessive use of force by officers were inadmissible to demonstrate municipal liability); *James v. Harris Cnty.*, 508 F. Supp. 2d 535, 552 (S.D. Tex. 2007), aff'd, 577 F.3d 612 (5th Cir. 2009) ("Two of the events have no probative value because they are not incidents prior to the Harrison shooting.") Therefore, Plaintiff's years-after-the-fact scope of discovery requested

lacks probative value, is improper, does not fit the needs of this case, nor is Plaintiff prejudiced by being denied discovery into the same.

Further, Plaintiff's Request seeks private health information of non-parties protected from disclosure under state and federal law. *See* Health Insurance Portability and Accountability Act of 1996 (HIPAA), 45 CFR Part 160, *et seq.*, Arkansas Code Annotated section 17-97-105 (Repl. 2018). Defendant further objects as Plaintiff's request on its face seeks privileged and protected attorney-client communications and attorney work product. Finally, Defendant objects to this Request as an inexcusable, improper fishing expedition prohibited under Rule 26 and as an improper attempt by Plaintiff's counsel to conduct discovery in this matter regarding anticipated claims in future litigation, as Plaintiff's counsel forwarded correspondence to Turn Key independent from this lawsuit, indicating that Plaintiff's counsel has been retained independently from this lawsuit to represent the interests of the estate of Mr. Cooper and making a preservation demand. This matter has not been consolidated with any lawsuit filed by the estate of Mr. Cooper, and Defendant has not submitted itself to the jurisdiction of any court related to any claims on behalf of the estate of Mr. Cross which would subject Defendant to discovery into the same.

Respectfully submitted,

Alexandra G. Ah Loy, AR Bar #2020020
HALL BOOTH SMITH, P.C.
6301 Waterford Blvd., Ste. 200
Oklahoma City, OK 73118
Telephone: (405) 513-7111
Facsimile: (405) 768-1414
E-Mail: AllieAhLoy@hallboothsmith.com
*Attorneys for Defendant*
*Turn Key Health Clinics, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing *Responses to Plaintiff's Second Set of Requests for Production* was mailed via e-mail on the 30th day of May, 2023, to the following:

Edwin Budge: ed@budgeandheipt.com
Erik Heipt:    erik@budgeandheipt.com
Hank Balson:  hank@budgeandheipt.com
Jason Owens:  owens@jowenslawfirm.com

ALEXANDRA G. AH LOY

<u>The Estate of Larry Eugene Price v. Turn Key Health Clinics, LLC, et al.</u>

Case No. 2:23-cv-02008-PKH

Exhibit F

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF ARKANSAS
## FORT SMITH DIVISION

| | |
|---|---|
| THE ESTATE OF LARRY EUGENE PRICE JR., by and through its Special Administrator, Rodney Price, <br><br> PLAINTIFF, <br><br> v. <br><br> TURN KEY HEALTH CLINICS, LLC, an Oklahoma corporation; SEBASTIAN COUNTY, ARKANSAS; JAWAUN LEWIS, DO; CHRISTEENA FERGUSON; and J. DOES 1-20, <br><br> DEFENDANTS. | No. 2:23-cv-02008 PKH |

## TURN KEY HEALTH CLINIC, LLC'S  RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS

COMES NOW, Defendant, Turn Key Health Clinic, LLC ("Defendant"), and for its Responses to Plaintiff's First Set of Interrogatories and Requests for Production of Documents ("Plaintiff's Discovery) responses and states as follows:

## GENERAL OBJECTIONS

These general objections are asserted with respect to all requests answered herein, and in addition to the specific objections set forth below:

1.     Pursuant to the Federal Rule of Civil Procedure 26(b)(1) and the Federal Rule of Evidence 401, Defendant objects to any and all Requests that are not relevant to the subject matter of the pending action and not reasonably calculated to lead to the discovery of admissible evidence.

2.     Defendant objects to Plaintiff's discovery requests to the extent they purport to

1

impose duties or obligations in addition to, inconsistent with, or different from the requirements set forth in the Federal Rules of Civil Procedure and Federal Rules of Evidence.

3.     Pursuant to the attorney/client privilege, Defendant objects to the production or disclosure of any information or document that pertains to or consists of confidential communications made for the purpose of facilitating the rendition of legal services to Defendant which are, therefore, subject to the attorney/client privilege. Defendant also objects to the production or disclosure of any document or information that constitutes attorney work product or was prepared in anticipation of litigation or trial for Defendant or any of its representatives, or that is otherwise beyond the scope of discovery or admitted by the Federal Rules.

4.     Defendant objects to Plaintiff's discovery requests to the extent they purport to require Defendant to identify or produce information or documents that are not in its custody or control. Defendant may identify and produce relevant non-privileged and non-protected information or documents that are presently in the custody or control of Defendant.

5.     Defendant does not concede the relevancy of any document or information requested by Plaintiff nor the relevancy or admissibility of any information provided, or documents produced in response thereto. The fact that information is provided, or documents produced in response to a particular Request does not mean that it such information and/or documentation is probative of any particular issue in this matter or admissible at trial.

6.     Information provided herein is based upon the knowledge of Defendant, but the words used in the answering of Plaintiff's discovery requests are those of Defendant's counsel.

7.     Defendant objects to any Request to the extent it exceeds the allowable scope of discovery under the Federal Rules of Civil Procedure.

8.     If any work product or privileged document or information is inadvertently

2

produced in responses to these or other discovery requests, Defendant reserves the privilege with respect to the document or information so inadvertently produced, as well as its right to object to inspection and copying of such document or information, and its right to demand return of such document or information or object to the admissibility thereof.

9.    Defendant reserves the right to supplement, modify, and/or correct its Responses contained herein.

Subject to the foregoing objections, Defendant responds as follows:

### ANSWERS TO INTERROGATORIES

**INTERROGATORY NO. 1**: Please IDENTIFY every person you believe may have knowledge pertaining to the allegations in Plaintiff's complaint, your answer to the complaint, or your defenses to this lawsuit. For each person you identify, please summarize the knowledge you believe the person has or may have.

**ANSWER TO INTERROGATORY NO. 1**:  Defendant objects to this Interrogatory as unduly burdensome, overly broad, not reasonably calculated to lead to the discovery of admissible evidence, and inasmuch as this Interrogatory seeks information that may be protected by the attorney-client and/or the work-product privileges. Subject to and without waiving the foregoing objections, Defendant states:

| No. | Name, Job Title, & Dates of Employment | Subjects of Anticipated Knowledge |
|---|---|---|
| 1. | Plaintiff, Rodney Price C/O BUDGE & HEIPT | Mr. Price is expected to testify regarding the allegations contained within Plaintiff's Complaint, Decedent's medical history, Decedent's mental health history, Decedent's conduct prior to his incarceration, and damages. |
| 2. | Jawaun Lewis, D.O. Director of Psychiatry | Dr. Lewis is expected to testify regarding the psychiatric care of Decedent during his incarcerations at the Sebastian County |

3

|   | 11/28/2016 – Current<br>C/O HALL BOOTH SMITH, P.C. | Detention Center, the scope of mental health services Sebastian County contracted with Turn Key Health Clinics, LLC to provide at the Sebastian County Detention Center, statements made by Decedent during his incarceration at the Sebastian County Detention Center, interactions with Decedent at the Sebastian County Detention Center, allegations contained within the Complaint and Defendants' defenses, standard of care, contributory negligence, causation, and damages. |
|---|---|---|
| 3. | Christeena Ferguson, RN<br>Health Services Administrator<br>8/18/2020 – 02/12/2021<br>C/O HALL BOOTH SMITH, P.C. | Nurse Ferguson is expected to testify regarding the medical care of Decedent during his incarcerations at the Sebastian County Detention Center during her employment with Turn Key Health Clinics, the scope of services Sebastian County contracted with Turn Key Health Clinics, LLC to provide at the Sebastian County Detention Center, statements made by Decedent during his incarceration at the Sebastian County Detention Center, interactions with Decedent at the Sebastian County Detention Center, allegations contained within the Complaint and Defendants' defenses, standard of care, contributory negligence, and damages. |
| 4. | Debra Dias, LPN<br>Licensed Practical Nurse<br>10/04/2019 – 09/03/2020<br>C/O HALL BOOTH SMITH, P.C. | Nurse Dias is expected to testify regarding the medical care of Decedent during his incarcerations at the Sebastian County Detention Center, statements made by Decedent during his incarceration at the Sebastian County Detention Center, interactions with Decedent at the Sebastian County Detention Center, allegations contained within the Complaint and Defendants' defenses, standard of care, contributory negligence, and damages. |
| 5. | Madilyn Brents, LPN<br>Licensed Practical Nurse<br>09/23/2019 – 09/03/2021,<br>01/26/2022 – 03/01/2022 | Nurse Brents is expected to testify regarding the medical care of Decedent during his incarcerations at the Sebastian County Detention Center, statements made by |

4

|  | c/o HALL BOOTH SMITH, P.C. | Decedent during his incarceration at the Sebastian County Detention Center, interactions with Decedent at the Sebastian County Detention Center, allegations contained within the Complaint and Defendants' defenses, standard of care, contributory negligence, and damages. |
|---|---|---|
| 6. | Tierra (Franklin) Rambo, LPN<br>Licensed Practical Nurse<br>01/17/2020 – 03/02/2021,<br>10/08/2021 – 03/09/2023<br>c/o HALL BOOTH SMITH, P.C. | Nurse Rambo is expected to testify regarding the medical care of Decedent during his incarcerations at the Sebastian County Detention Center, statements made by Decedent during his incarceration at the Sebastian County Detention Center, interactions with Decedent at the Sebastian County Detention Center, allegations contained within the Complaint and Defendants' defenses, standard of care, contributory negligence, and damages. |
| 7. | Katie Green, RN<br>Float RN<br>05/18/2020 – 08/09/2021<br>c/o HALL BOOTH SMITH, P.C. | Nurse Green is expected to testify regarding the medical care of Decedent during his incarcerations at the Sebastian County Detention Center, statements made by Decedent during his incarceration at the Sebastian County Detention Center, interactions with Decedent at the Sebastian County Detention Center, allegations contained within the Complaint and Defendants' defenses, standard of care, contributory negligence, and damages. |
| 8. | Rachelle Anaya, LPN<br>Licensed Practical Nurse<br>08/09/2018 – 09/02/2021,<br>06/29/2022 – 09/05/2022<br>c/o HALL BOOTH SMITH, P.C. | Nurse Anaya is expected to testify regarding the medical care of Decedent during his incarcerations at the Sebastian County Detention Center, statements made by Decedent during his incarceration at the Sebastian County Detention Center, interactions with Decedent at the Sebastian County Detention Center, allegations contained within the Complaint and Defendants' defenses, standard of care, contributory negligence, and damages. |
| 9. | Morgan Matlock, RN<br>Health Services Administrator | Nurse Matlock is expected to testify regarding the medical care of Decedent |

|  | 03/09/2021 – 05/02/2022<br>C/O HALL BOOTH SMITH, P.C. | during his incarcerations at the Sebastian County Detention Center, the scope of services Sebastian County contracted with Turn Key Health Clinics,  statements made by Decedent during his incarceration at the Sebastian County Detention Center, interactions with Decedent at the Sebastian County Detention Center, allegations contained within the Complaint and Defendants' defenses, standard of care, contributory negligence, and damages. |
|---|---|---|
| 10. | Misty Williams, LPN<br>Licensed Practical Nurse<br>7/27/2020 – 11/19/2020<br>C/O HALL BOOTH SMITH, P.C. | Nurse Williams is expected to testify regarding the medical care of Decedent during his incarcerations at the Sebastian County Detention Center, statements made by Decedent during his incarceration at the Sebastian County Detention Center, interactions with Decedent at the Sebastian County Detention Center including his attack on her, allegations contained within the Complaint and Defendants' defenses, standard of care, contributory negligence, and damages. |
| 11. | Jessica Kelly, RN<br>Float RN<br>05/10/2018 – 08/11/2018,<br>05/11/2020 – 06/12/2021<br>C/O HALL BOOTH SMITH, P.C. | Nurse Kelly is expected to testify regarding the medical care of Decedent during his incarcerations at the Sebastian County Detention Center, statements made by Decedent during his incarceration at the Sebastian County Detention Center, interactions with Decedent at the Sebastian County Detention Center, allegations contained within the Complaint and Defendants' defenses, standard of care, contributory negligence, and damages. |
| 12. | Meshae Siemens, LPN<br>Float LPN<br>04/08/2020 – 01/07/2021<br>C/O HALL BOOTH SMITH, P.C. | Nurse Siemens is expected to testify regarding the medical care of Decedent during his incarcerations at the Sebastian County Detention Center, statements made by Decedent during his incarceration at the Sebastian County Detention Center, interactions with Decedent at the Sebastian County Detention Center, allegations contained within the Complaint and |

6

|     |     |     |
|-----|-----|-----|
|     |     | Defendants' defenses, standard of care, contributory negligence, and damages. |
| 12. | Karen Adams, LPN<br>Float LPN<br>03/19/2020 – 12/22/2020<br>C/O HALL BOOTH SMITH, P.C. | Nurse Adams is expected to testify regarding the medical care of Decedent during his incarcerations at the Sebastian County Detention Center, statements made by Decedent during his incarceration at the Sebastian County Detention Center, interactions with Decedent at the Sebastian County Detention Center, allegations contained within the Complaint and Defendants' defenses, standard of care, contributory negligence, and damages. |
|     | Tara Adams, LPN<br>Float LPN<br>10/20/2019 – Current<br>C/O HALL BOOTH SMITH, P.C. | Nurse Adams is expected to testify regarding the medical care of Decedent during his incarcerations at the Sebastian County Detention Center, statements made by Decedent during his incarceration at the Sebastian County Detention Center, interactions with Decedent at the Sebastian County Detention Center, allegations contained within the Complaint and Defendants' defenses, standard of care, contributory negligence, and damages. |
|     | Cassandra Nichols, LPN<br>Float LPN<br>05/07/2020 – 10/06/2021<br>C/O HALL BOOTH SMITH, P.C. | Nurse Nichols is expected to testify regarding the medical care of Decedent during his incarcerations at the Sebastian County Detention Center, statements made by Decedent during his incarceration at the Sebastian County Detention Center, interactions with Decedent at the Sebastian County Detention Center, allegations contained within the Complaint and Defendants' defenses, standard of care, contributory negligence, and damages. |
|     | Chelsey Baker, RN<br>Float RN<br>06/01/2019 – 02/01/2020,<br>06/24/2020 – 04/16/2021<br>C/O HALL BOOTH SMITH, P.C. | Nurse Baker is expected to testify regarding the medical care of Decedent during his incarcerations at the Sebastian County Detention Center, statements made by Decedent during his incarceration at the Sebastian County Detention Center, |

7

|  | interactions with Decedent at the Sebastian County Detention Center, allegations contained within the Complaint and Defendants' defenses, standard of care, contributory negligence, and damages. |
|---|---|
| Misti Rincon, LPN<br>Float LPN<br>07/27/2020 – 09/09/2021<br>C/O HALL BOOTH SMITH, P.C. | Nurse Rincon is expected to testify regarding the medical care of Decedent during his incarcerations at the Sebastian County Detention Center, statements made by Decedent during his incarceration at the Sebastian County Detention Center, interactions with Decedent at the Sebastian County Detention Center, allegations contained within the Complaint and Defendants' defenses, standard of care, contributory negligence, and damages. |
| Tammy Langley, LPN<br>Float LPN<br>03/19/2020 – 02/04/2022,<br>03/14/2022 – Current<br>C/O HALL BOOTH SMITH, P.C. | Nurse Langley is expected to testify regarding the medical care of Decedent during his incarcerations at the Sebastian County Detention Center, statements made by Decedent during his incarceration at the Sebastian County Detention Center, interactions with Decedent at the Sebastian County Detention Center, allegations contained within the Complaint and Defendants' defenses, standard of care, contributory negligence, and damages. |
| Kelsey (Victory) Dodson, LPN<br>Licensed Practical Nurse<br>8/21/2019 – 05/13/2022,<br>07/15/2022 – 03/26/2023 | Nurse Victory is expected to testify regarding the medical care of Decedent during his incarcerations at the Sebastian County Detention Center, statements made by Decedent during his incarceration at the Sebastian County Detention Center, interactions with Decedent at the Sebastian County Detention Center, allegations contained within the Complaint and Defendants' defenses, standard of care, contributory negligence, and damages. |
| Stephanie Schuller<br>Licensed Practical Nurse<br>10/10/2018 – Current | Nurse Schuller is expected to testify regarding the medical care of Decedent during his incarcerations at the Sebastian County Detention Center, statements made |

8

by Decedent during his incarceration at the Sebastian County Detention Center, interactions with Decedent at the Sebastian County Detention Center, allegations contained within the Complaint and Defendants' defenses, standard of care, contributory negligence, and damages.

Tracey Robison, LPN
Float LPN
08/25/2019 – Current
c/o HALL BOOTH SMITH, P.C.

Nurse Robison is expected to testify regarding the medical care of Decedent during his incarcerations at the Sebastian County Detention Center, statements made by Decedent during his incarceration at the Sebastian County Detention Center, interactions with Decedent at the Sebastian County Detention Center, allegations contained within the Complaint and Defendants' defenses, standard of care, contributory negligence, and damages.

Bailey (Burns) Crocker, LPN
Float LPN
07/01/2020 – Current
c/o HALL BOOTH SMITH, P.C.

Nurse Burns is expected to testify regarding the medical care of Decedent during his incarcerations at the Sebastian County Detention Center, statements made by Decedent during his incarceration at the Sebastian County Detention Center, interactions with Decedent at the Sebastian County Detention Center, allegations contained within the Complaint and Defendants' defenses, standard of care, contributory negligence, and damages.

Seth Perry, LPN
Float LPN
01/21/2020 – 11/16/2022
c/o HALL BOOTH SMITH, P.C.

Nurse Perry is expected to testify regarding the medical care of Decedent during his incarcerations at the Sebastian County Detention Center, statements made by Decedent during his incarceration at the Sebastian County Detention Center, interactions with Decedent at the Sebastian County Detention Center, allegations contained within the Complaint and Defendants' defenses, standard of care, contributory negligence, and damages.

Anthony Carter, APRN
Mid-Level Provider

Mr. Carter is expected to testify regarding the medical care of Decedent during his

9

|  |  |
|---|---|
| 11/27/2017 – Current<br>c/o HALL BOOTH SMITH, P.C. | incarcerations at the Sebastian County Detention Center, statements made by Decedent during his incarceration at the Sebastian County Detention Center, interactions with Decedent at the Sebastian County Detention Center, allegations contained within the Complaint and Defendants' defenses, standard of care, contributory negligence, and damages. |
| 14.  Tyler Caves<br>WACGC<br>Contact Information Unknown | Mr. Caves is expected to testify regarding the mental health care of Decedent during his incarcerations at the Sebastian County Detention Center, statements made by Decedent during his incarcerations at the Sebastian County Detention Center, interactions with Decedent at the Sebastian County Detention Center, his employment with WACGC, and WACGC's contract for mental health services with Sebastian County. |
| Dr. Price<br>WACGC<br>Contact Information Unknown | Dr. Price is expected to testify regarding the mental health care of Decedent during his incarcerations at the Sebastian County Detention Center, statements made by Decedent during his incarcerations at the Sebastian County Detention Center, interactions with Decedent at the Sebastian County Detention Center, his employment with WACGC, and WACGC's contract for mental health services with Sebastian County. |
| Captain Bill Dumas<br>c/o OWENS LAW | Captain Dumas is expected to testify regarding the facts and circumstances related to the allegations contained in the Complaint, including but not limited to his interactions with Decedent, Decedent's actions and statements made during incarcerations at the Sebastian County Detention Center, and Plaintiff's claimed damages. |
| Sgt. Smith<br>c/o OWENS LAW | Sergeant Smith is expected to testify regarding the facts and circumstances related to the allegations contained in the Complaint, |

10

|  | including but not limited to his interactions with Decedent, Decedent's actions and statements made during incarcerations at the Sebastian County Detention Center, and Plaintiff's claimed damages. |
|---|---|
| Monica C. Rodriguez, M.D.<br>Mercy Hospital Fort Smith<br>4700 Kelly Hwy<br>Fort Smith, AR 72904 | Dr. Rodriguez is expected to testify regarding Decedent's emergency room visit on August 28, 2020, her treatment of Decedent, and Decedent's medical condition. |
| Tyler Smith, NP<br>Mercy Hospital Fort Smith<br>4700 Kelly Hwy<br>Fort Smith, AR 72904 | Mr. Smith is expected to testify regarding Decedent's emergency room visit on August 28, 2020, his treatment of Decedent, and Decedent's medical condition. |

Please also see the medical records of Decedent from the Sebastian County Detention Center, produced herein as Bates Nos. TKHC0001-0256, which may identify additional persons with knowledge related to this lawsuit.

**INTERROGATORY NO. 2 [2-3]**: **[2]** Please IDENTIFY all Turn Key employees and contractors who had any responsibility with respect to Turn Key's contractual duties at the Sebastian County Jail between August 19, 2020 and August 29, 2021. Your answer should include all Turn Key employees and contractors who worked at the jail during that period, as well as company managers, directors, administrators, and others whose responsibilities included tasks related to Turn Key's performance under the contract (e.g., regional managers, nursing directors, medical directors, account managers, client liaisons, etc.). For each person you identify, please state any professional licenses held by the person, **[3]** describe the person's responsibilities with respect to Turn Key services at the Sebastian County Jail during the relevant timeframe, and provide the dates of the person or entity's employment or contractual relationship with Turn Key.

**ANSWER TO INTERROGATORY NO. 2 [2-3]**: Defendant objects to this Interrogatory as constituting multiple distinct and separate discovery requests via its discrete subparts, as

reflected in the above renumbering. *See* FED. R. CIV. P. 33(a)(1). Defendant further objects to this Interrogatory as vague and ambiguous as to the meaning of "responsibility with respect to Turn Key's contractual duties." Defendant further objects to this Interrogatory as being unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence, as the identify of Turn Key employees who had no interaction or knowledge of Decedent's care and treatment at the Sebastian County Detention Center, such as "company managers, directors, administrators," and "account managers" have no probative value over any of the claims or defenses in this lawsuit. This is an impermissible fishing expedition, and Plaintiff's Interrogatory is unreasonable due to its overbreadth.

Subject to and without waiving the foregoing objections, and as Defendant interprets this Interrogatory, Defendant refers Plaintiff to the Turn Key medical personnel identified in response to Plaintiff's Interrogatory No. 1 as the individuals who are believed to have interacted with and/or had personal knowledge related to Decedent during his incarcerations at the Sebastian County Detention Center.  In addition to the individuals identified in response to Plaintiff's Interrogatory No. 1, Defendant further identifies:

1. Danny Hickman
   Client Liaison for Sebastian County
   03/01/2016 – Current
   c/o HALL BOOTH SMITH, P.C.

2. Donna Roberts, RN
   Vice President of Clinical Operations at times relevant
   to Decedent's incarceration at the Sebastian County
   Detention Center
   03/05/2018 – Current
   c/o HALL BOOTH SMITH, P.C.

3. Absalom Tilley, M.D.
   Medical Director for Sebastian County at times relevant
   to Decedent's incarceration at the Sebastian County
   Detention Center

12

04/01/2019 – Current
c/o HALL BOOTH SMITH, P.C.

Pursuant to Fed. R. Civ. P. 33(d), Defendant further directs Plaintiff to the contract between Turn Key Health Clinics, LLC and Sebastian County and amendments in effect at the time of the care and treatment at issue in this lawsuit, produced herein as Bates Nos. TKHC0258-0274.

Finally, because portions of the information sought herein constitute confidential and proprietary business information, Defendant will also agree to produce Job Descriptions for the positions identified in response to Plaintiff's Interrogatory No. 1 and Interrogatory No. 2 under an Agreed Protective Order.

**INTERROGATORY NO. 3**: Please IDENTIFY all Turn Key employees and contractors who provided any medical or mental health evaluation, treatment, advice, or consultation with respect to Larry Price, Jr. between August 19, 2020 and August 29, 2021. For each person you identify, please state all professional licenses held by the person, describe the person's responsibilities with respect to Mr. Price's care, and provide the dates of the person or entity's employment or contractual relationship with Turn Key.

**ANSWER TO INTERROGATORY NO. 3**: Defendant objects to this Interrogatory as being overly broad as to time and scope, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and inasmuch as it is based upon the false premise that Turn Key Health Clinics, LLC was contracted to provide mental health services beyond limited psychiatric services during Decedent's incarceration at the Sebastian County Detention Center.

Subject to and without waiving the foregoing objections, Defendant states that it was not contracted to provide any mental health crises or mental health services beyond limited psychiatric clinical services during Decedent's incarceration at the Sebastian County Detention Center. On the contrary, Turn Key's contract with Sebastian County specifically provided that all crisis

13

management and mental health evaluations/assessments shall be performed by an independent community mental health provider designated by the Agency, not Turn Key. Moreover, effective January 1, 2020, Sebastian County amended its contract with Turn Key to eliminate the position for eight (8) hours per week of mental health coverage for case management and to serve as a clinical liaison between Turn Key's psychiatrist and the local community health provider. Please see the contract and relevant amendments thereto between Turn Key and Sebastian County, produced herein as Bates Nos. TKHC0258-0274.

Furthermore, pursuant to Fed. R. Civ. P. 33(d), Defendant directs Plaintiff to the medical records of Decedent from the Sebastian County Detention Center, produced herein as Bates Nos. TKHC0001-0256, which contain the requested information insofar as it relates to Turn Key personnel who provided medical and/or psychiatric services to Decedent. In addition to those records, Defendant refers Plaintiff to its Answers to Plaintiff's Interrogatories Nos. 1 and 2, which provide the additionally requested information specific to each such medical personnel employed by Turn Key.

**INTERROGATORY NO. 4**: Please identify and describe each action taken, each observation made, each order given or received, and each interaction engaged in by a Turn Key employee or contractor with regard to Larry Price, Jr.'s physical or mental health between August 19, 2020 and August 29, 2021. Please include in your descriptions the date and time of each such action, observation, order, or interaction. If you are unable to state the precise date and time, please provide your best estimate.

**ANSWER TO INTERROGATORY NO. 4**: Defendant objects to this Interrogatory as vastly overbroad as to time and scope, as unduly burdensome, vague as to "interaction," and as not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects

14

inasmuch as the information sought is better suited for deposition discovery of the individual medical personnel involved in Decedent's care and treatment, as Defendant—a corporate entity—cannot reasonably be imputed to know each and every potential "interaction" with Decedent which might have occurred within the Sebastian County Detention Center, other than those which are documented within Decedent's medical records from the Sebastian County Detention Center.

Subject to and without waiving the foregoing objections, pursuant to Fed. R. Civ. P. 33(d), Defendant directs Plaintiff to the medical records of Decedent from the Sebastian County Detention Center, produced herein as Bates Nos. TKHC0001-0256, which contains the requested information known to Defendant at this time. Defendant is also agreeable to producing its Unusual Occurrence Report submitted by Misty Williams, LPN related to Decedent's assault on her on September 9, 2020, upon the entry of an Agreed Protective Order. This is a proprietary, confidential, and private record of Turn Key, which is not a public entity nor subject to any Arkansas Open Records Act or FOIA requests. Defendant has a legitimate interest in preserving its proprietary and privacy interests in business documents, including the aforementioned document, and will only agree to produce the same subject to an Agreed Protective Order. **Counsel for Defendant previously forwarded correspondence with a proposed protective order for Plaintiff's counsel's review on May 12, 2023 and clearly indicated at such time that confidential and proprietary business records will only be produced pursuant to the same. Counsel requested that Plaintiff either proposed revisions to the proposed protective order or approve/endorse the same for filing.**

**INTERROGATORY NO. 5 [6]**: Please IDENTIFY every person who had responsibility for investigating the facts and circumstances pertaining to Larry Price, Jr.'s death or his treatment

in the Sebastian County Jail between August 19, 2020 and August 29, 2021. For each person you identify, please describe his or her role and responsibilities with respect to any such investigation.

**ANSWER TO INTERROGATORY NO. 5 [6]**:  Defendant objects to this Interrogatory as it is vague and ambiguous as to what information Plaintiff is seeking regarding "investigating the facts and circumstances pertaining to … [his] death or his treatment," is overbroad in scope as well as the timeframe requested, is unduly burdensome, and is not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Defendant objects as this Interrogatory on its face seeks privileged and protected attorney-client communications and attorney work product. *See Hickman v. Taylor*, 329 U.S. 495, 512 (1947); *Upjohn Co. v. U.S.*, 102 S.Ct. 677 (981).

Subject to and without waiving the foregoing objections, Defendant states that a mortality review of Decedent's death was performed by Jawaun Lewis, D.O., Donna Roberts, RN, Vice President of Clinical Operations, and Morgan Matlock, RN, the Health Services Administrator. To the best of Defendant's information and belief, no written mortality report was created arising out of such mortality review. Any remaining information responsive to this Request is privileged as attorney-client communications and attorney work product.

**INTERROGATORY NOS. 6 [7-9]**:  **[7]** Please IDENTIFY every person you believe violated a Turn Key policy, procedure, or expected practice with regard to the treatment of Larry Price, Jr. between August 19, 2020 and August 29, 2021. **[8]** For each person you identify, please state what policy, procedure, or expected practice you believe the person violated **[9]** and briefly explain how the person violated the policy, procedure, or expected practice.

**ANSWER TO INTERROGATORY NO. 6 [7-9]**:  Defendant objects to this Interrogatory as constituting multiple distinct and separate discovery requests via its discrete subparts, as reflected in the above renumbering. *See* FED. R. CIV. P. 33(a)(1). Defendant also objects to this

16

Interrogatory as being overly broad as to time and scope, vague as to "expected practice," unduly burdensome in that it improperly seeks to shift Plaintiff's *prima facie* burden of proving Plaintiff's claims onto Defendant, and premature as discovery has just begun and this case is in its initial stages. Moreover, Defendant objects to the extent this Interrogatory seeks privileged and protected attorney work product. Subject to and without waiving the foregoing objections, Defendant is currently unaware of any such violations responsive to this Interrogatory.

**INTERROGATORY NO. 7 [10]**: Please IDENTIFY every Turn Key employee or contractor who received any form of discipline or corrective action (including warnings or corrective counseling) due to their actions or inactions pertaining to Larry Price, Jr.'s treatment in the Sebastian County Jail between August 19, 2020 and August 29, 2021. For each person you identify, please describe the discipline or corrective action the person received, the date(s) the discipline or corrective action was imposed, and the reason(s) for the discipline or corrective action.

**ANSWER TO INTERROGATORY NO. 7 [10]**:  Defendant objects to this Interrogatory as being overly broad as to time and as not being reasonably calculated to lead to the discovery of admissible evidence, as it seeks discovery into conduct and/or measures taken after the alleged injury. *See* Fed. R. Evid. 407; *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389, 109 S. Ct. 1197, 1205, 103 L. Ed. 2d 412 (1989) ("a municipality can be liable under § 1983 only where its policies are the 'moving force [behind] the constitutional violation.'"). Subject to and without waiving these objections, Defendant states that to the best of its information and belief, none.

**INTERROGATORY NO. 8 [11]**: **[11]** Following Mr. Price's death on August 29, 2021, did you make any changes to Turn Key policies, protocols, training, standing orders, or procedures to improve the treatment of incarcerated people with mental illness, improve the monitoring of

17

patients with serious medical or mental health concerns, or reduce the risk of death to patients with serious medical or mental health concerns? **[12]** If yes, please describe every such change, IDENTIFY the person(s) responsible for making the change, **[13]** and state the actual or approximate date on which the change was implemented at the Sebastian County Jail.

**ANSWER TO INTERROGATORY NO. 8 [11-13]**: Defendant objects to this Interrogatory as constituting multiple distinct and separate discovery requests via its discrete subparts, as reflected in the above renumbering. *See* FED. R. CIV. P. 33(a)(1). Defendant objects to this Interrogatory as it is based upon the false premise that Turn Key Health Clinics, LLC was contracted to provide mental health services beyond limited psychiatric services during Decedent's incarceration at the Sebastian County Detention Center. Additionally, Defendant objects to this Interrogatory as being overly broad as to time and scope, as it seeks discovery into Turn Key's policies, procedures, protocols, training, etc., for an indefinite time period after the alleged injury at issue in this case and not limited to the policies, procedures, protocols and practices specific to Sebastian County Detention Center. Defendant further objects to this Interrogatory as not being reasonably calculated to lead to the discovery of admissible evidence. *See* Fed. R. Evid. 407; *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389, 109 S. Ct. 1197, 1205, 103 L. Ed. 2d 412 (1989) ("a municipality can be liable under § 1983 only where its policies are the 'moving force [behind] the constitutional violation.'").

Subject to and without waiving the foregoing objections, Defendant states that it continuously reassesses its policies, procedures, protocols, and practices, including those related to the treatment of mental illness, for the purpose of improving patient care and reducing patient morbidity and mortality. As a part of this ongoing practice, Defendant revised its small site policies and procedures, which would have been in effect at Sebastian County Detention Center, on or

18

around February 22, 2022, after the care and treatment at issue in this case. Defendant did not change any policies, procedures, or protocols at Sebastian County Detention Center as a direct result of Decedent's care and treatment.

**INTERROGATORY NO. 9 [14-15]**: **[14]** Please describe all training provided to Turn Key employees and contractors who provided services at the Sebastian County Jail between August 19, 2020 and August 29, 2021. For each training component you describe, please IDENTIFY who provided the training. **[15]** Please also IDENTIFY all persons who completed the training and state the date(s) on which each person completed the training.

**ANSWER TO INTERROGATORY NO. 9 [14-15]**:   Defendant objects to this Interrogatory as constituting multiple distinct and separate discovery requests via its discrete subparts, as reflected in the above renumbering. *See* FED. R. CIV. P. 33(a)(1). Further, Defendant objects to this Interrogatory as being overly broad as to time and scope, unduly burdensome in that it would require Defendant to review the personnel file of every single medical professional who worked within the Sebastian County Detention Center for over a year, including those whose care is not at issue in this case nor who had any interactions with or personal knowledge of Decedent, thereby making this request an improper fishing expedition and not reasonably calculated to lead to the discovery of admissible evidence. Finally, Defendant objects as the requested information seeks confidential and proprietary business information and potentially sensitive personal information. *See*, *e.g.*, *Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 648 (10th Cir. 2008) ("personnel files often contain sensitive personal information […], and it is not unreasonable to be cautious about ordering their entire contents disclosed willy-nilly."). Subject to and without waiving the foregoing objections, Defendant states that it provided onboarding training to its nurses when it began operations at the Sebastian County Detention Center, which would have

19

included written training materials and an orientation to Turn Key's policies, practices, procedures, and training specific to operations at the Sebastian County Detention Center.

In addition to its respective employees' education, training and experience prior to joining Turn Key, Defendant provides training to its nurses upon hire, as well as orientation to site-specific policies and practices when an employee works at a new site, and ongoing training as needed. Defendant will agree to produce limited portions of the medical personnel files of Christeena Ferguson, whose care and treatment is specifically at issue in this lawsuit, related to training prior to August 21, 2021, upon the entry of an Agreed Protective Order. Defendant does not agree to produce all personnel files of all employees at the Sebastian County Detention Center, as such request is vastly overbroad and unduly burdensome, and therefore Defendant asks that Plaintiff narrow his request to specific individual employees whose care and treatment Plaintiff believes in good faith to be at issue in this litigation. Defendant is further agreeable to producing the training materials it uses at Sebastian County Detention Center under an Agreed Protective Order. These are proprietary, confidential, and private records of Turn Key, which is not a public entity nor subject to any Arkansas Open Records Act or FOIA requests. Defendant has a legitimate interest in preserving its proprietary and privacy interests in business documents, including the aforementioned documents, and will only agree to produce the same subject to an Agreed Protective Order. **Counsel for Defendant previously forwarded correspondence with a proposed protective order for Plaintiff's counsel's review on May 12, 2023 and clearly indicated at such time that confidential and proprietary business records will only be produced pursuant to the same. Counsel requested that Plaintiff either proposed revisions to the proposed protective order or approve/endorse the same for filing.**

**INTERROGATORY NO. 10 [16-17]**: **[16]** Please describe all training provided by Turn Key to Sebastian County Jail employees and contractors. You may limit your response to training provided to county employees and contractors who worked at the jail between August 19, 2020 and August 29, 2021. For each training component you describe, please state the subject of the training and IDENTIFY who provided the training. **[17]** Please also IDENTIFY all persons who completed the training and state the date(s) on which the training was provided.

**ANSWER TO INTERROGATORY NO. 10 [16-17]**: Defendant objects to this Interrogatory as constituting multiple distinct and separate discovery requests via its discrete subparts, as reflected in the above renumbering. *See* FED. R. CIV. P. 33(a)(1). Defendant further objects to this Interrogatory as overly broad, unduly burdensome, not reasonably limited in time or scope (as the care and treatment at issue in this case involves Mr. Price, who allegedly died of malnutrition, and Plaintiff's request is not limited in scope to specific training topics which may have any probative value to the specific claims in this case, nor does Plaintiff limit the scope of his request to specific employees whose conduct is actually alleged to be at issue), and is not reasonably calculated to lead to the discovery of admissible information. Moreover, Defendant objects on the basis that Plaintiff is seeking training records for individuals who are not employees of Turn Key Health Clinics and, therefore, the requested information is not within Turn Key's possession, custody, or control, and this request would be more properly directed to Sebastian County.

Subject to and without waiving the foregoing objections, Defendant states that to the best of its information and belief, Turn Key provided training to Sebastian County Detention Center employees during Turn Key's onboarding process at the Sebastian County Detention Center. This training would likely have been performed by Kara Black, RN or Nicole Cobb,

RN. Additionally, Defendant believes Nurse Black and/or Nurse Cobb also provided detention training at Sebastian County's "Jail School" for its newly hired detention staff. Further, Defendant's Health Services Administrators have provided ongoing training to detention staff, which would include emergency drills. Defendant is agreeable to producing its training materials pursuant to an Agreed Protective Order. These are proprietary, confidential, and private records of Turn Key, which is not a public entity nor subject to any Arkansas Open Records Act or FOIA requests. Defendant has a legitimate interest in preserving its proprietary and privacy interests in business documents, including the aforementioned documents, and will only agree to produce the same subject to an Agreed Protective Order. **Counsel for Defendant previously forwarded correspondence with a proposed protective order for Plaintiff's counsel's review on May 12, 2023 and clearly indicated at such time that confidential and proprietary business records will only be produced pursuant to the same. Counsel requested that Plaintiff either proposed revisions to the proposed protective order or approve/endorse the same for filing.**

**INTERROGATORY NO. 11 [18-22]:** [18] Please IDENTIFY every Turn Key employee or Sebastian County employee you are aware of who expressed a concern about any of the following subjects prior to August 30, 2021:

- Mental health services for people confined at the Sebastian County Jail;

- [19] Medical services for people confined at the Sebastian County Jail;

- [20] The monitoring or observation of people confined at the Sebastian County Jail with medical or mental health concerns;

- [21] Overcrowding or understaffing at the Sebastian County Jail.

22

**[22]** For each person you identify, please describe the concern(s) expressed by that person, the approximate date(s) on which the person expressed his or her concern(s), the form in which the concern was expressed (e.g., orally, by letter, by e-mail, etc.), and the person(s) to whom the concern(s) were expressed.

**ANSWER TO INTERROGATORY NO. 11 [18-22]**: Defendant objects to this Interrogatory as constituting multiple distinct and separate discovery requests via its discrete subparts, as reflected in the above renumbering. *See* FED. R. CIV. P. 33(a)(1). Defendant further objects to this Interrogatory as overly broad as to time and scope, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing objections, Defendant states that during the Covid-19 pandemic, there were nationwide staffing concerns related to virtually every facet of nursing care possible, including correctional medicine. It is impossible for Defendant to recant every discussion regarding the well-known nursing shortage throughout the country which was brought to light by the Covid-19 pandemic. Defendant is currently unaware of any care-related concerns related to Sebastian County Detention Center prior to August 30, 2021 which would be responsive to this Interrogatory. However, Defendant is continuing to perform a diligent search and will supplement this response if any such responsive information and/or documents are discovered in the future.

**INTERROGATORY NO. 12 [23]**: If you contend that any person or entity other than Turn Key was responsible for providing or arranging for mental health treatment for Larry Price, Jr. between August 19, 2020 and August 29, 2021, please IDENTIFY the person(s) or entity(ies) you believe held such responsibility. For each person or entity you identify, please state the actual

or approximate date on which the person or entity assumed the responsibility and fully describe the person or entity's responsibilities with regard to Mr. Price's mental health care.

**ANSWER TO INTERROGATORY NO. 12 [23]**: Defendant objects to this Interrogatory as being vague, overly broad, and unduly burdensome. Defendant further objects to the extent that this Interrogatory seeks information which would be within the possession, custody, or control of the Sebastian County Detention Center and/or other entities.

Subject to and without waiving the foregoing objections, Defendant states that from October 1, 2019 through January 1, 2020, Sebastian County contracted with Turn Key to provide up to eight (8) hours per week of mental health coverage for case management and to serve as a clinical liaison between Turn Key's psychiatrist and Sebastian County's contracted local mental health providers. However, effective January 1, 2020, Sebastian County amended its contract with Turn Key to eliminate the mental health liaison position. As a result, effective January 1, 2020, the only mental health services Turn Key was responsible for providing at the Sebastian County Detention Center were up to eight (8) hours per week of psychiatric clinical services, either on-site or through telehealth. See the Contract and Amendments produced herein as Bates Nos. TKHC0258-0274. Effective January 1, 2020 and through all times relevant to Mr. Price's care and treatment in this lawsuit, all crisis management and mental health evaluations / assessments were the responsibility of the independent community mental health provider designated by Sebastian County, and not by Turn Key. See Bates No. TKHC0272.

Defendant further states that Western Arkansas Counseling & Guidance Center, Inc. ("WACGC" or "The Guidance Center") is the entity who was responsible for providing all crisis management and mental health evaluations and assessments at the Sebastian County Detention Center at all times relevant to Plaintiff's claims and Mr. Price's incarceration at the Sebastian

County Detention Center. Turn Key was never contracted by Sebastian County to provide any mental health services beyond the limited psychiatric and mental health liaison services set forth in the contract between Turn Key and Sebastian County, produced herein as Bates Nos. TKHC0258-0274. Please also see the correspondence received from Sebastian County discussing the elimination of the mental health liaison position referencing the December 10, 2019 meeting at The Guidance Center with carbon copy to WACGC, Bates No. TKHC0271. Please also see the produced e-mail correspondence between Turn Key and Sebastian County confirming Turn Key's understanding that the eliminated eight (8) hours of mental health case management coverage would be allocated as additional hours for WACGC, produced herein as Bates Nos. TKHC0282-0284. Please also see the HIPAA Business Associate Agreement entered into between the WACGC and Turn Key, allowing WACGC direct access to the CorEMR electronic medical records system utilized within the Sebastian County Detention Center, produced herein as Bates Nos. TKHC0275-0281.

**INTERROGATORY NO. 13 [24-26]**: **[24]** Please IDENTIFY every Turn Key patient who has died since January 1, 2016 following confinement in a city or county jail where Turn Key was providing services. Please include every person who has died during that timeframe in a hospital after being transferred there from the jail where they were confined. For each person you identify, please state the name and location of the jail where the person was confined at or just before the time of his or death, the actual or approximate date of the person's death, **[25]** the cause of the person's death, and **[26]** whether the death resulted in a claim for compensation by the person's family or estate against Turn Key or a Turn Key employee. To preserve the confidentiality of the people you identify, you may replace the name of each patient with a unique coded identifier.

**ANSWER TO INTERROGATORY NO. 13 [24-26]**: Defendant objects to this Interrogatory as constituting multiple distinct and separate discovery requests via its discrete subparts, as reflected in the above renumbering. *See* FED. R. CIV. P. 33(a)(1). Plaintiff has exceeded the number of written interrogatories, including discrete subparts, permitted under Rule 33. *Id.* Defendant further objects to this Interrogatory as being unduly burdensome and overly broad in time and scope, as this case involves the create and treatment of Plaintiff's decedent Larry Eugene Price, Jr. at the Sebastian County Detention Center from August 19, 2020 until August 29, 2021. Information related to patients at facilities other than Sebastian County Detention Center and after the dates of care at issue in this lawsuit have no probative value over the claims and issues in this case. As such, this Interrogatory as not being reasonably calculated to lead to the discovery of admissible evidence. *See* Fed. R. Evid. 407; *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389, 109 S. Ct. 1197, 1205, 103 L. Ed. 2d 412 (1989) ("a municipality can be liable under § 1983 only where its policies are the 'moving force [behind] the constitutional violation.'"). Finally, Defendant objects to this Interrogatory as seeking the confidential and protected health information of individuals whose estates have not waived their HIPAA privacy rights.

Subject to and without waiving the foregoing objections, Defendant states that it is currently aware of the following inmate deaths at the Sebastian County Detention Center prior to August 30, 2021:

1. R.R. (November 26, 2019)

2. J.H. (July 31, 2020)

3. P.O. (February 28, 2021)

4. Larry Price (August 29, 2021)

Defendant is agreeable to supplementing this response to provide the full patient names upon the entry of an Agreed Protective Order. **Counsel for Defendant previously forwarded correspondence with a proposed protective order for Plaintiff's counsel's review on May 12, 2023 and clearly indicated at such time that confidential and proprietary records will only be produced pursuant to the same. Counsel requested that Plaintiff either proposed revisions to the proposed protective order or approve/endorse the same for filing.**

**INTERROGATORY NO. 14 [27]**: Please IDENTIFY every lawsuit filed since January 1, 2016 in which Turn Key or a Turn Key employee has been named as a defendant. You may limit your response to lawsuits filed by a former Turn Key patient or a patient's estate or family member. For each lawsuit you identify, please provide the following information:

(a) The names of all plaintiffs and defendants

(b) The name of the court in which the lawsuit was filed

(c) The date the lawsuit was filed

(d) The case number

(e) The primary allegations (e.g., negligent medical care, wrongful death)

(f) The outcome of the lawsuit (e.g., settled, dismissed prior to trial without settlement, judgment for plaintiff, judgment for defendant, etc.)

**ANSWER TO INTERROGATORY NO. 14 [27]**: Defendant objects to this Interrogatory, as Plaintiff has exceeded the number of written interrogatories, including discrete subparts, permitted under Rule 33. *See* FED. R. CIV. P. 33(a)(1). Defendant further objects to this Interrogatory as being overly broad in time and scope, as this case involves the create and treatment of Plaintiff's decedent Larry Eugene Price, Jr. at the Sebastian County Detention Center from August 19, 2020 until August 29, 2021. Information related to facilities other than Sebastian

County Detention Center and after the dates of care at issue in this lawsuit have no probative value over the claims and issues in this case. As such, this Interrogatory as not being reasonably calculated to lead to the discovery of admissible evidence. *See* Fed. R. Evid. 407; *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389, 109 S. Ct. 1197, 1205, 103 L. Ed. 2d 412 (1989) ("a municipality can be liable under § 1983 only where its policies are the 'moving force [behind] the constitutional violation.'"). Finally, Defendant objects to this Interrogatory as unduly burdensome and not proportional to the needs of this case, as Defendant does not maintain the information sought in the manner requested by Plaintiff. Such information is just as easily accessible to Plaintiff from public records. Therefore, Defendant will produce the information, as limited herein, in the manner such litigation records are maintained in the ordinary course of business. Subject to and without waiving the foregoing objections, Defendant will agree to produce a litigation list of all lawsuits arising out of Arkansas facilities which were filed prior to August 30, 2021 under an Agreed Protective Order. These are proprietary, confidential, and private records of Turn Key, which is not a public entity nor subject to any Arkansas Open Records Act or FOIA requests. Defendant has a legitimate interest in preserving its proprietary and privacy interests in business documents, including the aforementioned documents, and will only agree to produce the same subject to an Agreed Protective Order. **Counsel for Defendant previously forwarded correspondence with a proposed protective order for Plaintiff's counsel's review on May 12, 2023 and clearly indicated at such time that confidential and proprietary business records will only be produced pursuant to the same. Counsel requested that Plaintiff either proposed revisions to the proposed protective order or approve/endorse the same for filing.**

**INTERROGATORY NO. 15 [28-29]**: **[28]** Please IDENTIFY every person who had any responsibility for drafting, approving, or modifying the Turn Key policies, protocols, and

28

procedures in effect at the Sebastian County Jail between August 19, 2020 and August 29, 2021.
**[29]** Please describe the role and responsibilities of each person you identify, including the role he or she played in drafting, approving, or modifying the policies or procedures.

 **ANSWER TO INTERROGATORY NO. 15 [28-29]**: Defendant objects to this Interrogatory as constituting multiple distinct and separate discovery requests via its discrete subparts, as reflected in the above renumbering. *See* FED. R. CIV. P. 33(a)(1). Additionally, Plaintiff has exceeded the number of written interrogatories, including discrete subparts, permitted under Rule 33. *Id.* Defendant objects to this Interrogatory as overly broad in its time and scope, unduly burdensome, vague and ambiguous as to "role and responsibilities," and as not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Defendant states that Sebastian County Detention Center utilizes Turn Key's small site policies, procedures, and protocols, which were revised on or around December 28, 2020. Revisions to the small site policies, procedures, and protocols during the times relevant to Mr. Price's incarceration at the Sebastian County Detention Center generally would have been made as a team effort between Donna Roberts, RN, Williams Cooper, M.D., and James Constanzer, APRN-CNP.

 **INTERROGATORY NO. 16 [30-31]**: **[30]** Did Turn Key conduct a mortality review in connection with Larry Price, Jr.'s death? **[31]** If so, please IDENTIFY every person who participated in the review, every person who provided information relevant to the review, and every person to whom Turn Key provided information about the results of the review.

 **ANSWER TO INTERROGATORY NO. 16 [30-31]**: Plaintiff has exceeded the number of written interrogatories, including discrete subparts, permitted under Rule 33. *See* FED. R. CIV. P. 33(a)(1). Defendant further objects to this Interrogatory as it is unduly burdensome and is not

reasonably calculated to lead to the discovery of admissible evidence. Moreover, Defendant objects as this Interrogatory on its face seeks privileged and protected attorney-client communications and attorney work product. *See Hickman v.* Taylor, 329 U.S. 495, 512 (1947); *Upjohn Co. v. U.S.*, 102 S.Ct. 677 (981).

Subject to and without waiving the foregoing objections, Defendant states that a mortality review of Decedent's death was performed by Jawaun Lewis, D.O., Donna Roberts, RN, Vice President of Clinical Operations, and Morgan Matlock, RN, Health Services Administrator. To the best of Defendant's information and belief, no written mortality report was created arising out of such mortality review.

**INTERROGATORY NO. 17 [32]**: Please IDENTIFY every person or entity that conducted an audit or review of the medical or mental health services at the Sebastian County Jail since January 1, 2016.

**ANSWER TO INTERROGATORY NO. 17 [32]**:  Plaintiff has exceeded the number of written interrogatories, including discrete subparts, permitted under Rule 33. *See* FED. R. CIV. P. 33(a)(1). Defendant further objects to this Interrogatory as overly broad as to both time and scope, unduly burdensome, seeks information that is not reasonably calculated to lead to the discovery of admissible evidence, vague and ambiguous as to "review," and on its face appears to seek confidential and privileged attorney-client and/or attorney work product. Moreover, Plaintiff's request as worded is unduly burdensome and unreasonably broad, impossible to answer, and no more than an impermissible fishing expedition. Finally, Defendant objects to discovery into any audits and/or "reviews" which occurred after August 29, 2021, after the care and treatment at issue in this case.

Subject to and without waiving the foregoing objections, to the best of Defendant's information and belief, the individuals identified in Defendant's Answer to Plaintiff's Interrogatory No. 2 [2-3] may have performed on-site audits and/or reviews of the medical services at the Sebastian County Detention Center. Defendant further states that, because Turn Key was never contracted to provide mental health services beyond the limited psychiatric services identified within the contract and amendments thereto between Sebastian County and Turn Key, Turn Key was not responsible for performing audits and/or reviews of the mental health services provided by outside agencies at the Sebastian County Detention Center.

**INTERROGATORY NO. 18 [33]**: Please identify every jail, prison, or other facility where Turn Key has had a contract to provide medical or mental health services since 2015 and state whether Turn Key still has a contract to provide services for each identified facility.

**ANSWER TO INTERROGATORY NO. 18 [33]**:  Plaintiff has exceeded the number of written interrogatories, including discrete subparts, permitted under Rule 33. *See* FED. R. CIV. P. 33(a)(1). Defendant further objects to this Interrogatory as overly broad in that it is not reasonably limited to the time frame at issue in this case nor to the jail at issue in this case, is unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, this Interrogatory seeks confidential and proprietary business information of Turn Key. Defendant objects to discovery into any contracts which were not active at the time of the care and treatment at issue in this case, which is limited to August 2020 through August 2021. Subject to and without waiving the foregoing objections, Defendant states that from August 2020 through August 2021, Defendant was operating in the following county jails:

1.  Adair County Jail (Stillwell, Oklahoma);

2. Archuleta County Detention Center (Pagosa Springs, Colorado);

3. Beckham County Jail (Sayre, Oklahoma);

4. Benton County Detention Center (Bentonville, Arkansas);

5. Blaine County Jail (Watonga, Oklahoma);

6. Boone County Detention Center (Harrison, Arkansas);

7. Bowie County Jail (Texarkana, Texas);

8. Broomfield County Detention Center (Broomfield, Colorado);

9. Bryan County Jail (Durant, Oklahoma);

10. Burnet County Jail (Burnet, Texas);

11. Caddo County Jail (Anadarko, Oklahoma);

12. Canadian County Jail (El Reno, Oklahoma)

13. Carroll County Detention Center (Berryville, Arkansas);

14. Carter County Jail (Ardmore, Oklahoma);

15. Chaffee County Detention Center (Salida, Colorado);

16. Christian County Detention Center (Ozark, Missouri);

17. Cleveland County Detention Center (Norman, Oklahoma);

18. Comanche County Jail (Comanche, Texas);

19. Craighead County Detention Center (Jonesboro, Arkansas);

20. Creek County Detention Center (Sapulpa, Oklahoma);

21. Cross County Detention Center (Wynne, Arkansas);

22. Custer County Jail (Arapaho, Oklahoma);

23. David L. Moss Criminal Justice Center (Tulsa, Oklahoma);

24. Delaware County Jail (Jay, Oklahoma);

25. Dewey County Jail (Taloga, Oklahoma);

26. Eastland County Jail (Eastland, Texas);

27. Faulkner County Detention Center (Conway, Arkansas);

28. Fremont County Detention Center (Canon City, Colorado);

29. Garland County Detention Center (Hot Springs, Arkansas);

30. Garvin County Jail (Pauls Valley, Oklahoma);

31. Grady County Law Enforcement Center (Chickasha, Oklahoma);

32. Greene County Detention Center (Paragould, Arkansas);

33. Houston County Jail (Crockett, Texas);

34. Kay County Detention Center (Newkirk, Oklahoma);

35. Kingfisher County Jail (Kingfisher, Oklahoma);

36. Lampasas County Detention Center (Lampasas, Texas);

37. Lincoln County Jail (Chandler, Oklahoma);

38. Logan County Jail (Guthrie, Oklahoma);

39. Logan County Justice Center (Sterling, Colorado);

40. Love County Jail (Marietta, Oklahoma);

41. Marshall County Jail (Madill, Oklahoma);

42. Mayes County Jail (Pryor, Oklahoma);

43. McClain County Jail (Purcell, Oklahoma);

44. Mississippi County Jail (Luxora, Arkansas);

45. Montgomery County Jail (Independence, Kansas);

46. Morgan County Detention Center (Fort Morgan, Colorado);

47. Okfuskee County Jail (Okemah, Oklahoma);

48. Oklahoma County Detention Center (Oklahoma City, Oklahoma);

49. Osage County Jail (Pawhuska, Oklahoma);

50. Ottawa County Jail (Miami, Oklahoma);

51. Park County Jail (Fairplay, Colorado);

52. Payne County Jail (Stillwater, Oklahoma);

53. Phillips County Detention Center (Helena, Arkansas);

54. Pontotoc County Jail (Ada, Oklahoma);

55. Pope County Detention Center (Russellville, Arkansas);

56. Pottawatomie County Safety Center (Shawnee, Oklahoma);

57. Pulaski County Regional Detention Center (Little Rock, Arkansas);

58. Rogers County Jail (Claremore, Oklahoma);

59. Saline County Detention Center (Benton, Arkansas);

60. San Jacinto County Jail (Coldspring, Texas);

61. Sebastian County Detention Center (Fort Smith, Arkansas);

62. Seminole County Jail (Wewoka, Oklahoma);

63. Smith County Jail (Tyler, Texas);

64. Sevier County Detention Center (DeQueen, Arkansas);

65. St. Francis County Detention Center (Forest City, Arkansas);

66. Stephens County Jail (Duncan, Oklahoma);

67. Texas County Jail (Guymon, Oklahoma);

68. Union County Detention Center (El Dorado, Arkansas);

69. Weld County Jail (Greeley, Colorado);

70. Wharton County Jail (Wharton, Texas);

34

71. White County Detention Center (Searcy, Arkansas); and

72. Woodward County Jail (Woodward, Oklahoma).

## RESPONSES TO REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1**: Please produce all DOCUMENTS that refer or pertain to Larry Price, Jr. (See definition of "DOCUMENTS" above.)

**RESPONSE**: Objection. This Request is overly broad in scope, not reasonably limited in time, unduly burdensome, vague and ambiguous, not reasonably calculated to lead to the discovery of admissible evidence and seeks information that may be protected by the attorney-client and/or the work-product privileges and/or documents and are therefore not subject to disclosure under the Federal Rules. Subject to and without waiving the foregoing objections, Defendant is currently unaware of any documents responsive to this Request outside of Mr. Price's medical records produced herein and the privileged and protected communications with its counsel of record. However, Defendant is continuing to conduct a diligent search for responsive documents and will supplement its Response if / when any such responsive documents are discovered.

**REQUEST FOR PRODUCTION NO. 2**: Please produce the audit trail for Mr. Price's electronic medical record.

**RESPONSE**: Defendant objects to this request as overly broad as to time and scope, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and as seeking confidential and privileged information. Subject to and without waiving these objections, Defendant states: after conducting a diligent search and conferring with representatives from CorEMR, Defendant is not capable of generating an audit trail for Mr. Price's electronic medical record. Thus, Defendant has no documents responsive to this request.

35

**REQUEST FOR PRODUCTION NO. 3**: Please produce all written policies, procedures, protocols, guidelines, directives, and standing orders pertaining to Turn Key's services and operations at the Sebastian County Jail that were in effect between August 19, 2020 and August 29, 2021. Please include all memoranda, e-mails, notices, and other DOCUMENTS that were provided to Turn Key employees or contractors to supplement, clarify, or amend any of the policies, procedures, protocols, or other materials produced.

**RESPONSE**:    Objection. This request is overly broad (scope and time), unduly burdensome, seeks irrelevant information which is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff's policy, practice, or custom claim against Defendant is limited to staffing, supervision, and treatment of inmates, like Mr. Price, with serious mental health needs. *See* ECF Doc. 2, *Plt.'s Compl*. Finally, this Request seeks confidential and proprietary business records of Defendant.

Subject to and without waiving the foregoing objections, Defendant directs Plaintiff to the contract and amendments thereto entered into between Sebastian County and Turn Key, which set forth the scope of health care services delegated by Sebastian County to Turn Key to provide at the Sebastian County Detention Center. Turn Key was <u>not</u> responsible for setting the policies, procedures, protocols, customs or practices of independent healthcare agencies (such as The Guidance Center) regarding mental health services provided within the Sebastian County Detention Center, nor is Turn Key in possession, custody, or control of documents regarding the mental health services provided by The Guidance Center within the Sebastian County Detention Center during the times relevant to Plaintiff's claims.

Upon the entry of an Agreed Protective Order, Defendant is agreeable to producing the following policies and procedures of Turn Key which were in effect at the time of the care at issue in this case:

1. J-1, Policy and Procedure Development and Review;

2. J-2, Orientation for Medical Personnel;

3. J-3, Credentialing/Personnel Qualifications;

4. J-4, Health Authority;

5. J-5, Provisions of Treatment;

6. J-6, Access to Care;

7. J-7, Privacy of Care;

8. J-8, Informed Consent and Right to Refuse;

9. J-9, Intake Health Screening;

10. J-10, Non-Emergency Health Care Requests (Sick Call);

11. J-11, Nursing Assessment Protocols;

12. J-12, Mental Health Services;

13. J-13, Emergency Psychotropic Administration;

14. J-14, Management of Health Records;

15. J-15, Confidentiality of Health Records;

16. J-16, Emergency Services;

17. J-17, Hospital and Specialty Care;

18. J-18, Offsite Request/Notification/Claims;

19. J-19, Diagnostic Services;

20. J-20, Patients with Special Health Needs/Chronic Care;

21. J-21, Continuity of Care;

22. J-25, Custody Ordered Restraint;

23. J-26, Medical Diets;

24. J-27, Suicide Prevention;

25. J-29, Pharmaceutical and Medication Management;

26. J-30, Medication Administration Training;

27. J-33, Inmate Death and Notification; and

28. J-34, Grievance Process for Healthcare Complaints.

Defendant believes in good faith that these produced policies *could be* relevant to the specific claims in this case. Upon the entry of an Agreed Protective Order, Defendant is also agreeable to producing the Table of Contents relevant to the time frame at issue in this case. If Plaintiff believes additional policies identified within such Tables of Contents may be relevant or have probative value over the specific claims in this lawsuit, Defendant would welcome further discussion. These are proprietary, confidential, and private records of Turn Key, which is not a public entity nor subject to any Arkansas Open Records Act or FOIA requests. Defendant has a legitimate interest in preserving its proprietary and privacy interests in business documents, including the aforementioned documents, and will only agree to produce the same subject to an Agreed Protective Order. **Counsel for Defendant previously forwarded correspondence with a proposed protective order for Plaintiff's counsel's review on May 12, 2023 and clearly indicated at such time that confidential and proprietary business records will only be produced pursuant to the same. Counsel requested that Plaintiff either proposed revisions to the proposed protective order or approve/endorse the same for filing.**

**REQUEST FOR PRODUCTION NO. 4**: Please produce all notices, memoranda, e-mails, and other DOCUMENTS provided by Turn Key (or any of its employees) to Sebastian County (or any of its employees) pertaining to jail employees' responsibilities related to medical or mental health services at the Sebastian County Jail.

**RESPONSE**:  Defendant objects to this Request as overly broad, unduly burdensome, vague and ambiguous, and as being based upon the false premise that Turn Key has any responsibility or legal obligation to explain to Sebastian County the County's duties and/or obligations under state or federal law. On the contrary, Turn Key is contracted to perform delegated functions of Sebastian County (specifically, limited medical and psychiatric services) within the Sebastian County Detention Center, and Turn Key has no legal obligation to perform any duties and/or obligations not specifically delegated pursuant to contract. Subject to and without waiving the foregoing objections, Defendant would direct Plaintiff to the contract and amendments thereto between Sebastian County and Turn Key, correspondence discussing the same with Sebastian County, and the HIPAA Business Associate Agreement entered between WACGC and Turn Key, produced herein as Bates Nos. TKHC0258-0284.

**REQUEST FOR PRODUCTION NO. 5**: Please produce all DOCUMENTS pertaining to any and all investigations that were conducted to examine the circumstances of Larry Price, Jr.'s death and/or the medical or mental health treatment he received in the Sebastian County Jail between August 19, 2020 and August 29, 2021. Your response should include investigative reports, notes, interview transcripts and recordings, e-mails, and all other DOCUMENTS created or collected for such investigations.

**RESPONSE**:  Defendant objects to this Request as it is overbroad in scope as well as the timeframe requested, is unduly burdensome, and is not reasonably calculated to lead to the

39

discovery of admissible evidence. Moreover, Defendant objects as this Request on its face seeks privileged and protected attorney-client communications and attorney work product. *See Hickman v.* Taylor, 329 U.S. 495, 512 (1947); *Upjohn Co. v. U.S.*, 102 S.Ct. 677 (981).

Subject to and without waiving the foregoing objections, Defendant has no documents responsive to this Request. There was no written report generated from the internal mortality review related to Decedent's death. Defendant is currently unaware of any written statements and/or documents beyond those contained within Mr. Price's medical records, which are produced herein as Bates Nos. TKHC0001-0256. Defendant is agreeable to producing its Unusual Occurrence Report related to Mr. Price's attack on Misty Williams, LPN pursuant to an Agreed Protective Order. This is a proprietary, confidential, and private record of Turn Key, which is not a public entity nor subject to any Arkansas Open Records Act or FOIA requests. Defendant has a legitimate interest in preserving its proprietary and privacy interests in business documents, including the aforementioned document, and will only agree to produce the same subject to an Agreed Protective Order. **Counsel for Defendant previously forwarded correspondence with a proposed protective order for Plaintiff's counsel's review on May 12, 2023 and clearly indicated at such time that confidential and proprietary business records will only be produced pursuant to the same. Counsel requested that Plaintiff either proposed revisions to the proposed protective order or approve/endorse the same for filing.** Any remaining documents related to any investigation regarding Decedent's death is privileged as attorney-client communications and attorney work product, for which no privilege log is required.

**REQUEST FOR PRODUCTION NO. 6**: Please produce all DOCUMENTS pertaining to the mortality review, morbidity report, root cause analysis, or similar type of internal audit or review that you identified in your answer to Interrogatory No. 16, including any policies or written

materials governing or requiring the post-death reviews and how they are to be conducted. Your response should include all DOCUMENTS considered as part of the review, and all DOCUMENTS created or collected by any person in connection with the review.

**RESPONSE**: Defendant objects to this Request as it is overbroad in scope as well as the timeframe requested, is unduly burdensome, and is not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Defendant objects as this Request on its face seeks privileged and protected attorney-client communications and attorney work product. *See Hickman v.* Taylor, 329 U.S. 495, 512 (1947); *Upjohn Co. v. U.S.*, 102 S.Ct. 677 (981).

Subject to and without waiving the foregoing objections, please see Defendant's Response to Plaintiff's Request for Production No. 5.

**REQUEST FOR PRODUCTION NO. 7**: Please produce all DOCUMENTS pertaining to mortality reviews, morbidity reports, root cause analyses, or similar types of internal audits or reviews of the deaths you identified in your answer to Interrogatory No. 13. Your response should include all DOCUMENTS considered as part of such reviews, and all DOCUMENTS created by any person in connection with such reviews. To preserve the confidentiality of the patients named in these documents, you may replace the name of each patient with a unique coded identifier.

**RESPONSE**: Defendant objects to this Request as it is overbroad in scope and in time, as seeking confidential, protected health information of individuals whose care and treatment is not at issue in this case, is unduly burdensome, and is not reasonably calculated to lead to the discovery of admissible evidence in *this case*, which is limited to the care and treatment of Larry Eugene Price, Jr. at the Sebastian County Detention Center from August 19, 2020 through August 29, 2021. Moreover, Defendant objects as this Request on its face seeks privileged and protected attorney-client communications and attorney work product. *See Hickman v.* Taylor, 329 U.S. 495,

41

512 (1947); *Upjohn Co. v. U.S.*, 102 S.Ct. 677 (981). This request is no more than an impermissible fishing expedition prohibited by the Federal Rules. Subject to and without waiving the foregoing objections, Defendant states that it is performing a diligent search to determine whether any written death reviews exist for the previously-stated inmate deaths at Sebastian County prior to August 29, 2021 and will supplement this response if any such documents are discovered.

**REQUEST FOR PRODUCTION NO. 8**: Please produce all reports, e-mails, meeting minutes, memoranda, letters, notes, and other DOCUMENTS pertaining to the audits or reviews identified by you in your answer to Interrogatory No. 17.

**RESPONSE**: Objection. This request is overly broad (scope and time), unduly burdensome, compound, not reasonably calculated to lead to the discovery of admissible evidence and seeks information that may be protected by the attorney-client and/or the work-product privileges and/or documents which may be otherwise confidential and/or proprietary to Defendant. Defendant further objects inasmuch as this Request presupposes a requirement that Turn Key generate written audits and/or documents responsive to this Request. Subject to and without waiving the foregoing objections, Defendant is agreeable to producing Site Statistics for Sebastian County Detention Center from 2019 through August 30, 2021, to the extent they exist, upon the entry of an Agreed Protective Order. These are proprietary, confidential, and private records of Turn Key, which is not a public entity nor subject to any Arkansas Open Records Act or FOIA requests. Defendant has a legitimate interest in preserving its proprietary and privacy interests in business documents, including the aforementioned documents, and will only agree to produce the same subject to an Agreed Protective Order. **Counsel for Defendant previously forwarded correspondence with a proposed protective order for Plaintiff's counsel's review on May 12, 2023 and clearly indicated at such time that**

42

confidential and proprietary business records will only be produced pursuant to the same. Counsel requested that Plaintiff either proposed revisions to the proposed protective order or approve/endorse the same for filing.

**REQUEST FOR PRODUCTION NO. 9**: Please produce DOCUMENTS that show each time a Turn Key employee or contractor conducted a wellness check, safety check, segregation check, monitoring check, or other similar observation of Larry Price, Jr. between August 19, 2020 and August 29, 2021.

**RESPONSE**:   Defendant objects to this Request as being overly broad, unduly burdensome, not reasonably limited in time or scope in that it asks for records spanning more than a year, and inasmuch as it is based upon the false premise that Turn Key and/or its employees were responsible for performing wellness checks, safety checks, segregation checks, and/or monitoring checks of Mr. Price while he was confined within the Sebastian County Detention Center. On the contrary, detention staff, not Turn Key, is responsible for monitoring and performing segregation and/or wellness and/or safety checks on inmates such as Mr. Price. Subject to and without waiving the foregoing objections, Defendant directs Plaintiff to the medical records of Mr. Price, produced herein as Bates Nos. TKHC0001-0256.

**REQUEST FOR PRODUCTION NO. 10**: Please produce all DOCUMENTS pertaining to your answer to Interrogatories 9 and 10, including (a) materials used by trainers or shown or provided to trainees in conjunction with the training described in your answers, and (b) documents showing who completed the trainings you described and when.

**RESPONSE**:   Objection. This Request is overly broad, unduly burdensome, not reasonably limited in time or scope (as the care at issue in this case is limited to Sebastian County Detention Center from August 19, 2020 through August 29, 2021), is vague and

ambiguous, and is not reasonably calculated to lead to the discovery of admissible information. Subject to and without waiving the foregoing objections, Defendant does not maintain attendance records for training responsive to this Request. Defendant is agreeable to producing responsive training materials under an Agreed Protective Order. These are proprietary, confidential, and private records of Turn Key, which is not a public entity nor subject to any Arkansas Open Records Act or FOIA requests. Defendant has a legitimate interest in preserving its proprietary and privacy interests in business documents, including the aforementioned documents, and will only agree to produce the same subject to an Agreed Protective Order. **Counsel for Defendant previously forwarded correspondence with a proposed protective order for Plaintiff's counsel's review on May 12, 2023 and clearly indicated at such time that confidential and proprietary business records will only be produced pursuant to the same. Counsel requested that Plaintiff either proposed revisions to the proposed protective order or approve/endorse the same for filing.**

**REQUEST FOR PRODUCTION NO. 11**: Please produce all DOCUMENTS pertaining to your answer to Interrogatory No. 11.

**RESPONSE**:   Objection. This request is overly broad (scope and time), unduly burdensome, vague, ambiguous, compound, seeks irrelevant information, and is not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Defendant does not maintain such information in any format which would make it possible for Defendant to retrieve information responsive to Plaintiff's request. Therefore, it is impossible to respond to Plaintiff's request as worded beyond production of the medical records of Mr. Price, the patient whose care and treatment is at issue in this case. Defendant would direct Plaintiff to the medical records of Mr. Price produced herein. Nonetheless, Defendant is continuing its

44

performance of a diligent search to locate any responsive documents and will supplement production if / when any such documents are discovered.

**REQUEST FOR PRODUCTION NO. 12**: To the extent they were not produced in response to other requests, please produce all DOCUMENTS you provided to any person, agency, or organization in response to requests for information pertaining to Larry Price, Jr.'s death or his medical or mental health treatment in the Sebastian County Jail between August 19, 2020 and August 29, 2021.

**RESPONSE**:  Objection. This Request is overly broad, ambiguous, unduly burdensome, is not reasonably calculated to lead to the discovery of admissible evidence, and appears to seek confidential and protected attorney-client communications and attorney work product on its face. Subject to and without waiving these objections, and as Defendant interprets this request, please see the medical records of Mr. Price produced herein as Bates Nos. TKHC0001-0256. Defendant is currently unaware of any additional documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 13**: Please produce the most recent photograph in your custody or control (such as a badge ID photo) of Jawaun Lewis and Christeena Ferguson.

**RESPONSE**:  Defendant objects to this Request as not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving this objection, Defendant does not maintain photographs of employees for badges or any other purposes beyond those contained within the employees' respective personnel files for identification verification purposes. However, Plaintiff can easily obtain a photograph of Dr. Lewis from Defendant's website. Upon the entry of an Agreed Protective Order, Defendant will produce relevant portions of Dr. Lewis's and Nurse Ferguson's personnel files in effect prior to August 29, 2021. These are proprietary, confidential, and private records of Turn Key, which is not a public entity nor subject to any Arkansas Open

45

Records Act or FOIA requests. Defendant has a legitimate interest in preserving its proprietary and privacy interests in business documents, including the aforementioned documents, and will only agree to produce the same subject to an Agreed Protective Order. **Counsel for Defendant previously forwarded correspondence with a proposed protective order for Plaintiff's counsel's review on May 12, 2023 and clearly indicated at such time that confidential and proprietary business records will only be produced pursuant to the same. Counsel requested that Plaintiff either proposed revisions to the proposed protective order or approve/endorse the same for filing.**

**REQUEST FOR PRODUCTION NO. 14**: Please produce all insurance agreements (primary and excess) under which any insurer may be liable to satisfy part or all of a judgment that may be entered in this action against any defendant, or to indemnify or reimburse for payments made to satisfy the judgment, as well as any DOCUMENTS affecting coverage (such as denying coverage, extending coverage, or reserving rights) from or on behalf of such insurers to any of the defendants in this case. It is not enough to produce the declarations pages; please produce all responsive DOCUMENTS.

**RESPONSE**:  Defendant will produce the complete insurance policy applicable to this action upon the entry of an Agreed Protective Order. These are proprietary, confidential, and private records of Turn Key, which is not a public entity nor subject to any Arkansas Open Records Act or FOIA requests. Defendant has a legitimate interest in preserving its proprietary and privacy interests in business documents, including the aforementioned documents, and will only agree to produce the same subject to an Agreed Protective Order. **Counsel for Defendant previously forwarded correspondence with a proposed protective order for Plaintiff's counsel's review on May 12, 2023 and clearly indicated at such time that confidential and proprietary business**

46

records will only be produced pursuant to the same. Counsel requested that Plaintiff either proposed revisions to the proposed protective order or approve/endorse the same for filing.

**REQUEST FOR PRODUCTION NO. 15**: Please produce all letters, e-mails, notes, complaints, and other DOCUMENTS that refer or pertain to any allegation that a person confined in the Sebastian County Jail did not receive adequate medical or mental health care. You may limit your response to DOCUMENTS created or received since January 1, 2019 and you may omit written kites and grievances submitted by people while confined in the jail.

**RESPONSE**:   Objection. This request is overly broad (scope and time), unduly burdensome, vague, ambiguous, compound, seeks irrelevant information, not reasonably calculated to lead to the discovery of admissible evidence, and seeks private health information of non-parties protected from disclosure under HIPAA. Defendant cannot, and will not, produce any health information of other patients. Moreover, Defendant does not maintain such information in any format which would make it possible for Defendant to retrieve information responsive to Plaintiff's request. Therefore, it is impossible to respond to Plaintiff's request as worded beyond production of the medical records of Mr. Price, the patient whose care and treatment is at issue in this case. Defendant would direct Plaintiff to the medical records of Mr. Price produced herein.

**REQUEST FOR PRODUCTION NO. 16**: Please produce all e-mails, letters, memoranda, and other communications between Sebastian County (or any County employee or representative) and Turn Key Health Clinics, LLC (or any Turn Key employee or representative) regarding alleged deficiencies in, or the quality or adequacy of, medical or mental health services at the Sebastian County Jail. You may limit your response to DOCUMENTS created or received since January 1, 2019.

47

**RESPONSE**:   Objection. This Request is vague, ambiguous, compound, unduly burdensome, and overly broad as to time and scope. The care and treatment at issue in this case occurred at the Sebastian County Detention Center from August 19, 2020 through August 29, 2021; therefore, any discovery after August 29, 2021 has no relevance to this lawsuit and would have no probative value over any of the material issues in this case. Therefore, Defendant further objects to this Request as an impermissible fishing expedition and as not being reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing objections, please see the correspondence between Sebastian County and Turn Key discussing the healthcare services within the Sebastian County Detention Center, produced herein as Bates Nos. TKHC0282-0284. Defendant is continuing to conduct a diligent search for responsive documents and will supplement its Response upon the entry of an Agreed Protective Order. These are proprietary, confidential, and private records of Turn Key, which is not a public entity nor subject to any Arkansas Open Records Act or FOIA requests. Defendant has a legitimate interest in preserving its proprietary and privacy interests in business documents, including the aforementioned documents, and will only agree to produce the same subject to an Agreed Protective Order. **Counsel for Defendant previously forwarded correspondence with a proposed protective order for Plaintiff's counsel's review on May 12, 2023 and clearly indicated at such time that confidential and proprietary business records will only be produced pursuant to the same. Counsel requested that Plaintiff either proposed revisions to the proposed protective order or approve/endorse the same for filing.**

**REQUEST FOR PRODUCTION NO. 17**: Please produce all e-mails, letters, memoranda, meeting minutes, and other DOCUMENTS that pertain to efforts by Turn Key to

48

coordinate services with the Western Arkansas Counseling & Guidance Center. You may limit your response to DOCUMENTS that address coordination of services generally or with regard to Larry Price, Jr. (as opposed to services for other specific patients).

**RESPONSE**:  Objection. This Request is overly broad as to time and scope, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and is based upon the false premise that Turn Key had any obligation to "coordinate services with" WACGC. On the contrary, Sebastian County contracted with WACGC and was responsible for coordinating mental health services with WACGC. Subject to and without waiving the foregoing objections, please see the documents produced herein as Bates Nos. TKHC0258-0284. Defendant is continuing to conduct a diligent search for any additional responsive documents and will supplement its Response if / when any such documents are discovered upon the entry of an Agreed Protective Order. These are proprietary, confidential, and private records of Turn Key, which is not a public entity nor subject to any Arkansas Open Records Act or FOIA requests. Defendant has a legitimate interest in preserving its proprietary and privacy interests in business documents, including the aforementioned documents, and will only agree to produce the same subject to an Agreed Protective Order. **Counsel for Defendant previously forwarded correspondence with a proposed protective order for Plaintiff's counsel's review on May 12, 2023 and clearly indicated at such time that confidential and proprietary business records will only be produced pursuant to the same. Counsel requested that Plaintiff either proposed revisions to the proposed protective order or approve/endorse the same for filing.**

**REQUEST FOR PRODUCTION NO. 18**: Please produce DOCUMENTS showing the amounts of money Turn Key budgeted and spent for medical and mental health care at the Sebastian County Jail for each year since 2019. Please produce DOCUMENTS that show this

information in the greatest detail available (e.g., budgets and expense sheets showing the specific line items).

**RESPONSE**:  Defendant objects to this Request as overly broad in both time and scope, vague, unduly burdensome, irrelevant, and seeking information not reasonably calculated to lead to the discovery of admissible evidence. Furthermore, Defendant objects to this request as it seeks private and confidential business information that is wholly unrelated to the subject matter of the pending action and is merely an inappropriate fishing expedition meant to harass, burden, and oppress Defendant. There is no evidence in this case that Defendant's financial condition and/or budget had any causal relationship with Mr. Price's death or Plaintiff's claims in this action, and any discovery into Defendant's financial condition is premature at this time. Additionally, Turn Key was not contracted to provide "mental health services" beyond limited psychiatric services within the Sebastian County Detention Center at any time relevant to Plaintiff's claims. Subject to and without waiving these objections, Defendant directs Plaintiff to the contract and amendments produced herein, Bates Nos. TKHC0258-0274, which set forth the scope of services and contracted for reimbursement amounts for services provided at the Sebastian County Detention Center. Defendant further invites Plaintiff to discuss the narrowing and clarification of this request and the possibility of producing certain limited financial information under Agreed Protective Order.

**REQUEST FOR PRODUCTION NO. 19**: Please produce all DOCUMENTS expressing or pertaining to any concerns or questions relating to budget overages (whether in whole or specific to any line-item or category of expense) in connection with Turn Key's agreement to provide services at the Sebastian County Jail since 2019.

**RESPONSE**: Defendant objects to this Request as overly broad in both time and scope, vague, unduly burdensome, irrelevant, and seeking information not reasonably calculated to lead

to the discovery of admissible evidence. Furthermore, Defendant objects to this request as it seeks private and confidential business information that is wholly unrelated to the subject matter of the pending action and is merely an inappropriate fishing expedition meant to harass, burden, and oppress Defendant. There is no evidence in this case that Defendant's financial condition and/or budget had any causal relationship with Mr. Price's death or Plaintiff's claims in this action, and any discovery into Defendant's financial condition is premature at this time. Additionally, Turn Key was not contracted to provide "mental health services" beyond limited psychiatric services within the Sebastian County Detention Center at any time relevant to Plaintiff's claims. Subject to and without waiving these objections, Defendant is currently not aware of any documents responsive to this Request. However, Defendant is continuing to perform a diligent search for any responsive documents and will supplement this response if / when any such documents are discovered in the future pursuant to an Agreed Protective Order. These are proprietary, confidential, and private records of Turn Key, which is not a public entity nor subject to any Arkansas Open Records Act or FOIA requests. Defendant has a legitimate interest in preserving its proprietary and privacy interests in business documents, including the aforementioned documents, and will only agree to produce the same subject to an Agreed Protective Order. **Counsel for Defendant previously forwarded correspondence with a proposed protective order for Plaintiff's counsel's review on May 12, 2023 and clearly indicated at such time that confidential and proprietary business records will only be produced pursuant to the same. Counsel requested that Plaintiff either proposed revisions to the proposed protective order or approve/endorse the same for filing.**

**REQUEST FOR PRODUCTION NO. 20**: Please produce DOCUMENTS showing Turn Key's annual revenue and costs pertaining to its contract with Sebastian County for each year the contract has been in effect.

**RESPONSE**:  Defendant objects to this Request as overly broad in both time and scope, vague, unduly burdensome, irrelevant, and seeking information not reasonably calculated to lead to the discovery of admissible evidence. Furthermore, Defendant objects to this request as it seeks private and confidential business information that is wholly unrelated to the subject matter of the pending action and is merely an inappropriate fishing expedition meant to harass, burden, and oppress Defendant. There is no evidence in this case that Defendant's financial condition and/or budget had any causal relationship with Mr. Price's death or Plaintiff's claims in this action, and any discovery into Defendant's financial condition is premature at this time. Additionally, Turn Key was not contracted to provide "mental health services" beyond limited psychiatric services within the Sebastian County Detention Center at any time relevant to Plaintiff's claims. Subject to and without waiving these objections, Defendant directs Plaintiff to the contract and amendments produced herein, Bates Nos. TKHC0258-0274, which set forth the scope of services and contracted for reimbursement amounts for services provided at the Sebastian County Detention Center. Defendant further invites Plaintiff to discuss the narrowing and clarification of this request and the possibility of producing certain limited financial information under Agreed Protective Order. These are proprietary, confidential, and private records of Turn Key, which is not a public entity nor subject to any Arkansas Open Records Act or FOIA requests. Defendant has a legitimate interest in preserving its proprietary and privacy interests in business documents, including the aforementioned documents, and will only agree to produce the same subject to an Agreed Protective Order. **Counsel for Defendant previously forwarded correspondence with a**

52

proposed protective order for Plaintiff's counsel's review on May 12, 2023 and clearly indicated at such time that confidential and proprietary business records will only be produced pursuant to the same. Counsel requested that Plaintiff either proposed revisions to the proposed protective order or approve/endorse the same for filing.

**REQUEST FOR PRODUCTION NO. 21**: Please produce DOCUMENTS showing Turn Key's total annual revenue and expenses for each year since 2019. Please produce DOCUMENTS that show this information in the greatest detail available (i.e., broken down by specific revenue sources and expense categories).

**RESPONSE**:  Defendant objects to this Request as overly broad in both time and scope, vague, unduly burdensome, irrelevant, and seeking information not reasonably calculated to lead to the discovery of admissible evidence. Furthermore, Defendant objects to this request as it seeks private and confidential business information that is wholly unrelated to the subject matter of the pending action and is merely an inappropriate fishing expedition meant to harass, burden, and oppress Defendant. There is no evidence in this case that Defendant's financial condition and/or budget had any causal relationship with Mr. Price's death or Plaintiff's claims in this action, and any discovery into Defendant's financial condition is premature at this time. Additionally, Turn Key was not contracted to provide "mental health services" beyond limited psychiatric services within the Sebastian County Detention Center at any time relevant to Plaintiff's claims. Subject to and without waiving these objections, Defendant directs Plaintiff to the contract and amendments produced herein, Bates Nos. TKHC0258-0274, which set forth the scope of services and contracted for reimbursement amounts for services provided at the Sebastian County Detention Center. Defendant further invites Plaintiff to discuss the narrowing and clarification of this request and the possibility of producing certain limited financial information under Agreed Protective Order.

53

These are proprietary, confidential, and private records of Turn Key, which is not a public entity nor subject to any Arkansas Open Records Act or FOIA requests. Defendant has a legitimate interest in preserving its proprietary and privacy interests in business documents, including the aforementioned documents, and will only agree to produce the same subject to an Agreed Protective Order. **Counsel for Defendant previously forwarded correspondence with a proposed protective order for Plaintiff's counsel's review on May 12, 2023 and clearly indicated at such time that confidential and proprietary business records will only be produced pursuant to the same. Counsel requested that Plaintiff either proposed revisions to the proposed protective order or approve/endorse the same for filing.**

**REQUEST FOR PRODUCTION NO. 22**: Please produce all annual reports, balance sheets, profit and loss statements, income statements, and other DOCUMENTS showing Turn Key's current financial condition, assets, liabilities, and net worth.

**RESPONSE**: Defendant objects to this Request as overly broad in both time and scope, vague, unduly burdensome, irrelevant, and seeking information not reasonably calculated to lead to the discovery of admissible evidence. Furthermore, Defendant objects to this request as it seeks private and confidential business information that is wholly unrelated to the subject matter of the pending action and is merely an inappropriate fishing expedition meant to harass, burden, and oppress Defendant. There is no evidence in this case that Defendant's financial condition and/or budget had any causal relationship with Mr. Price's death or Plaintiff's claims in this action, and any discovery into Defendant's financial condition is premature at this time. Additionally, Turn Key was not contracted to provide "mental health services" beyond limited psychiatric services within the Sebastian County Detention Center at any time relevant to Plaintiff's claims. Subject to and without waiving these objections, Defendant directs Plaintiff to the contract and amendments

54

produced herein, Bates Nos. TKHC0258-0274, which set forth the scope of services and contracted

for reimbursement amounts for services provided at the Sebastian County Detention Center.

Defendant further invites Plaintiff to discuss the narrowing and clarification of this request and the

possibility of producing certain limited financial information under Agreed Protective Order.

These are proprietary, confidential, and private records of Turn Key, which is not a public entity

nor subject to any Arkansas Open Records Act or FOIA requests. Defendant has a legitimate

interest in preserving its proprietary and privacy interests in business documents, including the

aforementioned documents, and will only agree to produce the same subject to an Agreed

Protective Order. **Counsel for Defendant previously forwarded correspondence with a**

**proposed protective order for Plaintiff's counsel's review on May 12, 2023 and clearly**

**indicated at such time that confidential and proprietary business records will only be**

**produced pursuant to the same. Counsel requested that Plaintiff either proposed revisions**

**to the proposed protective order or approve/endorse the same for filing.**

**REQUEST FOR PRODUCTION NO. 23**: Please produce all letters, reports, and other

DOCUMENTS that discuss (a) the prevalence of mental illness in the Sebastian County Jail (i.e.,

the actual or estimated number or proportion of people with a mental illness confined in the jail)

for each year since 2019, or (b) challenges faced by Sebastian County and its jail employees, or

Turn Key and its employees, in providing adequate mental health services to people confined in

the jail.

**RESPONSE**:  Defendant objects to this Request as overly broad in both time and scope,

vague and ambiguous, unduly burdensome, irrelevant, and seeking information not reasonably

calculated to lead to the discovery of admissible evidence. Furthermore, Turn Key was not

contracted to provide "mental health services" beyond limited psychiatric services within the

Sebastian County Detention Center at any time relevant to Plaintiff's claims. Subject to and without waiving these objections, Defendant is currently not aware of any documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 24**: Please produce all call logs, notes, letters, e-mails, and other DOCUMENTS documenting communications between Turn Key employees and any member of Larry Price, Jr.'s family, including Mr. Price's brother, Rodney Price, and his aunt, Beverly Ann Releford.

**RESPONSE**:  Defendant is currently unaware of any documents responsive to this Request outside of what is documented within Mr. Price's medical records, which are produced as Bates Nos. TKHC0001-0256.

**REQUEST FOR PRODUCTION NO. 25**: Please produce DOCUMENTS showing which Turn Key employees and contractors worked in the Sebastian County Jail between August 19, 2020 and August 29, 2021 and the hours they worked there during those dates.

**RESPONSE**:  Defendant objects to this Request as overly broad as to time and scope and unduly burdensome, as Plaintiff's request seeks time records for more than a year in timeframe, which is unreasonable. For the same reasons, Defendant objects to this Request as not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, Defendant will agree to produce limited time records within the Sebastian County Detention Center upon the entry of an Agreed Protective Order. These are proprietary, confidential, and private records of Turn Key, which is not a public entity nor subject to any Arkansas Open Records Act or FOIA requests. Defendant has a legitimate interest in preserving its proprietary and privacy interests in business documents, including the aforementioned documents, and will only agree to produce the same subject to an Agreed Protective Order.

Counsel for Defendant previously forwarded correspondence with a proposed protective order for Plaintiff's counsel's review on May 12, 2023 and clearly indicated at such time that confidential and proprietary business records will only be produced pursuant to the same. Counsel requested that Plaintiff either proposed revisions to the proposed protective order or approve/endorse the same for filing.

**REQUEST FOR PRODUCTION NO. 26**: Please produce all orientation manuals for Turn Key nurses, physicians, physician assistants, psychologists, and other types of medical and mental health providers working at the Sebastian County Jail at any time between August 19, 2020 and August 29, 2021.

**RESPONSE**: Objection. This Request is overly broad, unduly burdensome, not reasonably limited in time or scope, and is not reasonably calculated to lead to the discovery of admissible information. Moreover, Defendant objects inasmuch as this Request is based upon the false premise that Turn Key had any duty or obligation to provide training to the local community mental health personnel who were contracted by Sebastian County to provide mental health services at the Sebastian County Detention Center. Subject to and without waiving the foregoing objections, upon the entry of an Agreed Protective Order, Defendant is agreeable to producing portions of the personnel files of Defendants Lewis and Ferguson which existed prior to August 29, 2021. At the times relevant to Mr. Price's care and treatment, medical staff received on-the-job training during orientation, which included orientation to the facility itself and to Turn Key's policies, procedures, and protocols. Furthermore, Defendant states that it is in the process of locating its training materials which were in effect at the times relevant to Mr. Price's incarceration at the Sebastian County Detention Center and will promptly supplement production if / when such documents are

located, upon the entry of an Agreed Protective Order. These are proprietary, confidential, and private records of Turn Key, which is not a public entity nor subject to any Arkansas Open Records Act or FOIA requests. Defendant has a legitimate interest in preserving its proprietary and privacy interests in business documents, including the aforementioned documents, and will only agree to produce the same subject to an Agreed Protective Order. **Counsel for Defendant previously forwarded correspondence with a proposed protective order for Plaintiff's counsel's review on May 12, 2023 and clearly indicated at such time that confidential and proprietary business records will only be produced pursuant to the same. Counsel requested that Plaintiff either proposed revisions to the proposed protective order or approve/endorse the same for filing.**

**REQUEST FOR PRODUCTION NO. 27**: Please produce all nursing protocols and clinical guidelines applicable at the Sebastian County Jail between August 19, 2020 and August 29, 2021.

**RESPONSE**: Objection. This request is overly broad (scope and time), unduly burdensome, seeks irrelevant information which is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff's "policy, practice, or custom" claim against Defendant is limited to staffing, supervision, and treatment of inmates, like Mr. Price, with serious mental illness. *See* Plt.'s Compl. At the times relevant to Plaintiff's claims, Turn Key was not contracted to provide any mental health crises or mental health services beyond limited psychiatric clinical services during Decedent's incarceration at the Sebastian County Detention Center. On the contrary, Turn Key's contract with Sebastian County specifically provided that all crisis management and mental health evaluations/assessments shall be performed by an independent community mental health provider designated by the Agency, not Turn Key. Moreover, effective January 1, 2020, Sebastian County amended its contract with Turn Key to eliminate the position

58

for eight (8) hours per week of mental health coverage for case management and to serve as a clinical liaison between Turn Key's psychiatrist and the local community health provider. Please see the contract and relevant amendments thereto between Turn Key and Sebastian County, produced herein as Bates Nos. TKHC0258-0274. Finally, this Request seeks confidential and proprietary business records of Defendant.

Subject to and without waiving the foregoing objections, upon the entry of an Agreed Protective Order, Defendant agrees to produce its "Post Hospitalization" Nursing Protocol, which *may have potential* relevance to the claims in this lawsuit.

Defendant further identifies the following Nursing Protocols which were in effect during the timeframe of Mr. Price's incarceration at the Sebastian County Detention Center:

1. Abdominal Pain – Constipation - Diarrhea

2. Alcohol Detox

3. Anxiety / Panic Attack

4. Back Pain

5. Benzo Detox

6. Boils

7. Burns

8. Chest Pain

9. Covid Symptoms

10. Dental Extraction

11. Dental Toothache

12. Dental – Arresting Dental Carious Lesions or Treating Tooth Sensitivity

13. Diabetic – Hypoglycemic

59

14. DSM-5 Criteria for Diagnosis of Opioid Use Disorder

15. Earache

16. Elevated Blood Pressure

17. Fracture

18. Genital Discharge

19. Headache

20. Hunger Strike

21. Laceration

22. Menstrual Cramps

23. Musculoskeletal Pain

24. Nausea / Vomiting

25. Neurological Complaint

26. Nosebleed

27. OB Encounter

28. Opioid – Detox

29. Opioid Use Disorder Protocol

30. Painful Urination

31. Parasitic / Lice

32. Pregnancy

33. Seizures

34. Shortness of Breath

35. Skin Irritations

36. Suture / Staple Removal

37. Upper Respiratory

38. Venipuncture

39. WOWS Protocol

If Plaintiff believes any of the above-listed protocols may have potential relevance to the claims in this lawsuit, Defendant invites Plaintiff to advise of the good faith basis for her belief that such document(s) is/are discoverable and the possibility of producing the same under an Agreed Protective Order. These are proprietary, confidential, and private records of Turn Key, which is not a public entity nor subject to any Arkansas Open Records Act or FOIA requests. Defendant has a legitimate interest in preserving its proprietary and privacy interests in business documents, including the aforementioned documents, and will only agree to produce the same subject to an Agreed Protective Order. **Counsel for Defendant previously forwarded correspondence with a proposed protective order for Plaintiff's counsel's review on May 12, 2023 and clearly indicated at such time that confidential and proprietary business records will only be produced pursuant to the same. Counsel requested that Plaintiff either proposed revisions to the proposed protective order or approve/endorse the same for filing.**

**REQUEST FOR PRODUCTION NO. 28**: Please produce the personnel file of Christeena Ferguson, including all training records, certifications, contracts, complaints, grievances, performance reviews, disciplinary records, position descriptions, and records reflecting employment dates, changes in title or position, and bonus compensation structure. Exclude from your answer purely personal information such as date of birth, home address, social security number, and information that is purely related to base compensation and employment benefits.

**RESPONSE**: Objection. This Request is overly broad (scope and timframe), not reasonably limited in time, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence and seeks information that may be confidential and/or proprietary to Defendant. Subject to and without waiving the foregoing objections, upon the entry of an Agreed Protective Order, Defendant will produce the personnel file of Christeena Ferguson, RN, from the date of her hire through August 29, 2021. Defendant will not withhold production of any documents, regardless of date, which may relate to Larry Eugene Price, Jr. Defendant intends to withhold from production any employee financial, tax, employee benefits, or health records (i.e., W-4s, W-2s, I-9s, Immunization Records, Social Security Cards, and Direct Deposit Forms, Retirement, Health Insurance). These are proprietary, confidential, and private records of Turn Key, which is not a public entity nor subject to any Arkansas Open Records Act or FOIA requests. Defendant has a legitimate interest in preserving its proprietary and privacy interests in business documents, including the aforementioned documents, and will only agree to produce the same subject to an Agreed Protective Order. **Counsel for Defendant previously forwarded correspondence with a proposed protective order for Plaintiff's counsel's review on May 12, 2023 and clearly indicated at such time that confidential and proprietary business records will only be produced pursuant to the same. Counsel requested that Plaintiff either proposed revisions to the proposed protective order or approve/endorse the same for filing.**

**REQUEST FOR PRODUCTION NO. 29**: Please produce the personnel file of Jawaun Lewis, including all training records, certifications, contracts, complaints, grievances, performance reviews, disciplinary records, position descriptions, and records reflecting employment dates, changes in title or position, and bonus compensation structure. Exclude from

your answer purely personal information such as date of birth, home address, social security number, and information that is purely related to base compensation and employment benefits.

    **RESPONSE**:  Objection. This Request is overly broad (scope and timframe), not reasonably limited in time, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence and seeks information that may be confidential and/or proprietary to Defendant. Subject to and without waiving the foregoing objections, upon the entry of an Agreed Protective Order, Defendant will produce the personnel file of Dr. Jawaun Lewis, from the date of his hire through August 29, 2021. Defendant will not withhold production of any documents, regardless of date, which may relate to Larry Eugene Price, Jr. Defendant intends to withhold from production any employee financial, tax, employee benefits, or health records (i.e., W-4s, W-2s, I-9s, Immunization Records, Social Security Cards, and Direct Deposit Forms, Retirement, Health Insurance). These are proprietary, confidential, and private records of Turn Key, which is not a public entity nor subject to any Arkansas Open Records Act or FOIA requests. Defendant has a legitimate interest in preserving its proprietary and privacy interests in business documents, including the aforementioned documents, and will only agree to produce the same subject to an Agreed Protective Order. **Counsel for Defendant previously forwarded correspondence with a proposed protective order for Plaintiff's counsel's review on May 12, 2023 and clearly indicated at such time that confidential and proprietary business records will only be produced pursuant to the same. Counsel requested that Plaintiff either proposed revisions to the proposed protective order or approve/endorse the same for filing.**

    **REQUEST FOR PRODUCTION NO. 30**: Please produce the personnel file of any other Turn Key medical or mental health providers who worked at the Sebastian County Jail between

August 19, 2020 and August 29, 2021, including all training records, certifications, contracts, complaints, grievances, performance reviews, disciplinary records, position descriptions, and records reflecting employment dates, changes in title or position, and bonus compensation structure. Exclude from your answer purely personal information such as date of birth, home address, social security number, and information that is purely related to base compensation and employment benefits.

**RESPONSE**: Objection. This request is overly broad as to scope and time, not reasonably limited in time, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence and seeks information that may be confidential and/or proprietary to Defendant. Subject to and without waiving the foregoing objections, Plaintiff's unfettered request for all personnel files of employees who worked within the Sebastian County Detention Center for over a year, whose care and treatment may not even be at issue in this lawsuit and/or who may not have even provided care and treatment to Mr. Price, is unreasonable and unduly burdensome on its face. Therefore, Defendant requests that Plaintiff narrow this request and identify specific employees whose care Plaintiff believes to be at issue in this lawsuit, and Defendant will produce the portions of such personnel files in effect from date of hire through August 29, 2021 upon the entry of an Agreed Protective Order. Defendant will not withhold production of any documents, regardless of date, which may relate to Larry Eugene Price, Jr.. Defendant intends to withhold from production any employee financial, tax, employee benefits, or health records (i.e., W-4s, W-2s, I-9s, Immunization Records, Social Security Cards, and Direct Deposit Forms, Retirement, Health Insurance). These are proprietary, confidential, and private records of Turn Key, which is not a public entity nor subject to any Arkansas Open Records Act or FOIA requests. Defendant has a legitimate interest in

preserving its proprietary and privacy interests in business documents, including the aforementioned documents, and will only agree to produce the same subject to an Agreed Protective Order. **Counsel for Defendant previously forwarded correspondence with a proposed protective order for Plaintiff's counsel's review on May 12, 2023 and clearly indicated at such time that confidential and proprietary business records will only be produced pursuant to the same. Counsel requested that Plaintiff either proposed revisions to the proposed protective order or approve/endorse the same for filing.**

**REQUEST FOR PRODUCTION NO. 31**: Please produce all DOCUMENTS pertaining to quality improvement/CQI efforts at the Sebastian County Jail from the time you first began providing services there to the present time.

**RESPONSE**: Objection. This Request is vague, ambiguous, unduly burdensome, and overly broad as to time and scope. The care and treatment at issue in this case occurred between August 19, 2020 and August 29, 2021; therefore, any discovery beyond Sebastian County Detention Center after August 29, 2021 has no relevance to this lawsuit and would have no probative value over any of the material issues in this case. Moreover, the Sebastian County Detention Center is not an accredited facility. Therefore, Defendant further objects to this Request as an impermissible fishing expedition and as not being reasonably calculated to lead to the discovery of admissible evidence. Furthermore, Defendant objects to this Request to the extent it is based upon the false assumption that Turn Key was required to maintain a CQI Program at the Sebastian County Detention at the times relevant to this lawsuit. Defendant also objects inasmuch as this Request seeks private, confidential, peer review, and protected information. Subject to and without waiving the foregoing objections, upon the entry of an Agreed Protective Order, Defendant will produce its Policy: J-3, Credentialing / Personnel

65

Qualifications. Defendant is currently unaware of any further documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 32**: Please produce all documents signed by Christeena Ferguson acknowledging the receipt and/or review of orientation materials, policies, procedures, nursing protocols, or clinical guidelines.

**RESPONSE**:  Upon the entry of an Agreed Protective Order, Defendant will produce the requested documents from Christeena Ferguson's personnel file. These are proprietary, confidential, and private records of Turn Key, which is not a public entity nor subject to any Arkansas Open Records Act or FOIA requests. Defendant has a legitimate interest in preserving its proprietary and privacy interests in business documents, including the aforementioned documents, and will only agree to produce the same subject to an Agreed Protective Order. **Counsel for Defendant previously forwarded correspondence with a proposed protective order for Plaintiff's counsel's review on May 12, 2023 and clearly indicated at such time that confidential and proprietary business records will only be produced pursuant to the same. Counsel requested that Plaintiff either proposed revisions to the proposed protective order or approve/endorse the same for filing.**

**REQUEST FOR PRODUCTION NO. 33**: Please produce all contract bids or proposals (including all attachments) that led to Turn Key providing healthcare services at the Sebastian County Jail.

**RESPONSE**: Objection. This Request is overly broad and not reasonably calculated to lead to the discovery of admissible evidence, as the contract between Sebastian County and TurN Key sets forth the agreed-upon scope of services performed by Turn Key within the Sebastian County Detention Center. Moreover, Defendant objects to this Request as seeking confidential and

proprietary business information of which Defendant has a legitimate interest in preventing disclosure to its competitors. Subject to and without waiving the foregoing objections, Defendant will produce any responsive materials, to the extent they exist, upon the entry of an Agreed Protective Order. These are proprietary, confidential, and private records of Turn Key, which is not a public entity nor subject to any Arkansas Open Records Act or FOIA requests. Defendant has a legitimate interest in preserving its proprietary and privacy interests in business documents, including the aforementioned documents, and will only agree to produce the same subject to an Agreed Protective Order. **Counsel for Defendant previously forwarded correspondence with a proposed protective order for Plaintiff's counsel's review on May 12, 2023 and clearly indicated at such time that confidential and proprietary business records will only be produced pursuant to the same. Counsel requested that Plaintiff either proposed revisions to the proposed protective order or approve/endorse the same for filing.**

**REQUEST FOR PRODUCTION NO. 34**: Please produce all DOCUMENTS evidencing communications between Turn Key and Sebastian County regarding monitoring and caring for people confined in segregation in the Sebastian County Jail.

**RESPONSE**: Objection. This Request is vague, ambiguous, compound, unduly burdensome, and overly broad as to time and scope. The care and treatment at issue in this case occurred between August 19, 2020 and August 29, 2021; any discovery after August 29, 2021 has no relevance to this lawsuit and would have no probative value over any of the material issues in this case. Therefore, Defendant further objects to this Request as an impermissible fishing expedition and as not being reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects inasmuch as this Request is based upon the false premise that Turn Key and/or its employees were responsible for performing

segregation checks and/or monitoring checks of Mr. Price while he was confined within the Sebastian County Detention Center.

Subject to and without waiving the foregoing objections, Defendant is continuing to conduct a diligent search for responsive documents and will supplement its Response if / when any responsive documentation prior to and including the dates of care and treatment at issue in this case is discovered.

**REQUEST FOR PRODUCTION NO. 35**: Please produce all expert reports produced to you by a plaintiff in connection with any lawsuit since 2016 alleging negligent or otherwise inadequate medical or mental health care by Turn Key employees or contractors. You may limit your response to expert reports addressing medical or mental health care for someone confined in a city or county jail.

**RESPONSE**: Objection. This Request is unduly burdensome, not reasonably limited in time or scope, and not reasonably calculated to lead to the discovery of admissible evidence, as the documents requested by Plaintiff have no probative value over any of the claims in *this litigation*, which is limited to the care and treatment of Larry Eugene Price, Jr. at the Sebastian County Detention Center from August 19, 2020 through August 29, 2021. This is no more than an impermissible fishing expedition prohibited by the Federal Rules. Defendant further objects to this Request as an improper attempt of Plaintiff to shift Plaintiff's *prima facie* burden of proof onto Defendant. Subject to and without waiving the foregoing objections, Defendant states that it does not maintain the requested documents but instead such litigation records are maintained by Defendant's various outside attorneys of record. Therefore, Defendant is not in possession of any documents responsive to this Request. Defendant is unaware of any expert reports related to the provision of medical and/or mental health services within the Sebastian County Detention Center

68

during in point in time while Defendant has been contracted to provide services at the Sebastian County Detention Center.

**REQUEST FOR PRODUCTION NO. 36**: To the extent not already produced, please produce all DOCUMENTS related to the subject of insufficient food or fluid consumption by an incarcerated person, including all policies, procedures, protocols, guidelines, directives, standing orders, blank input/output forms, and training materials on that subject provided to employees of Turn Key or Sebastian County.

**RESPONSE**:  Objection. This Request is vague, ambiguous, overly broad as to time and scope (as the care and treatment at issue in this case is limited to the Sebastian County Detention Center from August 19, 2020 through August 29, 2021). Defendant further objects as this Request seeks proprietary and confidential business records. Any such records are proprietary, confidential, and private records of Turn Key, which is not a public entity nor subject to any Arkansas Open Records Act or FOIA requests. Defendant has a legitimate interest in preserving its proprietary and privacy interests in business documents, including the aforementioned documents, and will only agree to produce the same subject to an Agreed Protective Order. Subject to and without waiving its objections, Defendant is currently unaware of any additional documents responsive to this Request beyond those identified in response to Plaintiff's foregoing discovery requests.

Respectfully submitted,

Alexandra G. Ah Loy, AR Bar #2020020
HALL BOOTH SMITH, P.C.
6301 Waterford Blvd., Ste. 200
Oklahoma City, OK 73118
Telephone: (405) 513-7111
Facsimile: (405) 768-1414
E-Mail: AllieAhLoy@hallboothsmith.com
*Attorneys for Defendants Turn Key Health*
*Clinics, LLC, Jawaun Lewis, D.O., and*
*Christeena Ferguson*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing *Responses to Plaintiff's First Set of Interrogatories and Requests for Production* was mailed via e-mail on the 7th day of June, 2023, to the following:

Edwin Budge: ed@budgeandheipt.com
Erik Heipt:     erik@budgeandheipt.com
Hank Balson:  hank@budgeandheipt.com
Jason Owens:  owens@jowenslawfirm.com

ALEXANDRA G. AH LOY

<u>The Estate of Larry Eugene Price v. Turn Key Health Clinics, LLC, et al.</u>

Case No. 2:23-cv-02008-PKH

Exhibit G

# BUDGE&HEIPT, PLLC

ATTORNEYS AT LAW

808 East Roy Street
Seattle, WA 98102
Telephone 206-624-3060

**Hank Balson**                                          www.budgeandheipt.com
**hank@budgeandheipt.com**

June 30, 2023

**Via e-mail to** allieahloy@hallboothsmith.com

Allie G. Ah Loy
Hall Booth Smith, P.C.
6301 Waterford Blvd., Suite 200
Oklahoma City, OK 73118

   Re: *Estate of Larry Eugene Price, Jr. v. Turn Key Health Clinics, et al.*

Dear Allie:

I am writing to address a number of problems with your clients' responses to Plaintiff's discovery requests dated April 7 and April 26, 2023. We received your client's responses on June 7 and May 30, 2023, respectively. The issues are outlined below. Please let me know when you are available for a telephone conference over the next couple weeks to discuss them.

There are a few issues that show up repeatedly throughout your clients' discovery responses, so I will address those first.

**Relevant timeframe**: On May 23 I sent you a letter addressing some of your preliminary objections to Plaintiffs' discovery requests, including your intent to withhold responsive documents from after Mr. Price's death. I explained that post-death records may be relevant to proving an established custom or practice and deliberate indifference, both of which are important elements of Plaintiff's *Monell* claims against Turn Key. In addition, I explained that post-incident records may be relevant to Plaintiff's claim for punitive damages. At the end of my letter I asked you to let me know if your positions remained unchanged so that we could schedule time to discuss our areas of disagreement. You never responded. However, when you responded to Plaintiff's RFP No. 37, seeking records pertaining to the recent death of another detainee in the Sebastian County Jail, you asserted multiple objections and refused to produce responsive records.

Although you cited several cases to support your objections, those cases are largely not on point. "[T]he clear majority of case law . . . supports the conclusion that subsequent incidents may be probative of what policies, practices, or accepted customs existed at the time of Plaintiff's [injury], which would be relevant to his *Monell* claims." *Whitt v. City of St. Louis*, No. 4:18-CV-

1294 RLW, 2020 U.S. Dist. LEXIS 228094, at \*24-26 (E.D. Mo. Dec. 4, 2020) (citing numerous cases and denying defendant's motion for protective order).

With regard to your objection based on HIPAA protections, we appreciate that concern, and I am enclosing a proposed HIPAA protective order to address it.

**Incomplete searches for responsive documents**: In response to a number of Plaintiff's requests for production, you made the following boilerplate assertion:

> Defendant is continuing to conduct a diligent search for responsive documents and will supplement its Response if / when any such responsive documents are discovered.

FRCP 34 requires production to be completed "no later than the time for inspection specified in the request or another reasonable time specified in the response." In this case, we agreed to your request for an extension so that the responses were due by June 7, 2023. Your assertion that your clients are continuing to search for responsive documents and will provide them if and when any are found is not acceptable because it neither assures us that all responsive documents have been produced, nor does it tell us when the search will be completed. Instead, it allows your clients to defer production indefinitely.

In addition, based on the documents your clients produced, it appears they have not yet conducted a thorough search for ESI responsive to our requests.

*Please confirm by Monday, July 10, whether your clients have produced all responsive documents in their custody or control, including ESI. If not, please let us know why they have not yet been produced and when we can expect them.*

**Privilege log**: The vast majority of your answers to our interrogatories and requests for production contain the following caveat, or some variation of it: "Subject to and without waiving the foregoing objections . . . ." This caveat leaves us wondering whether any documents or information have been withheld based on the stated objections. *Please provide us with a privilege log by Monday, July 10, identifying all responsive documents and information your clients are withholding based on one or more of the stated objections. With regard to documents, please identify the nature of the document, the author(s), the creation date, all recipients, and the basis for withholding.* You need not include direct communications between a defendant and his or her attorney, made for the purpose of giving or receiving legal advice and not shared with others. But if there are communications on which an attorney was merely copied, those should be included in the log.

**Interrogatory numbering**: We disagree with how you renumbered our interrogatories, and we dispute your objections claiming that we exceeded the maximum number of interrogatories, particularly in light of the fact that the parties agreed to increase the maximum number to 30.

**Agreed protective order**: You identified several types of documents that your clients claim they will not produce without an agreed protective order. We disagree that all of these documents are

the sort that warrant a protective order. Nevertheless, Plaintiff is willing to stipulate to a protective order in order to facilitate discovery without further delay. Please see our proposed edits to the protective order you drafted, which I am sending you with this letter.

Below are summaries of additional issues raised by specific discovery responses:

## DEFENDANT TURN KEY'S DISCOVERY RESPONSES

**Interrogatory No. 1:** This interrogatory asks your clients to identify the people they believe may have relevant knowledge and to summarize the knowledge it believes each person may have. In response your clients identified several former Turn Key employees. However, instead of providing us with their current or last-known personal contact information, as called for, you indicated they can be contacted through your law firm. Are you aware of legal authority that would prohibit us from contacting these former employees directly? If not, *please provide us with their current or last-known mailing addresses, telephone numbers, and e-mail addresses.*

**Interrogatory No. 2**: The answer to this interrogatory contains a caveat: " . . . as Defendant interprets this Interrogatory . . . ." *I would like to understand how you are interpreting the interrogatory to determine whether or not your interpretation is correct. In addition, I ask that Turn Key please supplement its answer to describe Danny Hickman, Donna Roberts, and Absalom Tilly's responsibilities with respect to Turn Key's services at the Sebastian County Jail, as the interrogatory requests.*

**Interrogatory No. 9**: This interrogatory asks Turn Key to describe all training provided to its employees and contractors who provided services at the Sebastian County Jail between August 19, 2020 and August 29, 2021. Your client identified and briefly described the onboarding training it provided to nurses when the company started operating at the jail. It also noted that it provides training to nurses upon hire, and "ongoing training as needed." However, it did not describe the new-hire training or any of the "ongoing trainings" provided to employees who worked during the relevant timeframe. It also failed to provide the following information called for by the interrogatory: who provided the "ongoing trainings," who completed them, and when. Also, did Turn Key provide training to any employees other than nurses? *Please have your client supplement its answer to provide the missing information.*

You stated that answering this interrogatory would be "unduly burdensome in that it would require Defendant to review the personnel file of every single medical professional who worked within the Sebastian County Detention Center for over a year." How many people are we talking about? Have you asked your client about ways to gather the responsive information without going through individual personnel files? For example, are there sign-in sheets identifying who attended the onboarding training and other training? Is employee training information maintained electronically, such that Turn Key could run a report identifying the training completed by all employees who worked at the jail during the requested timeframe?

**Interrogatory No. 10**: This interrogatory pertains to training provided by Turn Key to Sebastian County Jail employees and contractors. Your client failed to describe any of the training it identified and failed to identify the individuals who completed the training and when. Did Turn Key not create any sort of documentation to confirm who completed the training and when? *Please have your client supplement its answer to include all of the information called for by the interrogatory.*

**Interrogatory No. 13**: This interrogatory seeks information about other Turn Key patients who have died since January 1, 2016, including the approximate date of the person's death, the cause of death, and whether the death resulted in a claim for compensation by the decedent's family or estate. You asserted multiple objections to this interrogatory, including as to its scope, and Turn Key limited its answer to identifying only those deaths that occurred at the Sebastian County Jail prior to August 30, 2021. Even with respect to those death, it did not identify the cause of death and did not state whether or not it resulted in a claim. Deaths that have occurred at facilities other than the Sebastian County Jail and deaths that occurred after August 30, 2021 are relevant to Plaintiff's *Monell* claims, as they are aimed at helping Plaintiff to identify known and systemic deficiencies in Turn Key's policies and practices that expose patients to substantial risks of serious harm. *Please have your client provide a complete answer to this interrogatory.* Enclosed is a HIPAA-compliant protective order to address concerns about disclosing individual patient information.

**Interrogatory No. 14**: This interrogatory seeks information about lawsuits filed against Turn Key and its employees by former patients or their families. Again, you asserted multiple objections, including as to the interrogatory's scope and the burden of providing the requested information. You stated that the information sought "is just as easily accessible to Plaintiff from public records." But you also stated that your client would require a protective order before providing even a limited answer to this interrogatory. If the information is available from public records, as you claim, on what basis does the information warrant a protective order? We do not agree to limit the scope of the interrogatory as you indicate. Information about lawsuits filed by patients outside of Arkansas and after August 30, 2021 are relevant to Plaintiff's *Monell* claims, as it may help Plaintiff to identify known and systemic deficiencies in Turn Key's policies and practices that expose patients to substantial risks of serious harm. Further, we dispute that the requested information is available to us just as easily as it is to you. Turn Key undoubtedly keeps track of litigation involving the company and its employees, and that information is surely available to your client in some form. In contrast, for Plaintiff to obtain the requested information through public records, it would have to search the records of every state and federal trial court in all states where Turn Key operates, including those courts that do not make electronic records available to the public, and it would have to know the name of every Turn Key employee since 2016. *Please have your client provide a complete answer to this interrogatory.*

To address your concern about the burden of providing the requested information, Turn Key may limit its answer to lawsuits in which the plaintiff(s) was represented by counsel at some point during the litigation.

**Interrogatory No. 15**: Notwithstanding the multiple objections you made to this interrogatory, your client provided a partial answer, identifying the people responsible for revising the small

site policies, procedures, and protocols in December 2020. *Please have Turn Key supplement its answer to identify the person or persons responsible for approving the revised policies, procedures, and protocols, as well as the persons responsible for drafting and approving the ones in effect prior to December 2020.*

**Interrogatory No. 16**: Notwithstanding the multiple objections you made to this interrogatory, your client provided a partial answer, identifying three people who conducted a mortality review of Mr. Price's death. *Please have Turn Key supplement its answer to identify all people who provided information relevant to the review and all people to whom Turn Key provided information about the results of the review.*

**Interrogatory No. 17**: This interrogatory asks Turn Key to identify all persons and entities that conducted an audit or review of the medical or mental health services at the jail since January 2016. Notwithstanding multiple objections, Turn Key answered in part, "[T]he individuals identified in Defendant's Answer to Plaintiff's Interrogatory No. 2 . . . *may have* performed on-site audits and/or reviews of the medical services at the Sebastian County Detention Center." (Emphasis added.) It is not sufficient for Turn Key to answer this interrogatory by speculating about who "may have" conducted audits or reviews. Your client has a duty to inquire by asking its employees whether or not they performed such audits or reviews and by searching for documentation that would confirm such audits or reviews took place. (According to the County's interrogatory answers, "Turnkey performs internal audits for compliance.")

Your client also stated, "[B]ecause Turn Key was never contracted to provide mental health services beyond the limited psychiatric services identified within the contract . . . Turn Key was not responsible for performing audits and/or reviews of the mental health services provided by outside agencies at the [jail]." This answer is nonresponsive. Regardless of whether Turn Key was responsible for auditing services provided by outside agencies, if it audited or reviewed mental health services at the jail—including the psychiatric services Turn Key was obligated to provide—it must identify the persons who performed those audits/reviews.

*Please have your client supplement its answer to provide the missing information identified above.*

**Interrogatory No. 18**: This interrogatory asks Turn Key to identify "every jail, prison, or other facility where Turn Key has had a contract to provide medical or mental health services since 2015 and state whether Turn Key still has a contract to provide services for each facility identified." You asserted multiple objections and your client provided a partial answer, listing the names and locations of county jails where Turn Key was operating between August 2020 and August 2021. Your client did not say whether or not it is still contracted at those facilities, as called for by the interrogatory. It also did not identify any contracts it had with facilities other than county jails, such as state prisons or other facilities with which the company may contract. Contrary to your objection, Turn Key's contracts post-August 2021 may lead to admissible evidence concerning the reach of the company's policies and practices, and thus the scope of the risk posed by those policies and practices. *Please have Turn Key provide a complete answer to this interrogatory with respect to the contracts it has had since January 1, 2020.* It may, for now, omit information about its contracts from prior to that date.

**Verification**: Your client failed to verify and sign its interrogatory answers, as required under Fed. R. Civ. P. 33(b)(3) and (5). *Please have it do so.*

\*     \*     \*

**Request for Production No. 1**: This request seeks all documents that refer or pertain to Larry Price, Jr. You asserted multiple objections and then stated that Turn Key is unaware of any responsive records other than Mr. Price's medical records and attorney-client communications. You also wrote that Turn Key "is continuing to conduct a diligent search for responsive documents." See p. 1 of this letter regarding your client's incomplete search efforts. It is extremely difficult to believe that following the unexpected death of one of its patients, Turn Key would not have a single document referencing or pertaining to the patient other than his medical chart—no e-mails, no text messages, no notes of conversations or interviews, no death-related forms, no incident reports, no Unusual Occurrence Reports, no investigatory records, no notes or documents related to any mortality reviews, etc. In fact, your client acknowledged having such a document in its answer to Interrogatory No. 4—the Unusual Occurrence Report submitted by Misty Williams. *I ask that you please (1) produce the Unusual Occurrence Report referenced in response to Interrogatory No. 4, (2) describe the steps your client took to conduct its "diligent search," and (3) confirm whether or not its statement denying the existence of any responsive documents (other than Mr. Price's medical records) is accurate. Also, if Turn Key is withholding any documents based on the attorney-client privilege, please provide a privilege log. You need not include direct communications between a defendant and his or her attorney, made for the purpose of giving or receiving legal advice and not shared with others. But if there are communications on which an attorney was merely copied, those should be included in the log.*

**Request for Production No. 2:** Can you explain why it is not possible to generate an audit trail for Mr. Price's electronic medical record? It is my understanding that this is a standard feature of most EMR systems.

**Request for Production No. 3**: This request pertains to Turn Key's policies and procedures and related documents. You stated your client will produce only selected policies, and only under a protective order. *Please see our enclosed edits to your proposed protective order.* In addition, Turn Key neither identified nor produced any memoranda, e-mails, notices, and other documents provided to its employees or contractors regarding its policies, procedures, and protocols, as called for the RFP. *If Turn Key is claiming no such documents exist, please describe the search it conducted to locate them.*

**Requests for Production Nos. 5 and 6**: These requests seek documents pertaining to any efforts by Turn Key to investigate the circumstances of Mr. Price's death, including any mortality review. Your client acknowledged conducting a mortality review but denied that the review resulted in any written report. Is Turn Key also claiming no other related documents exist, such as e-mails between the persons who conducted the mortality review, e-mails from those persons to other Turn Key or Sebastian County officials, interview summaries, handwritten notes, draft reports, etc.? Did it conduct a search for such materials? *Please confirm. Also, if Turn Key is withholding any documents based on the attorney-client privilege, please provide a privilege log.*

**Request for Production No. 7**: This request pertains to mortality reviews conducted by Turn Key following other patient deaths. Notwithstanding multiple objections, you stated, "Defendant states that it is performing a diligent search to determine whether any written death reviews exist for the previously-stated inmates deaths . . . ." *Please see p. 1 of this letter regarding Turn Key's incomplete search efforts. In addition, please see the enclosed HIPAA protective order to address patient privacy concerns.*

**Request for Production No. 8**: This request seeks documents pertaining to audits or reviews of the medical and mental health services at the Sebastian County Jail since 2016. Notwithstanding multiple objections, you stated that Turn Key will produce site statistics for the jail from 2019 through August 30, 2021, but only under a protective order. *Please see our edits to your proposed protective order.* I disagree that Turn Key may properly limit its production to the timeframe stated. Also, did your client search for responsive documents other than the site statistics, such as e-mails, reports, audit forms, etc.? *Please confirm whether such a search was conducted and whether or not any responsive documents exist.*

**Request for Production No. 10:** *Please see our edits to your proposed protective order.*

**Request for Production No. 11:** *Please see p. 1 of this letter regarding your client's incomplete search efforts.*

**Request for Production No. 12:** Turn Key's response to this request contained the following caveat: "as Defendant interprets this request . . . ." *In order to avoid any miscommunications, please tell me how your client is interpreting this request.*

**Request for Production No. 13**: *Please see our edits to your proposed protective order.*

**Request for Production No. 14**: This RFP requests copies of all insurance agreements that may cover your clients for any judgment that might be entered against them in this case, along with related documents. Turn Key responded that it will produce these materials only upon the entry of a protective order. The Federal Rules of Civil Procedure require all parties to produce these records. *See* Fed. R. Civ. P. 26(a)(1)(iv). Turn Key is not exempt from this requirement. *Please have your client produce all documents responsive to this request.*

**Request for Production No. 15**: This request seeks documents pertaining to allegations of inadequate medical or mental health care at the Sebastian County Jail. Turn Key responded that it will not produce any health information pertaining to other patients. *Please see the enclosed HIPAA protective order that addresses this concern.* Turn Key also claimed it "does not maintain such information in any format which would make it possible for [it] to retrieve [responsive information]" and produced no responsive documents other than Mr. Price's medical records. Surely Turn Key has access to responsive documents in the form of state and federal legal complaints. What about allegations and complaints made to state regulatory agencies, if any? *Please describe what efforts your client made, if any, to locate responsive documents.*

**Request for Production No. 16**: *Please see p. 1 of this letter regarding Turn Key's incomplete search efforts. In addition, please see our edits to your proposed protective order.*

**Request for Production No. 17**: *Please see p. 1 of this letter regarding Turn Key's incomplete search efforts. In addition, please see our edits to your proposed protective order.*

**Requests for Production Nos. 18-22**: *Please see p. 1 of this letter regarding Turn Key's incomplete search efforts. In addition, please see our edits to your proposed protective order.*

**Request for Production No. 23**: This request seeks documents discussing the prevalence of mental illness in the Sebastian County Jail and challenges faced in providing adequate mental health services to people in the jail. Notwithstanding the multiple objections you asserted, Turn Key answered that it "is currently not aware of any" responsive documents. This answer is surprising. Turn Key's contract with Sebastian County includes up to eight hours of psychiatric clinical services per week. During the first three months of its operations at the Sebastian County Jail, Turn Key also agreed to provide up to eight hours per week of additional mental health coverage in the form of case management and clinical liaison services. Were these terms random, or were they based on an estimate of need that considered the prevalence of mental illness at the jail? Does Turn Key not keep track of the number of referrals it makes for psychiatric and other mental health services? Has the County never provided Turn Key with *any* information about the topics identified in this RFP?

**Request for Production No. 25**: This RFP requests information about medical staffing at the jail during the period of Mr. Price's detention. Following multiple objections, Turn Key stated it would agree to produce "limited time records . . . upon the entry of an Agreed Protective Order." *Please see our edits to your proposed protective order.* I'm not sure what sorts of limitations your client is contemplating, but if it intends to limit its response to a shorter time period or to only current employees, that will not be acceptable. If it would be less burdensome, Turn Key may produce staffing schedules for the requested period, rather than records showing time actually worked.

**Request for Production No. 26**: *Please see p. 1 of this letter regarding Turn Key's incomplete search efforts. In addition, please see our edits to your proposed protective order.*

**Request for Production No. 27**: In addition to the nursing protocol regarding Post Hospitalization, *please have your client produce the following nursing protocols listed in response to this request*:

- Anxiety/Panic Attack
- Covid Symptoms
- Hunger Strike

*Also, please let me know what WOWS stands for ("WOWS Protocol") and whether there were any nursing protocols in place between August 2020 and August 2021 that are not listed in Turn Key's response to this RFP.*

**Requests for Production Nos. 28 and 29**: We do not object to Turn Key withholding or redacting the following documents and information in response to this request for Defendants' personnel files: immunization records and other personal health information, Social Security Numbers, employee benefits information, I-9 forms, W-4 forms, W-2 forms, and direct deposit forms. However, I disagree that your client may properly limit its production in the other ways described in its response and *I ask that you have it produce Defendants' complete personnel files, minus the documents and information listed above. Please see our edits to your proposed protective order.*

**Request for Production No. 30**: We agree to your proposal that we identify specific employees whose personnel files we would like to review. For now I ask that you produce the personnel file for Morgan Matlock, RN, the former Health Services Administrator. We may identify other employees as the case proceeds.

**Request for Production No. 31**: I don't understand the statement, "Defendant is currently unaware of any further documents responsive to this Request." This implies that while Turn Key is not *currently* aware of any responsive documents, it may become aware of such documents at some point in the future. Has Turn Key ever conducted any quality improvement/CQI activities pertaining to its services at the Sebastian County Jail? If so, it must produce the related documents. If not, then it should simply state that no responsive documents exist.

**Request for Production No. 32**: *Please see our edits to your proposed protective order.*

**Request for Production No. 33**: *Please see our edits to your proposed protective order.*

**Request for Production No. 34**: *Please see p. 1 of this letter regarding Turn Key's incomplete search efforts. In addition, please see our edits to your proposed protective order.*

**Request for Production No. 37**: This RFP requests records pertaining to Michael Cooper, who died at the Sebastian County Jail earlier this year. You asserted numerous objections and Turn Key did not produce the requested records. With respect to your objection to producing personal health information protected under HIPAA, *please see the enclosed HIPAA-compliant protective order to address that concern.* I disagree with your contention that information about Mr. Cooper's death has no relevance to the claims in this litigation.

## DEFENDANT JAWAUN LEWIS'S DISCOVERY RESPONSES

**Interrogatory No. 3**: This interrogatory asks Dr. Lewis to describe the training and education he has received *specifically* on the subjects of medical or mental health care for incarcerated people. Dr. Lewis's answer was vague and nonresponsive. He referred to his "years of education, training, and experience as a psychiatrist," and "ongoing CMEs on a variety of topics each year." But he did not identify or describe a single example of training or education on the specific subjects of medical or mental health care for incarcerated people. *Please have Dr. Lewis supplement his answer by providing the specific information requested. If he has not received any training or education on these specific subjects, he can state that.*

**Interrogatory No. 6:** This interrogatory seeks information about Dr. Lewis's involvement in Mr. Price's care between August 2020 and August 2021. You asserted multiple objections, including one I have never seen before: "Defendant further objects inasmuch as the information sought is better suited for deposition discovery, as this Request constitutes improper shotgun discovery proscribed by the Federal Rules of Civil Procedure." Dr. Lewis then answered that to the best of his information and belief, his "interactions with Mr. Price are contained in the medical records," but that he is "amenable to expounding on his memory and respond to specific questions in a deposition setting." Despite your objection, Dr. Lewis may not properly withhold information in response to an interrogatory simply because he would prefer to "expound" in a deposition. *If Dr. Lewis has any information responsive to this interrogatory that is not contained in Mr. Price's medical records, please have him supplement his answer to include it.*

**Interrogatory No. 7**: This interrogatory seeks information about Dr. Lewis's communications about Mr. Price's treatment, confinement, or death. You asserted the same objections as you asserted in response to Interrogatory No. 6. Dr. Lewis then answered that his communications with medical personnel related to Mr. Price are contained in Mr. Price's medical records. He also stated that he likely discussed Mr. Price's care with Turn Key's chief medical officer, but that he doesn't recall the specifics of the conversation. Finally, he noted, as he did in his previous answer, that he is "amenable to expounding on his memory" and answering specific questions in a deposition. Again, Dr. Lewis may not properly withhold information responsive to this interrogatory simply because he would prefer to provide it in a deposition.

Dr. Lewis also failed to identify and describe the communications he had with Donna Roberts, Morgan Matlock, and any other Turn Key employees relating to the mortality review in which he participated. *Please have Dr. Lewis supplement his answer with this and any other information responsive to this request (e.g., communications with Sebastian County officials, nursing staff, etc.).*

**Interrogatory No. 10:** This interrogatory asks Dr. Lewis to identify the policies, procedures, protocols, etc. that governed or pertained to his work as a medical caregiver at the Sebastian County Jail. Notwithstanding multiple objections, Dr. Lewis answered that he is not in possession of Turn Key policies, procedures, etc. and told us to direct this request to Turn Key. This interrogatory does not require Dr. Lewis to produce documents; it only requires him to answer the question posed. It is hard to believe that Turn Key's Director of Psychiatry does not

10

have access to all policies, procedures, and other documents he might need to refer to in order to answer this Interrogatory, especially given that he still maintains responsibilities as a treating psychiatrist. *If that is truly the case, please let me know. Otherwise, please have Dr. Lewis answer this interrogatory.*

**Interrogatory No. 11**: This interrogatory calls for Dr. Lewis to identify the Turn Key medical and mental health personnel he supervised in 2020 and 2021. He answered that he did not supervise any personnel *at Sebastian County* during that timeframe. The interrogatory is not limited to Sebastian County and neither should your client's answer be limited as such. *Please have Dr. Lewis provide a complete answer to this interrogatory.*

**Verification**: Dr. Lewis failed to verify and sign his interrogatory answers, as required under Fed. R. Civ. P. 33(b)(3) and (5). *Please have him do so.*

*     *     *

**Request for Production No. 1**: *Please confirm whether or not Dr. Lewis (or someone on his behalf) conducted a search for ESI responsive to this request prior to responding.*

**Request for Production No. 5**: This is a request for copies of written communications related to Interrogatories 7 and 9. However, in restating the request, Defendant erroneously referred to Interrogatories 9 and 10. *Please confirm whether Dr. Lewis (or someone on his behalf) conducted a search for documents (including ESI) related to Interrogatories 7 and 9 prior to responding to this request.*

**Request for Production No. 11**: This request seeks documents pertaining to the prevalence of mental illness in the Sebastian County Jail and challenges faced in providing adequate mental health services to those confined there. You asserted multiple objections. Dr. Lewis then answered, **"Subject to and without waiving the foregoing objections, Defendant states she [sic] is not in possession, custody, or control of any documents responsive to this request."** *Is Dr. Lewis withholding any documents based on your objections? Regardless of whether he believes he has possession, custody, or control of such documents, does he have access to such documents or is he aware of any? Did he conduct a reasonable search for such documents, including ESI?*

**Request for Production No. 14**: Just to confirm, is Dr. Lewis stating that as Turn Key's Director of Psychiatry, he does not possess copies of mental health treatment protocols that he himself helped draft?

## DEFENDANT CHRISTINA FERGUSON'S DISCOVERY RESPONSES

**Verification of interrogatory answers**: Ms. Ferguson failed to verify and sign her interrogatory answers, as required under Fed. R. Civ. P. 33(b)(3) and (5). *Please have her do so.*

*      *      *

**Request for Production No. 1**: *Please see our edits to your proposed protective order.*

**Request for Production No. 5**: This RFP requests written communications between Ms. Ferguson and others pertaining to Mr. Price and to concerns about medical and mental health services at the jail. You asserted multiple objections, including a statement that the request "seeks information that may be protected by the attorney-client and/or the work-product privileges." *Is your client withholding any documents based on this objection? If so, please identify them on a privilege log.*

**Request for Production No. 11**: This request seeks documents pertaining to the prevalence of mental illness in the Sebastian County Jail and challenges faced in providing adequate mental health services to those confined there. You asserted multiple objections. Ms. Ferguson then answered, "Subject to and without waiving the foregoing objections, Defendant states she is not in possession, custody, or control of any documents responsive to this request." *Is Ms. Ferguson withholding any documents based on your objections? Regardless of whether she believes she has possession, custody, or control of such documents, does she have access to such documents or is she aware of any? Did she conduct a reasonable search for such documents, including ESI?*

Thank you for your attention to these issues. I look forward to talking with you soon with the hope that we can resolve most or all of them.

Sincerely,

s/ Hank Balson

cc (via e-mail):      Jason Owens, counsel for Defendant Sebastian County

<u>The Estate of Larry Eugene Price v. Turn Key Health Clinics, LLC, et al.</u>

Case No. 2:23-cv-02008-PKH

Exhibit H

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF ARKANSAS**
**FORT SMITH DIVISION**

| | |
|---|---|
| THE ESTATE OF LARRY EUGENE PRICE JR, by and through its Special Administrator, Rodney Price,<br><br>     PLAINTIFF,<br><br>     v.<br><br>TURN KEY HEALTH CLINICS, LLC, an Oklahoma corporation; SEBASTIAN COUNTY, ARKANSAS; JAWAUN LEWIS, DO; CHRISTEENA FERGUSON; and J. DOES 1-20,<br><br>     DEFENDANTS. | No. 2:23-cv-02008 PKH |

**QUALIFIED PROTECTIVE ORDER**

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure and 45 C.F.R. § 164.512(e)(1), the Court makes the following findings:

1.      The claims in this lawsuit involve Defendants' healthcare policies, customs, and practices.

2.      Defendants may be asked to produce protected health information during the course of discovery.

3.      Federal law prohibits Defendants from disclosing protected health information except under specific circumstances. *See*, *e.g.*, 45 C.F.R. § 164.502(a). One situation in which disclosure is permitted is for use in judicial proceedings. 45 C.F.R. § 164.512(e).

1

4.      This protective order is necessary to prohibit the use and dissemination of protected healthcare information disclosed in this litigation except as required to prosecute or defend this case.

THEREFORE, the Court finds good cause to issue this Qualified Protective Order and ORDERS as follows:

5.      The parties and their attorneys, and any future parties and their attorneys, in the above-captioned litigation are authorized to disclose, transmit, and receive "**protected heath information**" **to the extent and subject to the conditions outlined** below.

6.      **For the purposes of this order, "protected health information" shall have the same** scope and definition as set forth in 45 C.F.R. §§ 160.103 and 164.501. Protected health information includes, but is not limited to, health information, including information relating to either: (a) the past, present, or future physical or mental condition of an individual; (b) the provision of care to an individual; or (c) the payment for care provided to an individual, which identifies the individual or which reasonably could be expected to identify the individual.

7.      All defendants in this litigation are hereby authorized to disclose **to Plaintiff's** attorneys protected health information pertaining to any person identified by Plaintiff who has been (1) confined in the Sebastian County Jail, or (2) confined in any jail where Defendant Turn Key Health Clinics, Inc. has had a contract to provide healthcare services, including mental health services.

8.      The parties and their attorneys shall be permitted to use or disclose the protected health information referenced in ¶ 3 only for purposes of prosecuting or defending this action, including any appeals of this case. This includes, but is not necessarily limited to, disclosure to

their attorneys, experts, consultants, court personnel, court reporters, copy services, trial consultants, and other entities or persons involved in the litigation process.

9.      Prior to disclosing the protected health information to persons involved in this litigation, counsel shall inform each such person that the protected health information may not be used or disclosed for any purpose other than this litigation. Counsel shall take all other reasonable steps to ensure that persons receiving the protected health information do not use or disclose such information for any purpose other than this litigation.

10.     Within 45 days after the conclusion of the litigation, including appeals, the parties, their attorneys, and any other person or entity in possession of protected health information received from counsel pursuant to ¶ 4 of this order shall return the protected health information to the party that produced it or destroy all copies of the protected health information, except that counsel are not required to secure the return or destruction of protected health information submitted to the court.

11.     This Order does not apply to protected health information pertaining to Larry Eugene Price, Jr.

12.     This order does not authorize any party to seal court filings or court proceedings. The Court will make a good cause determination for filing under seal if and when the parties seek to file protected health information under seal.


        Dated this ____ day of _____, 2023.


                                                    _____
                                                    P.K. HOLMES, III
                                                    United States District Court Judge

Agreed to on this __ day of _____, 2023 by:

BUDGE & HEIPT, PLLC                    HALL BOOTH SMITH, P.C.
808 E. Roy St.                         6301 Waterford Blvd., Suite 200
Seattle, WA 98102                      Oklahoma City, OK 73118
(206) 624-3060                         (405) 513-7111


 s/_____             s/_____
Erik J. Heipt erik@budgeandheipt.com   Alexandra G. Ah Loy
Hank Balson hank@budgeandheipt.com     allieahloy@hallboothsmith.com
Edwin S. Budge ed@budgeandheipt.com    *Attorneys for Defendants Turn Key Health*
*Attorneys for Plaintiff*              *Clinics, LLC; Jawaun Lewis, DO; and*
                                       *Christeena Ferguson*


JASON OWENS LAW FIRM, P.A.
P.O. Box 850
Conway, AR 72033-0850
(501) 764-4334


 s/_____
Jason Owens owens@jowenslawfirm.com
*Attorneys for Defendant Sebastian County,*
*Arkansas*

4

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on the date stated below this document was filed with the

Clerk of the Court for the United States District Court for the Western District of Arkansas via

the CM/ECF system, which will send notification of such filing to the following e-mail

addresses:

Alexandra G. Ah Loy allie@sdh.law

*Attorney for Defendants Turn Key Health Clinics, LLC; Jawaun Lewis, DO; and Christeena Ferguson*

Jason Owens owens@jowenslawfirm.com

*Attorney for Defendant Sebastian County, Arkansas*

Dated this 22nd day of March, 2023.

  s/ *Hank Balson*_____
Hank Balson

<u>The Estate of Larry Eugene Price v. Turn Key Health Clinics, LLC, et al.</u>

Case No. 2:23-cv-02008-PKH

Exhibit I

## Hank Balson

| | |
|---|---|
| **From:** | Hank Balson |
| **Sent:** | Monday, July 17, 2023 7:25 PM |
| **To:** | allieahloy@hallboothsmith.com |
| **Cc:** | Erik Heipt |
| **Subject:** | Price discovery follow-up |
| **Attachments:** | Price Protective Order (7.17.23).docx |

Hi Allie,

Attached is the revised protective order, as we discussed. I adopted all the changes you were okay with, added a section about filing documents under seal, and added some language to provide a cushion for correcting oversights in failing to designate something as confidential. Let me know if these look okay to you.

If my notes are accurate, here is what we agreed during our discovery conference today. Let me know if your notes or memory differ.

- I clarified that the proposed HIPAA protective order does not require anybody to produce any particular records; it just provides protection in the event personal health information ends up being produced. Nevertheless, my understanding is that Turn Key will not stipulate to the entry of a HIPAA protective order.

- Turn Key is willing to produce records dated up to 30 days after Mr. Price's death, but will not produce records dated or pertaining to events that occurred after that. We acknowledged this will likely result in a motion to compel.

- You told me you have not withheld any documents based on a claim of privilege. Going forward, if you withhold document based on privilege, you will identify them on a privilege log, unless it was a direct communication just between you and your client after your became outside counsel.

- **Interrogatory No. 1**: You told me you have representation agreements with most or all of the current and former Turn Key employees identified Turn Key's interrogatory answers. However, you will confirm that and will provide me with the contact information of anyone you do not represent.

- **Interrogatory No. 2:** You will double-check to confirm you have identified all Turn Key employees, including those with corporate or regional roles, who had any responsibilities related to Turn Key's contract with the Sebastian County Jail.

- **Interrogatories No. 9-10**: You confirmed that when Turn Key provided training to jail staff, it did not keep track of who attended. You explained that training records for Turn Key employees are maintained in each employee's personnel file and that in order to answer the interrogatory, your client would have to go through the file of each individual identified in its answer to Interrogatory No. 1. We agreed that for now, it is sufficient for Turn Key to produce the training checklists for employees we specifically identify. However, we may request all of the checklists at some point down the road. You told me that apart from the onboarding training provided to new employees, the only training Turn Key employees at the Sebastian County Jail received was informal training during staff meetings. Finally, you told me you will be producing all of the training materials used in the onboarding trainings and in the trainings that Turn Key provided to jail staff.

- **Interrogatory No. 13**: You will have your client supplement its answer to provide the names of the persons identified, the cause of death (if known), and whether or not the death resulted in a claim for compensation.

However, Turn Key will not produce medical records pertaining to these other deaths and will not provide information about deaths that occurred in facilities other than the Sebastian County Jail.

- **Interrogatory No. 14**: Turn Key will supplement its answer to provide a list of litigation for the past five years. You told me this is as far back as their documentation goes. Turn Key will also provide a list of the claims that resulted in a settlement.

- **Interrogatory No. 15**: The chief medical officer was responsible for drafting and approving the small-site policies. You will have your client supplement its answer to that effect.

- **Interrogatory No. 16**: You will have Turn Key supplement its answer to this interrogatory.

- **Interrogatory No. 17**: You explained that Turn Key's self-audits were informal and did not generate any written documentation. However, you will have your client supplement its answer to confirm the identities of those who performed the audits.

- **Interrogatory No. 18**: You will have your client supplement its answer to identify those facilities in its answer that are still served by Turn Key. You told me your client will not identify facilities where it has operated outside of the August 2020 – August 2021 timeframe.

- **Verification**: You will provide a verification for Turn Key's interrogatory answers.

- **RFP No. 1**: You will have your client produce the Unusual Occurrence Report referenced in response to Interrogatory No. 4. In addition, Turn Key hired a IT vendor to conduct and ESI search, the result of which were provided to you. You are in the process of reviewing the e-mails and will produce them to us by July 31. I see you sent me the search parameters your client used. I will take a look at those and let you know if we have anything to add. Apart from the e-mails, you told me there are no responsive text messages, notes, interview summaries, unusual occurrence forms, or other documents responsive to our requests.

- **RFP No. 2**: You told me that according to CoreEMR, users have to pay extra to enable their system to generate audit trails. Turn Key did not know this and therefore did not have that feature at the time. CoreEMR states it is no longer possible to generate an audit trail from the period of Mr. Price's detention.

- **RFP No.** 3: You indicated that any responsive documents, apart form the policies themselves, should be in the e-mails you will be producing. You told me you will be providing a complete set of policies and procedures, including all revisions, for the period when Mr. Price was in the jail. If we want to see subsequent revisions of specific policies, we can request them and you will produce them.

- **RFP Nos. 5 and 6**: You confirmed there are no handwritten notes, drafts, or other documents pertaining to the mortality review, except possibly e-mails, which you will produce.

- **RFP No. 7**: You told me you will supplement the response to this request.

- **RFP No. 8**: Your client told you it has no documents responsive to this request, other than the site statistics. I understand you asked your client to search again and are waiting for a response. You will supplement if any additional documents are identified. In addition, you will produce the site statistics, but only for the period of August 2020 through August 2021. Turn Key will not produce site statistics outside of that timeframe.

- **RFP No. 12**: You told me Turn Key generally does not maintain documentation of records request.

- **RFP No. 14**: You will produce Turn Key's complete insurance policy (which covers individual employees as well as the company) as soon as you receive it from the adjuster.

- **RFP No. 15**: You will provide the documents responsive to this request.

- **RFP No. 23**: You confirmed that Turn Key is not aware of any responsive documents.

- **RFP No. 25**: You told me you will produce the responsive time records for the entire duration of Larry Price's confinement. You will also ask Dr. Lewis if he kept track of the hours he spent doing work for the Sebastian County contract.

- **RFP No. 27**: You told me you will provide the identified nursing protocols, including the WOWS protocol.

- **RFP Nos. 28-30**: You told me you will produce the identified personnel files, as limited in your initial response. However, you will also provide a list of every document you withhold from the production.

- **RFP No. 31**: You told me you will supplement this response with any responsive e-mails.

- **RFP No. 37**: I clarified that we do not represent the Estate of Michael Cooper. With that clarification, you will have another conversation with your client about producing his records.


- **Lewis Interrogatory No. 3**: You will provide me with the CME documentation and confirm that if it's not reflected in the CME materials, it means Dr. Lewis did not receive any training specific to the topics of medical and mental health care for incarcerated people.

- **Lewis Interrogatories 6 and 7**: You told me Dr. Lewis indicated he doesn't remember anything beyond what he wrote in his answer. However, you will double-check with him and have him supplement if it turns out he has any additional information.

- **Lewis Interrogatory No. 10**: You will produce the responsive policies.

- **Lewis Interrogatory No. 11**: You indicated that Dr. Lewis did not supervise anyone at the Sebastian County Jail. We agreed that to simplify things, you will have Dr. Lewis identify how many people he supervised during the requested timeframe, their roles, and where they worked. If we want additional details after that, we will follow-up.

- **Lewis verification**: You will provide me with Dr. Lewis's verification of his interrogatory answers.

- **Lewis RFP Nos. 1 and 5**: You will confirm with Dr. Lewis that he searched for ESI and will produce responsive documents if any exist.

- **Lewis RFP No. 11**: You confirmed that you have not withheld any documents based on privilege. You will produce any responsive e-mails by the end of this month.

- **Lewis RFP No. 14**: You told me you will ask Dr. Lewis about this again.


- You will have Ms. Ferguson verify her interrogatory answers.

- Regarding the **depositions** we have requested, you indicated you will ask your client for authorization to have an available associate attend depositions of County witnesses if you are not available. Also, you confirmed we can tentatively schedule depositions during certain dates when you are currently set for trial, with the

3

understanding that if the trials go forward, we will not conduct the depositions unless one of your colleagues can attend on your behalf.

Again, please let me know if I got anything wrong.

-Hank

Hank Balson
Budge & Heipt, PLLC
808 E. Roy St.
Seattle, WA 98102
(206) 624-3060
hank@budgeandheipt.com
www.budgeandheipt.com

The Estate of Larry Eugene Price v. Turn Key Health Clinics, LLC, et al.

Case No. 2:23-cv-02008-PKH

Exhibit J

## Hank Balson

| | |
|---|---|
| **From:** | Alexandra G. Ah Loy <allieahloy@hallboothsmith.com> |
| **Sent:** | Wednesday, July 19, 2023 2:07 PM |
| **To:** | Hank Balson |
| **Cc:** | Erik Heipt |
| **Subject:** | RE: Price v. Turn Key - Email Search Parameters [IMAN-DMS.FID1730369] |

Thanks, Hank. I'll ask them to have their IT guy to run another search with your requested parameters outlined below. I'll start with the narrower timeframe, and we can see how the court rules. It will likely take more time for those emails to get to me for review/production – at the rate I'm currently going, I should be able to supplement with the emails currently within my possession by 7/31, as we discussed. I do not know how long it will take them to get the new batch of emails to me, but I'll expedite supplementation when they come in.

As I'm going through the emails, I note that there are 100s of emails from ADC with literally just lists of who is on the ADC wait list/who will be transported. Mr. Price was never on that list since he wasn't an ADC inmate. There is no medical information contained, nor any narrative/commentary—it's literally just a list of names of ADC inmates at Sebastian County, their DOBs, and dates to be transferred to Arkansas Dept. of Corrections facilities. I do not plan on producing those ADC transfer/list emails, unless you insist on having them. It would make the production take longer, however, because we'll have to redact DOBs on all of those lists.

This also confirms that production will include any attachments to emails, and the search did include deleted emails.

### Alexandra G. Ah Loy
**Admitted in OK, AR, & KS**
Attorney at Law | Hall Booth Smith, P.C.

| | |
|---|---|
| **O:** 405.513.7111 | 6301 Waterford Boulevard, Suite 200 |
| **D:** 405.513.7211 | Oklahoma City, OK 73118 |
| **M:** 405.919.8190 | hallboothsmith.com |



ALABAMA | ARKANSAS | COLORADO | FLORIDA | GEORGIA
MONTANA | NEW JERSEY | NEW YORK | OKLAHOMA
NORTH CAROLINA | SOUTH CAROLINA | TENNESSEE

CONFIDENTIALITY NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy the original message and any copies.

**From:** Hank Balson <hank@budgeandheipt.com>
**Sent:** Wednesday, July 19, 2023 3:15 PM
**To:** Alexandra G. Ah Loy <allieahloy@hallboothsmith.com>
**Cc:** Erik Heipt <erik@budgeandheipt.com>
**Subject:** RE: Price v. Turn Key - Email Search Parameters [IMAN-DMS.FID1730369]

Hi Allie,

Thanks for this info. Please see my requested additions below in red. (I added Dr. Absalom Tilly, one additional general search subject, and several search subjects specific to Turn Key employees who held leadership roles regarding Sebastian County). Let me know if you have questions or would like to discuss these additions. I recognize that Turn Key currently refuses to produce records created after 8/30/21, but since we view the relevant timeframe more broadly, I did not limit the timeframe as you did. It's up to you whether you want to expand the search timeframe now, or wait and see how the Court resolves the issue.

Also, please confirm that the search includes the users' deleted items folders and that Turn Key's production will include e-mail attachments.

Thank you.

-Hank

**From:** Alexandra G. Ah Loy <allieahloy@hallboothsmith.com>
**Sent:** Monday, July 17, 2023 3:29 PM
**To:** Hank Balson <hank@budgeandheipt.com>; Erik Heipt <erik@budgeandheipt.com>
**Subject:** Price v. Turn Key - Email Search Parameters [IMAN-DMS.FID1730369]

Hank,

Here are the parameters we used for our search for Turn Key emails:

Any email communications between Flint Junod, Jon Echols, Danny Hickman, Donna Roberts, Dr. Absalom Tilly, Kara Black, Kerri Janes, Morgan Matlock, Christeena Ferguson, Dr. Lewis, Dr. Cooper, Misty Williams, Nicole Cobb, and the Sebastian County medical email address (sebastianmedical@turnkeyhealthclinics.com) for anything related to:
   a. Larry Price (any timeframe)
   b. Larry Eugene Price (any timeframe)
   c. Rodney Price (any timeframe)
   d. Beverly Ann Releford (any timeframe)
   e. Hunger Strike (from 10/1/2019 – 08/30/2021)
   f. Mental Health AND Sebastian County (from 10/1/2019 – 08/30/2021)
   g. WACGC (from 10/1/2019 – 08/30/2021)
   h. Western Arkansas Counseling & Guidance Center (from 10/1/2019 – 08/30/2021)
   i. The Guidance Center (from 10/1/2019 – 08/30/2021)
   j. Adequacy of medical AND Sebastian County (from 10/1/2019 – 08/30/2021)
   k. Deficiencies AND Sebastian County (from 10/1/2019 – 08/30/2021)
   l. Complaints AND Sebastian County (from 10/1/2019 – 08/30/2021)
   m. Staffing AND Sebastian County (from 10/1/2019 – 08/30/2021)
   n. Challenges AND Sebastian County (from 10/1/2019 – 08/30/2021)
   o. Mental Illness AND Sebastian County (from 10/1/2019 – 08/30/2021)
   p. Budget Overage AND Sebastian County (from 10/1/2019 – 08/30/2021)
   q. John Miller OR jdmiller@co.sebastian.ar.us (from 10/1/2019 – 08/30/2021)
   r. Bill Dumas OR wdumas@co.sebastian.ar.us (from 10/1/2019 – 08/30/2021)
   s. Judge Hudson OR David Hudson OR dhudson@co.sebastian.ar.us (from 10/1/2019 – 08/30/2021)
   t. David Hudson (from 10/1/2019 – 08/30/2021)
   u. Tammy Luper OR tluper@co.sebastian.ar.us (from 10/1/2019 – 08/30/2021)
   v. Kevin Smith OR Ksmith@co.sebastian.ar.us (from 10/1/2019 – 08/30/2021)
   w. Rusti Holwick OR Rusti.Holwick@wacgc.org (from 10/1/2019 – 08/30/2021)
   x. death OR deaths OR died

2

x. Sender, recipient, or "cc" includes Christeena Ferguson OR Morgan Matlock OR Absalom Tilly OR Danny Hickman OR sebastianmedical@turnkeyhealthclinics.com AND subject or content includes any of the following:

1. "mental health" OR "mental illness" OR "mentally ill" OR psychotic OR psychiatry OR psychiatrist OR
2. "medical observation" OR "medical watch" OR "medical monitoring" OR "medical checks" OR
3. segregation OR "solitary confinement" OR "BC pod" OR "BC Pod" OR "BC unit" OR "BC Unit"
4. complaint OR complaints OR concern OR concerns OR
5. "fluid intake" OR "weight loss" OR dehydration
6. "mortality review" OR "mortality reviews" OR
7. ER OR ED OR emergency OR emergencies

## Alexandra G. Ah Loy
**Admitted in OK, AR, & KS**
Attorney at Law | Hall Booth Smith, P.C.

**O:** 405.513.7111          6301 Waterford Boulevard, Suite 200
**D:** 405.513.7211          Oklahoma City, OK 73118
**M:** 405.919.8190         hallboothsmith.com

H|B|S
ATTORNEYS AT LAW

ALABAMA | ARKANSAS | COLORADO | FLORIDA | GEORGIA
MONTANA | NEW JERSEY | NEW YORK | OKLAHOMA
NORTH CAROLINA | SOUTH CAROLINA | TENNESSEE

CONFIDENTIALITY NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy the original message and any copies.

<u>The Estate of Larry Eugene Price v. Turn Key Health Clinics, LLC, et al.</u>

Case No. 2:23-cv-02008-PKH

Exhibit K

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF ARKANSAS**
**FORT SMITH DIVISION**

| | |
|---|---|
| THE ESTATE OF LARRY EUGENE PRICE JR., by and through its Special Administrator, Rodney Price, <br><br> PLAINTIFF, <br><br> v. <br><br> TURN KEY HEALTH CLINICS, LLC, an Oklahoma corporation; SEBASTIAN COUNTY, ARKANSAS; JAWAUN LEWIS, DO; CHRISTEENA FERGUSON; and J. DOES 1-20, <br><br> DEFENDANTS. | No. 2:23-cv-02008 PKH |

**TURN KEY HEALTH CLINIC, LLC'S SUPPLEMENTAL RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION AND SECOND SUPPLEMENTAL PRODUCTION OF DOCUMENTS**

COMES NOW, Defendant, Turn Key Health Clinic, LLC ("Defendant"), and for its Supplemental Responses to Plaintiff's First Set of Interrogatories and Requests for Production and Second Supplemental Production of Documents ("Plaintiff's Discovery) responses and states as follows:

**GENERAL OBJECTIONS**

These general objections are asserted with respect to all requests answered herein, and in addition to the specific objections set forth below:

1.      Pursuant to the Federal Rule of Civil Procedure 26(b)(1) and the Federal Rule of Evidence 401, Defendant objects to any and all Requests that are not relevant to the subject matter of the pending action and not reasonably calculated to lead to the discovery of admissible evidence.

1

2.      **Defendant objects to Plaintiff's discov**ery requests to the extent they purport to impose duties or obligations in addition to, inconsistent with, or different from the requirements set forth in the Federal Rules of Civil Procedure and Federal Rules of Evidence.

3.      Pursuant to the attorney/client privilege, Defendant objects to the production or disclosure of any information or document that pertains to or consists of confidential communications made for the purpose of facilitating the rendition of legal services to Defendant which are, therefore, subject to the attorney/client privilege. Defendant also objects to the production or disclosure of any document or information that constitutes attorney work product or was prepared in anticipation of litigation or trial for Defendant or any of its representatives, or that is otherwise beyond the scope of discovery or admitted by the Federal Rules.

4.      **Defendant objects to Plaintiff's discovery requests to the extent they purport to** require Defendant to identify or produce information or documents that are not in its custody or control. Defendant may identify and produce relevant non-privileged and non-protected information or documents that are presently in the custody or control of Defendant.

5.      Defendant does not concede the relevancy of any document or information requested by Plaintiff nor the relevancy or admissibility of any information provided, or documents produced in response thereto. The fact that information is provided, or documents produced in response to a particular Request does not mean that it such information and/or documentation is probative of any particular issue in this matter or admissible at trial.

6.      Information provided herein is based upon the knowledge of Defendant, but the **words used in the answering of Plaintiff's discovery requests are those of Defendant's counsel.**

7.      Defendant objects to any Request to the extent it exceeds the allowable scope of discovery under the Federal Rules of Civil Procedure.

8.      If any work product or privileged document or information is inadvertently produced in responses to these or other discovery requests, Defendant reserves the privilege with respect to the document or information so inadvertently produced, as well as its right to object to inspection and copying of such document or information, and its right to demand return of such document or information or object to the admissibility thereof.

9.      Defendant reserves the right to supplement, modify, and/or correct its Responses contained herein.

Subject to the foregoing objections, Defendant responds as follows:

## ANSWERS TO INTERROGATORIES

**INTERROGATORY NO. 1**: Please IDENTIFY every person you believe may have knowledge pertaining to the allegations in Plaintiff's complaint, your answer to the complaint, or your defenses to this lawsuit. For each person you identify, please summarize the knowledge you believe the person has or may have.

**ANSWER TO INTERROGATORY NO. 1**:  Defendant objects to this Interrogatory as unduly burdensome, overly broad, not reasonably calculated to lead to the discovery of admissible evidence, and inasmuch as this Interrogatory seeks information that may be protected by the attorney-client and/or the work-product privileges. Subject to and without waiving the foregoing objections, Defendant states:

| No. | Name, Job Title, & Dates of Employment | Subjects of Anticipated Knowledge |
|---|---|---|
| 1. | Plaintiff, Rodney Price c/o BUDGE & HEIPT | Mr. Price is expected to testify regarding the allegations contained within Plaintiff's Complaint, Decedent's medical history, Decedent's mental health history, Decedent's conduct prior to his incarceration, and damages. |

2.  Jawaun Lewis, D.O.
    Director of Psychiatry

    11/28/2016 – Current
    C/O HALL BOOTH SMITH, P.C.

Dr. Lewis is expected to testify regarding the psychiatric care of Decedent during his incarcerations at the Sebastian County Detention Center, the scope of mental health services Sebastian County contracted with Turn Key Health Clinics, LLC to provide at the Sebastian County Detention Center, statements made by Decedent during his incarceration at the Sebastian County Detention Center, interactions with Decedent at the Sebastian County Detention Center, allegations contained within the Complaint **and Defendants' defenses, standard of care,** contributory negligence, causation, and damages.

3.  Christeena Ferguson, RN
    Health Services Administrator
    8/18/2020 – 02/12/2021
    C/O HALL BOOTH SMITH, P.C.

Nurse Ferguson is expected to testify regarding the medical care of Decedent during his incarcerations at the Sebastian County Detention Center during her employment with Turn Key Health Clinics, the scope of services Sebastian County contracted with Turn Key Health Clinics, LLC to provide at the Sebastian County Detention Center, statements made by Decedent during his incarceration at the Sebastian County Detention Center, interactions with Decedent at the Sebastian County Detention Center, allegations contained within the Complaint and **Defendants' defenses, standard of care,** contributory negligence, and damages.

4.  Debra Dias, LPN
    Licensed Practical Nurse
    10/04/2019 – 09/03/2020
    C/O HALL BOOTH SMITH, P.C.

Nurse Dias is expected to testify regarding the medical care of Decedent during his incarcerations at the Sebastian County Detention Center, statements made by Decedent during his incarceration at the Sebastian County Detention Center, interactions with Decedent at the Sebastian County Detention Center, allegations contained within the Complaint and **Defendants' defenses, standard of care,** contributory negligence, and damages.

4

5.      Madilyn Brents, LPN
        Licensed Practical Nurse
        09/23/2019 – 09/03/2021,
        01/26/2022 – 03/01/2022
        C/O HALL BOOTH SMITH, P.C.

Nurse Brents is expected to testify regarding the medical care of Decedent during his incarcerations at the Sebastian County Detention Center, statements made by Decedent during his incarceration at the Sebastian County Detention Center, interactions with Decedent at the Sebastian County Detention Center, allegations contained within the Complaint and **Defendants' defenses, standard of care,** contributory negligence, and damages.

6.      Tierra (Franklin) Rambo, LPN
        Licensed Practical Nurse
        01/17/2020 – 03/02/2021,
        10/08/2021 – 03/09/2023
        C/O HALL BOOTH SMITH, P.C.

Nurse Rambo is expected to testify regarding the medical care of Decedent during his incarcerations at the Sebastian County Detention Center, statements made by Decedent during his incarceration at the Sebastian County Detention Center, interactions with Decedent at the Sebastian County Detention Center, allegations contained within the Complaint and **Defendants' defenses, standard of care,** contributory negligence, and damages.

7.      Katie Green, RN
        Float RN
        05/18/2020 – 08/09/2021
        C/O HALL BOOTH SMITH, P.C.

Nurse Green is expected to testify regarding the medical care of Decedent during his incarcerations at the Sebastian County Detention Center, statements made by Decedent during his incarceration at the Sebastian County Detention Center, interactions with Decedent at the Sebastian County Detention Center, allegations contained within the Complaint and **Defendants' defenses, standard of care,** contributory negligence, and damages.

8.      Rachelle Anaya, LPN
        Licensed Practical Nurse
        08/09/2018 – 09/02/2021,
        06/29/2022 – 09/05/2022
        C/O HALL BOOTH SMITH, P.C.

Nurse Anaya is expected to testify regarding the medical care of Decedent during his incarcerations at the Sebastian County Detention Center, statements made by Decedent during his incarceration at the Sebastian County Detention Center, interactions with Decedent at the Sebastian County Detention Center, allegations contained within the Complaint and

Defendants' defenses, standard of care, contributory negligence, and damages.

| | | |
|---|---|---|
| 9. | Morgan Matlock, RN<br>Health Services Administrator<br>03/09/2021 – 05/02/2022<br>c/o HALL BOOTH SMITH, P.C. | Nurse Matlock is expected to testify regarding the medical care of Decedent during his incarcerations at the Sebastian County Detention Center, the scope of services Sebastian County contracted with Turn Key Health Clinics, statements made by Decedent during his incarceration at the Sebastian County Detention Center, interactions with Decedent at the Sebastian County Detention Center, allegations contained within the Complaint and Defendants' defenses, standard of care, contributory negligence, and damages. |
| 10. | Misty Williams, LPN<br>Licensed Practical Nurse<br>7/27/2020 – 11/19/2020<br>c/o HALL BOOTH SMITH, P.C. | Nurse Williams is expected to testify regarding the medical care of Decedent during his incarcerations at the Sebastian County Detention Center, statements made by Decedent during his incarceration at the Sebastian County Detention Center, interactions with Decedent at the Sebastian County Detention Center including his attack on her, allegations contained within the Complaint and Defendants' defenses, standard of care, contributory negligence, and damages. |
| 11. | Jessica Kelly, RN<br>Float RN<br>05/10/2018 – 08/11/2018,<br>05/11/2020 – 06/12/2021<br>c/o HALL BOOTH SMITH, P.C. | Nurse Kelly is expected to testify regarding the medical care of Decedent during his incarcerations at the Sebastian County Detention Center, statements made by Decedent during his incarceration at the Sebastian County Detention Center, interactions with Decedent at the Sebastian County Detention Center, allegations contained within the Complaint and Defendants' defenses, standard of care, contributory negligence, and damages. |
| 12. | Meshae Siemens, LPN<br>Float LPN<br>04/08/2020 – 01/07/2021<br>c/o HALL BOOTH SMITH, P.C. | Nurse Siemens is expected to testify regarding the medical care of Decedent during his incarcerations at the Sebastian County Detention Center, statements made |

6

by Decedent during his incarceration at the Sebastian County Detention Center, interactions with Decedent at the Sebastian County Detention Center, allegations contained within the Complaint and **Defendants' defenses, standard of care,** contributory negligence, and damages.

12. Karen Adams, LPN
Float LPN
03/19/2020 – 12/22/2020
C/O HALL BOOTH SMITH, P.C.

Nurse Adams is expected to testify regarding the medical care of Decedent during his incarcerations at the Sebastian County Detention Center, statements made by Decedent during his incarceration at the Sebastian County Detention Center, interactions with Decedent at the Sebastian County Detention Center, allegations contained within the Complaint and **Defendants' defenses, standard of care,** contributory negligence, and damages.

Tara Adams, LPN
Float LPN
10/20/2019 – Current
C/O HALL BOOTH SMITH, P.C.

Nurse Adams is expected to testify regarding the medical care of Decedent during his incarcerations at the Sebastian County Detention Center, statements made by Decedent during his incarceration at the Sebastian County Detention Center, interactions with Decedent at the Sebastian County Detention Center, allegations contained within the Complaint and **Defendants' defenses, standard of care,** contributory negligence, and damages.

Cassandra Nichols, LPN
Float LPN
05/07/2020 – 10/06/2021
C/O HALL BOOTH SMITH, P.C.

Nurse Nichols is expected to testify regarding the medical care of Decedent during his incarcerations at the Sebastian County Detention Center, statements made by Decedent during his incarceration at the Sebastian County Detention Center, interactions with Decedent at the Sebastian County Detention Center, allegations contained within the Complaint and **Defendants' defenses, standard of care,** contributory negligence, and damages.

| | |
|---|---|
| Chelsey Baker, RN<br>Float RN<br>06/01/2019 – 02/01/2020,<br>06/24/2020 – 04/16/2021<br>C/O HALL BOOTH SMITH, P.C. | Nurse Baker is expected to testify regarding the medical care of Decedent during his incarcerations at the Sebastian County Detention Center, statements made by Decedent during his incarceration at the Sebastian County Detention Center, interactions with Decedent at the Sebastian County Detention Center, allegations contained within the Complaint and **Defendants' defenses, standard of care,** contributory negligence, and damages. |
| Misti Rincon, LPN<br>Float LPN<br>07/27/2020 – 09/09/2021<br>C/O HALL BOOTH SMITH, P.C. | Nurse Rincon is expected to testify regarding the medical care of Decedent during his incarcerations at the Sebastian County Detention Center, statements made by Decedent during his incarceration at the Sebastian County Detention Center, interactions with Decedent at the Sebastian County Detention Center, allegations contained within the Complaint and **Defendants' defenses, standard of care,** contributory negligence, and damages. |
| Tammy Langley, LPN<br>Float LPN<br>03/19/2020 – 02/04/2022,<br>03/14/2022 – Current<br>C/O HALL BOOTH SMITH, P.C. | Nurse Langley is expected to testify regarding the medical care of Decedent during his incarcerations at the Sebastian County Detention Center, statements made by Decedent during his incarceration at the Sebastian County Detention Center, interactions with Decedent at the Sebastian County Detention Center, allegations contained within the Complaint and **Defendants' defenses, standard of care,** contributory negligence, and damages. |
| Kelsey (Victory) Dodson, LPN<br>Licensed Practical Nurse<br>8/21/2019 – 05/13/2022,<br>07/15/2022 – 03/26/2023 | Nurse Victory is expected to testify regarding the medical care of Decedent during his incarcerations at the Sebastian County Detention Center, statements made by Decedent during his incarceration at the Sebastian County Detention Center, interactions with Decedent at the Sebastian County Detention Center, allegations contained within the Complaint and |

8

|   |   |
|---|---|
|   | **Defendants' defenses, standard of care,** contributory negligence, and damages. |
| Stephanie Schuller<br>Licensed Practical Nurse<br>10/10/2018 – Current | Nurse Schuller is expected to testify regarding the medical care of Decedent during his incarcerations at the Sebastian County Detention Center, statements made by Decedent during his incarceration at the Sebastian County Detention Center, interactions with Decedent at the Sebastian County Detention Center, allegations contained within the Complaint and **Defendants' defenses, standard of care,** contributory negligence, and damages. |
| Tracey Robison, LPN<br>Float LPN<br>08/25/2019 – Current<br>C/O HALL BOOTH SMITH, P.C. | Nurse Robison is expected to testify regarding the medical care of Decedent during his incarcerations at the Sebastian County Detention Center, statements made by Decedent during his incarceration at the Sebastian County Detention Center, interactions with Decedent at the Sebastian County Detention Center, allegations contained within the Complaint and **Defendants' defenses, standard of care,** contributory negligence, and damages. |
| Bailey (Burns) Crocker, LPN<br>Float LPN<br>07/01/2020 – Current<br>C/O HALL BOOTH SMITH, P.C. | Nurse Burns is expected to testify regarding the medical care of Decedent during his incarcerations at the Sebastian County Detention Center, statements made by Decedent during his incarceration at the Sebastian County Detention Center, interactions with Decedent at the Sebastian County Detention Center, allegations contained within the Complaint and **Defendants' defenses, standard of care,** contributory negligence, and damages. |
| Seth Perry, LPN<br>Float LPN<br>01/21/2020 – 11/16/2022<br>C/O HALL BOOTH SMITH, P.C. | Nurse Perry is expected to testify regarding the medical care of Decedent during his incarcerations at the Sebastian County Detention Center, statements made by Decedent during his incarceration at the Sebastian County Detention Center, interactions with Decedent at the Sebastian |

|  |  | County Detention Center, allegations contained within the Complaint and **Defendants' defenses, standard of care,** contributory negligence, and damages. |
|---|---|---|
|  | Anthony Carter, APRN<br>Mid-Level Provider<br>11/27/2017 – Current<br>c/o HALL BOOTH SMITH, P.C. | Mr. Carter is expected to testify regarding the medical care of Decedent during his incarcerations at the Sebastian County Detention Center, statements made by Decedent during his incarceration at the Sebastian County Detention Center, interactions with Decedent at the Sebastian County Detention Center, allegations contained within the Complaint and **Defendants' defenses, standard of care,** contributory negligence, and damages. |
| 14. | Tyler Caves<br>WACGC<br>Contact Information Unknown | Mr. Caves is expected to testify regarding the mental health care of Decedent during his incarcerations at the Sebastian County Detention Center, statements made by Decedent during his incarcerations at the Sebastian County Detention Center, interactions with Decedent at the Sebastian County Detention Center, his employment **with WACGC, and WACGC's contract for** mental health services with Sebastian County. |
|  | Dr. Price<br>WACGC<br>Contact Information Unknown | Dr. Price is expected to testify regarding the mental health care of Decedent during his incarcerations at the Sebastian County Detention Center, statements made by Decedent during his incarcerations at the Sebastian County Detention Center, interactions with Decedent at the Sebastian County Detention Center, his employment **with WACGC, and WACGC's contract for** mental health services with Sebastian County. |
|  | Captain Bill Dumas<br>c/o OWENS LAW | Captain Dumas is expected to testify regarding the facts and circumstances related to the allegations contained in the Complaint, including but not limited to his interactions **with Decedent, Decedent's actions and** |

10

|  | statements made during incarcerations at the Sebastian County Detention Center, and **Plaintiff's claimed dama**ges. |
|---|---|
| Sgt. Smith<br>c/o OWENS LAW | Sergeant Smith is expected to testify regarding the facts and circumstances related to the allegations contained in the Complaint, including but not limited to his interactions **with Decedent, Decedent's actions and** statements made during incarcerations at the Sebastian County Detention Center, and **Plaintiff's claimed damages.** |
| Monica C. Rodriguez, M.D.<br>Mercy Hospital Fort Smith<br>4700 Kelly Hwy<br>Fort Smith, AR 72904 | Dr. Rodriguez is expected to testify regarding **Decedent's emergency room visit** on August 28, 2020, her treatment of **Decedent, and Decedent's medical condition.** |
| Tyler Smith, NP<br>Mercy Hospital Fort Smith<br>4700 Kelly Hwy<br>Fort Smith, AR 72904 | Mr. Smith is expected to testify regarding **Decedent's emergency** room visit on August 28, 2020, his treatment of Decedent, and **Decedent's medical condition.** |

Please also see the medical records of Decedent from the Sebastian County Detention Center, produced herein as Bates Nos. TKHC0001-0256, which may identify additional persons with knowledge related to this lawsuit.

**INTERROGATORY NO. 2 [2-3]**: **[2]** Please IDENTIFY all Turn Key employees and **contractors who had any responsibility with respect to Turn Key's contractual duties at the** Sebastian County Jail between August 19, 2020 and August 29, 2021. Your answer should include all Turn Key employees and contractors who worked at the jail during that period, as well as company managers, directors, administrators, and others whose responsibilities included tasks related to Turn Key**'s performance under the contract** (e.g., regional managers, nursing directors, medical directors, account managers, client liaisons, etc.). For each person you identify, please state any professional licenses held by the person, **[3] describe the person's responsibilities with**

respect to Turn Key services at the Sebastian County Jail during the relevant timeframe, and **provide the dates of the person or entity's employment or contractual relationship with Turn Key.**

**ANSWER TO INTERROGATORY NO. 2 [2-3]**: Defendant objects to this Interrogatory as constituting multiple distinct and separate discovery requests via its discrete subparts, as reflected in the above renumbering. *See* FED. R. CIV. P. 33(a)(1). Defendant further objects to this **Interrogatory as vague and ambiguous as to the meaning of "responsibility with respect to Turn Key's contractual duties." Defendant further objects to this Interrogatory as being unduly** burdensome and not reasonably calculated to lead to the discovery of admissible evidence, as the identify of **Turn Key employees who had no interaction or knowledge of Decedent's care and** treatment at the Sebastian County Detention Center, such as **"company managers, directors, administrators,"** and **"account managers" have** no probative value over any of the claims or defenses in this lawsuit. This is an impermissible fishing **expedition, and Plaintiff's Interrogatory** is unreasonable due to its overbreadth.

Subject to and without waiving the foregoing objections, and as Defendant interprets this Interrogatory, Defendant refers Plaintiff to the Turn Key medical personnel identified in response **to Plaintiff's Interrogatory No. 1 as the** individuals who are believed to have interacted with and/or had personal knowledge related to Decedent during his incarcerations at the Sebastian County Detention Center.  **In addition to the individuals identified in response to Plaintiff's Interrogatory** No. 1, Defendant further identifies:

1. Danny Hickman
   Client Liaison for Sebastian County
   03/01/2016 – Current
   c/o HALL BOOTH SMITH, P.C.

2. Donna Roberts, RN

Vice President of Clinical Operations at times relevant
**to Decedent's incarceration at the Sebastian County**
Detention Center
03/05/2018 – Current
c/o HALL BOOTH SMITH, P.C.

3. Absalom Tilley, M.D.
Medical Director for Sebastian County at times relevant
**to Decedent's incarceration at the Sebastian County**
Detention Center
04/01/2019 – Current
c/o HALL BOOTH SMITH, P.C.

Pursuant to Fed. R. Civ. P. 33(d), Defendant further directs Plaintiff to the contract between

Turn Key Health Clinics, LLC and Sebastian County and amendments in effect at the time of the

care and treatment at issue in this lawsuit, produced herein as Bates Nos. TKHC0258-0274.

Finally, because portions of the information sought herein constitute confidential and

proprietary business information, Defendant will also agree to produce Job Descriptions for the

**positions identified in response to Plaintiff's Interrogatory No. 1 and Interrogatory No. 2** under an

Agreed Protective Order.

**INTERROGATORY NO. 3**: Please IDENTIFY all Turn Key employees and contractors

who provided any medical or mental health evaluation, treatment, advice, or consultation with

respect to Larry Price, Jr. between August 19, 2020 and August 29, 2021. For each person you

identify, please state all professional licenses held by the person, **describe the person's**

responsibilities with respect to **Mr. Price's care, and provide the dates of the person or entity's**

employment or contractual relationship with Turn Key.

**ANSWER TO INTERROGATORY NO. 3**: Defendant objects to this Interrogatory as

being overly broad as to time and scope, unduly burdensome, not reasonably calculated to lead to

the discovery of admissible evidence, and inasmuch as it is based upon the false premise that Turn

13

Key Health Clinics, LLC was contracted to provide mental health services beyond limited **psychiatric services during Decedent's incarceration at the Sebastian County Detention Center.**

Subject to and without waiving the foregoing objections, Defendant states that it was not contracted to provide any mental health crises or mental health services beyond limited psychiatric **clinical services during Decedent's incarceration at the Sebastian** County Detention Center. On the contrary, **Turn Key's contract with Sebastian County specifically** provided that all crisis management and mental health evaluations/assessments shall be performed by an independent community mental health provider designated by the Agency, not Turn Key. Moreover, effective January 1, 2020, Sebastian County amended its contract with Turn Key to eliminate the position for eight (8) hours per week of mental health coverage for case management and to serve as a clinical liaison b**etween Turn Key's psychiatrist and the local community health provider. Please** see the contract and relevant amendments thereto between Turn Key and Sebastian County, produced herein as Bates Nos. TKHC0258-0274.

Furthermore, pursuant to Fed. R. Civ. P. 33(d), Defendant directs Plaintiff to the medical records of Decedent from the Sebastian County Detention Center, produced herein as Bates Nos. TKHC0001-0256, which contain the requested information insofar as it relates to Turn Key personnel who provided medical and/or psychiatric services to Decedent. In addition to those **records, Defendant refers Plaintiff to its Answers to Plaintiff's Interrogatories Nos. 1 and 2, which** provide the additionally requested information specific to each such medical personnel employed by Turn Key.

**INTERROGATORY NO. 4**: Please identify and describe each action taken, each observation made, each order given or received, and each interaction engaged in by a Turn Key employee or contractor **with regard to Larry Price, Jr.'s physical or mental health** between August

14

19, 2020 and August 29, 2021. Please include in your descriptions the date and time of each such action, observation, order, or interaction.  If you are unable to state the precise date and time, please provide your best estimate.

**ANSWER TO INTERROGATORY NO. 4**:  Defendant objects to this Interrogatory as vastly overbroad as to time and scope, as unduly burdensome, **vague as to "interaction,"** and as not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects inasmuch as the information sought is better suited for deposition discovery of the individual **medical personnel involved in Decedent's care and treatment, as Defendant**—a corporate entity— **cannot reasonably be imputed to know each and every potential "interaction" with Decedent** which might have occurred within the Sebastian County Detention Center, other than those which are **documented within Decedent's** medical records from the Sebastian County Detention Center.

Subject to and without waiving the foregoing objections, pursuant to Fed. R. Civ. P. 33(d), Defendant directs Plaintiff to the medical records of Decedent from the Sebastian County Detention Center, produced herein as Bates Nos. TKHC0001-0256, which contains the requested information known to Defendant at this time. Defendant is also agreeable to producing its Unusual Occurrence Report submitted by Misty Williams, LPN related to **Decedent's assault on her on** September 9, 2020, upon the entry of an Agreed Protective Order. This is a proprietary, confidential, and private record of Turn Key, which is not a public entity nor subject to any Arkansas Open Records Act or FOIA requests. Defendant has a legitimate interest in preserving its proprietary and privacy interests in business documents, including the aforementioned document, and will only agree to produce the same subject to an Agreed Protective Order. Counsel for Defendant previously forwarded correspondence with a proposed protective order for **Plaintiff's counsel's review** on May 12, 2023 and clearly indicated at such time that confidential

and proprietary business records will only be produced pursuant to the same. Counsel requested that Plaintiff either proposed revisions to the proposed protective order or approve/endorse the same for filing.

**FIRST SUPPLEMENTAL ANSWER**: Pursuant to Fed. R. Civ. P. 33(d)(1), see the Unusual Occurrence Report previously produced on July 31, 2023 as Bates Nos. TKHC0257. This document is specifically designated CONFIDENTIAL and is produced pursuant to the Protective Order on file in this matter.

**INTERROGATORY NO. 5 [6]**: Please IDENTIFY every person who had responsibility for investigating the facts and circumstances pertaining to Larry Price, Jr.**'s death or** his treatment in the Sebastian County Jail between August 19, 2020 and August 29, 2021. For each person you identify, please describe his or her role and responsibilities with respect to any such investigation.

**ANSWER TO INTERROGATORY NO. 5 [6]**:  Defendant objects to this Interrogatory as it is vague and ambiguous **as to what information Plaintiff is seeking regarding "**investigating **the facts and circumstances pertaining to … [his]** death or his treatment,**"** is overbroad in scope as well as the timeframe requested, is unduly burdensome, and is not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Defendant objects as this Interrogatory on its face seeks privileged and protected attorney-client communications and attorney work product. *See Hickman v.* Taylor, 329 U.S. 495, 512 (1947); *Upjohn Co. v. U.S.*, 102 S.Ct. 677 (981).

Subject to and without waiving the foregoing objections, Defendant states that a mortality **review of Decedent's death was** performed by Jawaun Lewis, D.O., Donna Roberts, RN, Vice President of Clinical Operations, and Morgan Matlock, RN, the Health Services Administrator. To **the best of Defendant's information and belief, no** written mortality report was created arising out

16

of such mortality review. Any remaining information responsive to this Request is privileged as attorney-client communications and attorney work product.

**FIRST SUPPLEMENTAL ANSWER**: There are no documents responsive to this Request beyond attorney-client communications and attorney work product arising from the instant litigation, for which no privilege log is required.

**INTERROGATORY NOS. 6 [7-9]**: **[7]** Please IDENTIFY every person you believe violated a Turn Key policy, procedure, or expected practice with regard to the treatment of Larry Price, Jr. between August 19, 2020 and August 29, 2021. **[8]** For each person you identify, please state what policy, procedure, or expected practice you believe the person violated **[9]** and briefly explain how the person violated the policy, procedure, or expected practice.

**ANSWER TO INTERROGATORY NO. 6 [7-9]**: Defendant objects to this Interrogatory as constituting multiple distinct and separate discovery requests via its discrete subparts, as reflected in the above renumbering. *See* FED. R. CIV. P. 33(a)(1). Defendant also objects to this Interrogatory as being overly broad as to time and scope, **vague as to "expected practice,"** unduly **burdensome in that it improperly seeks to shift Plaintiff's** *prima facie* **burden of proving Plaintiff's** claims onto Defendant, and premature as discovery has just begun and this case is in its initial stages. Moreover, Defendant objects to the extent this Interrogatory seeks privileged and protected attorney work product. Subject to and without waiving the foregoing objections, Defendant is currently unaware of any such violations responsive to this Interrogatory.

**INTERROGATORY NO. 7 [10]**: Please IDENTIFY every Turn Key employee or contractor who received any form of discipline or corrective action (including warnings or corrective counseling) due to their actions or inactions pertaining to Larry Price, Jr.**'s treatment in** the Sebastian County Jail between August 19, 2020 and August 29, 2021. For each person you

17

identify, please describe the discipline or corrective action the person received, the date(s) the discipline or corrective action was imposed, and the reason(s) for the discipline or corrective action.

**ANSWER TO INTERROGATORY NO. 7 [10]**: Defendant objects to this Interrogatory as being overly broad as to time and as not being reasonably calculated to lead to the discovery of admissible evidence, as it seeks discovery into conduct and/or measures taken after the alleged injury. *See* Fed. R. Evid. 407; *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389, 109 S. Ct. 1197, 1205, 103 L. Ed. 2d 412 (1989) ("a municipality can be liable under § 1983 only where its policies are the 'moving force [behind] the constitutional violation.'"). Subject to and without waiving these objections, Defendant states that to the best of its information and belief, none.

**INTERROGATORY NO. 8 [11]**: [11] Following Mr. Price's death on August 29, 2021, did you make any changes to Turn Key policies, protocols, training, standing orders, or procedures to improve the treatment of incarcerated people with mental illness, improve the monitoring of patients with serious medical or mental health concerns, or reduce the risk of death to patients with serious medical or mental health concerns? [12] If yes, please describe every such change, IDENTIFY the person(s) responsible for making the change, [13] and state the actual or approximate date on which the change was implemented at the Sebastian County Jail.

**ANSWER TO INTERROGATORY NO. 8 [11-13]**: Defendant objects to this Interrogatory as constituting multiple distinct and separate discovery requests via its discrete subparts, as reflected in the above renumbering. *See* FED. R. CIV. P. 33(a)(1). Defendant objects to this Interrogatory as it is based upon the false premise that Turn Key Health Clinics, LLC was contracted to provide mental health services beyond limited psychiatric services during Decedent's incarceration at the Sebastian County Detention Center. Additionally, Defendant objects to this

18

Interrogatory as being overly broad as to time and scope, as **it seeks discovery into Turn Key's** policies, procedures, protocols, training, etc., for an indefinite time period after the alleged injury at issue in this case and not limited to the policies, procedures, protocols and practices specific to Sebastian County Detention Center. Defendant further objects to this Interrogatory as not being reasonably calculated to lead to the discovery of admissible evidence. *See* Fed. R. Evid. 407; *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389, 109 S. Ct. 1197, 1205, 103 L. Ed. 2d 412 (1989) ("a **municipality can be liable under § 1983 only where its policies are the 'moving force [behind] the** constitutional vio**lation.'").**

Subject to and without waiving the foregoing objections, Defendant states that it continuously reassesses its policies, procedures, protocols, and practices, including those related to the treatment of mental illness, for the purpose of improving patient care and reducing patient morbidity and mortality. As a part of this ongoing practice, Defendant revised its small site policies and procedures, which would have been in effect at Sebastian County Detention Center, on or around February 22, 2022, after the care and treatment at issue in this case. Defendant did not change any policies, procedures, or protocols at Sebastian County Detention Center as a direct **result of Decedent's care and treatment.**

**INTERROGATORY NO. 9 [14-15]**: **[14]** Please describe all training provided to Turn Key employees and contractors who provided services at the Sebastian County Jail between August 19, 2020 and August 29, 2021. For each training component you describe, please IDENTIFY who provided the training. **[15]** Please also IDENTIFY all persons who completed the training and state the date(s) on which each person completed the training.

**ANSWER TO INTERROGATORY NO. 9 [14-15]**:   Defendant objects to this Interrogatory as constituting multiple distinct and separate discovery requests via its discrete

subparts, as reflected in the above renumbering. *See* FED. R. CIV. P. 33(a)(1). Further, Defendant objects to this Interrogatory as being overly broad as to time and scope, unduly burdensome in that it would require Defendant to review the personnel file of every single medical professional who worked within the Sebastian County Detention Center for over a year, including those whose care is not at issue in this case nor who had any interactions with or personal knowledge of Decedent, thereby making this request an improper fishing expedition and not reasonably calculated to lead to the discovery of admissible evidence. Finally, Defendant objects as the requested information seeks confidential and proprietary business information and potentially sensitive personal information. *See*, *e.g.*, *Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 648 (10th Cir. 2008) ("personnel files often contain sensitive personal information […], and it is not unreasonable to be cautious about ordering their entire contents disclosed willy-nilly."). **Subject to and without** waiving the foregoing objections, Defendant states that it provided onboarding training to its nurses when it began operations at the Sebastian County Detention Center, which would have **included written training materials and an orientation to Turn Key's policies, practices, procedures,** and training specific to operations at the Sebastian County Detention Center.

In addition to its respective **employees' education, training and experience prior to joining** Turn Key, Defendant provides training to its nurses upon hire, as well as orientation to site-specific policies and practices when an employee works at a new site, and ongoing training as needed. Defendant will agree to produce limited portions of the medical personnel files of Christeena Ferguson, whose care and treatment is specifically at issue in this lawsuit, related to training prior to August 21, 2021, upon the entry of an Agreed Protective Order. Defendant does not agree to produce all personnel files of all employees at the Sebastian County Detention Center, as such request is vastly overbroad and unduly burdensome, and therefore Defendant asks that Plaintiff

narrow his request to specific individual employees whose care and treatment Plaintiff believes in good faith to be at issue in this litigation. Defendant is further agreeable to producing the training materials it uses at Sebastian County Detention Center under an Agreed Protective Order. These are proprietary, confidential, and private records of Turn Key, which is not a public entity nor subject to any Arkansas Open Records Act or FOIA requests. Defendant has a legitimate interest in preserving its proprietary and privacy interests in business documents, including the aforementioned documents, and will only agree to produce the same subject to an Agreed Protective Order. Counsel for Defendant previously forwarded correspondence with a proposed **protective order for Plaintiff's counsel's review on May 12, 2023 and clearly indicated at such** time that confidential and proprietary business records will only be produced pursuant to the same. Counsel requested that Plaintiff either proposed revisions to the proposed protective order or approve/endorse the same for filing.

 **FIRST SUPPLEMENTAL ANSWER**: Pursuant to Fed. R. Civ. P. 33(d)(1), see the documents produced herein as Bates Nos. TKHC0841-0843, TKHC1012-1013, TKHC1017, TKHC1203-1204, TKHC1206-1222, TKHC1238-1246, TKHC1249-1251, TKHC1254-1270, TKHC1273-12782, TKHC1284-1290, TKHC1311-1636, TKHC1643-1644, TKHC1647-1656, TKHC1258-1659, TKHC1663-1667, TKHC1669, TKHC1679-1685, TKHC1702-1705, TKHC1713-1728, TKHC1732-1735, TKHC1758-1984, TKHC1987-2210, TKHC1376-2231, TKHC2253-2254, TKHC2403-2628, TKHC2669, TKHC2738-2743, TKHC2750-2752, and TKHC2777-2783. These documents are specifically designated as CONFIDENTIAL and are being produced subject to the Protective Order on file in this matter. Please also see the documents produced herein as Bates Nos. TKHC1031-1033, TKHC1670-1673, and TKHC2636-2646. After conducting a diligent search, Defendant has no further documents responsive to this Request.

**INTERROGATORY NO. 10 [16-17]**: **[16]** Please describe all training provided by Turn Key to Sebastian County Jail employees and contractors. You may limit your response to training provided to county employees and contractors who worked at the jail between August 19, 2020 and August 29, 2021. For each training component you describe, please state the subject of the training and IDENTIFY who provided the training. **[17]** Please also IDENTIFY all persons who completed the training and state the date(s) on which the training was provided.

**ANSWER TO INTERROGATORY NO. 10 [16-17]**: Defendant objects to this Interrogatory as constituting multiple distinct and separate discovery requests via its discrete subparts, as reflected in the above renumbering. *See* FED. R. CIV. P. 33(a)(1). Defendant further objects to this Interrogatory as overly broad, unduly burdensome, not reasonably limited in time or scope (as the care and treatment at issue in this case involves Mr. Price, who allegedly died of malnutrition, **and Plaintiff's request is not limited in scope to specific training topics** which may have any probative value to the specific claims in this case, nor does Plaintiff limit the scope of his request to specific employees whose conduct is actually alleged to be at issue), and is not reasonably calculated to lead to the discovery of admissible information. Moreover, Defendant objects on the basis that Plaintiff is seeking training records for individuals who are not employees of Turn Key Health Clinics and, therefore, the requested information is not **within Turn Key's possession, custody,** or control, and this request would be more properly directed to Sebastian County.

Subject to and without waiving the foregoing objections, Defendant states that to the best of its information and belief, Turn Key provided training to Sebastian County Detention **Center employees during Turn Key's onboarding process at the Sebastian County Detention** Center. This training would likely have been performed by Kara Black, RN or Nicole Cobb,

RN. Additionally, Defendant believes Nurse Black and/or Nurse Cobb also provided **detention training at Sebastian County's "Jail School" for its newly hired detention staff. Further, Defendant's Health Services Administrators have provi**ded ongoing training to detention staff, which would include emergency drills. Defendant is agreeable to producing its training materials pursuant to an Agreed Protective Order. These are proprietary, confidential, and private records of Turn Key, which is not a public entity nor subject to any Arkansas Open Records Act or FOIA requests. Defendant has a legitimate interest in preserving its proprietary and privacy interests in business documents, including the aforementioned documents, and will only agree to produce the same subject to an Agreed Protective Order. Counsel for Defendant previously forwarded correspondence with a proposed protective order for **Plaintiff's counsel's review on May 12, 2023 and clearly indicated at such time that confidential** and proprietary business records will only be produced pursuant to the same. Counsel requested that Plaintiff either proposed revisions to the proposed protective order or approve/endorse the same for filing.

**FIRST SUPPLEMENTAL ANSWER**: Pursuant to Fed. R. Civ. P. 33(d)(1), see the documents produced herein as Bates Nos. TKHC0881-0906, TKHC0938-0939, TKHC1245-1246, TKHC1252-1253, TKHC1288-1290, TKHC1663-1667, TKHC1376-2224, and TKHC2226-2231, TKHC2236-2239. These documents are specifically designated as CONFIDENTIAL and are being produced subject to the Protective Order on file in this matter. Please also see the documents produced herein as Bates Nos. TKHC1034-1036, TKHC1038-1069, TKHC1076-1198, TKHC1669, TKHC1691-1692, TKHC2255-2377, TKHC2384-2391, TKHC2394-2397, and TKHC2636-2646. After conducting a diligent search, Defendant has located no further documents responsive to this Request.

**INTERROGATORY NO. 11 [18-22]**: **[18]** Please IDENTIFY every Turn Key employee or Sebastian County employee you are aware of who expressed a concern about any of the following subjects prior to August 30, 2021:

- Mental health services for people confined at the Sebastian County Jail;

- **[19]** Medical services for people confined at the Sebastian County Jail;

- **[20]** The monitoring or observation of people confined at the Sebastian County Jail with medical or mental health concerns;

- **[21]** Overcrowding or understaffing at the Sebastian County Jail.

**[22]** For each person you identify, please describe the concern(s) expressed by that person, the approximate date(s) on which the person expressed his or her concern(s), the form in which the concern was expressed (e.g., orally, by letter, by e-mail, etc.), and the person(s) to whom the concern(s) were expressed.

**ANSWER TO INTERROGATORY NO. 11 [18-22]**: Defendant objects to this Interrogatory as constituting multiple distinct and separate discovery requests via its discrete subparts, as reflected in the above renumbering. *See* FED. R. CIV. P. 33(a)(1). Defendant further objects to this Interrogatory as overly broad as to time and scope, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing objections, Defendant states that during the Covid-19 pandemic, there were nationwide staffing concerns related to virtually every facet of nursing care possible, including correctional medicine. It is impossible for Defendant to recant every discussion regarding the well-known nursing shortage throughout the country which was brought to light by the Covid-19 pandemic. Defendant is currently unaware of any care-related concerns related to Sebastian County Detention Center prior to August 30, 2021 which would be

24

responsive to this Interrogatory. However, Defendant is continuing to perform a diligent search and will supplement this response if any such responsive information and/or documents are discovered in the future.

**FIRST SUPPLEMENTAL ANSWER**: Pursuant to Fed. R. Civ. P. 33(d)(1), see the documents produced herein as Bates Nos. TKHC0920-0923, TKHC0986-0988, TKHC1205, TKHC1233-1237, TKHC1252-1253, TKHC1283, TKHC1647-1649, TKHC1686-1688, TKHC1713-1728, TKHC1733-1735, TKHC1749, TKHC1751-1752, TKHC1985-1986, TKHC2251-2252, TKHC2730-2733, and TKHC2784-2787. These documents are specifically designated as CONFIDENTIAL and are being produced subject to the Protective Order on file in this matter. Please also see the documents produced herein as Bates Nos. TKHC0839-0840, TKHC0927-0933, TKHC0985, TKHC1000-1001, TKHC1007-1011, TKHC1002-1006, TKHC1015-1016, TKHC1028-1029, TKHC1199, TKHC1247-1248, TKHC1271-1272, TKHC1712, TKHC1750, TKHC2211, TKHC2382-2383, TKHC2392-2393, TKHC2400, TKHC2755-2759, and TKHC2761-2762. After conducting a diligent search, Defendant has located no further documents responsive to this Request.

**INTERROGATORY NO. 12 [23]**: If you contend that any person or entity other than Turn Key was responsible for providing or arranging for mental health treatment for Larry Price, Jr. between August 19, 2020 and August 29, 2021, please IDENTIFY the person(s) or entity(ies) you believe held such responsibility. For each person or entity you identify, please state the actual or approximate date on which the person or entity assumed the responsibility and fully describe the person or entity's responsibilities with regard to Mr. Price's mental health care.

**ANSWER TO INTERROGATORY NO. 12 [23]**: Defendant objects to this Interrogatory as being vague, overly broad, and unduly burdensome. Defendant further objects to the extent that

this Interrogatory seeks information which would be within the possession, custody, or control of the Sebastian County Detention Center and/or other entities.

Subject to and without waiving the foregoing objections, Defendant states that from October 1, 2019 through January 1, 2020, Sebastian County contracted with Turn Key to provide up to eight (8) hours per week of mental health coverage for case management and to serve as a **clinical liaison between Turn Key's psychiatrist and Sebastian County's contracted local** mental health providers. However, effective January 1, 2020, Sebastian County amended its contract with Turn Key to eliminate the mental health liaison position. As a result, effective January 1, 2020, the only mental health services Turn Key was responsible for providing at the Sebastian County Detention Center were up to eight (8) hours per week of psychiatric clinical services, either on-site or through telehealth. See the Contract and Amendments produced herein as Bates Nos. TKHC0258-0274. Effective January 1, 2020 **and through all times relevant to Mr. Price's care and** treatment in this lawsuit, all crisis management and mental health evaluations / assessments were the responsibility of the independent community mental health provider designated by Sebastian County, and not by Turn Key. See Bates No. TKHC0272.

Defendant further states that Western Arkansas Counseling & Guidance Center, Inc. **("WACGC" or "The Guidance Center") is the entity who was responsible for providing all crisis** management and mental health evaluations and assessments at the Sebastian County Detention **Center at all times relevant to Plaintiff's claims and Mr. Price's incarceration at the Sebastian** County Detention Center. Turn Key was never contracted by Sebastian County to provide any mental health services beyond the limited psychiatric and mental health liaison services set forth in the contract between Turn Key and Sebastian County, produced herein as Bates Nos. TKHC0258-0274. Please also see the correspondence received from Sebastian County discussing

the elimination of the mental health liaison position referencing the December 10, 2019 meeting at The Guidance Center with carbon copy to WACGC, Bates No. TKHC0271. Please also see the produced e-mail correspondence between Turn Key and Sebastian County **confirming Turn Key's** understanding that the eliminated eight (8) hours of mental health case management coverage would be allocated as additional hours for WACGC, produced herein as Bates Nos. TKHC0282-0284. Please also see the HIPAA Business Associate Agreement entered into between the WACGC and Turn Key, allowing WACGC direct access to the CorEMR electronic medical records system utilized within the Sebastian County Detention Center, produced herein as Bates Nos. TKHC0275-0281.

**INTERROGATORY NO. 13 [24-26]**: **[24]** Please IDENTIFY every Turn Key patient who has died since January 1, 2016 following confinement in a city or county jail where Turn Key was providing services. Please include every person who has died during that timeframe in a hospital after being transferred there from the jail where they were confined. For each person you identify, please state the name and location of the jail where the person was confined at or just before the time of his or death, **the actual or approximate date of the person's death, [25]** the cause **of the person's death**, and **[26]** whether the death resulted in a claim for compensation by the **person's family or estate against Turn Key or a Turn Key employee**. To preserve the confidentiality of the people you identify, you may replace the name of each patient with a unique coded identifier.

**ANSWER TO INTERROGATORY NO. 13 [24-26]**: Defendant objects to this Interrogatory as constituting multiple distinct and separate discovery requests via its discrete subparts, as reflected in the above renumbering. *See* FED. R. CIV. P. 33(a)(1). Plaintiff has exceeded the number of written interrogatories, including discrete subparts, permitted under Rule 33. *Id*. Defendant further objects to this Interrogatory as being unduly burdensome and overly broad in

time and scope, as this case involves the create and treatment of Plaintiff's decedent Larry Eugene Price, Jr. at the Sebastian County Detention Center from August 19, 2020 until August 29, 2021. Information related to patients at facilities other than Sebastian County Detention Center and after the dates of care at issue in this lawsuit have no probative value over the claims and issues in this case. As such, this Interrogatory as not being reasonably calculated to lead to the discovery of admissible evidence. *See* Fed. R. Evid. 407; *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389, 109 S. Ct. 1197, 1205, 103 L. Ed. 2d 412 (1989) ("a municipality can be liable under § 1983 only where its policies are the 'moving force [behind] the constitutional violation.'"). Finally, Defendant objects to this Interrogatory as seeking the confidential and protected health information of individuals whose estates have not waived their HIPAA privacy rights.

Subject to and without waiving the foregoing objections, Defendant states that it is currently aware of the following inmate deaths at the Sebastian County Detention Center prior to August 30, 2021:

1. R.R. (November 26, 2019)

2. J.H. (July 31, 2020)

3. P.O. (February 28, 2021)

4. Larry Price (August 29, 2021)

Defendant is agreeable to supplementing this response to provide the full patient names upon the entry of an Agreed Protective Order. Counsel for Defendant previously forwarded correspondence with a proposed protective order for Plaintiff's counsel's review on May 12, 2023 and clearly indicated at such time that confidential and proprietary records will only be produced pursuant to the same. Counsel requested that Plaintiff either proposed revisions to the proposed protective order or approve/endorse the same for filing.

**FIRST SUPPLEMENTAL ANSWER**: Subject to **Defendant's previously**-stated reservation of confidentiality, and subject to the Protective Order on file in this matter, Defendant expounds on its previous disclosures as follows:

1. Roger Robinson (November 26, 2019)

2. Jacob Honeycutt (July 31, 2020)

3. Patrick Onale (February 28, 2021)

4. Larry Price (August 29, 2021)

**INTERROGATORY NO. 14 [27]**: Please IDENTIFY every lawsuit filed since January 1, 2016 in which Turn Key or a Turn Key employee has been named as a defendant. You may **limit your response to lawsuits filed by a former Turn Key patient or a patient's estate or family** member. For each lawsuit you identify, please provide the following information:

(a) The names of all plaintiffs and defendants

(b) The name of the court in which the lawsuit was filed

(c) The date the lawsuit was filed

(d) The case number

(e) The primary allegations (e.g., negligent medical care, wrongful death)

(f) The outcome of the lawsuit (e.g., settled, dismissed prior to trial without settlement, judgment for plaintiff, judgment for defendant, etc.)

**ANSWER TO INTERROGATORY NO. 14 [27]**: Defendant objects to this Interrogatory, as Plaintiff has exceeded the number of written interrogatories, including discrete subparts, permitted under Rule 33. *See* FED. R. CIV. P. 33(a)(1). Defendant further objects to this Interrogatory as being overly broad in time and scope, as this case involves the create and treatment **of Plaintiff's decedent Larry Eugene Price, Jr. at the Sebastian County Detention Center from**

August 19, 2020 until August 29, 2021. Information related to facilities other than Sebastian County Detention Center and after the dates of care at issue in this lawsuit have no probative value over the claims and issues in this case. As such, this Interrogatory as not being reasonably calculated to lead to the discovery of admissible evidence. *See* Fed. R. Evid. 407; *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389, 109 S. Ct. 1197, 1205, 103 L. Ed. 2d 412 (1989) ("a municipality can be liable under § 1983 only where it**s policies are the 'moving force [behind] the constitutional violation.'")**. Finally, Defendant objects to this Interrogatory as unduly burdensome and not proportional to the needs of this case, as Defendant does not maintain the information sought in the manner requested by Plaintiff. Such information is just as easily accessible to Plaintiff from public records. Therefore, Defendant will produce the information, as limited herein, in the manner such litigation records are maintained in the ordinary course of business. Subject to and without waiving the foregoing objections, Defendant will agree to produce a litigation list of all lawsuits arising out of Arkansas facilities which were filed prior to August 30, 2021 under an Agreed Protective Order. These are proprietary, confidential, and private records of Turn Key, which is not a public entity nor subject to any Arkansas Open Records Act or FOIA requests. Defendant has a legitimate interest in preserving its proprietary and privacy interests in business documents, including the aforementioned documents, and will only agree to produce the same subject to an Agreed Protective Order. Counsel for Defendant previously forwarded **correspondence with a proposed protective order for Plaintiff's counsel's rev**iew on May 12, 2023 and clearly indicated at such time that confidential and proprietary business records will only be produced pursuant to the same. Counsel requested that Plaintiff either proposed revisions to the proposed protective order or approve/endorse the same for filing.

**FIRST SUPPLEMENTAL ANSWER**: Pursuant to Fed. R. Civ. P. 33(d)(1), see the litigation list previously produced on July 31, 2023 as Bates Nos. TKHC0547-0550. These documents are specifically designated CONFIDENTIAL and are produced pursuant to the Protective Order on file in this matter.

**INTERROGATORY NO. 15 [28-29]**: **[28]** Please IDENTIFY every person who had any responsibility for drafting, approving, or modifying the Turn Key policies, protocols, and procedures in effect at the Sebastian County Jail between August 19, 2020 and August 29, 2021. **[29]** Please describe the role and responsibilities of each person you identify, including the role he or she played in drafting, approving, or modifying the policies or procedures.

**ANSWER TO INTERROGATORY NO. 15 [28-29]**: Defendant objects to this Interrogatory as constituting multiple distinct and separate discovery requests via its discrete subparts, as reflected in the above renumbering. *See* FED. R. CIV. P. 33(a)(1). Additionally, Plaintiff has exceeded the number of written interrogatories, including discrete subparts, permitted under Rule 33. *Id*. Defendant objects to this Interrogatory as overly broad in its time and scope, **unduly burdensome, vague and ambiguous as to "role and responsibilities," and** as not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Defendant states **that Sebastian County Detention Center utilizes Turn Key's** small site policies, procedures, and protocols, which were revised on or around December 28, 2020. Revisions to the small site policies, procedures, and protocols during the times relevant to **Mr. Price's incarceration at the Sebastian County Detention Center** generally would have been made as a team effort between Donna Roberts, RN, Williams Cooper, M.D., and James Constanzer, APRN-CNP.

31

**INTERROGATORY NO. 16 [30-31]**: **[30]** Did Turn Key conduct a mortality review in connection with Larry Price, Jr.'s death? **[31]** If so, please IDENTIFY every person who participated in the review, every person who provided information relevant to the review, and every person to whom Turn Key provided information about the results of the review.

**ANSWER TO INTERROGATORY NO. 16 [30-31]**:  Plaintiff has exceeded the number of written interrogatories, including discrete subparts, permitted under Rule 33. *See* FED. R. CIV. P. 33(a)(1). Defendant further objects to this Interrogatory as it is unduly burdensome and is not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Defendant objects as this Interrogatory on its face seeks privileged and protected attorney-client communications and attorney work product. *See Hickman v.* Taylor, 329 U.S. 495, 512 (1947); *Upjohn Co. v. U.S.*, 102 S.Ct. 677 (981).

Subject to and without waiving the foregoing objections, Defendant states that a mortality review of Decedent's death was performed by Jawaun Lewis, D.O., Donna Roberts, RN, Vice President of Clinical Operations, and Morgan Matlock, RN, Health Services Administrator. To the best of Defendant's information and belief, no written mortality report was created arising out of such mortality review.

**INTERROGATORY NO. 17 [32]**: Please IDENTIFY every person or entity that conducted an audit or review of the medical or mental health services at the Sebastian County Jail since January 1, 2016.

**ANSWER TO INTERROGATORY NO. 17 [32]**:  Plaintiff has exceeded the number of written interrogatories, including discrete subparts, permitted under Rule 33. *See* FED. R. CIV. P. 33(a)(1). Defendant further objects to this Interrogatory as overly broad as to both time and scope, unduly burdensome, seeks information that is not reasonably calculated to lead to the

discovery of admissible evidence, vague and ambiguous **as to "review,"** and on its face appears to seek confidential and privileged attorney-client and/or attorney work product. **Moreover, Plaintiff's request as worded is unduly burdensome and unreasonably broad**, impossible to answer, and no more than an impermissible fishing expedition. Finally, Defendant objects to discovery into any audits and/or "reviews" **which occurred after** August 29, 2021, after the care and treatment at issue in this case.

Subject to and **without waiving the foregoing objections, to the best of Defendant's** information and belief, the individuals **identified in Defendant's Answer to Plaintiff's** Interrogatory No. 2 [2-3] may have performed on-site audits and/or reviews of the medical services at the Sebastian County Detention Center. Defendant further states that, because Turn Key was never contracted to provide mental health services beyond the limited psychiatric services identified within the contract and amendments thereto between Sebastian County and Turn Key, Turn Key was not responsible for performing audits and/or reviews of the mental health services provided by outside agencies at the Sebastian County Detention Center.

**FIRST SUPPLEMENTAL ANSWER**: Pursuant to Fed. R. Civ. P. 33(d)(1), see the documents produced herein as Bates Nos. TKHC0916-0917, TKHC0985-0988, TKHC1291-1298, TKHC1982-1983, and TKHC2378-2380. These documents are specifically designated as CONFIDENTIAL and are being produced subject to the Protective Order on file in this matter. Please also see the documents produced herein as Bates Nos. TKHC1000-1001, TKHC1015-1016, TKHC1031-1033, and TKHC1037.

**INTERROGATORY NO. 18 [33]**: Please identify every jail, prison, or other facility where Turn Key has had a contract to provide medical or mental health services since 2015 and state whether Turn Key still has a contract to provide services for each identified facility.

**ANSWER TO INTERROGATORY NO. 18 [33]**:  Plaintiff has exceeded the number of written interrogatories, including discrete subparts, permitted under Rule 33. *See* FED. R. CIV. P. 33(a)(1). Defendant further objects to this Interrogatory as overly broad in that it is not reasonably limited to the time frame at issue in this case nor to the jail at issue in this case, is unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, this Interrogatory seeks confidential and proprietary business information of Turn Key. Defendant objects to discovery into any contracts which were not active at the time of the care and treatment at issue in this case, which is limited to August 2020 through August 2021. Subject to and without waiving the foregoing objections, Defendant states that from August 2020 through August 2021, Defendant was operating in the following county jails:

1. Adair County Jail (Stillwell, Oklahoma);

2. Archuleta County Detention Center (Pagosa Springs, Colorado);

3. Beckham County Jail (Sayre, Oklahoma);

4. Benton County Detention Center (Bentonville, Arkansas);

5. Blaine County Jail (Watonga, Oklahoma);

6. Boone County Detention Center (Harrison, Arkansas);

7. Bowie County Jail (Texarkana, Texas);

8. Broomfield County Detention Center (Broomfield, Colorado);

9. Bryan County Jail (Durant, Oklahoma);

10. Burnet County Jail (Burnet, Texas);

11. Caddo County Jail (Anadarko, Oklahoma);

12. Canadian County Jail (El Reno, Oklahoma)

13. Carroll County Detention Center (Berryville, Arkansas);

14. Carter County Jail (Ardmore, Oklahoma);

15. Chaffee County Detention Center (Salida, Colorado);

16. Christian County Detention Center (Ozark, Missouri);

17. Cleveland County Detention Center (Norman, Oklahoma);

18. Comanche County Jail (Comanche, Texas);

19. Craighead County Detention Center (Jonesboro, Arkansas);

20. Creek County Detention Center (Sapulpa, Oklahoma);

21. Cross County Detention Center (Wynne, Arkansas);

22. Custer County Jail (Arapaho, Oklahoma);

23. David L. Moss Criminal Justice Center (Tulsa, Oklahoma);

24. Delaware County Jail (Jay, Oklahoma);

25. Dewey County Jail (Taloga, Oklahoma);

26. Eastland County Jail (Eastland, Texas);

27. Faulkner County Detention Center (Conway, Arkansas);

28. Fremont County Detention Center (Canon City, Colorado);

29. Garland County Detention Center (Hot Springs, Arkansas);

30. Garvin County Jail (Pauls Valley, Oklahoma);

31. Grady County Law Enforcement Center (Chickasha, Oklahoma);

32. Greene County Detention Center (Paragould, Arkansas);

33. Houston County Jail (Crockett, Texas);

34. Kay County Detention Center (Newkirk, Oklahoma);

35. Kingfisher County Jail (Kingfisher, Oklahoma);

36. Lampasas County Detention Center (Lampasas, Texas);

37. Lincoln County Jail (Chandler, Oklahoma);

38. Logan County Jail (Guthrie, Oklahoma);

39. Logan County Justice Center (Sterling, Colorado);

40. Love County Jail (Marietta, Oklahoma);

41. Marshall County Jail (Madill, Oklahoma);

42. Mayes County Jail (Pryor, Oklahoma);

43. McClain County Jail (Purcell, Oklahoma);

44. Mississippi County Jail (Luxora, Arkansas);

45. Montgomery County Jail (Independence, Kansas);

46. Morgan County Detention Center (Fort Morgan, Colorado);

47. Okfuskee County Jail (Okemah, Oklahoma);

48. Oklahoma County Detention Center (Oklahoma City, Oklahoma);

49. Osage County Jail (Pawhuska, Oklahoma);

50. Ottawa County Jail (Miami, Oklahoma);

51. Park County Jail (Fairplay, Colorado);

52. Payne County Jail (Stillwater, Oklahoma);

53. Phillips County Detention Center (Helena, Arkansas);

54. Pontotoc County Jail (Ada, Oklahoma);

55. Pope County Detention Center (Russellville, Arkansas);

56. Pottawatomie County Safety Center (Shawnee, Oklahoma);

57. Pulaski County Regional Detention Center (Little Rock, Arkansas);

58. Rogers County Jail (Claremore, Oklahoma);

36

59. Saline County Detention Center (Benton, Arkansas);

60. San Jacinto County Jail (Coldspring, Texas);

61. Sebastian County Detention Center (Fort Smith, Arkansas);

62. Seminole County Jail (Wewoka, Oklahoma);

63. Smith County Jail (Tyler, Texas);

64. Sevier County Detention Center (DeQueen, Arkansas);

65. St. Francis County Detention Center (Forest City, Arkansas);

66. Stephens County Jail (Duncan, Oklahoma);

67. Texas County Jail (Guymon, Oklahoma);

68. Union County Detention Center (El Dorado, Arkansas);

69. Weld County Jail (Greeley, Colorado);

70. Wharton County Jail (Wharton, Texas);

71. White County Detention Center (Searcy, Arkansas); and

72. Woodward County Jail (Woodward, Oklahoma).

## RESPONSES TO REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1**: Please produce all DOCUMENTS that refer or pertain to Larry Price, Jr. (See definition of "DOCUMENTS" above.)

**RESPONSE**:  Objection. This Request is overly broad in scope, not reasonably limited in time, unduly burdensome, vague and ambiguous, not reasonably calculated to lead to the discovery of admissible evidence and seeks information that may be protected by the attorney-client and/or the work-product privileges and/or documents and are therefore not subject to disclosure under the Federal Rules. Subject to and without waiving the foregoing objections, Defendant is currently unaware of any documents responsive to this Request outside of Mr.

Price's medical records produced herein and the privileged and protected communications with its counsel of record. However, Defendant is continuing to conduct a diligent search for responsive documents and will supplement its Response if / when any such responsive documents are discovered.

**FIRST SUPPLEMENTAL RESPONSE**: Please see supplemental documents responsive to this Request produced herein as Bates Nos. TKHC2788-2954. After conducting a diligent search, Defendant has located no further documents responsive to this Request outside of privileged and protected attorney-client communications and attorney work product arising from this litigation, for which a privilege log is not required.

**REQUEST FOR PRODUCTION NO. 2**: Please produce the audit trail for Mr. Price's electronic medical record.

**RESPONSE**:  Defendant objects to this request as overly broad as to time and scope, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and as seeking confidential and privileged information. Subject to and without waiving these objections, Defendant states: after conducting a diligent search and conferring with representatives from CorEMR, Defendant is not capable of generating an audit trail for Mr. Price's electronic medical record. Thus, Defendant has no documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 3**: Please produce all written policies, procedures, protocols, guidelines, directives, and standing orders pertaining to Turn Key's services and operations at the Sebastian County Jail that were in effect between August 19, 2020 and August 29, 2021. Please include all memoranda, e-mails, notices, and other DOCUMENTS that were provided to Turn Key employees or contractors to supplement, clarify, or amend any of the policies, procedures, protocols, or other materials produced.

38

**RESPONSE**:   Objection. This request is overly broad (scope and time), unduly burdensome, seeks irrelevant information which is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff's policy, practice, or custom claim against Defendant is limited to staffing, supervision, and treatment of inmates, like Mr. Price, with serious mental health needs. *See* ECF Doc. 2, *Plt.'s Compl*. Finally, this Request seeks confidential and proprietary business records of Defendant.

Subject to and without waiving the foregoing objections, Defendant directs Plaintiff to the contract and amendments thereto entered into between Sebastian County and Turn Key, which set forth the scope of health care services delegated by Sebastian County to Turn Key to provide at the Sebastian County Detention Center. Turn Key was <u>not</u> responsible for setting the policies, procedures, protocols, customs or practices of independent healthcare agencies (such as The Guidance Center) regarding mental health services provided within the Sebastian County Detention Center, nor is Turn Key in possession, custody, or control of documents regarding the mental health services provided by The Guidance Center within the Sebastian County Detention Center during the times relevant to Plaintiff's claims.

Upon the entry of an Agreed Protective Order, Defendant is agreeable to producing the following policies and procedures of Turn Key which were in effect at the time of the care at issue in this case:

1. J-1, Policy and Procedure Development and Review;

2. J-2, Orientation for Medical Personnel;

3. J-3, Credentialing/Personnel Qualifications;

4. J-4, Health Authority;

5. J-5, Provisions of Treatment;

39

6.  J-6, Access to Care;

7.  J-7, Privacy of Care;

8.  J-8, Informed Consent and Right to Refuse;

9.  J-9, Intake Health Screening;

10. J-10, Non-Emergency Health Care Requests (Sick Call);

11. J-11, Nursing Assessment Protocols;

12. J-12, Mental Health Services;

13. J-13, Emergency Psychotropic Administration;

14. J-14, Management of Health Records;

15. J-15, Confidentiality of Health Records;

16. J-16, Emergency Services;

17. J-17, Hospital and Specialty Care;

18. J-18, Offsite Request/Notification/Claims;

19. J-19, Diagnostic Services;

20. J-20, Patients with Special Health Needs/Chronic Care;

21. J-21, Continuity of Care;

22. J-25, Custody Ordered Restraint;

23. J-26, Medical Diets;

24. J-27, Suicide Prevention;

25. J-29, Pharmaceutical and Medication Management;

26. J-30, Medication Administration Training;

27. J-33, Inmate Death and Notification; and

28. J-34, Grievance Process for Healthcare Complaints.

Defendant believes in good faith that these produced policies *could be* relevant to the specific claims in this case. Upon the entry of an Agreed Protective Order, Defendant is also agreeable to producing the Table of Contents relevant to the time frame at issue in this case. If Plaintiff believes additional policies identified within such Tables of Contents may be relevant or have probative value over the specific claims in this lawsuit, Defendant would welcome further discussion. These are proprietary, confidential, and private records of Turn Key, which is not a public entity nor subject to any Arkansas Open Records Act or FOIA requests. Defendant has a legitimate interest in preserving its proprietary and privacy interests in business documents, including the aforementioned documents, and will only agree to produce the same subject to an Agreed Protective Order. Counsel for Defendant previously forwarded correspondence with a **proposed protective order for Plaintiff's counsel's review on May 12,** 2023 and clearly indicated at such time that confidential and proprietary business records will only be produced pursuant to the same. Counsel requested that Plaintiff either proposed revisions to the proposed protective order or approve/endorse the same for filing.

**FIRST SUPPLEMENTAL RESPONSE**: See the Turn Key policies, procedures, and nursing protocols previously produced on July 31, 2023 as Bates Nos. TKHC0340-0546. These documents are specifically designated CONFIDENTIAL and are produced pursuant to the Protective Order on file in this matter.

**SECOND SUPPLEMENTAL RESPONSE**: Pursuant to Fed. R. Civ. P. 33(d)(1), see the documents produced herein as Bates Nos. TKHC0848-0853, TKHC0871-0906, TKHC0909-0915, TKHC0957-0961, TKHC1012-1013, TKHC1200-1246, TKHC1249-1264, TKHC1265-1270, TKHC1273-1282, TKHC1284-1290, TKHC1658-1659, TKHC1663-1667, TKHC1702-1705, TKHC1732, TKHC1984, TKHC1376-2233, TKHC2381, TKHC2629-2632, TKHC2669,

41

TKHC2736-2743, TKHC2750, and TKHC2777-2783. These documents are specifically designated as CONFIDENTIAL and are being produced subject to the Protective Order on file in this matter. Please also see the documents produced herein as Bates Nos. TKHC0845-0847, TKHC1670-1673, TKHC1729, TKHC1731, TKHC2636-2646, and TKHC2755-2758.

**REQUEST FOR PRODUCTION NO. 4**: Please produce all notices, memoranda, e-mails, and other DOCUMENTS provided by Turn Key (or any of its employees) to Sebastian County (or any of its employees) pertaining to jail employees' responsibilities related to medical or mental health services at the Sebastian County Jail.

**RESPONSE**:  Defendant objects to this Request as overly broad, unduly burdensome, vague and ambiguous, and as being based upon the false premise that Turn Key has any responsibility or legal obligation to explain to Sebastian County the County's duties and/or obligations under state or federal law. On the contrary, Turn Key is contracted to perform delegated functions of Sebastian County (specifically, limited medical and psychiatric services) within the Sebastian County Detention Center, and Turn Key has no legal obligation to perform any duties and/or obligations not specifically delegated pursuant to contract. Subject to and without waiving the foregoing objections, Defendant would direct Plaintiff to the contract and amendments thereto between Sebastian County and Turn Key, correspondence discussing the same with Sebastian County, and the HIPAA Business Associate Agreement entered between WACGC and Turn Key, produced herein as Bates Nos. TKHC0258-0284.

**FIRST SUPPLEMENTAL RESPONSE**: See the Turn Key policies, procedures, and nursing protocols previously produced on July 31, 2023 as Bates Nos. TKHC0340-0546. These documents are specifically designated CONFIDENTIAL and are produced pursuant to the Protective Order on file in this matter.

**SECOND SUPPLEMENTAL RESPONSE**: Pursuant to Fed. R. Civ. P. 33(d)(1), see the documents produced herein as Bates Nos. TKHC0841-0844, TKHC0881-0906, TKHC0938-0939, TKHC0968-0974, TKHC1200-1202, TKHC1245-1246, and TKHC1649. These documents are specifically designated as CONFIDENTIAL and are being produced subject to the Protective Order on file in this matter. Please also see the documents produced herein as Bates Nos. TKHC0846-0847,   TKHC0854-0861,   TKHC1030,   TKHC1034-1036,   TKHC1038-1075, TKHC1247-1248,   TKHC1301-1310,   TKHC1660,   TKHC1668-1690,   TKHC1745-1748, TKHC2399-2400,  TKHC2636-2340,  TKHC2641-2646,  TKHC2717-2719,  TKHC2721-2727, TKHC2753-2754, TKHC2759, and TKHC2761-2762.

**REQUEST FOR PRODUCTION NO. 5**: Please produce all DOCUMENTS pertaining to any and all investigations that were conducted to examine the circumstances of Larry Price, Jr.'s death and/or the medical or mental health treatment he received in the Sebastian County Jail between August 19, 2020 and August 29, 2021. Your response should include investigative reports, notes, interview transcripts and recordings, e-mails, and all other DOCUMENTS created or collected for such investigations.

**RESPONSE**:  Defendant objects to this Request as it is overbroad in scope as well as the timeframe requested, is unduly burdensome, and is not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Defendant objects as this Request on its face seeks privileged and protected attorney-client communications and attorney work product. *See Hickman v.* Taylor, 329 U.S. 495, 512 (1947); *Upjohn Co. v. U.S.*, 102 S.Ct. 677 (981).

Subject to and without waiving the foregoing objections, Defendant has no documents responsive to this Request. There was no written report generated from the internal mortality review related to Decedent's death. Defendant is currently unaware of any written statements

and/or documents beyond those contained within Mr. Price's medical records, which are produced herein as Bates Nos. TKHC0001-0256. Defendant is agreeable to producing its Unusual Occurrence Report related to Mr. Price's attack on Misty Williams, LPN pursuant to an Agreed Protective Order. This is a proprietary, confidential, and private record of Turn Key, which is not a public entity nor subject to any Arkansas Open Records Act or FOIA requests. Defendant has a legitimate interest in preserving its proprietary and privacy interests in business documents, including the aforementioned document, and will only agree to produce the same subject to an Agreed Protective Order. Counsel for Defendant previously forwarded correspondence with a proposed protective order for Plaintiff's counsel's review on May 12, 2023 and clearly indicated at such time that confidential and proprietary business records will only be produced pursuant to the same. Counsel requested that Plaintiff either proposed revisions to the proposed protective order or approve/endorse the same for filing. Any remaining documents related to any investigation regarding Decedent's death is privileged as attorney-client communications and attorney work product, for which no privilege log is required.

**FIRST SUPPLEMENTAL RESPONSE**: See the Unusual Occurrence Report previously produced on July 31, 2023 as Bates Nos. TKHC0257. This document is specifically designated CONFIDENTIAL and is produced pursuant to the Protective Order on file in this matter.

**SECOND SUPPLEMENTAL RESPONSE**: After conducting a diligent search, Defendant has located no further documents responsive to this Request, aside from privileged and protected attorney-client communications and attorney work product arising from this litigation, for which a privilege log is not required.

**REQUEST FOR PRODUCTION NO. 6**: Please produce all DOCUMENTS pertaining to the mortality review, morbidity report, root cause analysis, or similar type of internal audit or

review that you identified in your answer to Interrogatory No. 16, including any policies or written materials governing or requiring the post-death reviews and how they are to be conducted. Your response should include all DOCUMENTS considered as part of the review, and all DOCUMENTS created or collected by any person in connection with the review.

**RESPONSE**:  Defendant objects to this Request as it is overbroad in scope as well as the timeframe requested, is unduly burdensome, and is not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Defendant objects as this Request on its face seeks privileged and protected attorney-client communications and attorney work product. *See Hickman v.* Taylor, 329 U.S. 495, 512 (1947); *Upjohn Co. v. U.S.*, 102 S.Ct. 677 (981).

Subject to and without waiving the foregoing objections, **please see Defendant's** Response **to Plaintiff's Request for Production No. 5.**

**REQUEST FOR PRODUCTION NO. 7**: Please produce all DOCUMENTS pertaining to mortality reviews, morbidity reports, root cause analyses, or similar types of internal audits or reviews of the deaths you identified in your answer to Interrogatory No. 13. Your response should include all DOCUMENTS considered as part of such reviews, and all DOCUMENTS created by any person in connection with such reviews. To preserve the confidentiality of the patients named in these documents, you may replace the name of each patient with a unique coded identifier.

**RESPONSE**:  Defendant objects to this Request as it is overbroad in scope and in time, as seeking confidential, protected health information of individuals whose care and treatment is not at issue in this case, is unduly burdensome, and is not reasonably calculated to lead to the discovery of admissible evidence in *this case*, which is limited to the care and treatment of Larry Eugene Price, Jr. at the Sebastian County Detention Center from August 19, 2020 through August 29, 2021. Moreover, Defendant objects as this Request on its face seeks privileged and protected

45

attorney-client communications and attorney work product. *See Hickman v.* Taylor, 329 U.S. 495, 512 (1947); *Upjohn Co. v. U.S.*, 102 S.Ct. 677 (981). This request is no more than an impermissible fishing expedition prohibited by the Federal Rules. Subject to and without waiving the foregoing objections, Defendant states that it is performing a diligent search to determine whether any written death reviews exist for the previously-stated inmate deaths at Sebastian County prior to August 29, 2021 and will supplement this response if any such documents are discovered.

**FIRST SUPPLEMENTAL RESPONSE**: After conducting a diligent search, Defendant has located no documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 8**: Please produce all reports, e-mails, meeting minutes, memoranda, letters, notes, and other DOCUMENTS pertaining to the audits or reviews identified by you in your answer to Interrogatory No. 17.

**RESPONSE**:   Objection. This request is overly broad (scope and time), unduly burdensome, compound, not reasonably calculated to lead to the discovery of admissible evidence and seeks information that may be protected by the attorney-client and/or the work-product privileges and/or documents which may be otherwise confidential and/or proprietary to Defendant. Defendant further objects inasmuch as this Request presupposes a requirement that Turn Key generate written audits and/or documents responsive to this Request. Subject to and without waiving the foregoing objections, Defendant is agreeable to producing Site Statistics for Sebastian County Detention Center from 2019 through August 30, 2021, to the extent they exist, upon the entry of an Agreed Protective Order. These are proprietary, confidential, and private records of Turn Key, which is not a public entity nor subject to any Arkansas Open Records Act or FOIA requests. Defendant has a legitimate interest in preserving its proprietary and privacy interests in business documents, including the aforementioned

46

documents, and will only agree to produce the same subject to an Agreed Protective Order. Counsel for Defendant previously forwarded correspondence with a proposed protective order for **Plaintiff's counsel's review on May 12, 2023 and clearly indicated at such time that confidential** and proprietary business records will only be produced pursuant to the same. Counsel requested that Plaintiff either proposed revisions to the proposed protective order or approve/endorse the same for filing.

**FIRST SUPPLEMENTAL RESPONSE**: See the statistics for Sebastian County previously produced on July 31, 2023 as Bates Nos. TKHC0333-0339. These documents are specifically designated CONFIDENTIAL and are produced pursuant to the Protective Order on file in this matter.

**SECOND SUPPLEMENTAL RESPONSE**: See the documents produced herein as Bates Nos. TKHC0916-0917, TKHC0985-0988, TKHC1291-1298, TKHC1982-1983, and TKHC2378-2380. These documents are specifically designated as CONFIDENTIAL and are being produced subject to the Protective Order on file in this matter. Please also see the documents produced herein as Bates Nos. TKHC1000-1001, TKHC1015-1016, TKHC1031-1033, and TKHC1037.

**REQUEST FOR PRODUCTION NO. 9**: Please produce DOCUMENTS that show each time a Turn Key employee or contractor conducted a wellness check, safety check, segregation check, monitoring check, or other similar observation of Larry Price, Jr. between August 19, 2020 and August 29, 2021.

**RESPONSE**:   Defendant objects to this Request as being overly broad, unduly burdensome, not reasonably limited in time or scope in that it asks for records spanning more than a year, and inasmuch as it is based upon the false premise that Turn Key and/or its employees were responsible for performing wellness checks, safety checks, segregation checks, and/or monitoring

checks of Mr. Price while he was confined within the Sebastian County Detention Center. On the contrary, detention staff, not Turn Key, is responsible for monitoring and performing segregation and/or wellness and/or safety checks on inmates such as Mr. Price. Subject to and without waiving the foregoing objections, Defendant directs Plaintiff to the medical records of Mr. Price, produced herein as Bates Nos. TKHC0001-0256.

**REQUEST FOR PRODUCTION NO. 10**: Please produce all DOCUMENTS pertaining to your answer to Interrogatories 9 and 10, including (a) materials used by trainers or shown or provided to trainees in conjunction with the training described in your answers, and (b) documents showing who completed the trainings you described and when.

**RESPONSE**:   Objection. This Request is overly broad, unduly burdensome, not reasonably limited in time or scope (as the care at issue in this case is limited to Sebastian County Detention Center from August 19, 2020 through August 29, 2021), is vague and ambiguous, and is not reasonably calculated to lead to the discovery of admissible information. Subject to and without waiving the foregoing objections, Defendant does not maintain attendance records for training responsive to this Request. Defendant is agreeable to producing responsive training materials under an Agreed Protective Order. These are proprietary, confidential, and private records of Turn Key, which is not a public entity nor subject to any Arkansas Open Records Act or FOIA requests. Defendant has a legitimate interest in preserving its proprietary and privacy interests in business documents, including the aforementioned documents, and will only agree to produce the same subject to an Agreed Protective Order. Counsel for Defendant previously forwarded correspondence with a proposed protective order for Plaintiff's counsel's review on May 12, 2023 and clearly indicated at such time that confidential and proprietary business records will only be produced pursuant to the same.

Counsel requested that Plaintiff either proposed revisions to the proposed protective order or approve/endorse the same for filing.

**FIRST SUPPLEMENTAL RESPONSE**: See the documents produced herein as Bates Nos. TKHC0841-0843, TKHC1012-1013, TKHC1017, TKHC1203-1204, TKHC1206-1222, TKHC1238-1246, TKHC1249-1251, TKHC1254-1270, TKHC1273-12782, TKHC1284-1290, TKHC1311-1636, TKHC1643-1644, TKHC1647-1656, TKHC1258-1659, TKHC1663-1667, TKHC1669,   TKHC1679-1685,   TKHC1702-1705,   TKHC1713-1728,   TKHC1732-1735, TKHC1758-1984, TKHC1987-2210, TKHC1376-2231, TKHC2253-2254, TKHC2403-2628, TKHC2669, TKHC2738-2743, TKHC2750-2752, and TKHC2777-2783, as well as TKHC0881-0906, TKHC0938-0939, TKHC1245-1246, TKHC1252-1253, TKHC1288-1290, TKHC1663-1667, TKHC1376-2224, and TKHC2226-2231, TKHC2236-2239. These documents are specifically designated as CONFIDENTIAL and are being produced subject to the Protective Order on file in this matter. Please also see the documents produced herein as Bates Nos. TKHC1031-1033, TKHC1670-1673, and TKHC2636-2646, as well as TKHC1034-1036, TKHC1038-1069,   TKHC1076-1198,   TKHC1669,   TKHC1691-1692,   TKHC2255-2377, TKHC2384-2391, TKHC2394-2397, and TKHC2636-2646.

**REQUEST FOR PRODUCTION NO. 11**: Please produce all DOCUMENTS pertaining to your answer to Interrogatory No. 11.

**RESPONSE**:  Objection. This request is overly broad (scope and time), unduly burdensome, vague, ambiguous, compound, seeks irrelevant information, and is not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Defendant does not maintain such information in any format which would make it possible for Defendant to retrieve information responsive to Plaintiff's request. Therefore, it is impossible to respond

to Plaintiff's request as worded beyond production of the medical records of Mr. Price, the patient whose care and treatment is at issue in this case. Defendant would direct Plaintiff to the medical records of Mr. Price produced herein. Nonetheless, Defendant is continuing its performance of a diligent search to locate any responsive documents and will supplement production if / when any such documents are discovered.

**FIRST SUPPLEMENTAL RESPONSE**: See the documents produced herein as Bates Nos. TKHC0920-0923, TKHC0986-0988, TKHC1205, TKHC1233-1237, TKHC1252-1253, TKHC1283, TKHC1647-1649, TKHC1686-1688, TKHC1713-1728, TKHC1733-1735, TKHC1749, TKHC1751-1752, TKHC1985-1986, TKHC2251-2252, TKHC2730-2733, and TKHC2784-2787. These documents are specifically designated as CONFIDENTIAL and are being produced subject to the Protective Order on file in this matter. Please also see the documents produced herein as Bates Nos. TKHC0839-0840, TKHC0927-0933, TKHC0985, TKHC1000-1001, TKHC1007-1011, TKHC1002-1006, TKHC1015-1016, TKHC1028-1029, TKHC1199, TKHC1247-1248, TKHC1271-1272, TKHC1712, TKHC1750, TKHC2211, TKHC2382-2383, TKHC2392-2393, TKHC2400, TKHC2755-2759, and TKHC2761-2762.

**REQUEST FOR PRODUCTION NO. 12**: To the extent they were not produced in response to other requests, please produce all DOCUMENTS you provided to any person, agency, or organization **in response to requests for information pertaining to Larry Price, Jr.'s death or his** medical or mental health treatment in the Sebastian County Jail between August 19, 2020 and August 29, 2021.

**RESPONSE**:  Objection. This Request is overly broad, ambiguous, unduly burdensome, is not reasonably calculated to lead to the discovery of admissible evidence, and appears to seek confidential and protected attorney-client communications and attorney work product on its face.

Subject to and without waiving these objections, and as Defendant interprets this request, please see the medical records of Mr. Price produced herein as Bates Nos. TKHC0001-0256. Defendant is currently unaware of any additional documents responsive to this Request.

**FIRST SUPPLEMENTAL RESPONSE**: Please see supplemental documents responsive to this Request produced herein as Bates Nos. TKHC2788-2954.

**REQUEST FOR PRODUCTION NO. 13**: Please produce the most recent photograph in your custody or control (such as a badge ID photo) of Jawaun Lewis and Christeena Ferguson.

**RESPONSE**:  Defendant objects to this Request as not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving this objection, Defendant does not maintain photographs of employees for badges or any other purposes beyond those contained **within the employees' respective personnel files** for identification verification purposes. However, Plaintiff can easily **obtain a photograph of Dr. Lewis from Defendant's website.** Upon the entry of an Agreed Protective Order, Defendant will produce relevant **portions of Dr. Lewis's and Nurse Ferguson's personnel files in effect prior to August 29, 2021.** These are proprietary, confidential, and private records of Turn Key, which is not a public entity nor subject to any Arkansas Open Records Act or FOIA requests. Defendant has a legitimate interest in preserving its proprietary and privacy interests in business documents, including the aforementioned documents, and will only agree to produce the same subject to an Agreed Protective Order. Counsel for Defendant **previously forwarded correspondence with a proposed protective order for Plaintiff's counsel's** review on May 12, 2023 and clearly indicated at such time that confidential and proprietary business records will only be produced pursuant to the same. Counsel requested that Plaintiff either proposed revisions to the proposed protective order or approve/endorse the same for filing.

**FIRST SUPPLEMENTAL RESPONSE**: See the personnel file previously produced on July 31, 2023 as Bates Nos. TKHC0551-0790. These documents are specifically designated CONFIDENTIAL and are produced pursuant to the Protective Order on file in this matter.

**REQUEST FOR PRODUCTION NO. 14**: Please produce all insurance agreements (primary and excess) under which any insurer may be liable to satisfy part or all of a judgment that may be entered in this action against any defendant, or to indemnify or reimburse for payments made to satisfy the judgment, as well as any DOCUMENTS affecting coverage (such as denying coverage, extending coverage, or reserving rights) from or on behalf of such insurers to any of the defendants in this case. It is not enough to produce the declarations pages; please produce all responsive DOCUMENTS.

**RESPONSE**:  Defendant will produce the complete insurance policy applicable to this action upon the entry of an Agreed Protective Order. These are proprietary, confidential, and private records of Turn Key, which is not a public entity nor subject to any Arkansas Open Records Act or FOIA requests. Defendant has a legitimate interest in preserving its proprietary and privacy interests in business documents, including the aforementioned documents, and will only agree to produce the same subject to an Agreed Protective Order. Counsel for Defendant previously forwarded correspondence with a proposed protective order for Plaintiff's counsel's review on May 12, 2023 and clearly indicated at such time that confidential and proprietary business records will only be produced pursuant to the same. Counsel requested that Plaintiff either proposed revisions to the proposed protective order or approve/endorse the same for filing.

**FIRST SUPPLEMENTAL RESPONSE**: See documents produced herein as Bates Nos. TKHC2955-2965. These documents are specifically designated CONFIDENTIAL and are produced pursuant to the Protective Order on file in this matter.

**REQUEST FOR PRODUCTION NO. 15**: Please produce all letters, e-mails, notes, complaints, and other DOCUMENTS that refer or pertain to any allegation that a person confined in the Sebastian County Jail did not receive adequate medical or mental health care. You may limit your response to DOCUMENTS created or received since January 1, 2019 and you may omit written kites and grievances submitted by people while confined in the jail.

**RESPONSE**:   Objection. This request is overly broad (scope and time), unduly burdensome, vague, ambiguous, compound, seeks irrelevant information, not reasonably calculated to lead to the discovery of admissible evidence, and seeks private health information of non-parties protected from disclosure under HIPAA. Defendant cannot, and will not, produce any health information of other patients. Moreover, Defendant does not maintain such information in any format which would make it possible for Defendant to **retrieve information responsive to Plaintiff's request.** Therefore, it is impossible to respond to **Plaintiff's request as worded beyond production of the medical records of Mr.** Price, the patient whose care and treatment is at issue in this case. Defendant would direct Plaintiff to the medical records of Mr. Price produced herein.

**FIRST SUPPLEMENTAL RESPONSE**: See the documents produced herein as Bates Nos. TKHC0920-0923, TKHC0986-0988, TKHC1205, TKHC1233-1237, TKHC1252-1253, TKHC1283, TKHC1647-1649, TKHC1686-1688, TKHC1713-1728, TKHC1733-1735, TKHC1749, TKHC1751-1752, TKHC1985-1986, TKHC2251-2252, TKHC2730-2733, and TKHC2784-2787. These documents are specifically designated as CONFIDENTIAL and are being produced subject to the Protective Order on file in this matter. Please also see the documents produced herein as Bates Nos. TKHC0839-0840, TKHC0927-0933, TKHC0985, TKHC1000-1001, TKHC1007-1011, TKHC1002-1006, TKHC1015-1016, TKHC1028-1029, TKHC1199,

TKHC1247-1248, TKHC1271-1272, TKHC1712, TKHC1750, TKHC2211, TKHC2382-2383, TKHC2392-2393, TKHC2400, TKHC2755-2759, and TKHC2761-2762. After conducting a diligent search, Defendant has located no further documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 16**: Please produce all e-mails, letters, memoranda, and other communications between Sebastian County (or any County employee or representative) and Turn Key Health Clinics, LLC (or any Turn Key employee or representative) regarding alleged deficiencies in, or the quality or adequacy of, medical or mental health services at the Sebastian County Jail. You may limit your response to DOCUMENTS created or received since January 1, 2019.

**RESPONSE**:   Objection. This Request is vague, ambiguous, compound, unduly burdensome, and overly broad as to time and scope. The care and treatment at issue in this case occurred at the Sebastian County Detention Center from August 19, 2020 through August 29, 2021; therefore, any discovery after August 29, 2021 has no relevance to this lawsuit and would have no probative value over any of the material issues in this case. Therefore, Defendant further objects to this Request as an impermissible fishing expedition and as not being reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing objections, please see the correspondence between Sebastian County and Turn Key discussing the healthcare services within the Sebastian County Detention Center, produced herein as Bates Nos. TKHC0282-0284. Defendant is continuing to conduct a diligent search for responsive documents and will supplement its Response upon the entry of an Agreed Protective Order. These are proprietary, confidential, and private records of Turn Key, which is not a public entity nor subject to any Arkansas Open Records Act or FOIA requests. Defendant has a legitimate interest in preserving

its proprietary and privacy interests in business documents, including the aforementioned documents, and will only agree to produce the same subject to an Agreed Protective Order. Counsel for Defendant previously forwarded correspondence with a proposed protective order for **Plaintiff's counsel's review on May 12, 2023 and clearly indicated at such time that confidential** and proprietary business records will only be produced pursuant to the same. Counsel requested that Plaintiff either proposed revisions to the proposed protective order or approve/endorse the same for filing.

**FIRST SUPPLEMENTAL RESPONSE**: See the documents produced herein as Bates Nos. TKHC0920-0923, TKHC0986-0988, TKHC1205, TKHC1233-1237, TKHC1252-1253, TKHC1283, TKHC1647-1649, TKHC1686-1688, TKHC1713-1728, TKHC1733-1735, TKHC1749, TKHC1751-1752, TKHC1985-1986, TKHC2251-2252, TKHC2730-2733, and TKHC2784-2787. These documents are specifically designated as CONFIDENTIAL and are being produced subject to the Protective Order on file in this matter. Please also see the documents produced herein as Bates Nos. TKHC0839-0840, TKHC0927-0933, TKHC0985, TKHC1000-1001, TKHC1007-1011, TKHC1002-1006, TKHC1015-1016, TKHC1028-1029, TKHC1199, TKHC1247-1248, TKHC1271-1272, TKHC1712, TKHC1750, TKHC2211, TKHC2382-2383, TKHC2392-2393, TKHC2400, TKHC2755-2759, and TKHC2761-2762.

**REQUEST FOR PRODUCTION NO. 17**: Please produce all e-mails, letters, memoranda, meeting minutes, and other DOCUMENTS that pertain to efforts by Turn Key to coordinate services with the Western Arkansas Counseling & Guidance Center. You may limit your response to DOCUMENTS that address coordination of services generally or with regard to Larry Price, Jr. (as opposed to services for other specific patients).

**RESPONSE**:   Objection. This Request is overly broad as to time and scope, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and is based upon the false premise that Turn **Key had any obligation to "coordinate services with"** WACGC. On the contrary, Sebastian County contracted with WACGC and was responsible for coordinating mental health services with WACGC. Subject to and without waiving the foregoing objections, please see the documents produced herein as Bates Nos. TKHC0258-0284. Defendant is continuing to conduct a diligent search for any additional responsive documents and will supplement its Response if / when any such documents are discovered upon the entry of an Agreed Protective Order. These are proprietary, confidential, and private records of Turn Key, which is not a public entity nor subject to any Arkansas Open Records Act or FOIA requests. Defendant has a legitimate interest in preserving its proprietary and privacy interests in business documents, including the aforementioned documents, and will only agree to produce the same subject to an Agreed Protective Order. Counsel for Defendant previously forwarded correspondence with a proposed **protective order for Plaintiff's counsel's review on May 12, 2023** and clearly indicated at such time that confidential and proprietary business records will only be produced pursuant to the same. Counsel requested that Plaintiff either proposed revisions to the proposed protective order or approve/endorse the same for filing.

**FIRST SUPPLEMENTAL RESPONSE**: See the documents produced herein as Bates Nos. TKHC0862-0906, and TKHC0986-0988. These documents are specifically designated as CONFIDENTIAL and are being produced subject to the Protective Order on file in this matter. Please also see the documents produced herein as Bates Nos. TKHC0854-0861, TKHC0907-0908, TKHC0918-0919, TKHC0924-0926, TKHC0934-0937, TKHC0940-0950, TKHC0962-0985, TKHC0989-1001,   TKHC1007-1011,   TKHC1002-1006,   TKHC1015-1027,   TKHC1033,

TKHC1037, TKHC1070-1075, TKHC1301-1310, TKHC1745-1748, TKHC2398-2400, and TKHC2753-2754.

**REQUEST FOR PRODUCTION NO. 18**: Please produce DOCUMENTS showing the amounts of money Turn Key budgeted and spent for medical and mental health care at the Sebastian County Jail for each year since 2019. Please produce DOCUMENTS that show this information in the greatest detail available (e.g., budgets and expense sheets showing the specific line items).

**RESPONSE**:  Defendant objects to this Request as overly broad in both time and scope, vague, unduly burdensome, irrelevant, and seeking information not reasonably calculated to lead to the discovery of admissible evidence. Furthermore, Defendant objects to this request as it seeks private and confidential business information that is wholly unrelated to the subject matter of the pending action and is merely an inappropriate fishing expedition meant to harass, burden, and oppress Defendant. There is no evidence in this case that Defendant's financial condition and/or budget had any causal relationship with Mr. Price's death or Plaintiff's claims in this action, and any discovery into Defendant's financial condition is premature at this time. Additionally, Turn Key was not contracted to provide "mental health services" beyond limited psychiatric services within the Sebastian County Detention Center at any time relevant to Plaintiff's claims. Subject to and without waiving these objections, Defendant directs Plaintiff to the contract and amendments produced herein, Bates Nos. TKHC0258-0274, which set forth the scope of services and contracted for reimbursement amounts for services provided at the Sebastian County Detention Center. Defendant further invites Plaintiff to discuss the narrowing and clarification of this request and the possibility of producing certain limited financial information under Agreed Protective Order.

**REQUEST FOR PRODUCTION NO. 19**: Please produce all DOCUMENTS expressing or pertaining to any concerns or questions relating to budget overages (whether in whole or specific to any line-item or category of expense) in connection with Turn Key's agreement to provide services at the Sebastian County Jail since 2019.

**RESPONSE**: Defendant objects to this Request as overly broad in both time and scope, vague, unduly burdensome, irrelevant, and seeking information not reasonably calculated to lead to the discovery of admissible evidence. Furthermore, Defendant objects to this request as it seeks private and confidential business information that is wholly unrelated to the subject matter of the pending action and is merely an inappropriate fishing expedition meant to harass, burden, and oppress Defendant. There is no evidence in this case that Defendant's financial condition and/or budget had any causal relationship with Mr. Price's death or Plaintiff's claims in this action, and any discovery into Defendant's financial condition is premature at this time. Additionally, Turn Key was not contracted to provide "mental health services" beyond limited psychiatric services within the Sebastian County Detention Center at any time relevant to Plaintiff's claims. Subject to and without waiving these objections, Defendant is currently not aware of any documents responsive to this Request. However, Defendant is continuing to perform a diligent search for any responsive documents and will supplement this response if / when any such documents are discovered in the future pursuant to an Agreed Protective Order. These are proprietary, confidential, and private records of Turn Key, which is not a public entity nor subject to any Arkansas Open Records Act or FOIA requests. Defendant has a legitimate interest in preserving its proprietary and privacy interests in business documents, including the aforementioned documents, and will only agree to produce the same subject to an Agreed Protective Order. Counsel for Defendant previously forwarded correspondence with a proposed protective order for

58

Plaintiff's counsel's review on May 12, 2023 and clearly indicated at such time that confidential and proprietary business records will only be produced pursuant to the same. Counsel requested that Plaintiff either proposed revisions to the proposed protective order or approve/endorse the same for filing.

**FIRST SUPPLEMENTAL RESPONSE**: See the documents produced herein as Bates Nos. TKHC0837-0838. These documents are specifically designated as CONFIDENTIAL and are being produced subject to the Protective Order on file in this matter. Please also see the documents produced herein as Bates Nos. TKHC0854-0857 and TKHC1070-1075.

**REQUEST FOR PRODUCTION NO. 20**: Please produce DOCUMENTS showing Turn Key's annual revenue and costs pertaining to its contract with Sebastian County for each year the contract has been in effect.

**RESPONSE**:  Defendant objects to this Request as overly broad in both time and scope, vague, unduly burdensome, irrelevant, and seeking information not reasonably calculated to lead to the discovery of admissible evidence. Furthermore, Defendant objects to this request as it seeks private and confidential business information that is wholly unrelated to the subject matter of the pending action and is merely an inappropriate fishing expedition meant to harass, burden, and oppress Defendant. There is no evidence in this case that Defendant's financial condition and/or budget had any causal relationship with Mr. Price's death or Plaintiff's claims in this action, and any discovery into Defendant's financial condition is premature at this time. Additionally, Turn Key was not contracted to provide "mental health services" beyond limited psychiatric services within the Sebastian County Detention Center at any time relevant to Plaintiff's claims. Subject to and without waiving these objections, Defendant directs Plaintiff to the contract and amendments produced herein, Bates Nos. TKHC0258-0274, which set forth the scope of services and contracted

for reimbursement amounts for services provided at the Sebastian County Detention Center. Defendant further invites Plaintiff to discuss the narrowing and clarification of this request and the possibility of producing certain limited financial information under Agreed Protective Order. These are proprietary, confidential, and private records of Turn Key, which is not a public entity nor subject to any Arkansas Open Records Act or FOIA requests. Defendant has a legitimate interest in preserving its proprietary and privacy interests in business documents, including the aforementioned documents, and will only agree to produce the same subject to an Agreed Protective Order. Counsel for Defendant previously forwarded correspondence with a proposed **protective order for Plaintiff's counsel's review on May 12, 2023 and clearly indicated at such** time that confidential and proprietary business records will only be produced pursuant to the same. Counsel requested that Plaintiff either proposed revisions to the proposed protective order or approve/endorse the same for filing.

**REQUEST FOR PRODUCTION NO. 21**: Please produce DOCUMENTS showing Turn Key's <u>total</u> annual revenue and expenses for each year since 2019. Please produce DOCUMENTS that show this information in the greatest detail available (i.e., broken down by specific revenue sources and expense categories).

**RESPONSE**:  Defendant objects to this Request as overly broad in both time and scope, vague, unduly burdensome, irrelevant, and seeking information not reasonably calculated to lead to the discovery of admissible evidence. Furthermore, Defendant objects to this request as it seeks private and confidential business information that is wholly unrelated to the subject matter of the pending action and is merely an inappropriate fishing expedition meant to harass, burden, and oppress Defendant. **There is no evidence in this case that Defendant's financial condition and/or budget had any causal relationship with Mr. Price's death or Plaintiff's claims in this action, and**

any discovery into Defendant's financial condition is premature at this time. Additionally, Turn Key was not contracted to provide "mental health services" beyond limited psychiatric services within the Sebastian County Detention Center at any time relevant to Plaintiff's claims. Subject to and without waiving these objections, Defendant directs Plaintiff to the contract and amendments produced herein, Bates Nos. TKHC0258-0274, which set forth the scope of services and contracted for reimbursement amounts for services provided at the Sebastian County Detention Center. Defendant further invites Plaintiff to discuss the narrowing and clarification of this request and the possibility of producing certain limited financial information under Agreed Protective Order. These are proprietary, confidential, and private records of Turn Key, which is not a public entity nor subject to any Arkansas Open Records Act or FOIA requests. Defendant has a legitimate interest in preserving its proprietary and privacy interests in business documents, including the aforementioned documents, and will only agree to produce the same subject to an Agreed Protective Order. Counsel for Defendant previously forwarded correspondence with a proposed protective order for Plaintiff's counsel's review on May 12, 2023 and clearly indicated at such time that confidential and proprietary business records will only be produced pursuant to the same. Counsel requested that Plaintiff either proposed revisions to the proposed protective order or approve/endorse the same for filing.

**REQUEST FOR PRODUCTION NO. 22**: Please produce all annual reports, balance sheets, profit and loss statements, income statements, and other DOCUMENTS showing Turn Key's current financial condition, assets, liabilities, and net worth.

**RESPONSE**: Defendant objects to this Request as overly broad in both time and scope, vague, unduly burdensome, irrelevant, and seeking information not reasonably calculated to lead to the discovery of admissible evidence. Furthermore, Defendant objects to this request as it seeks

private and confidential business information that is wholly unrelated to the subject matter of the pending action and is merely an inappropriate fishing expedition meant to harass, burden, and oppress Defendant. There is no evidence in this **case that Defendant's financial condition and/or budget had any causal relationship with Mr. Price's death or Plaintiff's claims in this action, and any discovery into Defendant's financial condition is premature at this time. Additionally, Turn Key was not contracted to provide "mental health services" beyond limited psychiatric services within the Sebastian County Detention Center at any time relevant to Plaintiff's claims.** Subject to and without waiving these objections, Defendant directs Plaintiff to the contract and amendments produced herein, Bates Nos. TKHC0258-0274, which set forth the scope of services and contracted for reimbursement amounts for services provided at the Sebastian County Detention Center. Defendant further invites Plaintiff to discuss the narrowing and clarification of this request and the possibility of producing certain limited financial information under Agreed Protective Order. These are proprietary, confidential, and private records of Turn Key, which is not a public entity nor subject to any Arkansas Open Records Act or FOIA requests. Defendant has a legitimate interest in preserving its proprietary and privacy interests in business documents, including the aforementioned documents, and will only agree to produce the same subject to an Agreed Protective Order. Counsel for Defendant previously forwarded correspondence with a proposed **protective order for Plaintiff's counsel's review on May 12, 2023 and clearly indicated at such** time that confidential and proprietary business records will only be produced pursuant to the same. Counsel requested that Plaintiff either proposed revisions to the proposed protective order or approve/endorse the same for filing.

**REQUEST FOR PRODUCTION NO. 23**: Please produce all letters, reports, and other DOCUMENTS that discuss (a) the prevalence of mental illness in the Sebastian County Jail (i.e.,

the actual or estimated number or proportion of people with a mental illness confined in the jail) for each year since 2019, or (b) challenges faced by Sebastian County and its jail employees, or Turn Key and its employees, in providing adequate mental health services to people confined in the jail.

**RESPONSE**:  Defendant objects to this Request as overly broad in both time and scope, vague and ambiguous, unduly burdensome, irrelevant, and seeking information not reasonably calculated to lead to the discovery of admissible evidence. Furthermore, Turn Key was not contracted to provide "mental health services" beyond limited psychiatric services within the Sebastian County Detention Center at any time relevant to Plaintiff's claims. Subject to and without waiving these objections, Defendant is currently not aware of any documents responsive to this Request.

**FIRST SUPPLEMENTAL RESPONSE**: After conducting a diligent search, Defendant has located no further documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 24**: Please produce all call logs, notes, letters, e-mails, and other DOCUMENTS documenting communications between Turn Key employees and any member of Larry Price, Jr.'s family, including Mr. Price's brother, Rodney Price, and his aunt, Beverly Ann Releford.

**RESPONSE**:  Defendant is currently unaware of any documents responsive to this Request outside of what is documented within Mr. Price's medical records, which are produced as Bates Nos. TKHC0001-0256.

**FIRST SUPPLEMENTAL RESPONSE**: None.

**REQUEST FOR PRODUCTION NO. 25**: Please produce DOCUMENTS showing which Turn Key employees and contractors worked in the Sebastian County Jail between August 19, 2020 and August 29, 2021 and the hours they worked there during those dates.

**RESPONSE**:  Defendant objects to this Request as overly broad as to time and scope and unduly burdensome, **as Plaintiff's request seeks time records** for more than a year in timeframe, which is unreasonable. For the same reasons, Defendant objects to this Request as not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, Defendant will agree to produce limited time records within the Sebastian County Detention Center upon the entry of an Agreed Protective Order. These are proprietary, confidential, and private records of Turn Key, which is not a public entity nor subject to any Arkansas Open Records Act or FOIA requests. Defendant has a legitimate interest in preserving its proprietary and privacy interests in business documents, including the aforementioned documents, and will only agree to produce the same subject to an Agreed Protective Order. Counsel for Defendant previously forwarded correspondence with a proposed protective order for **Plaintiff's counsel's review on May 12, 2023 and clear**ly indicated at such time that confidential and proprietary business records will only be produced pursuant to the same. Counsel requested that Plaintiff either proposed revisions to the proposed protective order or approve/endorse the same for filing.

**REQUEST FOR PRODUCTION NO. 26**: Please produce all orientation manuals for Turn Key nurses, physicians, physician assistants, psychologists, and other types of medical and mental health providers working at the Sebastian County Jail at any time between August 19, 2020 and August 29, 2021.

**RESPONSE**:   Objection. This Request is overly broad, unduly burdensome, not

reasonably limited in time or scope, and is not reasonably calculated to lead to the discovery of admissible information. Moreover, Defendant objects inasmuch as this Request is based upon the false premise that Turn Key had any duty or obligation to provide training to the local community mental health personnel who were contracted by Sebastian County to provide mental health services at the Sebastian County Detention Center. Subject to and without waiving the foregoing objections, upon the entry of an Agreed Protective Order, Defendant is agreeable to producing portions of the personnel files of Defendants Lewis and Ferguson which existed prior to August 29, 2021. At the times relevant to Mr. **Price's** care and treatment, medical staff received on-the-job training during orientation, which included **orientation to the facility itself and to Turn Key's policies, procedures, and protocols**. Furthermore, Defendant states that it is in the process of locating its training materials which were in effect at the times relevant to Mr. **Price's** incarceration at the Sebastian County Detention Center and will promptly supplement production if / when such documents are located, upon the entry of an Agreed Protective Order. These are proprietary, confidential, and private records of Turn Key, which is not a public entity nor subject to any Arkansas Open Records Act or FOIA requests. Defendant has a legitimate interest in preserving its proprietary and privacy interests in business documents, including the aforementioned documents, and will only agree to produce the same subject to an Agreed Protective Order. Counsel for Defendant previously **forwarded correspondence with a proposed protective order for Plaintiff's counsel's review on** May 12, 2023 and clearly indicated at such time that confidential and proprietary business records will only be produced pursuant to the same. Counsel requested that Plaintiff either proposed revisions to the proposed protective order or approve/endorse the same for filing.

**FIRST SUPPLEMENTAL RESPONSE**: See the documents produced herein as Bates Nos. TKHC1311-1636, TKHC1759-1981, TKHC1987-2209, and TKHC2403-2628. These documents are specifically designated as CONFIDENTIAL and are being produced subject to the Protective Order on file in this matter.

**REQUEST FOR PRODUCTION NO. 27**: Please produce all nursing protocols and clinical guidelines applicable at the Sebastian County Jail between August 19, 2020 and August 29, 2021.

**RESPONSE**: Objection. This request is overly broad (scope and time), unduly burdensome, seeks irrelevant information which is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff's "policy, practice, or custom" claim against Defendant is limited to staffing, supervision, and treatment of inmates, like Mr. Price, with serious mental illness. *See* Plt.'s Compl. At the times relevant to Plaintiff's claims, Turn Key was not contracted to provide any mental health crises or mental health services beyond limited psychiatric clinical services during Decedent's incarceration at the Sebastian County Detention Center. On the contrary, Turn Key's contract with Sebastian County specifically provided that all crisis management and mental health evaluations/assessments shall be performed by an independent community mental health provider designated by the Agency, not Turn Key. Moreover, effective January 1, 2020, Sebastian County amended its contract with Turn Key to eliminate the position for eight (8) hours per week of mental health coverage for case management and to serve as a clinical liaison between Turn Key's psychiatrist and the local community health provider. Please see the contract and relevant amendments thereto between Turn Key and Sebastian County, produced herein as Bates Nos. TKHC0258-0274. Finally, this Request seeks confidential and proprietary business records of Defendant.

Subject to and without waiving the foregoing objections, upon the entry of an Agreed Protective Order, Defendant **agrees to produce its "Post Hospitalization" Nursing Protocol, which** *may have potential* relevance to the claims in this lawsuit.

Defendant further identifies the following Nursing Protocols which were in effect during **the timeframe of Mr. Price's incarceration at the Sebastian County Detention Center:**

1. Abdominal Pain – Constipation - Diarrhea

2. Alcohol Detox

3. Anxiety / Panic Attack

4. Back Pain

5. Benzo Detox

6. Boils

7. Burns

8. Chest Pain

9. Covid Symptoms

10. Dental Extraction

11. Dental Toothache

12. Dental – Arresting Dental Carious Lesions or Treating Tooth Sensitivity

13. Diabetic – Hypoglycemic

14. DSM-5 Criteria for Diagnosis of Opioid Use Disorder

15. Earache

16. Elevated Blood Pressure

17. Fracture

18. Genital Discharge

19. Headache

20. Hunger Strike

21. Laceration

22. Menstrual Cramps

23. Musculoskeletal Pain

24. Nausea / Vomiting

25. Neurological Complaint

26. Nosebleed

27. OB Encounter

28. Opioid – Detox

29. Opioid Use Disorder Protocol

30. Painful Urination

31. Parasitic / Lice

32. Pregnancy

33. Seizures

34. Shortness of Breath

35. Skin Irritations

36. Suture / Staple Removal

37. Upper Respiratory

38. Venipuncture

39. WOWS Protocol

If Plaintiff believes any of the above-listed protocols may have potential relevance to the

claims in this lawsuit, Defendant invites Plaintiff to advise of the good faith basis for her belief

that such document(s) is/are discoverable and the possibility of producing the same under an Agreed Protective Order. These are proprietary, confidential, and private records of Turn Key, which is not a public entity nor subject to any Arkansas Open Records Act or FOIA requests. Defendant has a legitimate interest in preserving its proprietary and privacy interests in business documents, including the aforementioned documents, and will only agree to produce the same subject to an Agreed Protective Order. Counsel for Defendant previously forwarded **correspondence with a proposed protective order for Plaintiff's counsel's review on May 12, 2023** and clearly indicated at such time that confidential and proprietary business records will only be produced pursuant to the same. Counsel requested that Plaintiff either proposed revisions to the proposed protective order or approve/endorse the same for filing.

      **FIRST SUPPLEMENTAL RESPONSE**: See the nursing protocols previously produced on July 31, 2023 as Bates Nos. TKHC0510-0546. These documents are specifically designated CONFIDENTIAL and are produced pursuant to the Protective Order on file in this matter.

      **SECOND SUPPLEMENTAL RESPONSE**: See the documents produced herein as Bates Nos. TKHC0881-0906, TKHC1203-1204, TKHC1206-1222, TKHC1238-1246, TKHC1249-1270, TKHC1273-1282, TKHC1284-1290, TKHC1643-1644, TKHC1647-1648, TKHC1658-1659, TKHC1663-1667, TKHC1701-1705, TKHC1753-1757, TKHC1376-2235, TKHC2240-2250, TKHC2647-2671, TKHC3568, TKHC2738-2743, TKHC2751-2752, and TKHC2767-2783. These documents are specifically designated as CONFIDENTIAL and are being produced subject to the Protective Order on file in this matter. Please also see the documents produced herein as Bates Nos. TKHC1661-1662, TKHC1668-1690, and TKHC1669-1673.

      **REQUEST FOR PRODUCTION NO. 28**: Please produce the personnel file of Christeena Ferguson, including all training records, certifications, contracts, complaints,

grievances, performance reviews, disciplinary records, position descriptions, and records reflecting employment dates, changes in title or position, and bonus compensation structure. Exclude from your answer purely personal information such as date of birth, home address, social security number, and information that is purely related to base compensation and employment benefits.

**RESPONSE**:  Objection. This Request is overly broad (scope and timframe), not reasonably limited in time, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence and seeks information that may be confidential and/or proprietary to Defendant. Subject to and without waiving the foregoing objections, upon the entry of an Agreed Protective Order, Defendant will produce the personnel file of Christeena Ferguson, RN, from the date of her hire through August 29, 2021. Defendant will not withhold production of any documents, regardless of date, which may relate to Larry Eugene Price, Jr. Defendant intends to withhold from production any employee financial, tax, employee benefits, or health records (i.e., W-4s, W-2s, I-9s, Immunization Records, Social Security Cards, and Direct Deposit Forms, Retirement, Health Insurance). These are proprietary, confidential, and private records of Turn Key, which is not a public entity nor subject to any Arkansas Open Records Act or FOIA requests. Defendant has a legitimate interest in preserving its proprietary and privacy interests in business documents, including the aforementioned documents, and will only agree to produce the same subject to an Agreed Protective Order. Counsel for Defendant previously forwarded correspondence with a proposed protective order for **Plaintiff's counsel's review on May 12, 2023 and clearly indicated at such time that confidential** and proprietary business records will only be produced pursuant to the same. Counsel requested

that Plaintiff either proposed revisions to the proposed protective order or approve/endorse the same for filing.

**FIRST SUPPLEMENTAL RESPONSE**: See the personnel file previously produced on July 31, 2023 as Bates Nos. TKHC0551-0633. These documents are specifically designated CONFIDENTIAL and are produced pursuant to the Protective Order on file in this matter.

**REQUEST FOR PRODUCTION NO. 29**: Please produce the personnel file of Jawaun Lewis, including all training records, certifications, contracts, complaints, grievances, performance reviews, disciplinary records, position descriptions, and records reflecting employment dates, changes in title or position, and bonus compensation structure. Exclude from your answer purely personal information such as date of birth, home address, social security number, and information that is purely related to base compensation and employment benefits.

**RESPONSE**:  Objection. This Request is overly broad (scope and timeframe), not reasonably limited in time, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence and seeks information that may be confidential and/or proprietary to Defendant. Subject to and without waiving the foregoing objections, upon the entry of an Agreed Protective Order, Defendant will produce the personnel file of Dr. Jawaun Lewis, from the date of his hire through August 29, 2021. Defendant will not withhold production of any documents, regardless of date, which may relate to Larry Eugene Price, Jr. Defendant intends to withhold from production any employee financial, tax, employee benefits, or health records (i.e., W-4s, W-2s, I-9s, Immunization Records, Social Security Cards, and Direct Deposit Forms, Retirement, Health Insurance). These are proprietary, confidential, and private records of Turn Key, which is not a public entity nor subject to any Arkansas Open Records Act or FOIA requests. Defendant has a legitimate interest in preserving

71

its proprietary and privacy interests in business documents, including the aforementioned documents, and will only agree to produce the same subject to an Agreed Protective Order. Counsel for Defendant previously forwarded correspondence with a proposed protective order for **Plaintiff's counsel's review on May 12, 2023 and clearly indicated at such time that confidential** and proprietary business records will only be produced pursuant to the same. Counsel requested that Plaintiff either proposed revisions to the proposed protective order or approve/endorse the same for filing.

      **FIRST SUPPLEMENTAL RESPONSE**: See the personnel file previously produced on July 31, 2023 as Bates Nos. TKHC0634-0790. These documents are specifically designated CONFIDENTIAL and are produced pursuant to the Protective Order on file in this matter.

      **REQUEST FOR PRODUCTION NO. 30**: Please produce the personnel file of any other Turn Key medical or mental health providers who worked at the Sebastian County Jail between August 19, 2020 and August 29, 2021, including all training records, certifications, contracts, complaints, grievances, performance reviews, disciplinary records, position descriptions, and records reflecting employment dates, changes in title or position, and bonus compensation structure. Exclude from your answer purely personal information such as date of birth, home address, social security number, and information that is purely related to base compensation and employment benefits.

      **RESPONSE**: Objection. This request is overly broad as to scope and time, not reasonably limited in time, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence and seeks information that may be confidential and/or proprietary to Defendant. Subject to and without waiving the foregoing objections, **Plaintiff's** unfettered request for all personnel files of employees who worked within the Sebastian

County Detention Center for over a year, whose care and treatment may not even be at issue in this lawsuit and/or who may not have even provided care and treatment to Mr. Price, is unreasonable and unduly burdensome on its face. Therefore, Defendant requests that Plaintiff narrow this request and identify specific employees whose care Plaintiff believes to be at issue in this lawsuit, and Defendant will produce the portions of such personnel files in effect from date of hire through August 29, 2021 upon the entry of an Agreed Protective Order. Defendant will not withhold production of any documents, regardless of date, which may relate to Larry Eugene Price, Jr. Defendant intends to withhold from production any employee financial, tax, employee benefits, or health records (i.e., W-4s, W-2s, I-9s, Immunization Records, Social Security Cards, and Direct Deposit Forms, Retirement, Health Insurance). These are proprietary, confidential, and private records of Turn Key, which is not a public entity nor subject to any Arkansas Open Records Act or FOIA requests. Defendant has a legitimate interest in preserving its proprietary and privacy interests in business documents, including the aforementioned documents, and will only agree to produce the same subject to an Agreed Protective Order. Counsel for Defendant previously forwarded correspondence with a proposed **protective order for Plaintiff's counsel's review on** May 12, 2023 and clearly indicated at such time that confidential and proprietary business records will only be produced pursuant to the same. Counsel requested that Plaintiff either proposed revisions to the proposed protective order or approve/endorse the same for filing.

      **FIRST SUPPLEMENTAL RESPONSE**: As narrowed by Plaintiff, see the personnel file previously produced on July 31, 2023 as Bates Nos. TKHC0791-0834. These documents are specifically designated CONFIDENTIAL and are produced pursuant to the Protective Order on file in this matter.

**REQUEST FOR PRODUCTION NO. 31**: Please produce all DOCUMENTS pertaining to quality improvement/CQI efforts at the Sebastian County Jail from the time you first began providing services there to the present time.

**RESPONSE**:  Objection. This Request is vague, ambiguous, unduly burdensome, and overly broad as to time and scope. The care and treatment at issue in this case occurred between August 19, 2020 and August 29, 2021; therefore, any discovery beyond Sebastian County Detention Center after August 29, 2021 has no relevance to this lawsuit and would have no probative value over any of the material issues in this case. Moreover, the Sebastian County Detention Center is not an accredited facility. Therefore, Defendant further objects to this Request as an impermissible fishing expedition and as not being reasonably calculated to lead to the discovery of admissible evidence. Furthermore, Defendant objects to this Request to the extent it is based upon the false assumption that Turn Key was required to maintain a CQI Program at the Sebastian County Detention at the times relevant to this lawsuit. Defendant also objects inasmuch as this Request seeks private, confidential, peer review, and protected information.  Subject to and without waiving the foregoing objections, upon the entry of an Agreed Protective Order, Defendant will produce its Policy: J-3, Credentialing / Personnel Qualifications. Defendant is currently unaware of any further documents responsive to this Request.

**FIRST SUPPLEMENTAL RESPONSE**: See the documents produced herein as Bates Nos. TKHC0915, TKHC0985-0988, TKHC 1203-1204, TKHC1206-1232, TKHC1238-1246, TKHC1249-1270, TKHC1273-1282, TKHC1284-1290, TKHC1647-1648, TKHC1663-1667, TKHC1702-1705, TKHC1732, TKHC1758, TKHC1984, TKHC1376-2224, TKHC2226-2231, TKHC2253-2254, TKHC2381, TKHC2629-2635, TKHC2672-2716, TKHC2732-2733,

TKHC2738-2743, TKHC2745, TKHC2751-2752, and TKHC2777-2783. These documents are specifically designated as CONFIDENTIAL and are being produced subject to the Protective Order on file in this matter. Please also see the documents produced herein as Bates Nos. TKHC1000-1011, TKHC1015-1016, TKHC1031-1033, TKHC1037, TKHC1729, and TKHC1731.

**REQUEST FOR PRODUCTION NO. 32**: Please produce all documents signed by Christeena Ferguson acknowledging the receipt and/or review of orientation materials, policies, procedures, nursing protocols, or clinical guidelines.

**RESPONSE**:  Upon the entry of an Agreed Protective Order, Defendant will produce the **requested documents from Christeena Ferguson's personnel file.** These are proprietary, confidential, and private records of Turn Key, which is not a public entity nor subject to any Arkansas Open Records Act or FOIA requests. Defendant has a legitimate interest in preserving its proprietary and privacy interests in business documents, including the aforementioned documents, and will only agree to produce the same subject to an Agreed Protective Order. Counsel for Defendant previously forwarded correspondence with a proposed protective order for **Plaintiff's counsel's review on May 12, 2023 and clearly indicated at such time that confidential** and proprietary business records will only be produced pursuant to the same. Counsel requested that Plaintiff either proposed revisions to the proposed protective order or approve/endorse the same for filing.

**REQUEST FOR PRODUCTION NO. 33**: Please produce all contract bids or proposals (including all attachments) that led to Turn Key providing healthcare services at the Sebastian County Jail.

**RESPONSE**: Objection. This Request is overly broad and not reasonably calculated to lead to the discovery of admissible evidence, as the contract between Sebastian County and Turn Key sets forth the agreed-upon scope of services performed by Turn Key within the Sebastian County Detention Center. Moreover, Defendant objects to this Request as seeking confidential and proprietary business information of which Defendant has a legitimate interest in preventing disclosure to its competitors. Subject to and without waiving the foregoing objections, Defendant will produce any responsive materials, to the extent they exist, upon the entry of an Agreed Protective Order. These are proprietary, confidential, and private records of Turn Key, which is not a public entity nor subject to any Arkansas Open Records Act or FOIA requests. Defendant has a legitimate interest in preserving its proprietary and privacy interests in business documents, including the aforementioned documents, and will only agree to produce the same subject to an Agreed Protective Order. Counsel for Defendant previously forwarded correspondence with a proposed protective order for Plaintiff's counsel's review on May 12, 2023 and clearly indicated at such time that confidential and proprietary business records will only be produced pursuant to the same. Counsel requested that Plaintiff either proposed revisions to the proposed protective order or approve/endorse the same for filing.

**FIRST SUPPLEMENTAL RESPONES**: See the Sebastian County Proposal and Revised proposal previously produced on July 31, 2023 as Bates Nos. TKHC0295-0332. These documents are specifically designated CONFIDENTIAL and are produced pursuant to the Protective Order on file in this matter.

**SECOND SUPPLEMENTAL RESPONSE**: See the documents produced herein as Bates Nos. TKHC0837-0838, TKHC0844, TKHC1641-1642, TKHC2401-2402, TKHC2728-2729, and TKHC2745. These documents are specifically designated as CONFIDENTIAL and are being

produced subject to the Protective Order on file in this matter. Please also see the documents produced herein as Bates Nos. TKHC1637-1640, TKHC1301-1310, TKHC1645-1646, TKHC1657, TKHC1674-1678, TKHC1693-1700, TKHC1706-1711, TKHC2734-2735, TKHC2744, TKHC2746-2749, and TKHC1736-1744.

**REQUEST FOR PRODUCTION NO. 34**: Please produce all DOCUMENTS evidencing communications between Turn Key and Sebastian County regarding monitoring and caring for people confined in segregation in the Sebastian County Jail.

**RESPONSE**:   Objection. This Request is vague, ambiguous, compound, unduly burdensome, and overly broad as to time and scope. The care and treatment at issue in this case occurred between August 19, 2020 and August 29, 2021; any discovery after August 29, 2021 has no relevance to this lawsuit and would have no probative value over any of the material issues in this case. Therefore, Defendant further objects to this Request as an impermissible fishing expedition and as not being reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects inasmuch as this Request is based upon the false premise that Turn Key and/or its employees were responsible for performing segregation checks and/or monitoring checks of Mr. Price while he was confined within the Sebastian County Detention Center.

Subject to and without waiving the foregoing objections, Defendant is continuing to conduct a diligent search for responsive documents and will supplement its Response if / when any responsive documentation prior to and including the dates of care and treatment at issue in this case is discovered.

**FIRST SUPPLEMENTAL RESPONSE:** After conducting a diligent search, Defendant has located no further documents responsive to this Request, as Turn Key

personnel were not responsible for performing segregation checks and/or monitoring checks of Mr. Price during his incarceration at the Sebastian County Detention Center. Instead, Sebastian County detention staff were responsible for performing such checks.

**REQUEST FOR PRODUCTION NO. 35**: Please produce all expert reports produced to you by a plaintiff in connection with any lawsuit since 2016 alleging negligent or otherwise inadequate medical or mental health care by Turn Key employees or contractors. You may limit your response to expert reports addressing medical or mental health care for someone confined in a city or county jail.

**FIRST SUPPLEMENTAL RESPONSE**: After conducting a diligent search, Turn Key has located no documents responsive to this Request.

**RESPONSE**:  Objection. This Request is unduly burdensome, not reasonably limited in time or scope, and not reasonably calculated to lead to the discovery of admissible evidence, as the documents requested by Plaintiff have no probative value over any of the claims in *this litigation*, which is limited to the care and treatment of Larry Eugene Price, Jr. at the Sebastian County Detention Center from August 19, 2020 through August 29, 2021. This is no more than an impermissible fishing expedition prohibited by the Federal Rules. Defendant further objects to this Request as an improper attempt of Plaintiff to shift Plaintiff's *prima facie* burden of proof onto Defendant. Subject to and without waiving the foregoing objections, Defendant states that it does not maintain the requested documents but instead such litigation records are maintained by Defendant's various outside attorneys of record. Therefore, Defendant is not in possession of any documents responsive to this Request. Defendant is unaware of any expert reports related to the provision of medical and/or mental health services within the Sebastian County Detention Center

during in point in time while Defendant has been contracted to provide services at the Sebastian County Detention Center.

**REQUEST FOR PRODUCTION NO. 36**: To the extent not already produced, please produce all DOCUMENTS related to the subject of insufficient food or fluid consumption by an incarcerated person, including all policies, procedures, protocols, guidelines, directives, standing orders, blank input/output forms, and training materials on that subject provided to employees of Turn Key or Sebastian County.

**RESPONSE**:  Objection. This Request is vague, ambiguous, overly broad as to time and scope (as the care and treatment at issue in this case is limited to the Sebastian County Detention Center from August 19, 2020 through August 29, 2021). Defendant further objects as this Request seeks proprietary and confidential business records. Any such records are proprietary, confidential, and private records of Turn Key, which is not a public entity nor subject to any Arkansas Open Records Act or FOIA requests. Defendant has a legitimate interest in preserving its proprietary and privacy interests in business documents, including the aforementioned documents, and will only agree to produce the same subject to an Agreed Protective Order. Subject to and without waiving its objections, Defendant is currently unaware of any additional documents responsive to this Request beyond those identified in response to Plaintiff's foregoing discovery requests.

**FIRST SUPPLEMENTAL RESPONSE**: See the documents produced herein as Bates Nos. TKHC2736-2737. These documents are specifically designated as CONFIDENTIAL and are being produced subject to the Protective Order on file in this matter. Please also see the documents produced herein as Bates Nos. TKHC1299-1300 and 2759-2766.

Respectfully submitted,

Alexandra G. Ah Loy, AR Bar #2020020
HALL BOOTH SMITH, P.C.
6301 Waterford Blvd., Ste. 200
Oklahoma City, OK 73118
Telephone: (405) 513-7111
Facsimile: (405) 768-1414
E-Mail: AllieAhLoy@hallboothsmith.com
*Attorneys for Defendants Turn Key Health
Clinics, LLC, Jawaun Lewis, D.O., and
Christeena Ferguson*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing *First Supplemental Responses to Plaintiff's First Set of Interrogatories and Requests for Production and Second Supplemental Production of Documents* was mailed via e-mail on the 18th day of October, 2023, to the following:

Edwin Budge:   ed@budgeandheipt.com
Erik Heipt:      erik@budgeandheipt.com
Hank Balson:  hank@budgeandheipt.com
Jason Owens:  owens@jowenslawfirm.com

ALEXANDRA G. AH LOY

<u>The Estate of Larry Eugene Price v. Turn Key Health Clinics, LLC, et al.</u>

Case No. 2:23-cv-02008-PKH

Exhibit L

## Hank Balson

| | |
|---|---|
| **From:** | Hank Balson |
| **Sent:** | Wednesday, October 25, 2023 12:49 PM |
| **To:** | allieahloy@hallboothsmith.com |
| **Cc:** | Erik Heipt; Edwin Budge; Sally Hartmann; Zachary Williams; Lorna Pennington |
| **Subject:** | Price discovery follow-up |
| **Attachments:** | RE: Price v. Turn Key - Email Search Parameters [IMAN-DMS.FID1730369] |

Allie,

After reviewing Turn Key's supplemental discovery responses, which you provided last week, I have a few follow-up questions:

1. The insurance policy you produced (TKHC 2955-2965) identifies the policy term as 4/10/22 – 4/10/23. I did not see any language addressing coverage for claims arising before the policy period. Is this the policy that would apply to the claims in this case? If so, please point us to the language that confirms this. If not, please provide us with the applicable policy. In addition, please provide us with the applicable schedules and endorsements.

2. We have not received the employee training checklists for Morgan Matlock, Tierra Franklin Rambo, Abbeygail Jump, Rachelle Anaya, Katie Green, and Misty Williams.

3. TKHC1983 is a Small Sites Quarterly Audit Tool that was provided to Christeena Ferguson. Was this tool ever used? If so, please produce the completed (and partially completed) records.

4. The monthly statistics you provided for February 2021 – June 2022 appear incomplete. *Compare* TKHC0338-339 *with* TKHC0333-337. Please produce the complete statistical reports for those months.

5. Can you confirm that your IT vendor conducted an ESI search using the parameters I provided in July (see attached e-mail)?

I am preparing a discovery motion to address the documents and information Turn Key has failed (or is refusing) to produce. I want to keep the motion focused on the issues where we're truly at an impasse, so if you would be kind enough respond to these questions and provide any remaining documents this week, that will help us both (and the court) avoid having to address issues where there's no real dispute.

Thank you.

-Hank

Hank Balson
Budge & Heipt, PLLC
808 E. Roy St.
Seattle, WA 98102
(206) 624-3060
hank@budgeandheipt.com
www.budgeandheipt.com

<u>The Estate of Larry Eugene Price v. Turn Key Health Clinics, LLC, et al.</u>

Case No. 2:23-cv-02008-PKH

Exhibit M

## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF ARKANSAS
## FORT SMITH DIVISION

| | |
|---|---|
| THE ESTATE OF LARRY EUGENE PRICE JR., by and through its Special Administrator, Rodney Price, <br><br>        PLAINTIFF, <br><br>        v. <br><br> TURN KEY HEALTH CLINICS, LLC, an Oklahoma corporation; SEBASTIAN COUNTY, ARKANSAS; JAWAUN LEWIS, DO; CHRISTEENA FERGUSON; and J. DOES 1-20, <br><br>        DEFENDANTS. | No. 2:23-cv-02008 PKH |

## TURN KEY HEALTH CLINIC, LLC'S RESPONSES TO PLAINTIFF'S
## THIRD SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS

COMES NOW, Defendant, Turn Key Health Clinic, LLC (**"Defendant"), and for** its **Responses to Plaintiff's** Third Set of Requests for Production of Documents (**"Plaintiff's** Discovery), responds and states as follows:

### GENERAL OBJECTIONS

These general objections are asserted with respect to all requests answered herein, and in addition to the specific objections set forth below:

1.     Pursuant to the Federal Rule of Civil Procedure 26(b)(1) and the Federal Rule of Evidence 401, Defendant objects to any and all Requests that are not relevant to the subject matter of the pending action and not reasonably calculated to lead to the discovery of admissible evidence.

2.     **Defendant objects to Plaintiff's discovery requests to the extent they purport to**

1

impose duties or obligations in addition to, inconsistent with, or different from the requirements set forth in the Federal Rules of Civil Procedure and Federal Rules of Evidence.

3.      Pursuant to the attorney/client privilege, Defendant objects to the production or disclosure of any information or document that pertains to or consists of confidential communications made for the purpose of facilitating the rendition of legal services to Defendant which are, therefore, subject to the attorney/client privilege. Defendant also objects to the production or disclosure of any document or information that constitutes attorney work product or was prepared in anticipation of litigation or trial for Defendant or any of its representatives, or that is otherwise beyond the scope of discovery or admitted by the Federal Rules.

4.      **Defendant objects to Plaintiff's discovery requests to the extent they purport to** require Defendant to identify or produce information or documents that are not in its custody or control. Defendant may identify and produce relevant non-privileged and non-protected information or documents that are presently in the custody or control of Defendant.

5.      Defendant does not concede the relevancy of any document or information requested by Plaintiff nor the relevancy or admissibility of any information provided, or documents produced in response thereto. The fact that information is provided, or documents produced in response to a particular Request does not mean that it such information and/or documentation is probative of any particular issue in this matter or admissible at trial.

6.      Information provided herein is based upon the knowledge of Defendant, but the words use**d in the answering of Plaintiff's discovery requests are those of Defendant's counsel.**

7.      Defendant objects to any Request to the extent it exceeds the allowable scope of discovery under the Federal Rules of Civil Procedure.

8.      If any work product or privileged document or information is inadvertently

produced in responses to these or other discovery requests, Defendant reserves the privilege with respect to the document or information so inadvertently produced, as well as its right to object to inspection and copying of such document or information, and its right to demand return of such document or information or object to the admissibility thereof.

9.      Defendant reserves the right to supplement, modify, and/or correct its Responses contained herein.

Subject to the foregoing objections, Defendant responds as follows:

## RESPONSES TO REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 38**: Please produce all written policies, procedures, protocols, guidelines, directives, and standing orders pertaining to Turn Key's services and operations at the Sebastian County Jail that are currently in effect.

**RESPONSE**:  Defendant objects to this Interrogatory as being overly broad as to time and scope, and as not being reasonably calculated to lead to the discovery of admissible evidence, as it seeks discovery into policies which are in effect years after the alleged injury. *See* Fed. R. Evid. 407; *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389, 109 S. Ct. 1197, 1205, 103 L. Ed. 2d 412 (1989) ("a municipality can be liable under § 1983 only where its policies are the 'moving force [behind] the constitutional violation.'"). The documents requested by Plaintiff have no probative value over any of the claims in *this litigation*, which is limited to the care and treatment of Larry Eugene Price, Jr. at the Sebastian County Detention Center from August 19, 2020 through August 29, 2021. This is no more than an impermissible fishing expedition prohibited by the Federal Rules.

**REQUEST FOR PRODUCTION NO. 39**: Please produce the job description(s) that applied to Turn Key's Health Services Administrator(s) between August 19, 2020 and August 29, 2021.

**RESPONSE**:  Produced herein as Bates Nos. TKHC0835 (2020 Job Description) and TKHC0836 (2021 Job Description). These documents are produced pursuant to the Protective Order on file and are specifically designated as "CONFIDENTIAL."

**REQUEST FOR PRODUCTION NO. 40**: Please produce all monthly, quarterly, and annual reports created by a Turn Key employee and pertaining to Turn Key's operations at the Sebastian County Jail between January 1, 2016 and the present.

**RESPONSE**: Objection. This request is overly broad (scope and time), vague as to "reports," unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence and seeks information that may be protected by the attorney-client and/or the work-product privileges and/or documents which may be otherwise confidential and/or proprietary to Defendant. Defendant further objects inasmuch as this Request presupposes a requirement that Turn Key generate written reports and/or documents responsive to this Request. Finally, because of how vaguely this request is written, it is difficult for Defendant to conduct a diligent search to determine what documents *may* be responsive. Subject to and without waiving the foregoing objections, Defendant has already produced the responsive Site Statistics for Sebastian County Detention Center from 2019 through August 30, 2021. Defendant is currently unaware of any further responsive documents but is continuing to determine whether any additional "reports" exist specific to Sebastian County.

4

**REQUEST FOR PRODUCTION NO. 41**: Please produce all monthly, quarterly, and annual reports submitted by Defendant Jawaun Lewis between January 1, 2016 and the present that address mental health services (including psychiatric services) at the Sebastian County Jail.

**RESPONSE**: None.

Respectfully submitted,

Alexandra G. Ah Loy, AR Bar #2020020
HALL BOOTH SMITH, P.C.
6301 Waterford Blvd., Ste. 200
Oklahoma City, OK 73118
Telephone: (405) 513-7111
Facsimile: (405) 768-1414
E-Mail: AllieAhLoy@hallboothsmith.com
*Attorneys for Defendant*
*Turn Key Health Clinics, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing *Responses to Plaintiff's Third Set of Requests for Production* was mailed via e-mail on the 22nd day of August, 2023, to the following:

Edwin Budge: ed@budgeandheipt.com
Erik Heipt:    erik@budgeandheipt.com
Hank Balson:  hank@budgeandheipt.com
Jason Owens:  owens@jowenslawfirm.com

ALEXANDRA G. AH LOY

The Estate of Larry Eugene Price v. Turn Key Health Clinics, LLC, et al.

Case No. 2:23-cv-02008-PKH

Exhibit N

## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF ARKANSAS
## FORT SMITH DIVISION

| | |
|---|---|
| THE ESTATE OF LARRY EUGENE PRICE JR., by and through its Special Administrator, Rodney Price, | |
| PLAINTIFF, | No. 2:23-cv-02008 PKH |
| v. | |
| TURN KEY HEALTH CLINICS, LLC, an Oklahoma corporation; SEBASTIAN COUNTY, ARKANSAS; JAWAUN LEWIS, DO; CHRISTEENA FERGUSON; and J. DOES 1-20, | |
| DEFENDANTS. | |

### TURN KEY HEALTH CLINIC, LLC'S RESPONSES TO PLAINTIFF'S
### FOURTH SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS

COMES NOW, Defendant, Turn Key Health Clinic, LLC ("Defendant"), and for its Responses to Plaintiff's Fourth Set of Requests for Production of Documents ("Plaintiff's Discovery), responds and states as follows:

### GENERAL OBJECTIONS

These general objections are asserted with respect to all requests answered herein, and in addition to the specific objections set forth below:

1.      Pursuant to the Federal Rule of Civil Procedure 26(b)(1) and the Federal Rule of Evidence 401, Defendant objects to any and all Requests that are not relevant to the subject matter of the pending action and not reasonably calculated to lead to the discovery of admissible evidence.

2.      Defendant objects to Plaintiff's discovery requests to the extent they purport to

1

impose duties or obligations in addition to, inconsistent with, or different from the requirements set forth in the Federal Rules of Civil Procedure and Federal Rules of Evidence.

3.     Pursuant to the attorney/client privilege, Defendant objects to the production or disclosure of any information or document that pertains to or consists of confidential communications made for the purpose of facilitating the rendition of legal services to Defendant which are, therefore, subject to the attorney/client privilege. Defendant also objects to the production or disclosure of any document or information that constitutes attorney work product or was prepared in anticipation of litigation or trial for Defendant or any of its representatives, or that is otherwise beyond the scope of discovery or admitted by the Federal Rules.

4.     Defendant objects to Plaintiff's discovery requests to the extent they purport to require Defendant to identify or produce information or documents that are not in its custody or control. Defendant may identify and produce relevant non-privileged and non-protected information or documents that are presently in the custody or control of Defendant.

5.     Defendant does not concede the relevancy of any document or information requested by Plaintiff nor the relevancy or admissibility of any information provided, or documents produced in response thereto. The fact that information is provided, or documents produced in response to a particular Request does not mean that it such information and/or documentation is probative of any particular issue in this matter or admissible at trial.

6.     Information provided herein is based upon the knowledge of Defendant, but the words used in the answering of Plaintiff's discovery requests are those of Defendant's counsel.

7.     Defendant objects to any Request to the extent it exceeds the allowable scope of discovery under the Federal Rules of Civil Procedure.

8.     If any work product or privileged document or information is inadvertently

produced in responses to these or other discovery requests, Defendant reserves the privilege with respect to the document or information so inadvertently produced, as well as its right to object to inspection and copying of such document or information, and its right to demand return of such document or information or object to the admissibility thereof.

9.      Defendant reserves the right to supplement, modify, and/or correct its Responses contained herein.

Subject to the foregoing objections, Defendant responds as follows:

## RESPONSES TO REQUESTS FOR PRODUCTION

REQUEST FOR PRODUCTION NO. 42: Please produce all food and fluid input/output records created for Turn Key patients at the Sebastian County Jail between September 11, 2019 and the present. If you redact the patient's name from the record, please replace it with a unique coded identifier that will allow you to link each record to the specific patient.

RESPONSE:  Defendant objects to Plaintiff's Request No. 42 as overly broad as to scope, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, nor proportional to the needs of this case, as the food and fluid input/output forms for patients with no relationship to this case have absolutely no probative value as to the claims and healthcare delivery system in effect in August 2021, nearly two years prior. *See* Fed. R. Civ. P. 26(b)(1). Moreover, Defendant Turn Key does not maintain its medical records in a way that would make complying with this Request feasible, and the cost and burden of complying with this Request is outweighed by any potential probative value the requested information might have.

Further, Plaintiff's Request seeks private health information of non-parties protected from disclosure under state and federal law. *See* Health Insurance Portability and Accountability Act of 1996 (HIPAA), 45 CFR Part 160, *et seq.*, Arkansas Code Annotated

3

section 17-97-105 (Repl. 2018). Finally, Defendant objects to this Request as an inexcusable, improper fishing expedition prohibited under Rule 26.

REQUEST FOR PRODUCTION NO. 43: Please produce all electronic and scanned medical records pertaining to John Eaton (Subject No. 65824), who was detained at the Sebastian County Jail from February 13, 2021 to October 20, 2021. Attached is a proposed stipulated HIPAA-complaint protective order, authorized under 45 C.F.R. § 164.512(e)(1), to address any disclosure concerns you might have.

RESPONSE: Defendant objects to Plaintiff's Request No. 43 as overly broad as to scope, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, nor proportional to the needs of this case, as the medical care and treatment of another inmate whose care is not at issue, has absolutely no probative value as to the claims and healthcare delivery provided to Larry Eugene Price, Jr. *See* Fed. R. Civ. P. 26(b)(1).

Further, Plaintiff's Request seeks private health information of non-parties protected from disclosure under state and federal law. *See* Health Insurance Portability and Accountability Act of 1996 (HIPAA), 45 CFR Part 160, *et seq.*, Arkansas Code Annotated section 17-97-105 (Repl. 2018). Defendant further objects as Plaintiff's request on its face seeks privileged and protected attorney-client communications and attorney work product. Finally, Defendant objects to this Request as an inexcusable, improper fishing expedition prohibited under Rule 26 and as an improper attempt by Plaintiff's counsel to conduct discovery in this matter regarding anticipated claims in future litigation.

REQUEST FOR PRODUCTION No. 44: Please produce all notices of dissatisfaction provided to Turn Key by the Sebastian County Adult Detention Center pursuant to Section 1.19 ("Satisfaction with Healthcare Personnel") of the contract between those parties, executed on

September 11, 2019, and any amendments or renewals to that contract, along with all Turn Key internal communications regarding and responses to such notices.

RESPONSE:  None.

REQUEST FOR PRODUCTION No. 45: Please produce all notices and requests from or about Larry Price, Jr. received by a Turn Key employee through the Sebastian County Jail's request manager, including but not limited to the notice provided to Defendant Ferguson, referenced in her January 29, 2021 note in Larry Price's electronic medical record. According to Ms. Ferguson's note, the notice informed her that Mr. Price was "eating own feces and drinking own urine." You may limit your response to notices and requests sent through the request manager on or after August 19, 2020.

RESPONSE:  Defendant objects to Plaintiff's Request for Production No. 45 as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Defendant states that it is not the custodian for and does not maintain the Request Manager system; however, Defendant is attempting to conduct a search through Request Manager to determine if responsive document(s) can be retrieved by Turn Key.

REQUEST FOR PRODUCTION NO. 46: Please produce all DOCUMENTS pertaining to former Sebastian County Jail detainee Calvin Jackson, including but not limited to electronic medical records, scanned medical records, e-mails, and communications between Sebastian County detention staff and Turn Key staff. You may limit your response to documents created between January 21, 2021 and March 14, 2022. Attached is a proposed stipulated HIPAA-complaint protective order, authorized under 45 C.F.R. § 164.512(e)(1), to address any disclosure concerns you might have.

5

RESPONSE:  Defendant objects to Plaintiff's Request No. 43 as overly broad as to scope, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, nor proportional to the needs of this case, as the medical care and treatment of another inmate whose care is not at issue, has absolutely no probative value as to the claims and healthcare delivery provided to Larry Eugene Price, Jr. *See* Fed. R. Civ. P. 26(b)(1).

Further, Plaintiff's Request seeks private health information of non-parties protected from disclosure under state and federal law. *See* Health Insurance Portability and Accountability Act of 1996 (HIPAA), 45 CFR Part 160, *et seq.*, Arkansas Code Annotated section 17-97-105 (Repl. 2018). Defendant further objects as Plaintiff's request on its face seeks privileged and protected attorney-client communications and attorney work product. Finally, Defendant objects to this Request as an inexcusable, improper fishing expedition prohibited under Rule 26 and as an improper attempt by Plaintiff's counsel to conduct discovery in this matter regarding anticipated claims in future litigation.

Respectfully submitted,

Alexandra G. Ah Loy, AR Bar #2020020
Zachary Williams, OBA #34050
HALL BOOTH SMITH, P.C.
6301 Waterford Blvd., Ste. 200
Oklahoma City, OK 73118
Telephone: (405) 513-7111
Facsimile: (405) 768-1414
E-Mail: AllieAhLoy@hallboothsmith.com
E-Mail: ZWilliams@hallboothsmith.com
*Attorneys for Defendant*
*Turn Key Health Clinics, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing *Responses to Plaintiff's Second Set of Requests for Production* was mailed via e-mail on the 30th day of May, 2023, to the following:

Edwin Budge: ed@budgeandheipt.com
Erik Heipt:      erik@budgeandheipt.com
Hank Balson:  hank@budgeandheipt.com
Jason Owens:  owens@jowenslawfirm.com

ALEXANDRA G. AH LOY

<u>The Estate of Larry Eugene Price v. Turn Key Health Clinics, LLC, et al.</u>

Case No. 2:23-cv-02008-PKH

Exhibit O

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF ARKANSAS**
**FORT SMITH DIVISION**

| | |
|---|---|
| THE ESTATE OF LARRY EUGENE PRICE JR., by and through its Special Administrator, Rodney Price, <br><br>            **PLAINTIFF,** <br><br>            v. <br><br> TURN KEY HEALTH CLINICS, LLC, an Oklahoma corporation; SEBASTIAN COUNTY, ARKANSAS; JAWAUN LEWIS, DO; CHRISTEENA FERGUSON; and J. DOES 1-20, <br><br>            **DEFENDANTS.** | No. 2:23-cv-02008 PKH |

**TURN KEY HEALTH CLINIC, LLC'S RESPONSES TO PLAINTIFF'S**
**FIFTH SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS**

COMES NOW, Defendant, Turn Key Health Clinic, LLC ("Defendant"), and for its Responses to Plaintiff's Fifth Set of Requests for Production of Documents ("Plaintiff's Discovery), responds and states as follows:

**GENERAL OBJECTIONS**

These general objections are asserted with respect to all requests answered herein, and in addition to the specific objections set forth below:

1.     Pursuant to the Federal Rule of Civil Procedure 26(b)(1) and the Federal Rule of Evidence 401, Defendant objects to any and all Requests that are not relevant to the subject matter of the pending action and not reasonably calculated to lead to the discovery of admissible evidence.

2.     Defendant objects to Plaintiff's discovery requests to the extent they purport to

1

impose duties or obligations in addition to, inconsistent with, or different from the requirements set forth in the Federal Rules of Civil Procedure and Federal Rules of Evidence.

3.      Pursuant to the attorney/client privilege, Defendant objects to the production or disclosure of any information or document that pertains to or consists of confidential communications made for the purpose of facilitating the rendition of legal services to Defendant which are, therefore, subject to the attorney/client privilege. Defendant also objects to the production or disclosure of any document or information that constitutes attorney work product or was prepared in anticipation of litigation or trial for Defendant or any of its representatives, or that is otherwise beyond the scope of discovery or admitted by the Federal Rules.

4.      Defendant objects to Plaintiff's discovery requests to the extent they purport to require Defendant to identify or produce information or documents that are not in its custody or control. Defendant may identify and produce relevant non-privileged and non-protected information or documents that are presently in the custody or control of Defendant.

5.      Defendant does not concede the relevancy of any document or information requested by Plaintiff nor the relevancy or admissibility of any information provided, or documents produced in response thereto. The fact that information is provided, or documents produced in response to a particular Request does not mean that it such information and/or documentation is probative of any particular issue in this matter or admissible at trial.

6.      Information provided herein is based upon the knowledge of Defendant, but the words used in the answering of Plaintiff's discovery requests are those of Defendant's counsel.

7.      Defendant objects to any Request to the extent it exceeds the allowable scope of discovery under the Federal Rules of Civil Procedure.

8.      If any work product or privileged document or information is inadvertently

produced in responses to these or other discovery requests, Defendant reserves the privilege with respect to the document or information so inadvertently produced, as well as its right to object to inspection and copying of such document or information, and its right to demand return of such document or information or object to the admissibility thereof.

9. Defendant reserves the right to supplement, modify, and/or correct its Responses contained herein.

Subject to the foregoing objections, Defendant responds as follows:

**RESPONSES TO REQUESTS FOR PRODUCTION**

REQUEST FOR PRODUCTION NO. 47: Please produce all e-mails, incident reports, and other DOCUMENTS pertaining to the incident that Misty Williams alleges occurred September 9, 2020, involving Larry Price grabbing her arm and pulling her into his cell.

RESPONSE: Defendant objects to this Request as duplicative and as seeking confidential protective health information of a non-party whose medical condition is not at issue in this case. Defendant has previously produced responsive documents as Bates Nos. TKHC0091 and TKHC0257. Defendant further identifies the following responsive documents withheld from production based on privilege:

| No. | Date | Description of Document | Privilege | Length |
|-----|------|-------------------------|-----------|--------|
| 1. | 09/09/2020 | Misty Williams' Workers Compensation Claim Form | HIPAA | 1 page |
| 2. | 09/14/2020 | Misty Williams' Physician Return to Work Form | HIPAA | 1 page |

REQUEST FOR PRODUCTION NO. 48: Please produce all incident reports, e-mails, and other DOCUMENTS pertaining to all incidents in which you allege Larry Price, Jr. tried to kill a Turn Key nurse.

RESPONSE:  Defendant objects to this Request as duplicative and as seeking confidential protective health information of a non-party whose medical condition is not at issue in this case.

3

Defendant has previously produced responsive documents as Bates Nos. TKHC0091 and TKHC0257. Defendant further identifies the following responsive documents withheld from production based on privilege:

| No. | Date | Description of Document | Privilege | Length |
|-----|------|------------------------|-----------|--------|
| 1. | 09/09/2020 | Misty Williams' Workers Compensation Claim Form | HIPAA | 1 page |
| 2. | 09/14/2020 | Misty Williams' Physician Return to Work Form | HIPAA | 1 page |

Respectfully submitted,

Alexandra G. Ah Loy, AR Bar #2020020
Zachary Williams, OBA #34050
HALL BOOTH SMITH, P.C.
6301 Waterford Blvd., Ste. 200
Oklahoma City, OK 73118
Telephone: (405) 513-7111
Facsimile: (405) 768-1414
E-Mail: AllieAhLoy@hallboothsmith.com
E-Mail: ZWilliams@hallboothsmith.com
*Attorneys for Defendant*
*Turn Key Health Clinics, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing *Responses to Plaintiff's Second Set of Requests for Production* was mailed via e-mail on the 6th day of November, 2023, to the following:

Edwin Budge:  ed@budgeandheipt.com
Erik Heipt:      erik@budgeandheipt.com
Hank Balson:  hank@budgeandheipt.com
Jason Owens:  owens@jowenslawfirm.com

ALEXANDRA G. AH LOY

<u>The Estate of Larry Eugene Price v. Turn Key Health Clinics, LLC, et al.</u>

Case No. 2:23-cv-02008-PKH

Exhibit P

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF ARKANSAS
### FORT SMITH DIVISION

|  |  |
|---|---|
| THE ESTATE OF LARRY EUGENE PRICE JR., by and through its Special Administrator, Rodney Price, <br><br> PLAINTIFF, <br><br> v. <br><br> TURN KEY HEALTH CLINICS, LLC, an Oklahoma corporation; SEBASTIAN COUNTY, ARKANSAS; JAWAUN LEWIS, DO; CHRISTEENA FERGUSON; and J. DOES 1-20, <br><br> DEFENDANTS. | No. 2:23-cv-02008 PKH |

## TURN KEY HEALTH CLINIC, LLC'S RESPONSES TO PLAINTIFF'S SIXTH SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND SECOND SET OF INTERROGATORIES

COMES NOW, Defendant, Turn Key Health Clinic, LLC ("Defendant"), and for its Responses to Plaintiff's Sixth Set of Requests for Production of Documents and Second Set of Interrogatories ("Plaintiff's Discovery), responds and states as follows:

## GENERAL OBJECTIONS

These general objections are asserted with respect to all requests answered herein, and in addition to the specific objections set forth below:

1.     Pursuant to the Federal Rule of Civil Procedure 26(b)(1) and the Federal Rule of Evidence 401, Defendant objects to any and all Requests that are not relevant to the subject matter of the pending action and not reasonably calculated to lead to the discovery of admissible evidence.

2.     Defendant objects to Plaintiff's discovery requests to the extent they purport to

1

impose duties or obligations in addition to, inconsistent with, or different from the requirements set forth in the Federal Rules of Civil Procedure and Federal Rules of Evidence.

3. Pursuant to the attorney/client privilege, Defendant objects to the production or disclosure of any information or document that pertains to or consists of confidential communications made for the purpose of facilitating the rendition of legal services to Defendant which are, therefore, subject to the attorney/client privilege. Defendant also objects to the production or disclosure of any document or information that constitutes attorney work product or was prepared in anticipation of litigation or trial for Defendant or any of its representatives, or that is otherwise beyond the scope of discovery or admitted by the Federal Rules.

4. Defendant objects to Plaintiff's discovery requests to the extent they purport to require Defendant to identify or produce information or documents that are not in its custody or control. Defendant may identify and produce relevant non-privileged and non-protected information or documents that are presently in the custody or control of Defendant.

5. Defendant does not concede the relevancy of any document or information requested by Plaintiff nor the relevancy or admissibility of any information provided, or documents produced in response thereto. The fact that information is provided, or documents produced in response to a particular Request does not mean that it such information and/or documentation is probative of any particular issue in this matter or admissible at trial.

6. Information provided herein is based upon the knowledge of Defendant, but the words used in the answering of Plaintiff's discovery requests are those of Defendant's counsel.

7. Defendant objects to any Request to the extent it exceeds the allowable scope of discovery under the Federal Rules of Civil Procedure.

8. If any work product or privileged document or information is inadvertently

produced in responses to these or other discovery requests, Defendant reserves the privilege with respect to the document or information so inadvertently produced, as well as its right to object to inspection and copying of such document or information, and its right to demand return of such document or information or object to the admissibility thereof.

9.      Defendant reserves the right to supplement, modify, and/or correct its Responses contained herein.

Subject to the foregoing objections, Defendant responds as follows:

### ANSWERS TO INTERROGATORIES

INTERROGATORY NO. 19: Please IDENTIFY every Turn Key employee and contractor who provided training or instruction to Sebastian County Jail deputies on the subject of monitoring and recording patients' food and fluid intake and output. You may limit your answer to employees and contractor who provided such training or instruction between January 1, 2020 and the present. For each person you identify, please state (a) when the training or instruction was provided (if exact dates are not known, please provide your best estimate); (b) where the training or instruction took place (e.g., BC pod officer station, nursing office, Jail Conference Room B, etc.); (c) the identities of the deputies who received the training or instruction (if you are unable to provide specific names, please give a description (e.g., the medical deputies, the deputies assigned to monitor the medical cells on the day shift, etc.); (d) a description of all written materials used as part of the training or instruction; and (e) how and where the training or instruction was documented.

ANSWER:  Defendant objects to this Interrogatory as overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, as seeking documents not within the possession, custody or control of Defendant Turn Key. Specifically, Turn Key is

3

not the custodian of nor is it responsible for maintaining training records for Sebastian County employees. Subject to and without waiving the foregoing objections, Defendant states that its nurses, including but not limited to Christeena Ferguson, provided training via verbal instruction to detention staff responsible for monitoring Mr. Price on how to complete the Intake/Output forms. This training took place in person. Nursing staff would provide any additional training upon request by detention staff. It is impossible to outline every single interaction between nursing and detention staff where the Intake/Output forms were discussed. Such form is self-explanatory on its face to a layperson. Defendant reserves the right to expound upon such training during Christeena Ferguson's deposition testimony which is currently scheduled for November 14, 2023.

## RESPONSES TO REQUESTS FOR PRODUCTION

REQUEST FOR PRODUCTION NO. 49: Please produce all records documenting training or instruction provided to Sebastian County Jail deputies by Turn Key medical staff pertaining to the monitoring and documentation of patients' food and fluid intake and output.

RESPONSE: Defendant objects to this Request as duplicative (as Turn Key has already produced voluminous written training records pertaining to training given to Sebastian County employees in response to Plaintiff's Interrogatory No. 10 and Request for Production No. 10), overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, as seeking documents not within the possession, custody or control of Defendant Turn Key. Specifically, Turn Key is not the custodian of nor is it responsible for maintaining training records for Sebastian County employees. Defendant further objects to the extent this Request is based on the false premise that Turn Key was required to create and/or maintain and such training records. Subject to and without waiving the foregoing objections, Defendant states that its nurses, including but not limited to Christeena Ferguson, provided training via verbal instruction to

4

detention staff responsible for monitoring Mr. Price on how to complete the Intake/Output forms. This training took place in person. Nursing staff would provide any additional training upon request by detention staff. Such form is self-explanatory on its face to a layperson.

REQUEST FOR PRODUCTION NO. 50: Please produce all policies, procedures, protocols, memoranda, and other DOCUMENTS pertaining to the monitoring and documentation of patients' food and fluid intake and output.

RESPONSE: Defendant objects to this Request as being duplicative, overly broad as to time and scope, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, on its face seeking non-party individuals' protected health information which are privileged and protected from disclosure under HIPAA, and as being vague and ambiguous. Moreover, Defendant objects to this Request as seeking confidential and proprietary business records which have no probative value over the claims in this action. Subject to and without waiving the foregoing objections, Defendant directs Plaintiff to its voluminous previous document production and supplemental production of policies, procedures, and nursing protocols which are responsive to this Request (i.e., information and documents produced in response to Plaintiff's Interrogatories Nos. 9 and 10 and Requests for Production Nos. 10, 27, and 36). Additionally, see the produced blank Intake and Output Form produced herein as Bates Nos. TKHC2966. This document is designated as CONFIDENTIAL and is produced pursuant to the Protective Order.s

Respectfully submitted,

Alexandra G. Ah Loy, AR Bar #2020020
Zachary Williams, OBA #34050
HALL BOOTH SMITH, P.C.
6301 Waterford Blvd., Ste. 200

5

Oklahoma City, OK 73118
Telephone: (405) 513-7111
Facsimile: (405) 768-1414
E-Mail: AllieAhLoy@hallboothsmith.com
E-Mail: ZWilliams@hallboothsmith.com
*Attorneys for Defendant*
*Turn Key Health Clinics, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing *Responses to Plaintiff's Sixth Set of Requests for Production and Second Set of Interrogatories* was mailed via e-mail on the 6th day of Novemher, 2023, to the following:

Edwin Budge:  ed@budgeandheipt.com
Erik Heipt:     erik@budgeandheipt.com
Hank Balson:  hank@budgeandheipt.com
Jason Owens:  owens@jowenslawfirm.com

ALEXANDRA G. AH LOY

6

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF ARKANSAS**
**FORT SMITH DIVISION**

THE ESTATE OF LARRY EUGENE
PRICE JR., by and through its Special
Administrator, Rodney Price,

      PLAINTIFF,

        v.

TURN KEY HEALTH CLINICS, LLC, an
Oklahoma corporation, *et al.*,

      DEFENDANTS.

No. 2:23-cv-02008 PKH

**VERIFICATION**

State of ____OK____ )
                  )
County of ___OK___ )

      Before me, the undersigned authority, personally appeared Austin Young, JD, known to
me personally to be the person whose signature is subscribed hereto, and after being, by me, duly
sworn, deposed and stated that he is General Counsel for Turn Key Health Clinics, LLC, a
defendant in the above-entitled and numbered cause, and that Turn Key's *Responses to Plaintiff's
Fourth Set of Requests for Production, Fifth Set of Requests for Production, Sixth Set of Requests
for Production, and Second Set of Interrogatories* are true and correct to the best of his knowledge,
information and belief.

                                                   _____
                                          *Austin Young, General Counsel*

Subscribed and sworn before me this ___7___ day of ___Nov___ 2023.

                                                   _____
                                           Notary Public

My commission expires:
___February 28, 2027___

LAURA JEAN JACOBS
MY COMMISSION # 11001711
EXPIRES: February 28, 2027

<u>The Estate of Larry Eugene Price v. Turn Key Health Clinics, LLC, et al.</u>

Case No. 2:23-cv-02008-PKH

Exhibit Q

## Hank Balson

| | |
|---|---|
| **From:** | Zachary Williams <zwilliams@hallboothsmith.com> |
| **Sent:** | Wednesday, November 22, 2023 11:17 AM |
| **To:** | Hank Balson; Alexandra G. Ah Loy |
| **Cc:** | Erik Heipt; Edwin Budge; Lorna Pennington |
| **Subject:** | RE: Price discovery follow-up [IMAN-DMS.FID1730369] |

Hank,

Appreciate the table. To confirm:

1. I will check and confirm the coverage schedule and endorsements on the relevant insurance policy.
2. You are correct that we have recently obtained additional documents. We believe these contain Misty Williams' file, which may in turn contain training information. If so, we do not object to providing those documents.
3. I will check and confirm whether a quarterly audit tool was used at Sebastian County.
4. Regarding the monthly statistics, we believe everything is complete and correct as produced. That said, I will double check to make sure there are no typographical or organizational errors with the documents produced.
5. I will check and confirm the parameters of the ESI search.
6. Regarding RFPs, we stand by our stated position.
7. Regarding Interrogatory 19, we stand by our previous objections. Turn Key is not the custodian nor is responsible for maintaining training records for Sebastian County employees. These records, if they exist, are not in Turn Key's custody, care, or control. Concerning any verbal training, Plaintiff deposed Nurse Ferguson for the full seven hours and had plenty of opportunity to obtain any additional information regarding that subject directly through deposition testimony.
8. Regarding RFP 50, we would again direct Plaintiff to the extensive documentation produced.
9. We will provide verifications in the discussed time frame.
10. Regarding time records, you are correct that we will produce Dr. Lewis's time records for Sebastian County and during Mr. Price's last detention.
11. Aside from his time records, I am not aware of any supplemental documents for Dr. Lewis at this time.
12. Concerning the possible 2019 meeting, I will check to see if there are any associated responsive documents.
13. I will check and confirm for the existence and content of the mentioned clinical protocols that were raised in deposition testimony last week.

You are also correct that given the holiday week, I agreed to provide this information no later than Friday, December 1.

Have a good Thanksgiving.

### Zachary Williams

Attorney at Law | Hall Booth Smith, P.C.

| | |
|---|---|
| **O:** 405.513.7111 | 6301 Waterford Boulevard, Suite 200 |
| **D:** 405.509.7870 | Oklahoma City, OK 73118 |
| | hallboothsmith.com |



CONFIDENTIALITY NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privilegad information. Any unauthorized

review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy the original message and any copies.

**From:** Hank Balson <hank@budgeandheipt.com>
**Sent:** Tuesday, November 21, 2023 5:06 PM
**To:** Zachary Williams <zwilliams@hallboothsmith.com>; Alexandra G. Ah Loy <allieahloy@hallboothsmith.com>
**Cc:** Erik Heipt <erik@budgeandheipt.com>; Edwin Budge <ed@budgeandheipt.com>; Lorna Pennington
<lpennington@hallboothsmith.com>
**Subject:** RE: Price discovery follow-up

Zach,

Based on our discovery conference yesterday, I understand your positions to be as follows:

| ISSUE | YOUR RESPONSE/POSITION |
|---|---|
| The insurance policy Turn Key produced appears to be for the wrong coverage period and lacks the applicable schedules and endorsements. | You told me you will check on this. |
| We have not received the employee training checklists for Morgan Matlock, Tierra Franklin Rambo, Abbeygail Jump, Rachelle Anaya, Katie Green, and Misty Williams. | You told me you received additional documents from your client last week. You will check to see if the checklists are among those records. |
| TKHC1983—the Small Sites Quarterly Audit Tool provided to Christeena Ferguson. I asked if this was ever used, and if so, to please produce the completed versions. | You told me you don't think the tool was used at Sebastian County, but you will double-check. |
| The monthly statistics you provided for February 2021 – June 2022 appear incomplete. *Compare* TKHC0338-339 *with* TKHC0333-337. | You told me you will check to see if there are any statistical reports for February 2021 through June 2022 that contain more information—akin to the other reports Turn Key produced. |
| I asked for confirmation that your IT vendor conducted an ESI search using the parameters I provided in July (copy attached)? | You told me you will check on this and confirm one way or the other. |
| Plaintiff's RFP Nos. 38, 42, 43, 45, 46, and 47 | You told me you are standing by your objections. You further told me that Turn Key will not produce any records pertaining to patients other than Mr. Price due to relevancy and HIPAA concerns. You are not willing to stipulate the HIPAA-compliant protective order I provided in order to address the privacy concerns. Finally, you reiterated your position that documents created after Mr. Price's death are completely irrelevant to the issues in this case and that you will not have Turn Key produce them. |
| Turn Key's refusal to identify specific employees who have provided training to jail deputies on the subject of monitoring patients' food and fluid intake and output, and to answer the other | You told me you are standing by your objections, that I had an opportunity to request more detail during Christeena Ferguson's deposition last week, and that Turn Key will not respond further. |

| specific questions posed by Plaintiff's Interrogatory No. 19. | |
|---|---|
| Your objections to Plaintiff's RFP No. 50 | You told me you are standing by your objections, but that Turn Key is not withholding any responsive records in response to this RFP. |
| Your clients' failure to verify any of their interrogatory answers. | You acknowledged we are entitled to verified interrogatory answers and told me you will provide me with them by Friday, December 1 at the latest. |
| Turn Key's failure to produce the time records Allie agreed it would produce in response to RFP No. 25. (Note: Allie told me during our discovery conference on July 17 that she would have Turn Key produce all responsive time records for the entire duration of Mr. Price's last detention (8/18/20 through 8/29/21). | You told me you will provide me with Dr. Lewis's time records, but only for Sebastian County and only for the period of Mr. Price's last detention (8/18/20 through 8/29/21). You also told me you will check to see if there are any other responsive records. |
| Turn Key's failure to produce Misty Williams' personnel file. | You told me you now have Ms. Williams' personnel file and will produce it. |
| Dr. Lewis's failure to produce any supplementation to his initial discovery responses. | You told me you are not aware of any supplementation Dr. Lewis intends to provide. |
| Documents pertaining to the 2019 meeting between representatives of Turn Key, the Guidance Center, and Sebastian County, including any additional e-mails pertaining to the meeting, as well as all policies, protocols, and other documents Turn Key shared with the Guidance Center in connection with that meeting, as Dr. Lewis testified in his deposition. | You told me you will check to see if any responsive documents exist. |
| Turn Key's clinical protocol regarding "major Mental illnesses," referenced on TKHC_1459-60. | You told me you will ask what the training slide (TKHC 1459-60) is referring to and produce the protocol if it exists. |
| List of all clinical protocols, as described on TKHC_1459-60. | You told me you will ask what the training slide is referring to. |

Finally, you told me you will get back to me by no later than Friday, December 1, with any additional records and information.

Please let me know if you believe I misstated any of your positions.

Thank you.

-Hank

**From:** Zachary Williams <zwilliams@hallboothsmith.com>
**Sent:** Wednesday, November 15, 2023 3:56 PM
**To:** Hank Balson <hank@budgeandheipt.com>; Alexandra G. Ah Loy <allieahloy@hallboothsmith.com>

<u>The Estate of Larry Eugene Price v. Turn Key Health Clinics, LLC, et al.</u>

Case No. 2:23-cv-02008-PKH

Exhibit R

## Hank Balson

| | |
|---|---|
| **From:** | Hank Balson |
| **Sent:** | Tuesday, December 19, 2023 3:12 PM |
| **To:** | Zachary Williams; Alexandra G. Ah Loy |
| **Cc:** | Erik Heipt; Edwin Budge; Lorna Pennington |
| **Subject:** | RE: Price - Supplemental Discovery [IMAN-DMS.FID1730369] |

You are correct about the time records. I apologize for my oversight.

I don't understand why you are asking for a release at the time. Are there additional medical or mental health records pertaining to Mr. Price that have not yet been produced?

**From:** Zachary Williams <zwilliams@hallboothsmith.com>
**Sent:** Tuesday, December 19, 2023 2:55 PM
**To:** Hank Balson <hank@budgeandheipt.com>; Alexandra G. Ah Loy <allieahloy@hallboothsmith.com>
**Cc:** Erik Heipt <erik@budgeandheipt.com>; Edwin Budge <ed@budgeandheipt.com>; Lorna Pennington <lpennington@hallboothsmith.com>
**Subject:** RE: Price - Supplemental Discovery [IMAN-DMS.FID1730369]

I checked the link provided to our last supplemental discovery, and did confirm that the time records were produced earlier this month. I have attached them again.

I would again direct you to the responses to RFPs 20-22, and would again invite you to discuss narrowing your requests. As for the TKHC 1459-60 question – you are incorrect in claiming I did not respond, and claiming that we have not produced the protocols misstates our prior conversations. I have confirmed that all relevant protocols have been produced.

Additionally, it looks like we do not have a signed release, a blank form is attached.

## Zachary Williams

Attorney at Law | Hall Booth Smith, P.C.

**O:** 405.513.7111
**D:** 405.509.7870

6301 Waterford Boulevard, Suite 200
Oklahoma City, OK 73118
hallboothsmith.com



ALABAMA | ARKANSAS | COLORADO | FLORIDA | GEORGIA
MONTANA | NEW JERSEY | NEW YORK | OKLAHOMA
NORTH CAROLINA | SOUTH CAROLINA | TENNESSEE

CONFIDENTIALITY NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy the original message and any copies.

**From:** Hank Balson <hank@budgeandheipt.com>
**Sent:** Tuesday, December 19, 2023 11:30 AM
**To:** Zachary Williams <zwilliams@hallboothsmith.com>; Alexandra G. Ah Loy <allieahloy@hallboothsmith.com>
**Cc:** Erik Heipt <erik@budgeandheipt.com>; Edwin Budge <ed@budgeandheipt.com>; Lorna Pennington

<lpennington@hallboothsmith.com>
**Subject:** RE: Price - Supplemental Discovery [IMAN-DMS.FID1730369]

Zach,

I disagree that Questions **1-4** were addressed in our last phone conversation or in Turn Key's previous discovery responses.

- In our last phone conversation you told me you would look for the employee training checklists. So far, Turn Key has produced only Dr. Lewis's checklist.
- Allie told me during our discovery conference on July 17 that she would have Turn Key produce all time records responsive to RFP No. 25 for the entire duration of Mr. Price's last detention (8/18/20 through 8/29/21). However, they have not been produced.
- You've stated that all responsive clinical protocols have been produced. However, we have not received the clinical protocols referenced on TKHC_1459-60. I asked what protocols that document is referencing so I could understand why we have not received them. You did not respond.

If you have any substantive responses regarding these issues, please let me know as soon as possible.

Also, please let me know your position regarding the three documents I sent you yesterday and whether you intend to file a motion to have these documents filed under seal.

-Hank

**From:** Zachary Williams <zwilliams@hallboothsmith.com>
**Sent:** Monday, December 18, 2023 4:49 PM
**To:** Hank Balson <hank@budgeandheipt.com>; Alexandra G. Ah Loy <allieahloy@hallboothsmith.com>
**Cc:** Erik Heipt <erik@budgeandheipt.com>; Edwin Budge <ed@budgeandheipt.com>; Lorna Pennington <lpennington@hallboothsmith.com>
**Subject:** RE: Price - Supplemental Discovery [IMAN-DMS.FID1730369]

Sincere apologies for the delay and thanks for your patience – it took some time to go through the records received on site. That said, these questions seem to have been addressed in earlier discovery responses or in our last phone conversation, and I believe we have previously answered most, if not all, of these questions and/or produced the requested documents. I have asked if there are other components to the policy that we have, and can update if there is anything else responsive. Concerning the RFPs, we stand by our previous responses - If you would like to discuss narrowing the requests for a more specific timeframe or for a specific individual or certain financial documentation, we can set a time for a call.

**Zachary Williams**
Attorney at Law | Hall Booth Smith, P.C.

**O:** 405.513.7311          3301 Waterford Boulevard, Suite 200
**D:** 405.509.7970          Oklahoma City, OK 73118
                            hallboothsmith.com



**ALABAMA | ARKANSAS | COLORADO | FLORIDA | GEORGIA
MONTANA | NEW JERSEY | NEW YORK | OKLAHOMA
NORTH CAROLINA | SOUTH CAROLINA | TENNESSEE**

CONFIDENTIALITY NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy the original message and any copies.

**From:** Hank Balson <hank@budgeandheipt.com>
**Sent:** Monday, December 4, 2023 1:27 PM
**To:** Zachary Williams <zwilliams@hallboothsmith.com>; Alexandra G. Ah Loy <allieahloy@hallboothsmith.com>
**Cc:** Erik Heipt <erik@budgeandheipt.com>; Edwin Budge <ed@budgeandheipt.com>; Lorna Pennington <lpennington@hallboothsmith.com>
**Subject:** RE: Price - Supplemental Discovery [IMAN-DMS.FID1730369]

Zach and Allie,

Will you be re-sending the discovery today?

In addition to the questions I asked below, please let me know if you intend to produce the documents responsive to Plaintiff's RFP Nos. 20-22 now that we have a protective order in place?

Thank you.

-Hank


**From:** Hank Balson
**Sent:** Friday, December 1, 2023 3:42 PM
**To:** 'Zachary Williams' <zwilliams@hallboothsmith.com>; Alexandra G. Ah Loy <allieahloy@hallboothsmith.com>
**Cc:** Erik Heipt <erik@budgeandheipt.com>; Edwin Budge <ed@budgeandheipt.com>; Lorna Pennington <lpennington@hallboothsmith.com>
**Subject:** RE: Price - Supplemental Discovery [IMAN-DMS.FID1730369]

Thank you, Zach. We are not able to access the documents through the links you provided. Would you mind sending them as attachments to your e-mail? In the meantime, I have a few follow-up questions:

1. Will you be producing the endorsements and schedules referenced in the insurance policy?
2. Will you be producing the employee training checklists?
3. Will you be producing responsive time records for anyone other than Dr. Lewis?

Turn Key has previously agreed to produce limited time records. If you would like to discuss narrowing the request for a more specific timeframe or for a specific individual, we can set a time for a call.

4. TKHC_1460 states, "The Chief Medical Officer establishes and annually approves clinical protocols consistent with national clinical practice guidelines." The documents further states that such protocols include one for "major Mental illnesses." Can you explain what that document is referencing and why you believe it is not responsive to our discovery requests?

All

-Hank

**From:** Zachary Williams <zwilliams@hallboothsmith.com>
**Sent:** Friday, December 1, 2023 2:47 PM
**To:** Hank Balson <hank@budgeandheipt.com>; Alexandra G. Ah Loy <allieahloy@hallboothsmith.com>
**Cc:** Erik Heipt <erik@budgeandheipt.com>; Edwin Budge <ed@budgeandheipt.com>; Lorna Pennington <lpennington@hallboothsmith.com>
**Subject:** Price - Supplemental Discovery [IMAN-DMS.FID1730369]

Hank,

You should have received links to the supplemental documents, including the requested time records, verifications, and personnel file. Please let me know if you have issues with the files.

By way of follow up:

- I have checked on the insurance policy – The policy produced is the correct policy.
- As confirmed through deposition testimony, the Small Sites Quarterly Checklist was not used.
- Regarding the monthly statistics, the information requested was produced in its entirety, the only difference is that the spreadsheet format was updated.
- I can confirm our IT vendor completed the search as requested.
- There are no responsive documents regarding the 2019 meeting.
- All responsive clinical protocols have been produced.
- Regarding TKHC1459-60, All responsive protocols have been produced.

Note that we are still working through the thousands of documents obtained from SCDC.

**Zachary Williams**
Attorney at Law | Hall Booth Smith, P.C.

**O:** 405.513.7111         6301 Waterford Boulevard, Suite 200
**D:** 405.509.7870         Oklahoma City, OK 73118
                            hallboothsmith.com

CONFIDENTIALITY NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy the original message and any copies.

<u>The Estate of Larry Eugene Price v. Turn Key Health Clinics, LLC, et al.</u>

Case No. 2:23-cv-02008-PKH

Exhibit S



**Page 1**

```
                IN THE UNITED STATES DISTRICT COURT
                 WESTERN DISTRICT OF ARKANSAS
                        FORT SMITH DIVISION

THE ESTATE OF LARRY EUGENE
PRICE JR, by and through its Special
Administrator, Rodney Price,                    PLAINTIFF

    vs.                          Case No: 2:23-cv-02008-PKH

TURN KEY HEALTH CLINICS, LLC, et al.             DEFENDANTS


               The Video-recorded Deposition of:

                   JAWAUN MICHAEL LEWIS, D.O.
            being taken on November 17, 2023 @ 9:10 a.m.
           at the Judge's Room, Courtyard Marriott Downtown,
             900 Rogers Avenue, Fort Smith, Arkansas  72901


APPEARANCES:                              ON BEHALF OF:

MR. ERIK J. HEIPT                            PLAINTIFF
MR. HANK BALSOM
MR. ED BUDGE (via Zoom)
Budge & Heipt
808 East Roy Street
Seattle, WA  98122

MS. ALEXANDRA G. AH LOY                      DEFENDANTS
MS. ZACHARY WILLIAMS (via Zoom)
Hall Booth Smith, PC          Turn Key Health Clinics, LLC
6301 Waterford Blvd., Ste 230   Jawaun Lewis, D.O.
Oklahoma City, OK  73118        Christeena Ferguson

MR. JASON OWENS              Sebastian County, Arkansas
Jason Owens Law Firm, P.A.
1312 W. Oak Street
Conway, AR  72034

Other persons present:  Rodney Price, David Roe, Videographer


                  RICK L. CONGDON, ANCCR #631
                  CERTIFIED COURT REPORTER
                         P. O. Box 8493
                    Fort Smith, Arkansas 72902
         email: rlcongdon@hotmail.com / cell phone: 479-652-0146
```

**Page 2**

The video-recorded deposition of JAWAUN MICHAEL LEWIS,

D.O. was taken on November 17, 2023, beginning at the hour of

9:10 a.m. at the Judge's Room, Courtyard Marriott Downtown, 900

Rogers Avenue, Fort Smith, Arkansas, before me, Rick L.

Congdon, a Certified Court Reporter, and for the cause now

pending in the United States District Court, Western District

of Arkansas, Fort Smith Division, said deposition was taken

pursuant to Notice.

### INDEX

WITNESS:                                            PAGE

JAWAUN MICHAEL LEWIS, D.O.

Direct Examination by Mr. Heipt.......................3
Cross Examination by Ms. Ah Loy.....................204
Redirect Examination by Mr. Heipt...................220
Recross Examinatoin by Ms. Ah Loy...................224


WITNESS CERTIFICATION................................226
REPORTER'S CERTIFICATE...............................228
EXHIBITS MARKED FOR IDENTIFICATION AND ATTACHED

Deposition Exhibit No.   1 - CV
Deposition Exhibit No.   2 - Cooper email 11-1-2019
Deposition Exhibit No.   3 - Dr. Lewis pic/work history
Deposition Exhibit No.   4 - Responses
Deposition Exhibit No.   5 - orientation & training doc
Deposition Exhibit No.   6 - Segregated inmates docs
Deposition Exhibit No.   7 - Contract
Deposition Exhibit No.   8 - 2019 License Registration
Deposition Exhibit No.   9 - 2022 License Registration
Deposition Exhibit No.  10 - Patient history
Deposition Exhibit No.  11 - TKHS Policy and Procedures - pharm

**Page 3**

—o0o—

NOVEMBER 17, 2023, 9:10 A.M.

—o0o—

THE VIDEOGRAPHER:  Stand by, please.  We are on the

record.  Today's date is November 17th, 2023, approximately

9:10 a.m. Central Standard Time.  We are here in the Estate of

Larry Eugene Price vs. Turn Key Health Clinic and others;

No. 2:23-cv-02008, in front of P. K. Holmes, United States

District Court for the Western District of Arkansas, Fort Smith

Division.  My name is David Roe, legal videographer, along with

Rick Congdon.  If I could have everyone to introduce

themselves, please.

MR. HEIPT:  This is Erik Heipt for the plaintiff, the

Estate of Larry Eugene Price, Jr.

MR. BALSON:  Hank Balson, also for the Plaintiff.

MR. OWENS:  Jason Owens for separate defendant,

Sebastian County.

MS. AH LOY:  Alexandra Ah Loy, and Zachary Williams

appearing by Zoom, on behalf of the Turn Key defendant.

THE VIDEOGRAPHER:  Thank you, Rick, you may swear the

witness.

—o0o—

JAWAUN MICHAEL LEWIS, D.O.,

being first duly sworn, testified as follows:

DIRECT EXAMINATION

**Page 4**

BY MR. HEIPT:

Q.  Good morning, Dr. Lewis.  I'm Erik Heipt and I represent

the Estate of Larry Eugene Price, Jr.  I'm here with my

co-counsel, Hank Balson, and our client, Rodney Price, who is

the brother of Larry Price.

    Could you please state your full name for the record.

A.  I'm Juwaun Lewis.

Q.  Have you ever been questioned in a deposition before today?

A.  Yes.

Q.  How many times?

A.  I'm going to say this is my third.

Q.  Okay.  Could you tell me about each of those, beginning

with the first?

A.  It had something to do with medical, both cases.  Maybe was

psychiatry.  I don't remember specifics, but I was just a

witness in both.

Q.  Okay.  You weren't a defendant —

A.  No.

Q.  -- in either?

A.  No.

Q.  Were they cases related or connected to something that

happened at a jail in which you provided psychiatric services?

A.  Correct.

Q.  Do you know the name of the plaintiff in either case?

A.  I do not.

109

the policies, practices and customs of Turn Key at the
2 Sebastian County Jail not to do segregation round checks of
3 inmates held in solitary confinement?
4    MS. AH LOY:   Object to the form.
5 A. Repeat the question, please.
6 BY MR. HEIPT:
7 Q. Sure. Was it consistent with the policies, practices and
8 customs of Turn Key at the Sebastian County Jail not to do
9 segregation round checks even if someone's in solitary
10 confinement for a year?
11    MS. AH LOY:   Object to the form.
12 A. Yes.
13    MS. AH LOY:   Sorry. Answer again.
14 A. Okay. So yes, we've never -- I've never seen the nursing
15 staff do segregation rounds because that goes through the
16 mental health team, so this is something that I'm not quite
17 familiar with.
18 BY MR. HEIPT:
19 Q. Okay. So your understanding of Turn Key's regular practice
20 is for nurses not to do segregation round checks?
21 A. Yes. They usually will report anything to me if they
22 notice something, but the segregation rounds goes through
23 mental health.
24 Q. Despite this policy referring to healthcare staff?
25 A. I've never seen -- seen this before, so I've never seen a

110

nursing seg rounds. They usually will call to ask me something.
2 Q. You're not familiar with the N.C.C.H.C.'s requirement for
3 nurses to do seg rounds?
4    MS. AH LOY:   Object to the form, and foundation.
5 A. I'm -- I'm not familiar with the policy, no.
6 BY MR. HEIPT:
7 Q. In this litigation we were informed that in February of
8 2022 Turn Key revised its small site policies and procedures
9 that had been in effect at the Sebastian County Jail prior to
10 that point. And I'm wondering if you are aware of what changes
11 were made to Turn Key's small site policies and procedures in
12 February of 2022?
13 A. Don't recall what the change was, but you could...
14 Q. Do you know who would know that? Would Dr. Tilley know
15 that? If the policies were changed, who would be the best
16 person to ask that?
17 A. Medical director would know, Dr. Cooper.
18 Q. That -- so the entire medical director versus the medical
19 director of the Sebastian County Jail? You're saying Cooper,
20 the entire medical director, would know, as opposed to the
21 medical director of the Sebastian County Jail?
22 A. He approves all the changes.
23 Q. Okay. Are you aware of a policy change related to
24 segregation rounds that were implemented at some point after
25 the death of Larry Price?

111

A. The only thing that I can recall after this incident was me
2 notifying corporate that I will no longer work with an outside
3 mental health agency. It's the only thing that I recall.
4 Q. And did corporate respect your demand, for lack of a better
5 word?
6 A. Yes.
7 Q. And so then do you now -- does Turn Key now provide the
8 mental health services in the Sebastian County Jail?
9 A. Yes.
10 Q. Are you familiar with Turn Key's contract with the
11 Sebastian -- with Sebastian County and Turn Key's obligations
12 under the contract?
13 A. I'm not -- have not read the contract in specifics.
14 Q. Have you read some contracts or at least familiarized
15 yourself with your basic obligations under the contracts?
16 A. Typically I'll read through it occasionally --
17 Q. Okay.
18 A. -- but usually I'm just notified of the amount of hours of
19 psychiatry.
20 (Deposition Exhibit No. 7 was marked for identification.)
21 Q. Do you have Exhibit 7 in front of you, sir?
22 A. Yes.
23 Q. I don't know if you've seen it before. I'll represent that
24 it's a copy of the contract between Turn Key and Sebastian
25 County. Have you seen it before?

112

A. No.
2 Q. Okay. If you could turn to Page 12. Sorry, looks like
3 it's 13. Just let me know when you're there.
4    Do you see that the initial contract was signed on
5 September 11th, 2019?
6 A. Yes.
7 Q. Do you recall whether you were Turn Key's designated
8 psychiatrist at the Sebastian County Jail from the very
9 beginning, in September of 2019?
10 A. Repeat the question, please.
11 Q. Were you Turn Key's designated psychiatrist at the
12 Sebastian County Jail from the very beginning, in September
13 2019?
14 A. Yes.
15 Q. And was that about two and a half weeks before you were
16 promoted to your corporate director position?
17 A. I don't recall when I was promoted, but I would say yes.
18 Q. We looked earlier at a November 1st, 2020, email from
19 Dr. Cooper promoting you.
20 A. So two months later?
21 Q. No, a little over two weeks later. Oh, no. You're right.
22 You're right. I'm skipping October, so it would be a month and
23 a half.
24 A. Yes.
25 Q. Is that about right?

---

**145**

A.  Jail.

2  Q.  I assume you would agree, though, that him being housed

3  alone in an isolation cell would not help improve his

4  condition.  Is that a fair assumption?

5  **A.  That is a fair assumption, but that's security's call**

6  **because he could have been violent or -- I don't know, but...**

7  Q.  Well, given his state of psychosis and the severity of his

8  symptoms, which you determined would have a significant impact

9  on his ability to function in jail, did you consider arranging

10  for him to be taken to a more suitable off-site setting, such

11  as an inpatient psychiatric facility?

12        MS. AH LOY:   Object to the form.

13  **A.  No.  At that time I just started the medication,**

14  **10 milligrams twice a day, a little bit more than his last**

15  **visit, and hoping he would improve.**

16  BY MR. HEIPT:

17  Q.  Did you have the power to do so under the contractual terms

18  to arrange for transport to an inpatient psychiatric facility?

19        MS. AH LOY:   Object to the form.

20  **A.  I had the power to do so, but there would have been no need**

21  **at that point.**

22  BY MR. HEIPT:

23  Q.  For progress after mental health encounter, you wrote, "No

24  change."  Do you see that?

25  **A.  Yes.**

---

**146**

1  Q.  And, again, that's referring to the progress after your

2  mental health encounter with him on that day?

3  **A.  Correct.**

4  Q.  And so he came into the appointment being actively

5  psychotic and he left the appointment being actively psychotic,

6  correct?

7  **A.  Correct.**

8  Q.  Although there is no change with him during your visit, do

9  you agree that there was a substantial change between his visit

10  with you five weeks earlier and this visit?

11        MS. AH LOY:   Object to the form.

12  **A.  Yes.  Based on these notes I would say yes.**

13  BY MR. HEIPT:

14  Q.  Based on your notes?

15  **A.  Yes.**

16  Q.  For treatment plan, on the next page do you see where you

17  wrote "start medication"?

18  **A.  Yes.**

19  Q.  And you prescribed him 15 milligrams of BuSpar also known

20  Buspirone?

21  **A.  Correct.**

22  Q.  And that's an anti-anxiety medication?

23  **A.  Yes.**

24  Q.  And although I don't see it in your psychiatry note, did

25  you also prescribe him Zyprexa again a/k/a Olanzapine?

---

**147**

1  **A.  Yes.  I believe he was already on that before I had already**

2  **seen him.  I'm not for sure.**

3  Q.  I think you -- well, I don't want to speak for you, but I

4  think you prescribed it for him and you just didn't write it

5  down in your notes, because if you look at the -- later on

6  there's a script for you on --

7  **A.  On that date.**

8  Q.  -- the date of this visit for both BuSpar and  Olanzapine.

9  **A.  Hum.  Okay.  Just to add, sometimes they will come in, and**

10  **maybe I'll see a task before I see them and I will go ahead and**

11  **try to start medicine so they can get a dose early --**

12  Q.  Uh-huh.

13  **A.  -- so I may have started it before I saw him.**

14  Q.  Okay.

15  **A.  So I don't -- but I don't recall.  I don't remember.**

16  Q.  Okay.  But if he started taking Olanzapine on the date of

17  your visit, is it most likely that you are the one that

18  prescribed that to him?

19  **A.  Yes.**

20  Q.  And right below your medication order you wrote that

21  Mr. Price -- you wrote that Mr. Price, his con -- Mr. Price's

22  consent to take the medication was verified.

23  **A.  Yes.**

24  Q.  And I don't think anyone would question you prescribing him

25  antipsychotic medication, but I'm curious how you were able to

---

**148**

1  under -- to obtain his informed consent given his active state

2  of psychosis.

3  **A.  Because when they come in -- they usually get the consent**

4  **signed when they come into the jail, so I marked that based on**

5  **the assumption that nursing was able to get a consent.  If not,**

6  **they will usually tell me.**

7  Q.  I see.  So you didn't sit there during that visit --

8  **A.  Right.**

9  Q.  -- and get informed consent?

10  **A.  Right.**

11  Q.  You just verified that he had already given it possibly two

12  weeks earlier --

13  **A.  Right.**

14  Q.  -- or whenever?

15  **A.  Right.**

16  Q.  Okay.  I'm also wondering why your follow-up plan was not

17  to see him again for three months.  Given his active state of

18  psychosis, can you explain why you didn't make a follow-up plan

19  to see him soon?

20  **A.  Because I --**

21        MS. AH LOY:   Object to the form.  Go ahead.

22  **A.  Okay.  Because I was under the impression that he has been**

23  **followed up by mental health weekly, and the patient load**

24  **sometimes they're pretty high.  So they can always see me**

25  **maybe a mental health team, or security will say, look out, you**

149

1    know, this guy isn't doing good, and I, of course, will see
2    them sooner, but the standard follow-up for every patient is
3    90 days.
4    BY MR. HEIPT:
5    Q.  Where are you getting the understanding or where did you
6    get the understanding that Mr. Price was going to be seen
7    weekly by mental health?
8    A.  Because that's the standard of care.  That's how we
9    operate.  Mental health sees patients weekly mental health
10   patients weekly --
11   Q.  And is that --
12   A.  -- in seg especially.
13   Q.  Is that something -- are you talking about the Guidance
14   Center?
15   A.  Yes.
16   Q.  And is that something that was in the contract between the
17   Guidance Center and the County, or do you know?
18   A.  I wasn't privy to that type of information.
19   Q.  Okay.  Did you have any written documentation or commitment
20   or anything like that that they were going to see him weekly?
21   A.  It was just an assumption that they would follow the
22   standard of care and see the patients weekly in segregation.
23   That's what our mental health team does.  So especially if they
24   know the patient is on medication, they are supposed to be
25   seeing that patient to make sure that he is either improving or

150

1    they're having side effects, et cetera.  They're my eyes and
2    ears in the facility.
3    Q.  And when you say your mental health team, are you referring
4    to how your Turn Key mental health team usually does it at
5    every facility or whatever that you worked in the past?
6    A.  Exactly.
7    Q.  And so you made the assumption that the Guidance Center
8    folks were doing the same thing as your normal Turn Key team
9    would be doing?
10             MS. AH LOY:  Object to the form.
11   A.  Yes.
12   BY MR. HEIPT:
13   Q.  Okay.  And do you assign blame to the Guidance Center for
14   not doing that?
15   A.  Absolutely.
16   Q.  And did you confirm at some point, possibly after
17   Mr. Price's death, that the Guidance Center did not do that?
18   A.  I did find that out afterwards, yes.
19   Q.  And is that why you testified earlier that you essentially
20   made a demand that they needed to be replaced with your own
21   mental health team?
22   A.  The demand was I would no longer work with an outside
23   mental health agency.  If it's not our team, either they have a
24   mental health team and psychiatry team or they have neither.
25   Q.  And so was there some sort of subsequent contract

151

1    renegotiation in which Turn Key re-took over the mental health
2    services?
3             MS. AH LOY:  Object to the form.
4    A.  Repeat the question.
5    BY MR. HEIPT:
6    Q.  Well, I might be phrasing --
7             MS. AH LOY:  You said re-took over.  That was my
8    objection.
9             MR. HEIPT:  Oh, no.
10   BY MR. HEIPT:
11   Q.  Okay.  Maybe you could help me with this.  I thought in the
12   very beginning you guys were doing the mental health and then
13   shortly thereafter that it got switched over to the Guidance
14   Center and then it was back to you.  Was it never?
15   A.  Well --
16             MS. AH LOY:  There was a liaison.  That was it.
17   A.  So when the --
18   BY MR. HEIPT:
19   Q.  Either way.
20   A.  So in the contract, when it was decided that they would use
21   the mental health from W.A.G.C. --
22   Q.  Yeah.
23   A.  -- we proposed a liaison --
24   Q.  Got it.
25   A.  -- that could facilitate communication between them and  me

152

1    if there was any issues, but that position was denied by the
2    County, I believe.
3    Q.  Okay.  And then at some point after Mr. Price's death you
4    for the first time just took over the whole mental health
5    shebang yourselves?
6    A.  Correct.
7    Q.  Got it.  Now, I'd also like to know why you allowed
8    Mr. Price to be sent back to segregation in an active state of
9    psychosis and why you didn't place an order for him to be
10   placed in a medical observation cell where he could be
11   monitored closely by the nursing staff, at least until he
12   showed improvement from his current state of psychosis.  Can
13   you explain that to me?
14   A.  Well, at that time he was started on medication, he wasn't
15   actively trying to hurt his self; he was just psychotic.  We
16   have lots of patients that are psychotic in segregation, so I
17   didn't see no reason why he couldn't be in segregation and
18   take his medication.  The last time he took the medicine he did
19   good so I figured that this time he would even do better since
20   I doubled the dose of his medicines.
21   Q.  And so your decision there was based on your assumption
22   that he would take his medication like he did last time and
23   that he would improve?
24   A.  Right.  So he did good last time on 10.  Apparently, I'm
25   assuming, that he didn't take his medicine once he left and

<u>The Estate of Larry Eugene Price v. Turn Key Health Clinics, LLC, et al.</u>

Case No. 2:23-cv-02008-PKH

Exhibit T



# Orientation and Training for Health Care Staff

Name: _____   Facility: _____

Turn Key Health Clinics provides in depth orientation and training to enable staff to deliver health services within a correctional setting. The orientation and training includes, but is not limited to, the following topics:

| | Employee Initals | Proctor Intitials | Date: |
|---|---|---|---|
| **Employment Status:** | | | |
| Organizatioinal Structure/Chain of Command | | | |
| "at will" employment | | | |
| Probationary Period | | | |
| Employee Handbook | | | |
| Benefits/Holidays/Vacations and PTO | | | |
| Pay periods/Time Sheets | | | |
| License/Credentialing/CPR/Scope of Practice | | | |
| | | | |
| **Policy and Procedures: (Module I)** | | | |
| Introduction to Turn Key Health Clinics | | | |
| Correctional Health Care Overview | | | |
| Security and Management of the Medical Unit | | | |
| Legal Challenges | | | |
| Training | | | |
| Boundaries and Responsibilities | | | |
| Reconizing and Avoiding Inmate Manipulation | | | |
| Medical Unit Layout | | | |
| Emergency Equipment and Disaster Planning | | | |
| | | | |
| **Health Unit Safety and Adminitsrative Reporting: (Module II)** | | | |
| Blood Born Pathogens | | | |
| Universal Precautions | | | |
| Personal Protective Equipment | | | |
| TB Skin Test | | | |
| Hep B Vaccination | | | |
| Exposure Control Plan | | | |
| Prison Rape Elimination Act (PREA) | | | |
| Health Insurance Portability and Accountyabilty (HIPAA) | | | |
| Continuous Quality Improvement (CQI) | | | |
| Unusual Occurrence/Incident Reporting | | | |

Confidential - Produced Pursuant to Protective Order

TKHC1760

| | | | |
|---|---|---|---|
| Correctional Nurse Manifesto | | | |
| | | | |
| **Medical Services: (Module III)** | | | |
| Access To Care | | | |
| Documentation | | | |
| Inmate Requests | | | |
| Scheduling of Clinics and Tasks | | | |
| Provider sick call | | | |
| Chronic  care Clinics | | | |
| Providers orders | | | |
| On-Call Procedure | | | |
| Diagnostic Services | | | |
| Lab Services | | | |
| Diabetic/Glucose Monitoring | | | |
| Segregation Procedures | | | |
| Suicide Prevention | | | |
| Mental Health Services | | | |
| Dental (if applicfable) | | | |
| | | | |
| **Pharmaceutical Operations: (Module IV)** | | | |
| Pharmacy Contract Provider | | | |
| Turn Key Health Clinics Formulary | | | |
| Medication Administration | | | |
| MAR Documentation | | | |
| Medication Error Form | | | |
| Medciation waste, disposal, and returns | | | |
| | | | |
| **Infirmary and Periodic Health Assessments: (Module V)** | **Large Sites or Accredited** | | |
| Infirmary | | | |
| Periodic Health Assessments | | | |
| Hunger Strikes | | | |
| Emergency Psychotropic Medication Administration | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| **Addidtional Site Specific Training: (write below)** | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

Confidential - Produced Pursuant to Protective Order   TKHC1761

**EMPLOYEE ACKNOWLEDGEMENT**

As a Turn Key employee, I have received a comprehensive orientation within the first 90 days of my employment. I was afforded the opportunity to ask questions, and I was provided with satisfactory answers to any questions I asked. I understand future training and education may be required for continued employment with the organization. I am familiar with, and have access to, Turn Key's Employee Handbook and Policies and Procedures Manual. Should I have future questions that are not addressed by the Handbook or Manual, I will immediately contact a supervisor or my Regional Manager for clarification.

Printed Name: _____   Signature: _____

Supervisor's Name: _____   Signature: _____

Date: _____

Confidential - Produced Pursuant to Protective Order

TKHC1762

<u>The Estate of Larry Eugene Price v. Turn Key Health Clinics, LLC, et al.</u>

Case No. 2:23-cv-02008-PKH

Exhibit U

## Hank Balson

| | |
|---|---|
| **From:** | Hank Balson |
| **Sent:** | Tuesday, October 10, 2023 2:11 PM |
| **To:** | allieahloy@hallboothsmith.com |
| **Cc:** | Erik Heipt |
| **Subject:** | RE: Price discovery follow-up |

Allie,

I'm sending this e-mail to follow up on a number of outstanding discovery issues. We spoke about these issues on July 17 and you later agreed to supplement your clients' discovery responses, as summarized below, by August 14. However, we still have not received any supplementation to your clients' interrogatory answers and have not received complete supplementation to the RFPs highlighted below. Notably, we have not received any of the e-mails that were provided to you by your client last July.

Please provide us with the supplemental documents and interrogatory answers we discussed by next Wednesday, October 18.

With regard to Plaintiff's Interrogatory No. 9, we would like you to produce the training checklists for Morgan Matlock, Tierra Franklin Rambo, Abbeygail Jump, Rachelle Anaya, Katie Green, and Misty Williams.

Thank you.

-Hank

1

<u>The Estate of Larry Eugene Price v. Turn Key Health Clinics, LLC, et al.</u>

Case No. 2:23-cv-02008-PKH

Exhibit V

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

THE ESTATE OF LARRY EUGENE
PRICE JR, by and through its Special
Administrator, Rodney Price,                    PLAINTIFF

vs.                          Case No: 2:23-cv-02008-PKH

TURN KEY HEALTH CLINICS, LLC, et al,            DEFENDANTS

The video/audio-recorded Deposition of:

CHRISTEENA FERGUSON
being taken on November 14, 2023 @ 9:04 a.m.
at the Judge's Room, Courtyard Marriott Downtown,
900 Rogers Avenue, Fort Smith, Arkansas  72901

APPEARANCES:                           ON BEHALF OF:

MR. ERIK J. HEIPT                      PLAINTIFF
MR. HANK BALSOM
MR. ED BUDGE (via Zoom)
Budge & Heipt
808 East Roy Street
Seattle, WA  98122

MS. ALEXANDRA G. AH LOY                DEFENDANTS
MR. ZACHARY WILLIAMS (via Zoom)
Hall Booth Smith, PC      Turn Key Health Clinics, LLC'
6301 Waterford Blvd., Ste 200    Jameson Lewis, D.O.
Oklahoma City, OK  73118   Christeena Ferguson

MR. JASON OWENS        Sebastian County, Arkansas
Jason Owens Law Firm, P.A.
1312 W. Oak Street
Conway, AR  72034

Other persons present:  Rodney Price; David Roe, videographer

RICK L. CONGDON, ARCCR #631
CERTIFIED COURT REPORTER
P. O. Box 8493
Fort Smith, Arkansas 72902
email: rlcongdon@hotmail.com / cell phone: 479-652-0146

---

2

The video/audio-recorded deposition of Christeena Ferguson
was taken on November 14, 2023, beginning at the hour of 9:04
a.m. at the Judge's Room, Courtyard Marriott Downtown, 900
Rogers Avenue, Fort Smith, Arkansas, before me, Rick L.
Congdon, a Certified Court Reporter, and for the cause now
pending in the United States District Court, Western District
of Arkansas, Fort Smith Division, said deposition was taken
pursuant to Notice.

## INDEX

WITNESS:                                      PAGE

CHRISTEENA FERGUSON

Direct Examination by Mr. Balson.....................3
Cross Examination by Ms. Ah Loy....................211
Cross Examination by Mr. Owens.....................218
Redirect Examination by Mr. Balson.................226
Recross Examination by Mr. Owens...................233
Recross Examination by Ms. Ah Loy..................233

WITNESS CERTIFICATION................................235

REPORTER'S CERTIFICATE..............................237

EXHIBITS MARKED FOR IDENTIFICATION AND ATTACHED

Deposition Exhibit No.  1 - Resume
Deposition Exhibit No.  2 - Power Point modules doc
Deposition Exhibit No.  3 - HSA job description
Deposition Exhibit No.  4 - TK Small Sites Quarterly Audit doc
Deposition Exhibit No.  5 - New Hire Employee Orientation doc
Deposition Exhibit No.  6 - TK Policy & Procedures doc
Deposition Exhibit No.  7 - Patient History doc
Deposition Exhibit No.  8 - Blank I/O record
Deposition Exhibit No.  9 - I/O record used
Deposition Exhibit No. 10 - Personnel Action Form docs
Deposition Exhibit No. 11 - Request Report doc
Deposition Exhibit No. 12 - Email doc of 10-18-2020
Deposition Exhibit No. 13 - 11-19-2020 doc
Deposition Exhibit No. 14 - Responses

---

3

—oOo—

NOVEMBER 14, 2023, 9:04 A.M.

—oOo—

THE VIDEOGRAPHER:  We are on the record.  Today's date
is November 14, 2023.  Approximate time is 9:04 a.m.  My name
is David Roe, legal videographer, along with Rick Congdon the
court reporter.  If I could have the lawyers introduce
themselves and who they represent.

MR. BALSON:  I'm Hank Balson.  I represent the
plaintiff.

MR. HEIPT:  Erik Heipt.  I also represent the
plaintiff.

MR. OWENS:  Jason Owens for Defendant, Sebastian
County.

MS. AH LOY:  Alexandra Ah Loy for the Turn Key
defendants.

THE VIDEOGRAPHER:  If I could have the Zoom
participants, please.

MR. BUDGE:  This is Ed Budge, one of the attorneys for
the plaintiff, appearing by Zoom.

MR. WILLIAMS:  Zach Williams for the Turn Key
defendants, appearing by Zoom.

THE VIDEOGRAPHER:  Thank you.  We are here on the
Estate of Larry Eugene Price, Jr. vs. Turn Key Health Clinic
and others, Case Number 2:23-cv-02008, Western District of

---

4

Arkansas, Fort Smith Division.

You may swear the witness, please.

—oOo—

CHRISTEENA FERGUSON,

being first duly sworn, testified as follows:

DIRECT EXAMINATION

BY MR. BALSON:

Q.  Good morning, Miss Ferguson.  My name is Hank Balson.  I
introduced myself earlier.  I'm one of the lawyers representing
the plaintiff, the Estate of the Larry Price.  With me today is
one of my co-counsels, Erik Heipt, and also Larry Price's
brother, Rodney Price.

Have you ever had your deposition taken before?

A.  No.

Q.  Okay.  So I'll explain a few of the practicalities.
Everything that we're saying today, all of my questions, all of
your answers are being recorded verbatim by the court reporter
and so to the extent that you can, if you can try to remember
not to talk over my questions and I will try not to talk over
your answers.  In ordinary conversation it's common, if
somebody sees where the other person is headed with their
questions, they start answering, but it's hard to make a
transcript with us talking over each other.

Also you were just sworn in so do you understand that you
are under oath today just like you would be if you were in

**Page 61**

2  references on how to -- how to find references as well, who to
3  contact.
4  Q.  Is that something the employees kept or did that get
5  transferred to human resources?
6  A.  Some of it -- the signed documentation would have to go to
7  HR, and then there were things in there that they could just
8  keep as references on them, you know, for their own.
9  (Deposition Exhibit No. 5 was marked for identification.)
10  Q.  Exhibit 5 is -- first page is an email from Donna Roberts
11  to you, dated December 1st, 2020, and the subject is New Hire
12  Employee Orientation Modules.  And then the attachment is a
13  new -- is an Orientation and Training Checklist essentially.  I
14  did not include the modules, the PowerPoint slides that were
15  also attached to this email.
16        Do you recognize this document?
17  A.  Yes.
18  Q.  Did you use the PowerPoint slides that were attached to
19  this email when you were coordinating orientation and training
20  for new employees?
21  A.  Yes.  So the -- there was discs as well that were at the
22  nurses' station.  And so somebody in orientation would -- we
23  had computers and they would -- and we have laptops, so they
24  would go through the modules and after each module I believe
25  that there is a signature page that, yes, I understand it
     and...

**Page 62**

1  Q.  The discs contain the same PowerPoint slides?
2  A.  Yes, I believe so.
3  Q.  And new employees would go through those by themselves?
4  A.  Yes.
5  Q.  The checklist that's attached to the email on Exhibit 5,
6  did you use this checklist to document training completed by
7  employees?
8  A.  Yes.  First they would initial and then we would discuss it
9  and then I would initial.
10  Q.  When you started as a new employee with Turn Key, did you
11  complete a checklist like this?
12  A.  Yes.
13  Q.  If it's not in your personnel file, can you think of
14  anywhere else it might have been maintained?
15  A.  In a drawer at my desk there was, like, files for the
16  employees.
17  Q.  And is that where other employees checklists were
18  maintained, at the HSA desk?
19  A.  I believe so.
20  (Deposition Exhibit No. 6 was marked for identification.)
21  Q.  Exhibit 6 is a two-page document titled -- it's a Turn Key
22  policy with the title Medication Administration Training.  Have
23  you seen this document before?
24  A.  Yes.
25  Q.  Were you familiar with this policy when you worked at Turn

**Page 63**

1  Key?
2  A.  Yes.
3  Q.  Did you receive medication administration training when you
4  started working at the Sebastian County Jail?
5  A.  Yes.
6  Q.  Number 2, under Procedure it provides a list of topics that
7  were supposed to be included as part of medication
8  administration training for staff.  Did your train -- the
9  training that you received, did it include all these topics?
10  A.  Yes.
11  Q.  When you were HSA, did you provide medication
12  administration training to new employees?
13  A.  Yes.
14  Q.  Did the training you provided include all of these topics
15  listed in Number 2?
16  A.  Yes.
17  Q.  Do you remember we sent some written questions to you
18  called interrogatories that you answered and returned --
19  A.  Yes.
20  Q.  -- to us?  Do you remember that?
21  A.  Yes.
22  Q.  I remember reading in one of your interrogatory answers
23  that when you were HSA you implemented a more formal training
24  system for nurses and detention staff which included both
25  written materials and emergency drills.

**Page 64**

1        Can you tell me about the more formal training system you
2  implemented?  How was it different from what existed
3  previously?
4  A.  Well, you can read it, but then when it's done you have to
5  connect the two.  So deputies needed more training on the
6  looking in the mouth and, like, raising the tongue, because
7  they sometimes wouldn't pay attention like I wanted them to for
8  safety issues for the patient and the nurses, and so that was
9  one of them.  Recognizing when to call for medical help, that
10  seemed to -- needed -- it needed to be addressed.  If they were
11  ever in doubt, to call us.  If they ever needed us, to call us
12  or bring somebody down.  The emergency drills, starting CPR
13  immediately.  Just making sure that they understood that it's
14  best to call for us even if they're not sure, because they're
15  not medical so that's what we're there for.
16  Q.  In your answer you said that you implemented more formal
17  training.  How was this training that you just described
18  formalized?
19        MS. AH LOY:  Object to the form.
20  A.  I would sit in the detentions meetings and they would ask
21  me if I had anything to add to.  And so it was jail
22  administration and then sergeants and sometimes corporals and
23  me.  And at those times I would bring up any issues and just
24  reiterate all the time call us if you suspect anything, make
25  sure you're watching when we give medications, make sure you

The Estate of Larry Eugene Price v. Turn Key Health Clinics, LLC, et al.

Case No. 2:23-cv-02008-PKH

Exhibit W

| | | | | |
|---|---|---|---|---|
| 11:51 am | HIM FIBERLAX AND AN ALBUTEROL INHALER SPIROMETRY WAS 3 NOT FOR SURE HE KNOWS HOW TO DO IT AFTER INSTRUCTING | | | |
| 08-02-2019 6:07 pm | DEPUTY BARNES HERE FOR NEW INHALER / DISPENSED ALBUTEROL INHALER PER MEDICAL SUPERVISOR / PHYSCIAN ORDERS. | Lane, Vicki | Medical Staff | Medical Note |
| 08-10-2019 2:04 pm | DEPUTY FRAZIER AND 1015 CAUGHT NURSE IN HALLWAY. 1015 REQUEST OTC MOM FOR CONSTIPATION. MEDICAL SUPERVISOR / PHYSCIAN ORDERS OKAY OTC MOM | Lane, Vicki | Medical Staff | Medical Note |
| 08-24-2019 10:42 pm | ABILIFY 400MG IM RIGHT HIP PER 1015'S REQUEST. | Lane, Vicki | Medical Staff | Medical Note |
| 08-25-2019 3:10 pm | DEPUTY BARNES STATES 1015 IS REQUESTING REFILL ON ALBUTEROL INHALER. / INFORM DEPUTY WILL REQUEST REFILL. | Lane, Vicki | Medical Staff | Medical Note |
| 09-09-2020 10:00 am | This nurse and BC deputy went to Pt's cell to administer am meds. Pt was sitting on the side of his bunk and yelled to this nurse "bring me my meds." Nurse advised that I could not bring his meds into his cell. Deputy then told Pt to come to his door to get his meds. Pt came to door and started speaking unintelligably. Deputy called for control to close Pt's door. Pt stuck his hand out as the door was closing and stated "Give me my damn meds." This nurse went to pour Pt's meds into his hand when Pt grabbed this nurses arm and attempted to pull nurse into his cell while stating "Larry Price JR is gonna kill you bitch." this nurse pulled away as the Pt released this nurses arm and the door closed. | Williams, Misty | Medical Staff | Medical Note |
| 01-28-2021 3:47 pm | This nurse was notfied through request manager that pt was eating own feces and drinking own urine. This nurse went to check on pt. Pt noticeably thinner. Pt oriented to month, place, person. Reported year is 2022. Pt became agitated at this nurse. Had Deputies weigh pt and start a food log to monitor intake and output. No s/sx of distress noted at this time. | Ferguson, Christeena | Medical Staff | Medical Note |
| 08-29-2021 1:34 am | Notified at 0059 via personal cell phone by Cpt. Dumas that inmate Price was found unresponsive and possibly code blue. Arrived at SCADC at approx. 0117 and at this time inmate was in back of FSEMS ambulance, intubated and being transcutaneously paced at 70 bpm. At this time EMS was preparing to transport pt code 3 to Mercy ER. Sgt. Smith informed me that he had been found down by the pod deputy and had gasping respirations and no pulse present. At which time they performed CPR until EMS arrived. Inmate is emaciated and severely MI. Scheduled to go to Arkansas State Hospital on 09/02/2021 at 0830 am. Will follow up with staff and Mercy ER regarding pt condition. | Matlock, Morgan | Medical Staff | Medical Note |

## Problems

| Date Opened | Problem Type | Problem Subtype | Current Status | Date Closed | Closed By |
|---|---|---|---|---|---|
| 04-10-2020 11:36 am | Pulmonary | *[blank]* | open | *[blank]* | . |
| 08-21-2020 9:09 am | Cardiovascular | *[blank]* | open | *[blank]* | . |

## Scanned Documents

| | |
|---|---|
| **Date Scanned/Saved** | 04-08-2019 7:31 pm |
| **Document Type** | General Patient Chart Doctor/Nurse Note |
| **Number of Pages** | 1 |
| **Link** | Download |
| **File Size** | 318 KB |
| **Scanned/Saved By** | MCGREW, KAREN |
| **Notes** | *[blank]* |

<u>The Estate of Larry Eugene Price v. Turn Key Health Clinics, LLC, et al.</u>

Case No. 2:23-cv-02008-PKH

Exhibit X

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF ARKANSAS**
**FORT SMITH DIVISION**

| | |
|---|---|
| THE ESTATE OF LARRY EUGENE PRICE JR., by and through its Special Administrator, Rodney Price, <br><br>      PLAINTIFF, <br><br>      v. <br><br> TURN KEY HEALTH CLINICS, LLC, an Oklahoma corporation; SEBASTIAN COUNTY, ARKANSAS; JAWAUN LEWIS, DO; CHRISTEENA FERGUSON; and J. DOES 1-20, <br><br>      DEFENDANTS. | No. 2:23-cv-02008 PKH |

**DEFENDANT CHRISTEENA FERGUSON'S RESPONSES TO**
**PLAINTIFF'S FIRST SET OF INTERROGATORIES AND**
**REQUESTS FOR PRODUCTION OF DOCUMENTS**

COMES NOW, Defendant, Christeena Ferguson, RN ("Defendant"), and for her Responses to Plaintiff's First Set of Interrogatories and Requests for Production of Documents("Plaintiff's Discovery), responds and states as follows:

**GENERAL OBJECTIONS**

These general objections are asserted with respect to all requests answered herein, and in addition to the specific objections set forth below:

1.      Pursuant to the Federal Rule of Civil Procedure 26(b)(1) and the Federal Rule of Evidence 401, Defendant objects to any and all Requests that are not relevant to the subject matter of the pending action and not reasonably calculated to lead to the discovery of admissible evidence.

1

2.      Defendant objects to Plaintiff's discovery requests to the extent they purport to impose duties or obligations in addition to, inconsistent with, or different from the requirements set forth in the Federal Rules of Civil Procedure and Federal Rules of Evidence.

3.      Pursuant to the attorney/client privilege, Defendant objects to the production or disclosure of any information or document that pertains to or consists of confidential communications made for the purpose of facilitating the rendition of legal services to Defendant which are, therefore, subject to the attorney/client privilege. Defendant also objects to the production or disclosure of any document or information that constitutes attorney work product or was prepared in anticipation of litigation or trial for Defendant or any of its representatives, or that is otherwise beyond the scope of discovery or admitted by the Federal Rules.

4.      Defendant objects to Plaintiff's discovery requests to the extent they purport to require Defendant to identify or produce information or documents that are not in its custody or control. Defendant may identify and produce relevant non-privileged and non-protected information or documents that are presently in the custody or control of Defendant.

5.      Defendant does not concede the relevancy of any document or information requested by Plaintiff nor the relevancy or admissibility of any information provided, or documents produced in response thereto. The fact that information is provided, or documents produced in response to a particular Request does not mean that it such information and/or documentation is probative of any particular issue in this matter or admissible at trial.

6.      Information provided herein is based upon the knowledge of Defendant, but the words used in the answering of Plaintiff's discovery requests are those of Defendant's counsel.

7.      Defendant objects to any Request to the extent it exceeds the allowable scope of discovery under the Federal Rules of Civil Procedure.

8.     If any work product or privileged document or information is inadvertently produced in responses to these or other discovery requests, Defendant reserves the privilege with respect to the document or information so inadvertently produced, as well as its right to object to inspection and copying of such document or information, and its right to demand return of such document or information or object to the admissibility thereof.

9.     Defendant reserves the right to supplement, modify, and/or correct its Responses contained herein.

Subject to the foregoing objections, Defendant responds as follows:

## ANSWERS TO INTERROGATORIES

**INTERROGATORY NO. 1**: Please IDENTIFY every person you believe may have knowledge pertaining to the allegations in Plaintiff's complaint, your answer to the complaint, or your defenses to this lawsuit. For each person you identify, please summarize the knowledge you believe the person has or may have.

**ANSWER TO INTERROGATORY NO. 1**:  Defendant objects to this Interrogatory as unduly burdensome, overly broad, not reasonably calculated to lead to the discovery of admissible evidence, and inasmuch as this Interrogatory seeks information that may be protected by the attorney-client and/or the work-product privileges. Subject to and without waiving the foregoing objections, Defendant states:

| No. | Name, Job Title, & Dates of Employment | Subjects of Anticipated Knowledge |
|---|---|---|
| 1. | Plaintiff, Rodney Price c/o BUDGE & HEIPT | Mr. Price is expected to testify regarding the allegations contained within Plaintiff's Complaint, Decedent's medical history, Decedent's mental health history, Decedent's conduct prior to his incarceration, and damages. |

3

2.  Jawaun Lewis, D.O.
    Director of Psychiatry
    11/28/2016 – Current
    C/O HALL BOOTH SMITH, P.C.

Dr. Lewis is expected to testify regarding the psychiatric care of Decedent during his incarcerations at the Sebastian County Detention Center, the scope of mental health services Sebastian County contracted with Turn Key Health Clinics, LLC to provide at the Sebastian County Detention Center, statements made by Decedent during his incarceration at the Sebastian County Detention Center, interactions with Decedent at the Sebastian County Detention Center, allegations contained within the Complaint and Defendants' defenses, standard of care, contributory negligence, causation, and damages.

3.  Christeena Ferguson, RN
    Health Services Administrator
    8/18/2020 – 02/12/2021
    C/O HALL BOOTH SMITH, P.C.

Nurse Ferguson is expected to testify regarding the medical care of Decedent during his incarcerations at the Sebastian County Detention Center during her employment with Turn Key Health Clinics, the scope of services Sebastian County contracted with Turn Key Health Clinics, LLC to provide at the Sebastian County Detention Center, statements made by Decedent during his incarceration at the Sebastian County Detention Center, interactions with Decedent at the Sebastian County Detention Center, allegations contained within the Complaint and Defendants' defenses, standard of care, contributory negligence, and damages.

4.  Debra Dias, LPN
    Licensed Practical Nurse
    10/04/2019 – 09/03/2020
    C/O HALL BOOTH SMITH, P.C.

Nurse Dias is expected to testify regarding the medical care of Decedent during his incarcerations at the Sebastian County Detention Center, statements made by Decedent during his incarceration at the Sebastian County Detention Center, interactions with Decedent at the Sebastian County Detention Center, allegations contained within the Complaint and Defendants' defenses, standard of care, contributory negligence, and damages.

5.   Madilyn Brents, LPN
     Licensed Practical Nurse
     09/23/2019 – 09/03/2021,
     01/26/2022 – 03/01/2022
     C/O HALL BOOTH SMITH, P.C.

Nurse Brents is expected to testify regarding the medical care of Decedent during his incarcerations at the Sebastian County Detention Center, statements made by Decedent during his incarceration at the Sebastian County Detention Center, interactions with Decedent at the Sebastian County Detention Center, allegations contained within the Complaint and Defendants' defenses, standard of care, contributory negligence, and damages.

6.   Tierra (Franklin) Rambo, LPN
     Licensed Practical Nurse
     01/17/2020 – 03/02/2021,
     10/08/2021 – 03/09/2023
     C/O HALL BOOTH SMITH, P.C.

Nurse Rambo is expected to testify regarding the medical care of Decedent during his incarcerations at the Sebastian County Detention Center, statements made by Decedent during his incarceration at the Sebastian County Detention Center, interactions with Decedent at the Sebastian County Detention Center, allegations contained within the Complaint and Defendants' defenses, standard of care, contributory negligence, and damages.

7.   Katie Green, RN
     Float RN
     05/18/2020 – 08/09/2021
     C/O HALL BOOTH SMITH, P.C.

Nurse Green is expected to testify regarding the medical care of Decedent during his incarcerations at the Sebastian County Detention Center, statements made by Decedent during his incarceration at the Sebastian County Detention Center, interactions with Decedent at the Sebastian County Detention Center, allegations contained within the Complaint and Defendants' defenses, standard of care, contributory negligence, and damages.

8.   Rachelle Anaya, LPN
     Licensed Practical Nurse
     08/09/2018 – 09/02/2021,
     06/29/2022 – 09/05/2022
     C/O HALL BOOTH SMITH, P.C.

Nurse Anaya is expected to testify regarding the medical care of Decedent during his incarcerations at the Sebastian County Detention Center, statements made by Decedent during his incarceration at the Sebastian County Detention Center, interactions with Decedent at the Sebastian County Detention Center, allegations contained within the Complaint and

|  |  | Defendants' defenses, standard of care, contributory negligence, and damages. |
|---|---|---|
| 9. | Morgan Matlock, RN<br>Health Services Administrator<br>03/09/2021 – 05/02/2022<br>C/O HALL BOOTH SMITH, P.C. | Nurse Matlock is expected to testify regarding the medical care of Decedent during his incarcerations at the Sebastian County Detention Center, the scope of services Sebastian County contracted with Turn Key Health Clinics,  statements made by Decedent during his incarceration at the Sebastian County Detention Center, interactions with Decedent at the Sebastian County Detention Center, allegations contained within the Complaint and Defendants' defenses, standard of care, contributory negligence, and damages. |
| 10. | Misty Williams, LPN<br>Licensed Practical Nurse<br>7/27/2020 – 11/19/2020<br>C/O HALL BOOTH SMITH, P.C. | Nurse Williams is expected to testify regarding the medical care of Decedent during his incarcerations at the Sebastian County Detention Center, statements made by Decedent during his incarceration at the Sebastian County Detention Center, interactions with Decedent at the Sebastian County Detention Center including his attack on her, allegations contained within the Complaint and Defendants' defenses, standard of care, contributory negligence, and damages. |
| 11. | Jessica Kelly, RN<br>Float RN<br>05/10/2018 – 08/11/2018,<br>05/11/2020 – 06/12/2021<br>C/O HALL BOOTH SMITH, P.C. | Nurse Kelly is expected to testify regarding the medical care of Decedent during his incarcerations at the Sebastian County Detention Center, statements made by Decedent during his incarceration at the Sebastian County Detention Center, interactions with Decedent at the Sebastian County Detention Center, allegations contained within the Complaint and Defendants' defenses, standard of care, contributory negligence, and damages. |
| 12. | Meshae Siemens, LPN<br>Float LPN<br>04/08/2020 – 01/07/2021<br>C/O HALL BOOTH SMITH, P.C. | Nurse Siemens is expected to testify regarding the medical care of Decedent during his incarcerations at the Sebastian County Detention Center, statements made |

6

by Decedent during his incarceration at the Sebastian County Detention Center, interactions with Decedent at the Sebastian County Detention Center, allegations contained within the Complaint and Defendants' defenses, standard of care, contributory negligence, and damages.

12.   Karen Adams, LPN
      Float LPN
      03/19/2020 – 12/22/2020
      C/O HALL BOOTH SMITH, P.C.

Nurse Adams is expected to testify regarding the medical care of Decedent during his incarcerations at the Sebastian County Detention Center, statements made by Decedent during his incarceration at the Sebastian County Detention Center, interactions with Decedent at the Sebastian County Detention Center, allegations contained within the Complaint and Defendants' defenses, standard of care, contributory negligence, and damages.

Tara Adams, LPN
Float LPN
10/20/2019 – Current
C/O HALL BOOTH SMITH, P.C.

Nurse Adams is expected to testify regarding the medical care of Decedent during his incarcerations at the Sebastian County Detention Center, statements made by Decedent during his incarceration at the Sebastian County Detention Center, interactions with Decedent at the Sebastian County Detention Center, allegations contained within the Complaint and Defendants' defenses, standard of care, contributory negligence, and damages.

Cassandra Nichols, LPN
Float LPN
05/07/2020 – 10/06/2021
C/O HALL BOOTH SMITH, P.C.

Nurse Nichols is expected to testify regarding the medical care of Decedent during his incarcerations at the Sebastian County Detention Center, statements made by Decedent during his incarceration at the Sebastian County Detention Center, interactions with Decedent at the Sebastian County Detention Center, allegations contained within the Complaint and Defendants' defenses, standard of care, contributory negligence, and damages.

Chelsey Baker, RN
Float RN
06/01/2019 – 02/01/2020,
06/24/2020 – 04/16/2021
C/O HALL BOOTH SMITH, P.C.

Nurse Baker is expected to testify regarding the medical care of Decedent during his incarcerations at the Sebastian County Detention Center, statements made by Decedent during his incarceration at the Sebastian County Detention Center, interactions with Decedent at the Sebastian County Detention Center, allegations contained within the Complaint and Defendants' defenses, standard of care, contributory negligence, and damages.

Misti Rincon, LPN
Float LPN
07/27/2020 – 09/09/2021
C/O HALL BOOTH SMITH, P.C.

Nurse Rincon is expected to testify regarding the medical care of Decedent during his incarcerations at the Sebastian County Detention Center, statements made by Decedent during his incarceration at the Sebastian County Detention Center, interactions with Decedent at the Sebastian County Detention Center, allegations contained within the Complaint and Defendants' defenses, standard of care, contributory negligence, and damages.

Tammy Langley, LPN
Float LPN
03/19/2020 – 02/04/2022,
03/14/2022 – Current
C/O HALL BOOTH SMITH, P.C.

Nurse Langley is expected to testify regarding the medical care of Decedent during his incarcerations at the Sebastian County Detention Center, statements made by Decedent during his incarceration at the Sebastian County Detention Center, interactions with Decedent at the Sebastian County Detention Center, allegations contained within the Complaint and Defendants' defenses, standard of care, contributory negligence, and damages.

Kelsey (Victory) Dodson, LPN
Licensed Practical Nurse
8/21/2019 – 05/13/2022,
07/15/2022 – 03/26/2023

Nurse Victory is expected to testify regarding the medical care of Decedent during his incarcerations at the Sebastian County Detention Center, statements made by Decedent during his incarceration at the Sebastian County Detention Center, interactions with Decedent at the Sebastian County Detention Center, allegations contained within the Complaint and

|  | Defendants' defenses, standard of care, contributory negligence, and damages. |
|---|---|
| Stephanie Schuller<br>Licensed Practical Nurse<br>10/10/2018 – Current | Nurse Schuller is expected to testify regarding the medical care of Decedent during his incarcerations at the Sebastian County Detention Center, statements made by Decedent during his incarceration at the Sebastian County Detention Center, interactions with Decedent at the Sebastian County Detention Center, allegations contained within the Complaint and Defendants' defenses, standard of care, contributory negligence, and damages. |
| Tracey Robison, LPN<br>Float LPN<br>08/25/2019 – Current<br>C/O HALL BOOTH SMITH, P.C. | Nurse Robison is expected to testify regarding the medical care of Decedent during his incarcerations at the Sebastian County Detention Center, statements made by Decedent during his incarceration at the Sebastian County Detention Center, interactions with Decedent at the Sebastian County Detention Center, allegations contained within the Complaint and Defendants' defenses, standard of care, contributory negligence, and damages. |
| Bailey (Burns) Crocker, LPN<br>Float LPN<br>07/01/2020 – Current<br>C/O HALL BOOTH SMITH, P.C. | Nurse Burns is expected to testify regarding the medical care of Decedent during his incarcerations at the Sebastian County Detention Center, statements made by Decedent during his incarceration at the Sebastian County Detention Center, interactions with Decedent at the Sebastian County Detention Center, allegations contained within the Complaint and Defendants' defenses, standard of care, contributory negligence, and damages. |
| Seth Perry, LPN<br>Float LPN<br>01/21/2020 – 11/16/2022<br>C/O HALL BOOTH SMITH, P.C. | Nurse Perry is expected to testify regarding the medical care of Decedent during his incarcerations at the Sebastian County Detention Center, statements made by Decedent during his incarceration at the Sebastian County Detention Center, interactions with Decedent at the Sebastian |

|  | | County Detention Center, allegations contained within the Complaint and Defendants' defenses, standard of care, contributory negligence, and damages. |
|---|---|---|
|  | Anthony Carter, APRN<br>Mid-Level Provider<br>11/27/2017 – Current<br>c/o HALL BOOTH SMITH, P.C. | Mr. Carter is expected to testify regarding the medical care of Decedent during his incarcerations at the Sebastian County Detention Center, statements made by Decedent during his incarceration at the Sebastian County Detention Center, interactions with Decedent at the Sebastian County Detention Center, allegations contained within the Complaint and Defendants' defenses, standard of care, contributory negligence, and damages. |
| 14. | Tyler Caves<br>WACGC<br>Contact Information Unknown | Mr. Caves is expected to testify regarding the mental health care of Decedent during his incarcerations at the Sebastian County Detention Center, statements made by Decedent during his incarcerations at the Sebastian County Detention Center, interactions with Decedent at the Sebastian County Detention Center, his employment with WACGC, and WACGC's contract for mental health services with Sebastian County. |
|  | Dr. Price<br>WACGC<br>Contact Information Unknown | Dr. Price is expected to testify regarding the mental health care of Decedent during his incarcerations at the Sebastian County Detention Center, statements made by Decedent during his incarcerations at the Sebastian County Detention Center, interactions with Decedent at the Sebastian County Detention Center, his employment with WACGC, and WACGC's contract for mental health services with Sebastian County. |
|  | Captain Bill Dumas<br>c/o OWENS LAW | Captain Dumas is expected to testify regarding the facts and circumstances related to the allegations contained in the Complaint, including but not limited to his interactions with Decedent, Decedent's actions and |

10

| | |
|---|---|
| | statements made during incarcerations at the Sebastian County Detention Center, and Plaintiff's claimed damages. |
| Sgt. Smith<br>c/o OWENS LAW | Sergeant Smith is expected to testify regarding the facts and circumstances related to the allegations contained in the Complaint, including but not limited to his interactions with Decedent, Decedent's actions and statements made during incarcerations at the Sebastian County Detention Center, and Plaintiff's claimed damages. |
| Monica C. Rodriguez, M.D.<br>Mercy Hospital Fort Smith<br>4700 Kelly Hwy<br>Fort Smith, AR 72904 | Dr. Rodriguez is expected to testify regarding Decedent's emergency room visit on August 28, 2020, her treatment of Decedent, and Decedent's medical condition. |
| Tyler Smith, NP<br>Mercy Hospital Fort Smith<br>4700 Kelly Hwy<br>Fort Smith, AR 72904 | Mr. Smith is expected to testify regarding Decedent's emergency room visit on August 28, 2020, his treatment of Decedent, and Decedent's medical condition. |

Please also see the medical records of Decedent from the Sebastian County Detention Center, produced herein as Bates Nos. TKHC0001-0256, which may identify additional persons with knowledge related to this lawsuit.

**INTERROGATORY NO. 2**: Please describe your work history with Turn Key Health Clinics, LLC, including all titles and positions you have held, the dates you have held those titles and positions, your responsibilities in those position, and you were an employee of Turn Key or a contractor during the times you held those positions.

**ANSWER TO INTERROGATORY NO. 2**: Defendant objects to this Interrogatory as being overly broad as to time and not reasonably calculated to lead to the discovery of admissible evidence. Defendant objects to this Interrogatory as constituting multiple distinct and separate discovery requests via its discrete subparts, constituting three separate Interrogatories. *See* FED. R. CIV. P. 33(a)(1). Subject to and without waiving the foregoing objections, Defendant was hired by

11

Turn Key as a nurse at the Sebastian County Detention Center on or about August 18, 2020. In this capacity, Defendant provided direct nursing services to patients incarcerated at the Sebastian County Detention Center. In or around November 2020, Defendant was offered the position of Health Services Administrator. In such capacity, Defendant oversaw the Medical unit at the Sebastian County Detention Center. Defendant voluntarily resigned from her position with Turn Key and ended her employment with Turn Key on February 12, 2021. Defendant was an employee of Turn Key Health Clinics, LLC.

**INTERROGATORY NO. 3:** Please identify your supervisor(s) during the time you provided healthcare services at the Sebastian County Jail between August 2020 and August 2021. If you identify more than one person, please describe the role that each of them played in supervising your work and state the dates during which they supervised you.

**ANSWER TO INTERROGATORY NO. 3**: Defendant objects to this Interrogatory as being overly broad as to time and scope, vague and ambiguous as to "role that each of them placed," unduly burdensome, in seeking information beyond the custody and control of this Defendant, and not being reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Defendant states that to the best of her information and belief, her supervisor when she began her employment with Turn Key was Kara Black, RN. Nicole Cobb, RN may have also supervised her at one point in time. Upon promotion to Health Services Administrator, Defendant's direct supervisor was Donna Roberts, RN. Defendant is not in possession, custody, or control of these individuals' respective job descriptions or job duties.

**INTERROGATORY NO. 4**: Please identify any healthcare personnel whom you supervised at the Sebastian County Jail between August 2020 and August 2021.

**ANSWER TO INTERROGATORY NO. 4**: Defendant objects to this Interrogatory as being overly broad as to time and scope, unduly burdensome, disproportionate to the needs of this case, and as not being reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, due to the passage of time Defendant does not recall each and every healthcare personnel should supervised at the Sebastian County Detention Center. To the best of her information and recollection, she would have been over LPNs in the hierarchy when she was a staff nurse at Sebastian County. When she became Health Services Administrator, she would have been responsible for supervising all the nursing staff employed by Turn Key on site. She would not have been responsible for supervising doctors, mid-level providers, psychiatrists, or psychiatric nurse practitioners employed by Turn Key, nor was she responsible for supervising any mental health staff (who were employed by The Guidance Center) or liaisons with mental health staff (who were believed to be employed by Sebastian County and/or The Guidance Center).

**INTERROGATORY NO. 5**: Please describe all training and education you received on the subjects of medical or mental health care for incarcerated people, including any training you received on the subject of inadequate food or fluid intake. Please include in your answer the people or entities that provided the training or education, the approximate date(s) of the training, the approximate duration of the training or education, the substance of the training or education, and whether or not you received any written materials in conjunction with the training or education.

**ANSWER TO INTERROGATORY NO. 5**: Defendant objects to this Interrogatory as constituting multiple distinct and separate discovery requests via its discrete subparts, as reflected in the above renumbering. *See* FED. R. CIV. P. 33(a)(1). Further, Defendant objects to this Interrogatory as being overly broad as to time and scope, unduly burdensome, not proportionate to the needs of this case, as constituting an improper fishing expedition and not reasonably

13

calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, Defendant states that she received education on all facets of nursing care while obtaining her education as a nurse, which would have included intake and output as well as nursing care in general. Prior to becoming a nurse, Defendant also worked as a correctional officer at detention facilities and received training on countless occasions on these topics as well. Thus, as part of Defendant's education, training, and experience prior to even becoming a nurse, she had received training on intake and output in the correctional setting and on mental and medical services within a correctional facility. After completion of nursing school, Defendant has worked in numerous correctional and medical facilities as both an LPN and as an RN. Defendant had specific training prior to her employment with Turn Key, as both a nurse and a correctional officer, on food and fluid intake in the correctional settling and on mental health and medical services in the setting of corrections. Upon being hired by Turn Key, Defendant underwent an orientation to Sebastian County and its policies, practices, and nursing protocols. Additionally, as Health Services Administrator, Defendant implemented a more formal training system for nurses and detention staff employed at Sebastian County Detention Center which would have included both written materials and emergency drills. It would be too cumbersome and impossible for Defendant to list out every topic of training she has received and/or provided over the course of her career.

**INTERROGATORY NO. 6**: Please describe all training you received prior to August 29, 2021 pertaining to policies, procedures, and expected practices applicable to your work at the Sebastian County Jail, including any training related to inadequate food or fluid intake. Please include in your answer the people or entities that provided the training, the approximate date(s) of the training, the approximate duration of the training, the substance of the training, and whether or not you received any written materials in conjunction with the training.

14

**ANSWER TO INTERROGATORY NO. 6**: See Defendant's Answer to Interrogatory No. 5.

**INTERROGATORY NO. 7**: Please describe all training you have developed or provided to employees of Turn Key or Sebastian County. For each training you list, please IDENTIFY the people or groups for whom you developed the training or to whom you provided it, the approximate date(s) of any training provided by you, the substance of the training, and whether or not you created or used any written materials or visual aids in conjunction with the training.

**ANSWER TO INTERROGATORY NO. 7**: See Defendant's Answer to Interrogatory No. 5. In addition to the objections and responses set forth therein, Defendant states that she is not in possession, custody, or control of the requested information. It would be too cumbersome and impossible for Defendant to identify all training she provided, except to state that such training was ongoing on various topics. Defendant did not maintain training records for the Sebastian County Detention Center employees. For Turn Key employees, any training would likely have been documented within those employees' respective personnel files.

Additionally, Defendant provided training to Sebastian County Detention Center staff continuously in efforts to improve patient care and outcomes, and Sebastian County detention staff worked well with Defendant to implement her recommended training. This included formal training sessions and emergency drills. To the best of her information and belief, she likely would have forwarded copies of the records of the training logs to someone at the Sebastian County Detention Center. Defendant does not know who would have retained those records but believes they may have been retained by Captain Dumas or Lieutenant Talbe.

**INTERROGATORY NO. 8**: Please identify and describe each action you took, each observation you made, each order you gave or received, and each interaction you engaged in with

15

regard to Larry Price, Jr. between August 2020 and August 2021. Please include in your descriptions the date and time of each such action, observation, order, or interaction. If you are unable to state the precise date and time, please provide your best estimate.

**ANSWER TO INTERROGATORY NO. 8**: Defendant objects to this Interrogatory as vastly overbroad as to time and scope, as unduly burdensome, vague as to "interaction," and as not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects inasmuch as the information sought is better suited for deposition discovery, as this Request constitutes the improper shotgun discovery proscribed by the Federal Rules of Civil Procedure.

Subject to and without waiving the foregoing objections, pursuant to Fed. R. Civ. P. 33(d), Defendant directs Plaintiff to the medical records of Decedent from the Sebastian County Detention Center, produced herein as Bates Nos. TKHC0001-0256, which contains the requested information known to Defendant at this time. Defendant objects to this Interrogatory as vastly overbroad as to time and scope, as unduly burdensome, vague as to "communicate," and as not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects inasmuch as the information sought is better suited for deposition discovery, as this Request constitutes the improper shotgun discovery proscribed by the Federal Rules of Civil Procedure.

Subject to and without waiving the foregoing objections, pursuant to Fed. R. Civ. P. 33(d), Defendant directs Plaintiff to the medical records of Decedent from the Sebastian County Detention Center, produced herein as Bates Nos. TKHC0001-0256, which contains the requested information known to Defendant at this time. To the best of her information and belief, Defendant's interactions with Mr. Price are contained within the medical records. Defendant is amenable to expounding on her memory and respond to specific questions in a deposition setting. Additionally, Defendant recalls being informed by another inmate, whose name Defendant does

not recall at this time, on or around January 28, 2021, that Mr Price was eating his own feces. This prompted Defendant to assess Mr. Price and begin an Input/Output log on him. Defendant instructed detention staff on how to fill out the Input/Output forms. Defendant further recalls speaking with Captain Dumas after assessing Mr. Price, and she requested that detention staff weigh Mr. Price. Defendant recalls to, due to Mr. Price's combativeness and noncompliance, it took approximately 4-5 officers to weigh Mr. Price. After he was weighed that day and she taught the deputies how to track Mr. Price's Intake and Output, Defendant further recalls that detention staff were providing Mr. price with extra meal trays to supplement his nutrition. Defendant would have further explained to nursing staff that there was a food log being monitored for detention staff so that they could monitor his intake and output when reported by detention staff. Defendant additionally recalls speaking with Misty Williams, LPN regarding Mr. Price's attack on her, and Defendant instructed Nurse Williams to notify Turn Key's Corporate Office about the incident. Defendant ended her employment with Turn Key on February 12, 2021. After that date, she had no interactions, personal knowledge of, or involvement in Larry Price's health care, nor did she owe any ongoing duty of care to him. Defendant specifically reserves the right to amend and/or supplement this response if additional information becomes available to her or if something refreshes her memory in the future.

**INTERROGATORY NO. 9**: Please list each time you communicated with somebody other than your attorney about Larry Price, Jr., any aspect of his treatment or confinement at the Sebastian County Jail, or his death. For each instance you list, please state the actual or approximate date of the communication, state the form of the communication (e.g., telephone, voicemail, e-mail, text, in-person, mail, etc.), describe the purpose/substance of the communication, IDENTIFY the person(s) with whom you communicated, and IDENTIFY who

else was part of the communication (e.g., persons who were copied on e-mails or were present during a conversation).

**ANSWER TO INTERROGATORY NO. 9**: Defendant objects to this Interrogatory as vastly overbroad as to time and scope, as unduly burdensome, vague as to "communicate," and as not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects inasmuch as the information sought is better suited for deposition discovery, as this Request constitutes the improper shotgun discovery proscribed by the Federal Rules of Civil Procedure.

Subject to and without waiving the foregoing objections, pursuant to Fed. R. Civ. P. 33(d), Defendant directs Plaintiff to the medical records of Decedent from the Sebastian County Detention Center, produced herein as Bates Nos. TKHC0001-0256, which contains the requested information known to Defendant at this time. To the best of her information and belief, Defendant's communications with medical personnel related to Mr. Price are contained within the medical records. Defendant is amenable to expounding on her memory and respond to specific questions in a deposition setting. Additionally, Defendant recalls being informed by another inmate, whose name Defendant does not recall at this time, on or around January 28, 2021, that Mr Price was eating his own feces. This prompted Defendant to assess Mr. Price and begin an Input/Output log on him. Defendant instructed detention staff on how to fill out the Input/Output forms. Defendant further recalls speaking with Captain Dumas after assessing Mr. Price, and she requested that detention staff weigh Mr. Price. Defendant recalls to, due to Mr. Price's combativeness and noncompliance, it took approximately 4-5 officers to weigh Mr. Price. After he was weighed that day and she taught the deputies how to track Mr. Price's Intake and Output, Defendant further recalls that detention staff were providing Mr. price with extra meal trays to

18

supplement his nutrition. Defendant would have further explained to nursing staff that there was a food log being monitored for detention staff so that they could monitor his intake and output when reported by detention staff. Defendant additionally recalls speaking with Misty Williams, LPN regarding Mr. Price's attack on her, and Defendant instructed Nurse Williams to notify Turn Key's Corporate Office about the incident. Defendant ended her employment with Turn Key on February 12, 2021. After that date, she had no communications, personal knowledge of, or involvement in Larry Price's health care, nor did she owe any ongoing duty of care to him. Defendant specifically reserves the right to amend and/or supplement this response if additional information becomes available to her or if something refreshes her memory in the future.

**INTERROGATORY NO. 10**: Please describe all communications you've had with an employee of Turn Key or an employee of Sebastian County in which somebody (including you) expressed dissatisfaction or concern about any aspect of the medical or mental health services at the Sebastian County Jail, including any concerns regarding staffing levels at the jail. For each communication you identify, please state the actual or approximate date of the communication, state the form of the communication (e.g., telephone, voicemail, e-mail, text, in-person, mail, etc.), describe the concern expressed, IDENTIFY the person(s) with whom you communicated, and IDENTIFY who else was part of the communication (e.g., persons who were copied on e-mails or were present during a conversation).

**ANSWER TO INTERROGATORY NO. 10**: Defendant objects to this Interrogatory as constituting multiple distinct and separate discovery requests via its discrete subparts, as reflected in the above renumbering. *See* FED. R. CIV. P. 33(a)(1). Defendant further objects to this Interrogatory as overly broad as to time and scope, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

19

Subject to and without waiving the foregoing objections, Defendant states that during the Covid-19 pandemic, there were nationwide staffing concerns related to virtually every facet of nursing care possible, including correctional medicine. Defendant further states that, to the best of her recollection and belief, Defendant expressed concerns to Captain Dumas and sergeants during a monthly meeting because detention staff were not following her instructions. This occurred toward the end of Defendant's employment with Turn Key.  Specifically, Defendant expressed concerns that some of the jail staff would not control the pod and would make nurses feel unsafe during medication pass. She would also ask that detention staff make sure they are checking inmates' mouths during medication pass to ensure they weren't cheeking medications and making sure that detention staff were not letting more than one cell door at a time (for safety reasons). The tone of this conversation was not negative but instead was discussed in an educational/collaborative effort to improve patient care and safety within the detention center.

**INTERROGATORY NO. 11**: Please identify each shift you worked at the Sebastian County Jail between August 19, 2020 and August 29. For each shift you identify, please provide the date and times you worked, as well as the location (e.g., booking unit, medical unit, segregation unit, etc.).

**ANSWER TO INTERROGATORY NO. 11**: Defendant objects to this Interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Defendant states that she is not in possession, custody, or control of her time records during her employment with Turn Key and would direct this request to Defendant Turn Key.

**INTERROGATORY NO. 12**: Please identify and describe all policies, procedures, protocols, guidelines, directives, standing orders, supervisory memos, operational manuals, or

20

written instructions that governed (or pertained to) your work as a medical caregiver at the Sebastian County Jail between August 2020 and August 2021, including any materials related to a person's insufficient fluid or food intake.

**ANSWER TO INTERROGATORY NO. 12**: Defendant objects to this Interrogatory as overly broad (as to scope and time), vague and ambiguous as to "supervisory memos," "written instructions that governed (or pertained to) your work as a medical caregiver," unduly burdensome, and seeks irrelevant information which is not reasonably calculated to lead to the discovery of admissible evidence. Subject to ad without waiving these objections, Defendant states that she is not in possession, custody, or control of policies, procedures, protocols, etc. which were in effect during her employment with Turn Key and would direct this request to Defendant Turn Key.

**INTERROGATORY NO. 13**: Were you disciplined, reprimanded, warned, or counseled (formally or informally) by any individual, entity, or regulatory agency in connection with Larry Price, Jr.'s confinement at the Sebastian County Jail between August 19, 2020 and August 29, 2021? If you were, please IDENTIFY the involved individual(s), entity(ies), or agency(ies), and please describe the circumstances surrounding the incident(s).

**ANSWER TO INTERROGATORY NO. 13**:   Defendant objects to this Interrogatory as being overly broad as to time and as not being reasonably calculated to lead to the discovery of admissible evidence, as it seeks discovery into conduct and/or measures taken after the alleged injury. *See* Fed. R. Evid. 407; *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389, 109 S. Ct. 1197, 1205, 103 L. Ed. 2d 412 (1989) ("a municipality can be liable under § 1983 only where its policies are the 'moving force [behind] the constitutional violation.'"). Subject to and without waiving these objections, Defendant states: No.

21

## RESPONSES TO REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1**: Please produce all e-mails, notes, text messages, voicemail messages, correspondence, photos, videos, and other DOCUMENTS in your possession or control that refer or pertain to Larry Price, Jr. (See definition of "DOCUMENTS" above.)

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1**: Objection. This Request is overly broad in scope, not reasonably limited in time, unduly burdensome, vague and ambiguous, not reasonably calculated to lead to the discovery of admissible evidence and seeks information that may be protected by the attorney-client and/or the work-product privileges and/or documents and are therefore not subject to disclosure under the Federal Rules. Subject to and without waiving the foregoing objections, Defendant directs Plaintiff to Mr. Price's medical records produced herein. Upon the entry of an Agreed Protective Order, Defendant will produce responsive emails currently within her possession, custody, and control. Defendant does not have any text messages, photos, videos, correspondence, or voicemail messages responsive to this request. Defendant is currently unaware of any additional documents responsive to this request outside of the privileged and protected communications with her counsel of record.

**REQUEST FOR PRODUCTION NO. 2**: Please produce your current or most recent resume or curriculum vitae.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2**: Produced as Bates Nos. TKHC0285-0288.

**REQUEST FOR PRODUCTION NO. 3**: Please produce all training materials created, used, received, or provided by you, as reflected in your answers to Interrogatories 5-7.

22

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:** Defendant is not in possession, custody, or control of any training materials responsive to this Request.

**REQUEST FOR PRODUCTION NO. 4**: If you have authored or co-authored any published articles, textbooks, or book chapters on the subjects of medical or mental health care for incarcerated persons, please produce copies of them.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4**: None.

**REQUEST FOR PRODUCTION NO. 5**: Please produce copies of all written and recorded communications identified by you in your answers to Interrogatories 9 and 10.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5**: Defendant objects to this Request as overly broad in scope, not reasonably limited in time, unduly burdensome, vague and ambiguous, not reasonably calculated to lead to the discovery of admissible evidence and seeks information that may be protected by the attorney-client and/or the work-product privileges and/or documents and are therefore not subject to disclosure under the Federal Rules. Subject to and without waiving the foregoing objections, Defendant directs Plaintiff to Mr. Price's medical records. To the best of Defendant's information and belief, Defendant is not in possession, custody, or control of any further documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 6**: Please produce copies of all health care licenses and certifications you hold or have held.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6**: Produced as Bates No. TKHC0289.

**REQUEST FOR PRODUCTION NO. 7**: Please produce all insurance agreements (primary and excess) under which any insurer may be liable to satisfy part or all of a judgment that may be entered in this action against you, or to indemnify or reimburse you for payments made to

satisfy the judgment, as well as any DOCUMENTS affecting coverage (such as denying coverage, extending coverage, or reserving rights) from or on behalf of such insurers. It is not enough to produce the declarations pages; please produce all responsive DOCUMENTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7**: See the produced insurance declarations page. Upon the entry of an Agreed Protective Order, the Turn Key Defendants will produce the full insurance policy applicable to this matter. Defendant does not maintain insurance coverage independent from Turn Key and has no documents in her possession, custody, or control responsive to this Request.

**REQUEST FOR PRODUCTION NO. 8**: Please produce all letters, e-mails, notes, complaints, and other DOCUMENTS that refer or pertain to any allegation that a person confined in the Sebastian County Jail did not receive adequate medical or mental health care. You may limit your response to DOCUMENTS created or received since January 1, 2019, and you may omit written kites and grievances submitted by people while confined in the jail.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8**: Objection. This request is overly broad (scope and time), unduly burdensome, vague, ambiguous, compound, seeks irrelevant information, not reasonably calculated to lead to the discovery of admissible evidence, and seeks private health information of non-parties protected from disclosure under HIPAA. Subject to and without waiving the foregoing objections, Defendant states she has no documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 9**: Please produce all e-mails, letters, memoranda, and other communications between Sebastian County (or any County employee or representative) and Turn Key Health Clinics, LLC (or any Turn Key employee or representative, including you) regarding alleged deficiencies in, or the quality or adequacy of, medical or mental health services

at the Sebastian County Jail, including any such materials relating to overcrowding or understaffing. You may limit your response to DOCUMENTS created or received since January 1, 2019.

RESPONSE TO REQUEST FOR PRODUCTION NO. 9: Objection. This Request is vague, ambiguous, compound, unduly burdensome, and overly broad as to time and scope. The care and treatment at issue in this case occurred at the Sebastian County Detention Center from August 19, 2020 through August 29, 2021; therefore, any discovery after August 29, 2021 has no relevance to this lawsuit and would have no probative value over any of the material issues in this case. Therefore, Defendant further objects to this Request as an impermissible fishing expedition and as not being reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Defendant states she has no documents responsive to this Request. On the contrary, Defendant states that she had a good working relationship with Sebastian County, and both Turn Key and Sebastian County worked together collaboratively always trying to improve patient care.

**REQUEST FOR PRODUCTION NO. 10**: Please produce all e-mails, letters, memoranda, meeting minutes, and other DOCUMENTS that pertain to efforts by Turn Key to coordinate services with the Western Arkansas Counseling & Guidance Center. You may limit your response to DOCUMENTS that address coordination of services generally or with regard to Larry Price, Jr. (as opposed to services for other specific patients).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10**: Objection. This Request is overly broad as to time and scope, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and is based upon the false premise that Turn Key had any obligation to "coordinate services with" WACGC. On the contrary, Sebastian County contracted

with WACGC and was responsible for coordinating mental health services with WACGC. Subject to and without waiving the foregoing objections, Defendant states that she has no documents responsive to this request because Turn Key was not responsible for coordinating services with The Guidance Center. Instead, Sebastian County was responsible for coordinating those services.

**REQUEST FOR PRODUCTION NO. 11**: Please produce all letters, reports, and other DOCUMENTS that discuss (a) the prevalence of mental illness in the Sebastian County Jail (i.e., the actual or estimated number or proportion of people with a mental illness confined in the jail) for each year since 2016, or (b) challenges faced by Sebastian County and its jail employees, or Turn Key and its employees, in providing adequate mental health services to people confined in the jail.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11**: Defendant objects to this Request as overly broad in both time and scope, vague and ambiguous, unduly burdensome, irrelevant, and seeking information not reasonably calculated to lead to the discovery of admissible evidence. Furthermore, Turn Key was not contracted to provide "mental health services" beyond limited psychiatric services within the Sebastian County Detention Center at any time relevant to Plaintiff's claims. Subject to and without waiving the foregoing objections, Defendant states she is not in possession, custody, or control of any documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 12**: Please produce all DOCUMENTS showing the shifts you worked at the Sebastian County Jail between August 19, 2020 and August 29, 2021, including the work schedule itself or any calendars or notes documenting the days, hours, shifts, and location(s) where you actually worked during that timeframe.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12**: Defendant objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the

discovery of admissible evidence. Subject to and without waiving the foregoing objections, Defendant states that she is not in possession, custody, or control of her time records during her employment with Turn Key and would direct this request to Defendant Turn Key.

**REQUEST FOR PRODUCTION NO. 13**: Please produce all DOCUMENTS relating to any discipline, reprimand, warning, or corrective counseling that you have received from any individual, employer, entity, or regulatory agency in connection with your work as a nurse or healthcare provider.

**RESPONSE**: None.

Respectfully submitted,

Alexandra G. Ah Loy, AR Bar #2020020
HALL BOOTH SMITH, P.C.
6301 Waterford Blvd., Ste. 200
Oklahoma City, OK 73118
Telephone: (405) 513-7111
Facsimile: (405) 768-1414
E-Mail: AllieAhLoy@hallboothsmith.com
*Attorneys for Defendants Turn Key Health*
*Clinics, LLC, Jawaun Lewis, D.O., and*
*Christeena Ferguson*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing *Responses to Plaintiff's First Set of Interrogatories and Requests for Production* was mailed via e-mail on the 7th day of June, 2023, to the following:

Edwin Budge: ed@budgeandheipt.com
Erik Heipt:     erik@budgeandheipt.com
Hank Balson:  hank@budgeandheipt.com
Jason Owens:  owens@jowenslawfirm.com

ALEXANDRA G. AH LOY

## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF ARKANSAS
## FORT SMITH DIVISION

THE ESTATE OF LARRY EUGENE
PRICE JR., by and through its Special
Administrator, Rodney Price,

      PLAINTIFF,

          v,

TURN KEY HEALTH CLINICS, LLC, an
Oklahoma corporation; SEBASTIAN
COUNTY, ARKANSAS; JAWAUN
LEWIS, DO; CHRISTEENA FERGUSON;
and J. DOES 1-20,

      DEFENDANTS.

No. 2:23-cv-02008 PKH

### VERIFICATION

State of Oklahoma      )
                    )
County of Oklahoma    )

Before me, the undersigned authority, personally appeared Christeena Ferguson, RN,

known to me personally to be the person whose signature is subscribed hereto, and after being,

by me, duly sworn, deposed and stated that she is a Defendant in the above-entitled and

numbered cause and that her *Responses to Plaintiff's First Set of Discovery Requests* are true and correct to the best of her knowledge, information and belief.

_____
*Christeena Ferguson, RN*

Subscribed and sworn before me this __7th__ day of __June__ 2023.

_____
Notary Public

My commission expires: __4-12-26__

# 06003744
EXP. 04/12/26
BOBBIE JO BLANKENSHIP
NOTARY
PUBLIC
STATE OF OKLAHOMA

The Estate of Larry Eugene Price v. Turn Key Health Clinics, LLC, et al.

Case No. 2:23-cv-02008-PKH

Exhibit Y

**INPUT/OUTPUT RECORD**

NAME: Price, Larry      ID#: _____      DATE: 2-2-21   FACILITY: SCADC

| DAY SHIFT | EVENING SHIFT | NIGHT SHIFT |
|---|---|---|
| ORAL INTAKE | ORAL INTAKE | ORAL INTAKE |
| **Fluid amount:**<br><br>1 cup of water | **Fluid amount:**<br><br>Cup Juice 100% | **Fluid amount:**<br><br>Cup Juice 100% |
| Total: _____ | Total: _____ | Total: _____ |
| **IV input:** | **IV input:** | **IV input:** |
| **Food amounts:**<br><br>1 Tray | **Food amounts:**<br><br>2 Trays 100% | **Food amounts:**<br><br>2 Trays 100% |
| **Emesis/Vomiting:** | **Emesis/Vomiting:** | **Emesis/Vomiting:** |
| **Urine Output:** | **Urine Output:** | **Urine Output:** |
| Total: _____ | Total: _____ | Total: _____ |
| **Bowel Movements:** | **Bowel Movements:** | **Bowel Movements:** |
| **Staff Signature/Time:** | **Staff Signature/Time:** McGuirt DGG | **Staff Signature/Time:** McGuirt DGG |

**TURN KEY HEALTH**

REVISED 2-1-18

TKHC_0239

**INPUT/OUTPUT RECORD**

NAME: Price , Larry     ID#:          DATE: 2-2-21  FACILITY: SCADC

| DAY SHIFT | EVENING SHIFT | NIGHT SHIFT |
|---|---|---|
| ORAL INTAKE | ORAL INTAKE | ORAL INTAKE |
| **Fluid amount:** <br><br> I cup of water | **Fluid amount:** <br><br> Cup Juice 100% | **Fluid amount:** <br><br> Cup Juice 100% |
| Total: _____ | Total: _____ | Total: _____ |
| **IV input:** | **IV input:** | **IV input:** |
| **Food amounts:** <br><br> I Tray | **Food amounts:** <br><br> 2 TRAYS 100% | **Food amounts:** <br><br> 2 TRAYS 100% |
| **Emesis/Vomiting:** | **Emesis/Vomiting:** | **Emesis/Vomiting:** |
| **Urine Output:** | **Urine Output:** | **Urine Output:** |
| Total: _____ | Total: _____ | Total: _____ |
| **Bowel Movements:** | **Bowel Movements:** | **Bowel Movements:** |
| **Staff Signature/Time:** | McGuirt DGC <br> **Staff Signature/Time:** | McGuirt DGC <br> **Staff Signature/Time:** |

**TURN KEY HEALTH**

REVISED 2-1-18

TKHC_0240

**INPUT/OUTPUT RECORD**

NAME: _Larry Price_   ID#: _____   DATE: _01·29·21_ FACILITY: _SCADC_

| DAY SHIFT | EVENING SHIFT | NIGHT SHIFT |
|---|---|---|
| ORAL INTAKE | ORAL INTAKE | ORAL INTAKE |
| **Fluid amount:** 1 Cooloff Packet w water  ~~D24~~ ·D18 | **Fluid amount:** water | **Fluid amount:** Cooloff Packet |
| Total: _1CUP_ | Total: _____ | Total: _____ |
| **IV input:** | **IV input:** | **IV input:** |
| **Food amounts:** 1 Breakfast tray | **Food amounts:** 1 lunch Tray | **Food amounts:** dinner tray + half tray |
| **Emesis/Vomiting:** | **Emesis/Vomiting:** | **Emesis/Vomiting:** |
| **Urine Output:** | **Urine Output:** | **Urine Output:** |
| Total: _____ | Total: _____ | Total: _____ |
| **Bowel Movements:** | **Bowel Movements:** | **Bowel Movements:** |
| **Staff Signature/Time:** | **Staff Signature/Time:** | **Staff Signature/Time:** |

**TURN KEY HEALTH**

REVISED 2-1-18

**INPUT/OUTPUT RECORD**

NAME: Larry, Price   ID#:   DATE: 01-30 21 FACILITY: SCADC

| DAY SHIFT | EVENING SHIFT | NIGHT SHIFT |
|---|---|---|
| ORAL INTAKE | ORAL INTAKE | ORAL INTAKE |
| Fluid amount: | Fluid amount:<br>1 cup of juice | Fluid amount:<br>1 cup of juice |
| Total: _____ | Total: _____ | Total: _____ |
| IV input: | IV input: | IV input: |
| Food amounts: | Food amounts:<br>ate entire tray | Food amounts:<br>ate entire tray |
| Emesis/Vomiting: | Emesis/Vomiting:<br>none | Emesis/Vomiting:<br>none |
| Urine Output: | Urine Output: | Urine Output: |
| Total: _____ | Total: _____ | Total: _____ |
| Bowel Movements: | Bowel Movements: | Bowel Movements: |
| Staff Signature/Time: | D27<br>Staff Signature/Time:<br>William Gray 1251 | D27<br>Staff Signature/Time:<br>1824 |

TURN KEY HEALTH

REVISED 2-1-18

TKHC_0242

**INPUT/OUTPUT RECORD**

NAME: *Price, Larry*   ID#: _____   DATE: 02.032  FACILITY: SCADC

| DAY SHIFT | EVENING SHIFT | NIGHT SHIFT |
|---|---|---|
| ORAL INTAKE / Brkfst Tray | ORAL INTAKE | ORAL INTAKE |
| **Fluid amount:** 1 Juice Packet mix | **Fluid amount:** 1 cup juice 100% | **Fluid amount:** 1 Juice Packet mix |
| Total: Breakfast | Total: _____ | Total: _____ |
| **IV input:** | **IV input:** | **IV input:** |
| **Food amounts:** 1 Full Breakfast tray | **Food amounts:** 2 trays 100% | **Food amounts:** 1 tray 100% |
| **Emesis/Vomiting:** | **Emesis/Vomiting:** | **Emesis/Vomiting:** |
| **Urine Output:** ? | **Urine Output:** | **Urine Output:** |
| Total: _____ | Total: _____ | Total: _____ |
| **Bowel Movements:** | **Bowel Movements:** | **Bowel Movements:** |
| 0045 **Staff Signature/Time:** DS | 1240 **Staff Signature/Time:** | 1800 **Staff Signature/Time:** |

TURN KEY HEALTH

REVISED 2-1-18

TKHC_0243

**INPUT/OUTPUT RECORD**

NAME: Price Larry    ID#: _____    DATE: 2/7/21    FACILITY: BC Pod

| DAY SHIFT | EVENING SHIFT | NIGHT SHIFT |
|---|---|---|
| ORAL INTAKE | ORAL INTAKE | ORAL INTAKE |
| Fluid amount:<br><br>1/2 Pint Chocolate Milk | Fluid amount:<br><br>8 oz<br><br>Cup water | Fluid amount:<br><br>8 oz Juice |
| Total: _____ | Total: _____ | Total: _____ |
| IV input: | IV input: | IV input: |
| Food amounts:<br>1 serving of Oatmeal<br>2 serving of Potatoes<br>4 slices of Bread<br>1 sausage patty | Food amounts:<br>ATE WHOLE TRAY | Food amounts:<br>Ate whole tray |
| Emesis/Vomiting:<br><br>n/a | Emesis/Vomiting:<br><br>N/A | Emesis/Vomiting:<br><br>N/A |
| Urine Output:<br><br>n/a | Urine Output:<br><br>N/A | Urine Output:<br><br>N/A |
| Total: _____ | Total: _____ | Total: _____ |
| Bowel Movements: | Bowel Movements: | Bowel Movements:<br>1 |
| Staff Signature/Time:<br>_____ 0654 | Staff Signature/Time:<br>_____ D16 | Staff Signature/Time:<br>_____ D16 |

**TURN KEY HEALTH**

REVISED 2-1-18

TKHC_0244

INPUT/OUTPUT RECORD

NAME: Price Larry   ID#: _____   DATE: 2/8/21   FACILITY: _____

| DAY SHIFT | EVENING SHIFT | NIGHT SHIFT |
|---|---|---|
| ORAL INTAKE | ORAL INTAKE | ORAL INTAKE |
| Fluid amount: 1 CUP OF JUICE (4OZ) | Fluid amount: 2 cup of Juice | Fluid amount: 2 cups of Juice |
| Total: _____ | Total: _____ | Total: _____ |
| IV input: | IV input: | IV input: |
| Food amounts: 1 serving of Oatmeal | Food amounts: whole tray | Food amounts: 2 food trays |
| Emesis/Vomiting: | Emesis/Vomiting: | Emesis/Vomiting: |
| Urine Output: | Urine Output: | Urine Output: |
| Total: _____ | Total: _____ | Total: _____ |
| Bowel Movements: | Bowel Movements: | Bowel Movements: |
| Staff Signature/Time: 0648 | Staff Signature/Time: 1137 | Staff Signature/Time: 1808 |

TURN KEY HEALTH

REVISED 2-1-18

**INPUT/OUTPUT RECORD**

NAME: Larry Price   ID#: ___   DATE: 2-9-21   FACILITY: SC ADC

| DAY SHIFT | EVENING SHIFT | NIGHT SHIFT |
|---|---|---|
| ORAL INTAKE | ORAL INTAKE | ORAL INTAKE |
| **Fluid amount:** <br> 1 cup Water | **Fluid amount:** <br> 1 cup water | **Fluid amount:** <br> 1 cup |
| Total: ___ | Total: ___ | Total: ___ |
| **IV input:** | **IV input:** | **IV input:** |
| **Food amounts:** <br> 1 tray | **Food amounts:** <br> 1 tray | **Food amounts:** <br> 1 tray |
| **Emesis/Vomiting:** | **Emesis/Vomiting:** | **Emesis/Vomiting:** |
| **Urine Output:** | **Urine Output:** | **Urine Output:** |
| Total: ___ | Total: ___ | Total: ___ |
| **Bowel Movements:** | **Bowel Movements:** | **Bowel Movements:** |
| **Staff Signature/Time:** <br> DSS Hernandez   0620 | **Staff Signature/Time:** 11:48 <br> D16 | **Staff Signature/Time:** 1730 <br> D16 |

**TURN KEY HEALTH**

REVISED 2-1-18

# Turn•Key
HEALTH

## INPUT/OUTPUT RECORD

NAME: _LARRY PRICE_   ID#: _____   DATE: _03/24/21_ FACILITY: _SCADC_

| DAY SHIFT | EVENING SHIFT | NIGHT SHIFT |
|---|---|---|
| ORAL INTAKE | ORAL INTAKE | ORAL INTAKE |
| **Fluid amount:** | **Fluid amount:**<br><br>1 TRAY<br>100% | **Fluid amount:**<br><br>1 TRAY<br>1 CUP<br>100% |
| Total: _____ | Total: _____ | Total: _____ |
| **IV input:** | **IV input:** | **IV input:** |
| **Food amounts:** | **Food amounts:** | **Food amounts:** |
| **Emesis/Vomiting:** | **Emesis/Vomiting:** | **Emesis/Vomiting:** |
| **Urine Output:** | **Urine Output:** | **Urine Output:** |
| Total: _____ | Total: _____ | Total: _____ |
| **Bowel Movements:** | **Bowel Movements:** | **Bowel Movements:** |
| **Staff Signature/Time:** | **Staff Signature/Time:** D40 11:10 | **Staff Signature/Time:** 1715 |

REVISED 12/16/20

TKHC_0247

## Turn+Key
HEALTH
### INPUT/OUTPUT RECORD

NAME: _LARRY PRICE_   ID#: _____   DATE: _3/25/21_  FACILITY: _SL ADC_

| DAY SHIFT | EVENING SHIFT | NIGHT SHIFT |
|---|---|---|
| ORAL INTAKE | ORAL INTAKE | ORAL INTAKE |
| Fluid amount: | Fluid amount: | Fluid amount: |
| Total: _____ | Total: _____ | Total: _____ |
| IV input: | IV input: | IV input: |
| Food amounts: 1 Tray | Food amounts: 1 TRAY | Food amounts: 1 tray |
| Emesis/Vomiting: | Emesis/Vomiting: | Emesis/Vomiting: |
| Urine Output: | Urine Output: | Urine Output: |
| Total: _100%_ | Total: _____ | Total: _100%_ |
| Bowel Movements: | Bowel Movements: | Bowel Movements: |
| Vix Weld  Staff Signature/Time: _072_ | BUNCH D4C  Staff Signature/Time: _1230_ | Hewing D35  Staff Signature/Time: _1750_ |

REVISED 12/16/20

## INPUT/OUTPUT RECORD

NAME: _PRICE LARRY_ ID#: DATE: _4/7/21_ FACILITY: _SCADC_

| DAY SHIFT | EVENING SHIFT | NIGHT SHIFT |
|---|---|---|
| ORAL INTAKE | ORAL INTAKE | ORAL INTAKE |
| **Fluid amount:** | **Fluid amount:**<br><br>1 TRAY | **Fluid amount:**<br><br>1 BAG DINNER |
| **Total:** _____ | **Total:** _100%_ | **Total:** _100%_ |
| **IV input:** | **IV input:** | **IV input:** |
| **Food amounts:** | **Food amounts:** | **Food amounts:** |
| **Emesis/Vomiting:** | **Emesis/Vomiting:** | **Emesis/Vomiting:** |
| **Urine Output:** | **Urine Output:** | **Urine Output:** |
| **Total:** _____ | **Total:** _____ | **Total:** _____ |
| **Bowel Movements:** | **Bowel Movements:** | **Bowel Movements:** |
| **Staff Signature/Time:** | **Staff Signature/Time:**<br>_McGinley_ 1150 | **Staff Signature/Time:**<br>_Toles Spellman_ 4:50 |

**TURN KEY HEALTH**

REVISED 2-1-18

## INPUT/OUTPUT RECORD

NAME: Price, Larry        ID#: _____        DATE: 4-7-21    FACILITY: BC 7

| DAY SHIFT | EVENING SHIFT | NIGHT SHIFT |
|---|---|---|
| ORAL INTAKE | ORAL INTAKE | ORAL INTAKE |
| Fluid amount: | Fluid amount:<br><br>2 cups | Fluid amount:<br><br>8 oz |
| Total: _____ | Total: 100% | Total: _____ |
| IV input: | IV input: | IV input: |
| Food amounts: | Food amounts:<br><br>2 TRAYS | Food amounts:<br><br>1 tray |
| Emesis/Vomiting: | Emesis/Vomiting: | Emesis/Vomiting: |
| Urine Output: | Urine Output:<br><br>\ | Urine Output: |
| Total: _____ | Total: 100% | Total: 100% |
| Bowel Movements: | Bowel Movements: | Bowel Movements: |
| Staff Signature/Time: | Staff Signature/Time: | Staff Signature/Time: 1800<br><br>035 |

TURN KEY HEALTH

REVISED 2-1-18

**INPUT/OUTPUT RECORD**

NAME: Price, Larry     ID#: _____     DATE: 4/18/4     FACILITY: SCADC

| DAY SHIFT | EVENING SHIFT | NIGHT SHIFT |
|---|---|---|
| ORAL INTAKE | ORAL INTAKE | ORAL INTAKE |
| Fluid amount: | Fluid amount:  8 oz | Fluid amount:  8 oz |
| Total: _____ | Total: 8 oz | Total: 0 8 |
| IV input: | IV input: | IV input: |
| Food amounts: | Food amounts:  TRAY | Food amounts:  1 tray |
| Emesis/Vomiting: | Emesis/Vomiting: | Emesis/Vomiting: |
| Urine Output: | Urine Output: | Urine Output: |
| Total: _____ | Total: 100% | Total: _____ |
| Bowel Movements: | Bowel Movements: | Bowel Movements: |
| Staff Signature/Time: | Staff Signature/Time: 1304 | Staff Signature/Time: 1745  D35 |

**TURN KEY HEALTH**

REVISED 2-1-18

TKHC_0251

**INPUT/OUTPUT RECORD**

NAME: *Price, Larry*   ID#:   DATE: 4-24-21 FACILITY: SCADC

| DAY SHIFT | EVENING SHIFT | NIGHT SHIFT |
|---|---|---|
| ORAL INTAKE | ORAL INTAKE | ORAL INTAKE |
| **Fluid amount:** 8 oz | **Fluid amount:** 8 oz | **Fluid amount:** 8 oz. |
| Total: _____ | Total: 0 oz | Total: 0 oz |
| **IV input:** | **IV input:** | **IV input:** |
| **Food amounts:** 1 Tray | **Food amounts:** 1 Tray | **Food amounts:** 1 tray |
| **Emesis/Vomiting:** | **Emesis/Vomiting:** | **Emesis/Vomiting:** |
| **Urine Output:** | **Urine Output:** | **Urine Output:** |
| Total: _____ | Total: 1000 | Total: 100 |
| **Bowel Movements:** | **Bowel Movements:** | **Bowel Movements:** |
| Hamilton Staff Signature/Time: 0-73 0640 | Staff Signature/Time: 057 | Staff Signature/Time: 1748 Lumjan Arung 035 |

TURN KEY HEALTH

REVISED 2-1-18

TKHC_0252

INPUT/OUTPUT RECORD

NAME: _Price, Leon_    ID#: _____    DATE: _4-25-2021_   FACILITY: _SCADC_

| DAY SHIFT | EVENING SHIFT | NIGHT SHIFT |
|---|---|---|
| ORAL INTAKE | ORAL INTAKE | ORAL INTAKE |
| Fluid amount:<br><br>8 oz | Fluid amount:<br><br>8 oz | Fluid amount:<br><br>8 oz |
| Total: _100%_ | Total: _0%_ | Total: _100%_ |
| IV input: | IV input: | IV input: |
| Food amounts:<br>1 Tray | Food amounts:<br>1 Tray | Food amounts:<br>1 tray |
| Emesis/Vomiting: | Emesis/Vomiting: | Emesis/Vomiting: |
| Urine Output: | Urine Output: | Urine Output: |
| Total: _100_ | Total: _100%_ | Total: _100%_ |
| Bowel Movements:<br><br>Hamilton D-73<br>Staff Signature/Time: _07:11_ | Bowel Movements:<br><br>_____ D40<br>Staff Signature/Time: _1157_ | Bowel Movements:<br><br>Staff Signature/Time: 1750<br>_____ 035 |

TURN KEY HEALTH

REVISED 2-1-18

INPUT/OUTPUT RECORD

NAME: Price, Larry   ID#:   DATE: 4/23/21   FACILITY: SCADC

| DAY SHIFT | EVENING SHIFT | NIGHT SHIFT |
|---|---|---|
| ORAL INTAKE | ORAL INTAKE | ORAL INTAKE |
| Fluid amount: | Fluid amount:  8 oz | Fluid amount:  8 oz |
| Total: _____ | Total: 0 % | Total: 0 % |
| IV input: | IV input: | IV input: |
| Food amounts: | Food amounts:  1 Tray | Food amounts:  1 tray |
| Emesis/Vomiting: | Emesis/Vomiting: | Emesis/Vomiting: |
| Urine Output: | Urine Output: | Urine Output: |
| Total: _____ | Total: 100 % | Total: 100 % |
| Bowel Movements: | Bowel Movements: | Bowel Movements: |
| Staff Signature/Time: | Staff Signature/Time: 1200 | Staff Signature/Time: 1750  035 |

TURN KEY HEALTH

REVISED 2-1-18

TKHC_0254

**INPUT/OUTPUT RECORD**

NAME: *Price, Larry*   ID#:            DATE: 4-26-21 FACILITY: BC7

| DAY SHIFT | EVENING SHIFT | NIGHT SHIFT |
|---|---|---|
| **ORAL INTAKE** | **ORAL INTAKE** | **ORAL INTAKE** |
| Fluid amount: | Fluid amount: 8 oz | Fluid amount: 8 oz |
| Total: _____ | Total: 0% | Total: 100% |
| IV input: | IV input: | IV input: |
| Food amounts: | Food amounts: 1 Tray | Food amounts: 1 tray |
| Emesis/Vomiting: | Emesis/Vomiting: | Emesis/Vomiting: |
| Urine Output: | Urine Output: | Urine Output: |
| Total: _____ | Total: 000% | Total: 100% |
| Bowel Movements: | Bowel Movements: | Bowel Movements: |
| Staff Signature/Time: | Staff Signature/Time: 1151 | Staff Signature/Time: 1736 *Lunjace Henning* D35 |

TURN KEY HEALTH

REVISED 2-1-18

<u>The Estate of Larry Eugene Price v. Turn Key Health Clinics, LLC, et al.</u>

Case No. 2:23-cv-02008-PKH

Exhibit Z

```
 1                   IN THE UNITED STATES DISTRICT COURT
                        WESTERN DISTRICT OF ARKANSAS
 2                            FORT SMITH DIVISION

 3      THE ESTATE OF LARRY EUGENE
        PRICE JR, by and through its Special
 4      Administrator, Rodney Price,                      PLAINTIFF

 5         vs.                          Case No:  2:23-cv-02008-PKH

 6      TURN KEY HEALTH CLINICS, LLC, et al,             DEFENDANTS

 7                          The Deposition of:

 8                       WILLIAM VINCENT WILLARD
                       being taken on August 28, 2023
 9                             @ 9:00 a.m.
                 at the Judge's Room, Courtyard Marriott Downtown,
10                900 Rogers Avenue, Fort Smith, Arkansas  72901

11      APPEARANCES:                              ON BEHALF OF:

12      MR. ERIK J. HEIPT                              PLAINTIFF
        MR. EDWIN S. BUDGE
13      MR. HANK BALSON (via Zoom)
        Budge & Heipt
14      808 East Roy Street
        Seattle, WA  98102
15

16      MR. ZACHARY WILLIAMS (via Zoom)               DEFENDANTS
        Hall Booth Smith, PC             Turn Key Health Clinics, LLC
17      6301 Waterford Blvd., Ste 200    Jawaun Lewis, D.O.
        Oklahoma City, OK  73118         Christeena Ferguson
18

19      MR. JASON OWENS                  Sebastian County, Arkansas
        Jason Owens Law Firm, P.A.
20      1312 W. Oak Street
        Conway, AR  72034
21

22      Other persons present:  Rodney Price

23                    RICK L. CONGDON, ARCCR #631
                       CERTIFIED COURT REPORTER
24                          P. O. Box 8493
                       Fort Smith, Arkansas 72902
25          email: rlcongdon@hotmail.com / cell phone: 479-652-0146
```

1          The deposition of William Vincent Willard was taken on

2     August 28, 2023, beginning at the hour of 9:00 a.m. at the

3     Judge's Room, Courtyard Marriott Downtown, 900 Rogers Avenue,

4     Fort Smith, Arkansas, before me, Rick L. Congdon, a Certified

5     Court Reporter, and for the cause now pending in the United

6     States District Court, Western District of Arkansas, Fort Smith

7     Division, said deposition was taken pursuant to Notice.

8

9                         I N D E X

10    WITNESS:                                                    PAGE

11        WILLIAM VINCENT WILLARD

12        Direct Examination by Mr. Heipt........................3

13    WITNESS CERTIFICATION..................................161

14    REPORTER'S CERTIFICATE................................163

15

16    EXHIBITS MARKED FOR IDENTIFICATION AND ATTACHED

17    Deposition Exhibit No.  1 - Jail Employee listing
      Deposition Exhibit No.  2 - Sebastian County Chain of Command
18    Deposition Exhibit No.  3 - Jail layout diagram
      Deposition Exhibit No.  4 - Control Room Log/Daily Shift Report
19    Deposition Exhibit No.  5 - Photograph array - ER
      Deposition Exhibit No.  6 - Photograph array - autopsy
20    Deposition Exhibit No.  7 - Photograph array - jail cell area
      Deposition Exhibit No.  8 - medical log
21    Deposition Exhibit No.  9 - input/output record
      Deposition Exhibit No. 10 - Personnel Training Listing
22    Deposition Exhibit No. 11 - New Hire 12 Day Training Checklist
      Deposition Exhibit No. 12 - Sebastian County Detention Center
23    Deposition Exhibit No. 13 - Sebastian County P&P Manual

24

25

```
 1                            ---o0o---

 2                AUGUST 28, 2023, 9:00 A.M.

 3                            ---o0o---

 4                WILLIAM VINCENT WILLARD,

 5    being first duly sworn, testified as follows:

 6                      DIRECT EXAMINATION

 7    BY MR. HEIPT:

 8    Q.   Good morning, Mr. Willard.  My name is Eric Heipt, and I

 9    represent the Estate of Larry Eugene Price, Jr.  With me here

10    today is my law partner, Edwin Budge, and my client, Rodney

11    Price, who is the brother of Larry Price.  Could you please

12    speak your full name for the record?

13    A.   My full name is William Vincent Willard.

14    Q.   And have you ever been questioned in a deposition before

15    today?

16    A.   No.

17         (Off the record briefly.)

18    Q.   You said you have not been questioned in a deposition

19    before today?

20    A.   No, sir.

21    Q.   Okay.  I'm going to be asking you some questions today and

22    the court reporter, Rick, is going to be transcribing my

23    questions and your answers, and one thing that's important is

24    that we don't talk at the same time; otherwise, it makes it

25    hard for the court reporter to get a clean transcript.  So
```

1  intake and output?

2  A.  I knew about the food log from our supervisors.

3  Q.  Okay.  As of January 28, 2021, had Sebastian County or the

4  Turn Key medical staff provided any training on how to manage

5  an inmate like Larry Price who wasn't eating and was noticeably

6  losing weight?

7       MR. WILLIAMS:  Object to form.

8  A.  I'm sorry.  Say that again.

9  Q.  As of January 28, 2021, had Sebastian County or the Turn

10  Key medical staff provided any training to you or other

11  deputies on how to manage an inmate like Larry Price who wasn't

12  eating and was noticeably losing weight?

13  A.  No.

14  Q.  Had either the county or Turn Key provided you with any

15  training on how to fill out input/output logs?

16  A.  No.  We just had a paper log with if he got better, yes or

17  no.

18  Q.  Okay.  But had you had any training on how to fill them

19  out?

20  A.  I mean, it seems self-explanatory, hand him a tray and

21  write down that he got a tray, the date and time.  It seems

22  self explanatory to fill out a piece of paper --

23  Q.  Okay.

24  A.  -- giving him --

25  Q.  You said -- sorry.  Go ahead.

<u>The Estate of Larry Eugene Price v. Turn Key Health Clinics, LLC, et al.</u>

Case No. 2:23-cv-02008-PKH

Exhibit AA

# In The Matter Of:

*The Estate of Larry Eugene Price, Jr., et al. v.*
*Turn Key Health Clinics, LLC, et al.*

---

*Dakota Shane Arnoldussen*
*August 30, 2023*

---

*Donald Court Reporting & Transcription, LLC*
*P.O. Box 1640*
*Springdale, AR 72765*
*(888) 438-7836*
*donaldcrt@gmail.com*

Original File ARNOLDNUSSEN.txt
i–U–Script® with Word In

Case 2:23-cv-02008-PKH   Document 31   Filed 01/16/24   Page 356 of 377 PageID #: 1464

The Estate of Larry Eugene Price, Jr., et al. v.                                    Dakota Shane Arnoldussen
Turn Key Health Clinics, LLC, et al.                                                            August 30, 2023

## Page 1

```
 1              UNITED STATES DISTRICT COURT
           FOR THE WESTERN DISTRICT OF ARKANSAS
 2                   FORT SMITH DIVISION

 3   THE ESTATE OF LARRY EUGENE   )   CASE NO. 2:23-cv-02008-PKH
     PRICE JR, by and through its )
 4   Special Administrator, Rodney )
     Price,                        )
 5                                 )
                  Plaintiff,       )
 6                                 )
     vs.                           )
 7                                 )
     TURN KEY HEALTH CLINICS, LLC, )
 8   et al.,                       )
                                   )
 9                Defendants.      )
     _____)
10

11

12

13          DEPOSITION OF DAKOTA SHANE ARNOLDUSSEN

14          Taken at the Courtyard by Marriott, 900 rogers

15   Avenue, Fort Smith, Arkansas 72901, on August 30, 2023, at 9:00

16   a.m.

17

18

19

20

21

22

23

24

25
```

## Page 2

```
                     APPEARANCES
 1
 2   MR. ERIK J. HEIPT                     FOR THE PLAINTIFFS
     MR. EDWIN S. BUDGE
 3   Budge and Heipt
     808 East Roy Street
 4   Seattle, Washington  98102
     (206) 624-3060
 5   erik@budgeandheipt.com
     ed@budgeandheipt.com
 6

 7   MR. ZACHARY WILLIAMS (By Zoom)       FOR THE DEFENDANTS
     Hall, Booth, Smith, PC               TURN KEY HEALTH CLINICS
 8   6301 Waterford Blvd., Suite 200      LLC, JAWAUN LEWIS, D.O.
     Oklahoma City, Oklahoma  73118       and CHRISTEENA FERGUSON
     (405) 513-7111
 9   zwilliams@hallboothsmith.com

10   MR. JASON E. OWENS                   FOR THE DEFENDANT
     Jason Owens Law Firm, P.A.           SEBASTIAN COUNTY,
11   P. O. Box 850                        ARKANSAS
     Conway, Arkansas  72033-0850
12   (501) 764-4334
     owens@jowenslawfirm.com
13

14   Also Present:  Mr. Rodney Price

15

16

17

18

19

20

21

22

23

24

25
```

## Page 3

```
                        I N D E X

TESTIMONY BY DAKOTA SHANE ARNOLDUSSEN              Page

      Direct Examination by Mr. Heipt ----------   4
      Cross-Examination by Mr. Williams -------   91
```

```
                     E X H I B I T S

Exhibit                                         Referenced
 1 (Employee Spreadsheet) ----------------------   9
 2 (Control Room Log/Daily Shift Report) -------  26
 3 (Booking Card) ------------------------------  27
 4 (Sebastian County Detention Center Policy
      and Procedure Manual) ------------------  29
 5 (Incident Report) ---------------------------  30
 6 (Photos) ------------------------------------  34
 7 (Photos) ------------------------------------  34
 8 (Medical Chart Notes) -----------------------  36
 9 (Input/Output Record) -----------------------  42
10 (Larry Price - Ryan Scherff Interview) ------  63
11 (Photos) ------------------------------------  80
```

## Page 4

DAKOTA SHANE ARNOLDUSSEN, having been called upon to testify in the form of a deposition and having been duly sworn, testified as follows, to wit:

### DIRECT EXAMINATION

BY MR. HEIPT:

Q.  Good morning, Mr. Arnoldussen.  My name is Erik Heipt, and I represent the family of Larry Eugene Price, Junior.  I'm here with my law partner, Ed Budge, and our client, Rodney Price, who's the brother of Larry Price.

Could you please state your full name for the record.

A.  Dakota Shane Arnoldussen.

Q.  Have you ever been questioned in a deposition before today?

A.  Never.

Q.  Okay.  I'm going to be asking you some questions, and the court reporter is going to be transcribing my questions and your answers, so it's important that we don't talk at the same time.  So I'm going to do my best to let you finish your answer before I ask my next question, and I'm going to ask that you try to do your best to wait for me to answer my question before answering so that she can get a clean transcript.

A.  Okay.

Q.  Also, in normal conversations it's common for people to answer nonverbally, like "uh-huh" or "uh-uh," or to nod or shake their head.  And that doesn't help us learn what the answer was when you're reading a transcript.  So try your best to answer audibly

Case 2:23-cv-02008-PKH   Document 31   Filed 01/16/24   Page 357 of 377 PageID #: 1465
The Estate of Larry Eugene Price, Jr., et al. v.
Turn Key Health Clinics, LLC, et al.
Dakota Shane Arnoldussen
August 30, 2023

Page 41

1  A.  I don't know what they do with it after we take it, but, yes,
2  it is supposed to be taken to medical.
3  Q.  Okay.  And you understood that the purpose of the food log is
4  to input information for the benefit of medical so that they could
5  interpret it; correct?
6  A.  I would say that's a fair accusation, yes.
7  Q.  In other words, they could look at it and decide, Is this -- Is
8  this a medical problem or not.  You guys were just inputting the
9  information; correct?
10  A.  Right.  Yeah, the only thing we would put in is, you know, if
11  they ate or if they drank, if we happened to see it, so...
12  Q.  Okay.  As of January 28th, 2021, had Sebastian County or the
13  Turn Key medical staff provided any training on how to manage an
14  inmate, like Larry Price, who wasn't eating and was noticeably
15  losing weight?
16  A.  I don't recall, but I'm sure there was probably some sort of
17  training on it.  I mean, with your new hire paperwork, you go over
18  situations like that.
19  Q.  I mean, I've looked through all the new hire paperwork and
20  haven't seen anything like that, and others have said that they
21  didn't get any such training, so are you saying for certain there's
22  such training?
23  A.  No.
24  Q.  Okay.
25          MR. OWENS: Object to form.

Page 42

1          MR. WILLIAMS: Object to form.
2  Q.  (Mr. Heipt continued.)  Had either -- have either -- have
3  either the county or Turn Key provided you any training on how to
4  fill out the input/output logs?
5  A.  Such as the food log?
6  Q.  Yes, sir.
7  A.  Is that what you're referring to?  No.  The only way that I
8  knew how to fill it out was I had to consult with a supervisor on
9  what exactly to put.
10  Q.  Okay.  But there wasn't a Turn Key nurse that held a class for
11  everyone and said, "This is how you do it."  "It's important to do
12  it this way."  "This is how long you do it."  "This is how often you
13  do it."  Demonstrate it, that type of thing?  There was no Turn Key
14  guidance, instruction, or training that you can remember.
15  A.  Not that I recall.
16  Q.  Okay.  Do you recall filling out some input/output logs in
17  early 2021 for Larry Price?
18  A.  I don't recall, but I'm sure I probably did at some point.
19  Q.  Okay.  All right.  Do you have Exhibit 9 in front of you?
20          (Wherein Exhibit 9 was marked.)
21  A.  I do.
22  Q.  And do you recognize these documents?  Or at least the form of
23  these documents.
24  A.  I do.
25  Q.  And is that the paperwork or the form for the input/output

Page 43

1  record that we've been kind of discussing, the food log?
2  A.  Yes.
3  Q.  All right.  Do you -- well, let me ask you this.
4  I already asked you if you remembered filling any out, and you
5  weren't sure.  Did you fill out the very first one?
6  A.  I did.
7  Q.  Okay.  And that one is dated January 29th, 2021; correct?
8  A.  Correct.
9  Q.  And that's your handwriting on the first one on the left --
10  A.  Yes.
11  Q.  -- for the dayshift --
12  A.  Yes, sir.
13  Q.  And those are your initials and your deputy number, D18?
14  A.  Yes.
15  Q.  Have you ever filled out an input/output form before?
16  A.  I'm sure I probably did.
17  Q.  Do you have any specific recollection of doing one?
18  A.  I don't.  It was very seldom we ever did these.
19  Q.  And did -- did you say it was your supervisor who told you how
20  to fill it out?
21  A.  Yes.
22  Q.  What supervisor was that?
23  A.  It was either Sergeant Moore or whatever corporal I had at the
24  time.  I've had a bunch.
25  Q.  Massey?

Page 44

1  A.  It -- no, because -- it may have been Corporal Jacob Brown.
2  Q.  Okay.
3  A.  Because I know early on in my career at the jail, I know there
4  was -- had to have been at least one other inmate who had one of
5  these input/output logs.
6  Q.  Uh-huh.  All right.  Where did you get the form?
7  A.  These are kept in the file cabinet up front.
8  Q.  Were you the one that retrieved it from the file cabinet, or
9  did someone give it to you at the shift meeting?
10  A.  So typically if he was in, like, BC pod, for instance, we would
11  take one, make like 20 copies, and set them inside of the pod.  So
12  it was -- I don't recall if I got it from up front or if it was
13  actually in the pod.
14  Q.  Okay.  Given that you were the first one that filled out the
15  first entry, was it probably you that gathered the forms?
16  A.  Yes.
17          MR. OWENS: Object to form.
18  Q.  (Mr. Heipt continued.)  Okay.  Did anyone tell you why this was
19  being done for Larry Price?
20  A.  I'm sure they probably did.  I don't recall.
21  Q.  You saw the nursing notes earlier about how he wasn't eating
22  and was noticeably thinner?
23  A.  I did.
24  Q.  And you saw that he was weighed and obviously had lost a lot of
25  weight, so, I mean, was your understanding at the time that it was

<u>The Estate of Larry Eugene Price v. Turn Key Health Clinics, LLC, et al.</u>

Case No. 2:23-cv-02008-PKH

Exhibit BB

# RELEASE / TRANSFER CHECK SHEET

Date/Time of Verification: 4-24-23

Inmate Name: ███████████  Inmate DOB: ███████

NA NCIC Verified  I/M has Warrants: Yes or No  I/M has Holds: Yes or No

NA Computer Verified City Warrants: Yes or No  County: Yes or No

NA Bond Conditions are signed, copy in file.

JA All papers in file checked and matched Court records in computer and

JUSTWARE authorized release. Release/Transfer

JA Inmate is out of __Continue of Booking.__

Remarks: _Deceased_

NA Verifier checks confirmed

JA Inmate finger printed Tracking # _Was not Printed_ in the computer.

NA DNA done if required

JA Identity verified by picture, questioning of SSN, Birthday, etc...
and armband is attached in file

JA Bond Conditions are signed, copy in file.

JA Property, Meds & Money verified and signed out

JA Bonds correct, copy in file and original dropped

Release Deputy Signature: _____

Date/Time of Release: 4-24-23 0400

How released: (list for each charge) _Deceased_

The Estate of Larry Eugene Price v. Turn Key Health Clinics, LLC, et al.


Case No. 2:23-cv-02008-PKH


Exhibit CC

Printed Inmate Name: _____      Date: _____

# Turn+Key
## HEALTH

## Intake Medical Questions

| | |
|---|---|
| Was medical treatment given upon arrest? | YES or NO |
| Allergies to medication or food? | YES or NO |
| If yes, what? _____ | |
| Diabetes? | YES or NO |
| If yes, are you insulin dependent? | YES or NO |
| Seizures? | YES or NO |
| If yes, when was the last one? | |

_____

| | |
|---|---|
| Heart Problems? | YES or NO |
| If yes, what problems? _C H 7 , D i F i b u / a t o r_ | |
| Suicidal/Homicidal? | YES or NO |
| Do you take any medication? | YES or NO |
| Are you Pregnant? | YES or NO |
| If yes, how many months are you? _____ | |
| Asthma? | YES or NO |
| Hepatitis or Liver Problems? | YES or NO |
| HIV or STDs? | YES or NO |
| Mental Health Issues? | YES or NO |
| If yes, what conditions? _____ | |
| Have you ever been positive for TB? | YES or NO |
| If yes, where were you treated? _____ | |
| Staph Infection? | YES or NO |
| Are you under the influence of alcohol or any controlled substance? | YES or NO |
| If brought with you, have they been placed in the medical box? | YES or NO |
| Any Chance in Detox occurring? | YES or NO |
| Any additional medical information/concerns/questions you need to let anyone know? | YES or NO |

If yes, what are they? _HAVE DiFibulator, Have no Feeling
in my Feet or legs hard to walk_

<u>The Estate of Larry Eugene Price v. Turn Key Health Clinics, LLC, et al.</u>

Case No. 2:23-cv-02008-PKH

Exhibit DD

**From:** Ebony Gaines
**Sent:** Wed, 18 Aug 2021 20:24:43
**To:** Morgan Matlock ASH Forensics MailAccount Debora Inman Stephanie Vondran
**Subject:** sensitive RE: Inmate
**Importance:** Normal
**Sensitivity:** None

Please see below and advise Ms. Matlock as we are currently full.

**From:** Morgan Matlock <mmatlock@turnkeyhealthclinics.com>
**Sent:** Wednesday, August 18, 2021 3:08 PM
**To:** ASH Forensics MailAccount <ash.forensics@dhs.arkansas.gov>; Ebony Gaines <ebony.gaines@dhs.arkansas.gov>
**Subject:** Inmate

[EXTERNAL SENDER]
Good afternoon,

I am writing in regards to an inmate that we are currently holding at Sebastian County Detention Center for the Arkansas State Hospital. It is my understanding that he does not currently have charges, he is only here for the State hold.

Mr. J▓▓ E▓▓ is the inmate, DOB ▓▓▓▓▓. I am very concerned about Mr. ▓▓▓'s health and wellbeing. He is becoming very frail and now has a BMI of 16, which is severely underweight for his stature. We are attempting double portions with additional protein and food logs, as well as moving him to a separate area to have his meals, so he is not at risk for other inmates taking his food. He has also been falling frequently. I am aware of his medications, which could potentially be a part of the issue, but he is also very weak. I am concerned he may fall again, resulting in a fractured hip or other major injury.

With that being said, I would like to know if it would be possible to fast track him to the State Hospital, where he would most likely do much better than he is currently in the detention center environment.

If you could please respond at your earliest convenience, I would greatly appreciate it. If you need any additional information from me, please do not hesitate to ask.

Thank you!

**Morgan Matlock, BSN, RN**
**Health Services Administrator**
**Turn Key Health Clinics**
**Sebastian County Adult Detention Center**
**801 South A Street**
**Fort Smith, AR 72901**
**Office: 479-783-4988 EXT 2780**
**Fax: 479-782-1364**

**The Arkansas Department of Human Services has determined that this message may contain confidential or otherwise protected information. We have used transport encryption to help protect this message while in transit to you. Please take all reasonable measures to protect any protected or confidential data that might be in this message, including the limitation of re-disclosure to the minimum number of recipients necessary. Please report any inappropriate disclosure to** https://dhs.arkansas.gov/ost/contactforms/ContactUs.aspx **or as required by law.**

<u>The Estate of Larry Eugene Price v. Turn Key Health Clinics, LLC, et al.</u>

Case No. 2:23-cv-02008-PKH

Exhibit EE

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

THE ESTATE OF LARRY EUGENE
PRICE JR, by and through its Special
Administrator, Rodney Price,                   PLAINTIFF

    vs.                        Case No:  2:23-cv-02008-PKH

TURN KEY HEALTH CLINICS, LLC, et al,           DEFENDANTS

The Deposition of:

SERGEANT EDWARD SMITH
being taken on September 28, 2023
@ 9:07 a.m.
at the Judge's Room, Courtyard Marriott Downtown,
900 Rogers Avenue, Fort Smith, Arkansas 72901

APPEARANCES:                                ON BEHALF OF:

MR. ERIK J. HEIPT                              PLAINTIFF
MR. HANK BALSON
Budge & Heipt
808 East Roy Street
Seattle, WA 98102

MR. JACKSON WILLIAMS (via Zoom)               DEFENDANTS
Hall Booth Smith, PC        Turn Key Health Clinics, LLC
6301 Waterford Blvd., Ste 200   Jawaun Lewis, D.O.
Oklahoma City, OK 73118     Christeena Ferguson

MR. JASON OWENS             Sebastian County, Arkansas
Jason Owens Law Firm, P.A.
1312 W. Oak Street
Conway, AR 72034

Other persons present:  Rodney Price

RICK L. CONGDON, ARCCR #631
CERTIFIED COURT REPORTER
P. O. Box 8493
Fort Smith, Arkansas 72902
email:  rlcongdon@hotmail.com / cell phone:  479-652-0146

---

The deposition of Sergeant Edward Smith was taken on
September 27, 2023, beginning at the hour of 9:07 a.m. at the
Judge's Room, Courtyard Marriott Downtown, 900 Rogers Avenue,
Fort Smith, Arkansas, before me, Rick L. Congdon, a Certified
Court Reporter, and for the cause now pending in the United
States District Court, Western District of Arkansas, Fort Smith
Division, said deposition was taken pursuant to Notice.

I N D E X

WITNESS:                                    PAGE

    Sergeant Edward Smith

    Direct Examination by Mr. Balson.....................3

    Cross Examination by Mr. Williams...................56

WITNESS CERTIFICATION....................................58

REPORTER'S CERTIFICATE...................................60

EXHIBITS MARKED FOR IDENTIFICATION AND ATTACHED

Deposition Exhibit No. 1 -  Turn Key Medical Chart Notes

Deposition Exhibit No. 2 -  General Patient Chart Nurse

Deposition Exhibit No. 3 -  Photographic Array - Hospital

Deposition Exhibit No. 4 -  Photographic Array - Autopsy

Deposition Exhibit No. 5 -  Responses to Interrogatories

---

3

—o0o—

SEPTEMBER 28, 2023, 9:07 A.M.

—o0o—

SERGEANT EDWARD SMITH,

being first duly sworn, testified as follows:

DIRECT EXAMINATION

BY MR. BALSON:

Q.  Good morning, Sergeant Smith. Thank you for coming in this
morning.  I introduced myself earlier, but my name is Hank
Balson. I'm one of the lawyers who's representing the estate
of Larry Price in this case.  Also with me is my co-counsel,
Erik Heipt, and also the personal representative of Larry's
estate, Rodney Price, who is Larry's brother.

    Have you ever had your deposition taken before?

A.  Once.

Q.  Okay.  How long ago was that?

A.  Say it's, I guess, Correct Solution.

Q.  Awhile ago?

A.  Yeah, it's been awhile.

Q.  Okay.  Do you remember what that case was about ?

A.  They were – was our tablet company was suing, I guess, the
phone company because the phone company brought them in ,
tablets weren't working like they supposed to be doing, weren't
giving us what we wanted , so we wanted to end the contract with
them because they weren't fulfilling it.

---

4

Q.  Yeah.  Okay.  I think now that you describe it, I think
Lieutenant McIntyre talked about the same case when he was
here.  So, since it's been awhile, I'll just review some of the
things to keep in mind in this proceeding.  As you know,
there's a court reporter here who's taking down all of my
questions, all of your answers and afterwards he'll create a
word-for-word transcript.  So, usually in casual conversation
we might do things like answer uh-huhor nod our head, but
that's hard to capture on the transcript, so if you can
remember to answer with yes or no, that's helpful.

A.  Okay.

Q.  Also it's pretty common – and this will probably happen.
You know, if we're talking and you sort of see where I'm going
with the question, it might be a tendency to start answering
before I finish.  And same with me, if I kind of see where your
answer's going, I might start with the next question, but
that's hard for the court reporter if we're talking over each
other, so as best we can, if we can let each other finish
before we start speaking.  Okay?

A.  Okay.  I'm a little bit hard of hearing, too, so –

Q.  Oh, okay.  If – I am, too, but you're facing my good ear
so I'm okay.  But if you ever have trouble hearing, please let
me know and I'll speak up.

A.  Okay.

Q.  Also, if I ever ask a question that seems like it could

**41**

2 problems with their Bluebirds or Guardians, I will go look at
3 'em and log my number in. If they have problems scanning. I'll
4 try to scan it and see if it works on mine and see if we can't
5 fix that problem.
6 Q. So, do you have your own Bluebird scanning device?
7 A. I did. I don't know if I have it anymore.
8 Q. What did you use your Bluebird for typically?
9 A. It was just more or less a spare one. In case one broke,
10 we could use it or I could use it to check tags to make sure
11 they were working.
12 Q. So, if you were doing a cell check, it was generally for
13 trouble shooting purposes?
14 A. Yes, sir.
15 Q. Cell checks were not a part of your regular
16 responsibilities as Director of Inmate Management?
17 A. No.
18 Q. Do you remember doing these cell checks on Larry Price?
19 A. No, sir.
20 Q. Whether or not you remember the specific cell check or
21 Larry Price, what's the procedure that you follow now under the
22 new system? With the technology, what's the procedure that you
23 follow when you do a cell check?
24 A. You're supposed to scan the tags and walk through and look
25 in the cells and make sure everything is okay and go to the
   next tag and scan it. And I think there's six tags inside

**42**

1 the -- or seven tags inside the pod.
2 Q. Seven tags for --
3 A. You have --
4 Q. -- how many cells?
5 A. For 24 cells.
6 Q. So, each tag represents roughly four -- three or four
7 cells?
8 A. It's, like, you have the one in the seg area and one at the
9 front door, then you have one right around the corner when you
10 come into the general pod, then you have one in the shower
11 area. You have one over here underneath the stairs, then one
12 upstairs, and one over in the shower again, and one on this end
13 again.
14 Q. And is the practice to scan the tag as you approach the
15 cells related to that tag or to scan it after you've already
16 looked in those cells?
17 A. You come around the corner, you'll scan that tag. Then you
18 should go down -- walk down, check on the cells, then go in the
19 shower area, scan that tag, look in the shower area, come back,
20 look in these cells, scan that tag, go upstairs, scan that tag,
21 look in those cells, go in the shower area, check that, scan
22 it, check the cells back down here and scan that tag, and then
23 go back downstairs on that one.
24 Q. So, if I'm understanding you correctly, it sounds like as
25 you approach a set of cells you scan the tag and then you look

**43**

1 in the cells?
2 A. Yeah.
3 Q. And when you scan the tag, what does that do?
4 A. It logs it in the system.
5 Q. Okay. And it logs that you went to those cells?
6 A. Yes.
7 Q. Does it automatically -- it looks like most or all of the
8 entries here, the documentation is "well-being check, inmate in
9 cell okay." Does it automatically put that entry or does the
10 officer have to choose what it should say?
11 A. Not for sure. I think they have to choose it.
12 Q. Are there any options other than inmate and cell okay?
13 A. Yes.
14 Q. What are they?
15 A. I'm not for sure. I want to say I sent that or is one of
16 the dispositions. [sic]
17 Q. I'm sorry?
18 A. It was on one of the disposition [sic] questions you --
19 Q. Oh, okay.
20 A. And I don't remember what it says.
21 Q. All right. No problem.
22     When you are doing a cell check and you look inside
23 somebody's cell, you're looking to make sure the person's
24 there?
25 A. Alive and well.

**44**

1 Q. So, you're making sure the person's there, that you see
2 signs of life. Is there anything else specific you're looking
3 for?
4 A. No.
5 Q. So, when you perform this check, even though you're doing
6 it for trouble-shooting purposes, did you follow the regular
7 practice or procedure for performing cell checks?
8 A. I don't remember.
9 Q. Okay.
10     (Off the record briefly.)
11 BY MR. BALSON:
12 Q. All right. You're done with that.
13 Q. Do you remember a man named ████████ who was housed
14 in the cell next to Larry Price?
15 A. Yes, sir.
16 Q. Was -- if you remember, was he housed in the neighboring
17 cell to Larry Price for more than a couple weeks?
18 A. I'm not for sure.
19 Q. What do you remember about ████████ or how do you
20 recognize his name?
21 A. He was one of our regulars and he came in all the time.
22 Since I was working there, he would come in.
23 Q. If you know, did he also suffer from serious mental
24 illness?
25 A. Believe so.

**45**

2  Q. Were you ever involved in any efforts to get him out of the
3  jail?
4  A. Yes. Furlough, yeah.
5  Q. Can you describe how that worked?
6  A. I believe the nurse sent me a message and we got him -- I
7  don't know -- got him sent somewhere, I'm not sure where, and
8  got him some treatment. Might have been St. Vincent's. Got
9  him treatment and then he came back and took care of his court
10  stuff and...
11  Q. Roughly how long was he out for?
12  A. I'm going to say maybe a month.
13  Q. And did this happen before or after Larry died?
14  A. After.
15  Q. Do you know whether or not Larry's death sort of prompted
16  the efforts to get ▓▓▓▓ out?
17  A. I'm not sure.
18  Q. You mentioned St. Vincent's. Is that it?
19  A. Yes, sir.
20  Q. What is St. Vincent's?
21  A. It's a hospital in Little Rock that has a mental health
22  facility.
23  Q. Is it a general hospital that has a mental health ward or
24  is it --
25  A. Yes.
26  Q. Okay. Did you ever consider Mr. Price for early release or

**46**

1  a mental health furlough?
2  A. No.
3  Q. How come?
4  A. I mean, I've never got any information from medical saying
5  that he needed one, and... the early release, the judges and
6  them, because there's a victim involved...
7  Q. Who was the victim in his case?
8  A. I mean, just by the charges, that means there's a victim
9  usually.
10  Q. The terroristic threatening charge?
11  A. Right.
12  Q. At the time when you -- and you may have already answered
13  this. I apologize.
14  When you saw him on the list and you saw the terroristic
15  threatening charge, did you know any details about the facts of
16  his arrest?
17  A. No.
18  Q. If you did, is that a situation that you might have
19  considered talking to the judge and the prosecutor that, yes,
20  even though the charge is about a felony, this is what's really
21  going on?
22  A. I probably would have talked to his public defender and see
23  what they could do, if they could get with the prosecutor and
24  see what they could do and...
25  Q. In your experience, was the judge and the prosecutor

**47**

1  generally receptive to considering special circumstances?
2  A. Yes.
3  Q. And is that because everybody has the goal of reducing the
4  jail population?
5  A. Probably,
6      MR. OWENS: Object to form.
7  BY MR. BALSON:
8  Q. If -- you mentioned that none of the nurses had ever come
9  to you requesting that you look into a furlough for Mr. Price.
10  Did the jail staff ever come to you to discuss a possible
11  furlough for someone?
12  A. No.
13  Q. It always came from the nurses?
14  A. Well, I mean, if some -- I will get calls from family
15  members sometimes, and then I will check on it with a nurse and
16  get them to check and see and then if they believe he needs it,
17  we'll go that way. And I'll have them send me on email telling
18  me what the causes are and why we need to do a furlough.
19  Q. If a Turn Key nurse had sent you an email saying that we
20  have this man, Larry Price, at the jail, he is severely
21  mentally ill  he's not taking his medications, he's losing
22  weight, he's acting out, he needs more -- he needs more care,
23  would you have tried to get a mental health furlough for him?
24  A. Yes, sir.
25      MR. OWENS: Object to form.

**48**

1  BY MR. BALSON:
2  Q. Based on your experience with the judges and the
3  prosecutor, do you have any reason to believe that they would
4  have rejected your request?
5  A. No, sir.
6      MR. OWENS: Object to form.
7  BY MR. BALSON:
8  Q. Do you think it's more likely than not that they would have
9  approved it?
10  A. Yes.
11      MR. OWENS: Object to form.
12  BY MR. BALSON:
13  Q. When you were a deputy or a shift corporal, did you ever
14  receive any training on what signs or symptoms to watch for to
15  tell if somebody in segregation might be deteriorating in terms
16  of their mental health?
17  A. No.
18  Q. As far as you know, does the jail provide that kind of
19  training to anybody?
20  A. I don't -- don't know, but I don't think so.
21  Q. When you were a deputy or shift sergeant, did you ever
22  receive any sort of training on the signs and symptoms to watch
23  for to tell if somebody in segregation was deteriorating in
24  terms of their physical health?
25  A. No.

<u>The Estate of Larry Eugene Price v. Turn Key Health Clinics, LLC, et al.</u>

Case No. 2:23-cv-02008-PKH

Exhibit FF



## TURN KEY HEALTH

## INCIDENT/ UNUSUAL OCCURRENCE REPORT

FACILITY: SCADC

DATE OF INCIDENT: 9/9/20   TIME OF INCIDENT: Apx 0650 REPORTING STAFF: Misty Williams

PATIENT NAME: Larry Price   ID#   DOB: 4/27/70

STAFF INVOLVED: Misty Williams, LPN

WITNESSES: Deputy Prater

LOCATION: BG POD

DESCRIBE IN DETAIL INCIDENT: (INCLUDE WHO, WHEN, HOW, WHY):

**Access:** This note is for Medical Staff only
**Note:** This nurse and BC deputy went to Pt's cell to administer am meds. Pt was sitting on the side of his bunk and yelled to this nurse "bring me my meds." Nurse advised that I could not bring his meds into his cell. Deputy then told Pt to come to his door to get his meds. Pt came to door and started speaking unintelligably. Deputy called for control to close Pt's door. Pt stuck his hand out as the door was closing and stated "Give me my damn meds." This nurse went to pour Pt's meds into his hand when Pt grabbed this nurses arm and attempted to pull nurse into his cell while stating "Larry Price JR is gonna kill you bitch." this nurse pulled away as the Pt released this nurses arm and the door closed.

Misty Williams, LPN

STAFF REPORTING SIGNATURE

DATE/TIME SUBMITTED TO SUPERVISOR

SUPERVISOR'S COMMENTS AND ACTION TAKEN:

SUPERVISOR'S SIGNATURE   DATE

FAX COMPLETED FORM TO 405-563-9121.   DO NOT FILE IN PATIENT CHART !

CONFIDENTIAL - Produced Pursuant to Protective Order          TKHC0257

<u>The Estate of Larry Eugene Price v. Turn Key Health Clinics, LLC, et al.</u>

Case No. 2:23-cv-02008-PKH

Exhibit GG

**Page 1**

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

THE ESTATE OF LARRY EUGENE
PRICE JR, by and through its Special
Administrator, Rodney Price,                    PLAINTIFF

vs.                                Case No.  2:23-cv-02008-PKH

TURN KEY HEALTH CLINICS, LLC, et al,            DEFENDANTS

The Deposition of:

TYLER CAVES
being taken on September 26, 2023
@ 9:00 a.m.
at the Judge's Room, Courtyard Marriott Downtown,
900 Rogers Avenue, Fort Smith, Arkansas 72901

APPEARANCES:                          ON BEHALF OF:

MR. ERIK J. HEIPT                     PLAINTIFF
MR. EDWIN S. BUDGE
MR. HANK BALSON (via Zoom)
Budge & Heipt
808 East Roy Street
Seattle, WA  98122

MS. ALEXANDRA G. AH LOY
MR. ZACHARY WILLIAMS               DEFENDANTS
Hall Booth Smith, PC                  Turn Key Health Clinics, LLC
6301 Waterford Blvd., Ste 230         Jameson Lewis, D.O.
Oklahoma City, OK  73118             Christeena Ferguson

MR. JASON OWENS                       Sebastian County, Arkansas
Jason Owens Law Firm, P.A.
1312 W. Oak Street
Conway, AR  72034

Other persons present:  Rodney Price

RICK L. CONGDON, ARCCR #631
CERTIFIED COURT REPORTER
P. O. Box 8493
Fort Smith, Arkansas 72902
email: rlcongdon@hotmail.com / cell phone: 479-652-0146

**Page 2**

The deposition of Tyler Caves was taken on September 26,
2023, beginning at the hour of 9:00 a.m. at the Judge's Room,
Courtyard Marriott Downtown, 900 Rogers Avenue, Fort Smith,
Arkansas, before me, Rick L. Congdon, a Certified Court
Reporter, and for the cause now pending in the United States
District Court, Western District of Arkansas, Fort Smith
Division, said deposition was taken pursuant to Notice.

INDEX

WITNESS:                                              PAGE

TYLER CAVES

   Direct Examination by Mr. Balson......................3

WITNESS CERTIFICATION......................................91

REPORTER'S CERTIFICATE.....................................93

EXHIBITS MARKED FOR IDENTIFICATION AND ATTACHED

Deposition Exhibit No.  1 - Order and Memorandum 10-16-2020
Deposition Exhibit No.  2 - Order and Memorandum 01-7-2021
Deposition Exhibit No.  3 - Cor medical record

**Page 3**

—o0o—
SEPTEMBER 26, 2023, 9:00 A.M.
—o0o—
TYLER CAVES,
being first duly sworn, testified as follows:
DIRECT EXAMINATION
BY MR. BALSON:

Q. Good morning.

A. Good morning.

Q. Mr. Caves, I just introduced myself. My name is Hank
Balson. I'm here with my co-counsel, Erik Heipt, and our
client, Rodney Price, who is Larry Price's brother, and we
represent the estate of Larry Price.

A. Got you.

Q. Do you remember Larry Price or hearing about his death?

A. Yes, I remember.

Q. Can you tell me what you remember about him?

A. What I remember about Larry is I had a few interactions
with him while at the Guidance Center in the office and at the
jail. You know, from just what I remember is at the time, you
know, Larry had issues with mental health, I believe
schizophrenia, would sometimes come in just randomly, just
wanting things, sometimes would ramble about certain things.
And then, you know, would then just leave and go wherever he
was going.

**Page 4**

At the jail my interactions with him were, you know, few
and far between, but it was more of just he — you know, when
he would talk, he would just ramble a bunch of things and then
just get up and leave or not really do much with — you know,
as far as conversation-wise with us, just demand a few things
and then go.

Q. Do you remember hearing about Larry's death?

A. I remember hearing about it, yes.

Q. So, you probably heard that Larry died at the jail and
ultimately it was found that he died from malnutrition and
dehydration. Did you hear about that?

A. I heard it when it started coming out in the news, yes.

Q. Okay. So you may be wondering why I asked to talk to you
today and the reason I wanted to talk with you is because one
of the defendants in the case is Turn Key Health Clinics, and
Turn Key has denied that they're responsible for Larry Price's
death and they have been pointing to the Guidance Center as
being the agency responsible for mental health crisis
management and health assessments, that sort of thing.

   So I was hoping you could help me understand better about
the Guidance Center's role at the jail and who is responsible
for what.

A. Okay.

       MS. AH LOY:  Object to the narrative.

Q. Does — have you ever had your deposition taken before?

1  patients if they indicate to you they don't want your services,

2  right?

3  A.  Right.

4  Q.  If a patient refuses to see you, would that be communicated

5  to you by the medical deputy?

6  A.  Yes.  Yeah, they would if they were on my list to be seen

7  that day and they didn't come.

8  Q.  And I imagine that probably happened with some frequency at

9  the jail, is that fair?

10  A.  Right.

11  Q.  And that's a part of the patient autonomy that we talked

12  about earlier, right?

13  A.  Right.

14  Q.  If a patient refuses to see you, would you agree that

15  there's no ongoing duty of care to continue to try to see that

16  patient?

17      MR. BALSON:  Objection, foundation.

18  A.  I would agree to that unless, you know, I was made aware

19  they were, like, not in their right state of mind, then I

20  would, you know, see what we could do.

21  Q.  So, would you agree that no further duty of care exists

22  until if and when there is a new request for you to see that

23  patient?

24  A.  Right.

25      MR. BALSON:  Objection, calls for a legal conclusion.

1  Q.  And that's appropriate within the standard of care to wait

2  until you receive a new request for services, right?

3  A.  I can only know what's going on if I've been made a request

4  of to see them.

5  Q.  Were you aware that Dr. Lewis did prescribe psychiatric

6  medications to Mr. Price?

7  A.  I believe I saw somewhere he had prescribed meds.

8  Q.  You did not have an opportunity to assess Mr. Price after

9  he started taking those medications, fair statement?

10  A.  Right, yeah.  No one had alerted me to assess him or see

11  how things were going.

12  Q.  Were you aware that Mr. Price attempted to kill a nurse in

13  the jail who was passing medications to him?

14      MR. BALSON:  Objection, misstates evidence.

15      MS. AH LOY:  It does not.

16  Q.  Were you aware of that?

17  A.  Was not made aware of that.

18  Q.  Were you aware that Mr. Price tried to pull a nurse into

19  his cell when she was passing medications to him?

20  A.  I was not made aware.

21  Q.  Were you aware that while Mr. Price was attempting to pull

22  the nurse into his cell he stated to her, "Larry Price, Jr. is

23  going to kill you, bitch"?

24  A.  I've never heard anything.

25  Q.  You were never notified of his attempt to attack the nurse

1  in the jail?

2  A.  Not that I can recall, no.

3  Q.  Were you aware that after Mr. Price attacked the nurse

4  detention staff began passing medications to him for security

5  purposes?

6  A.  Was not made aware.

7  Q.  You have no criticisms of the jail for taking those

8  measures to prevent another nurse from being attacked by

9  Mr. Price, do you?

10  A.  Think if they were going to to protect the nurse, then, you

11  know, but I assume, you know, the nurse was in the area with

12  the med cart or meds.

13  Q.  Do you know that to be the fact?

14  A.  No.

15  Q.  I've got no further questions.

16      RECROSS EXAMINATION

17  BY MR. OWENS:

18  Q.  What would you do in the context of involuntary commitment

19  if a person was not incarcerated?

20  A.  So, if they're not in the jail?

21  Q.  Sure.

22  A.  So, we get those petitions from the courts that this person

23  lives at this address and needs — like, they're a danger

24  because — whatever petitioner states, and the sheriff's

25  deputies go to that location and pick them up and bring them in

1  for evaluation.  We evaluate, send our recommendation to the

2  court, and based off of outpatient or inpatient, you know, we

3  refer them to the appropriate setting.

4  Q.  Are those things ever initiated by your clinic?

5  A.  We've done that before.

6  Q.  So, if you have someone come in in active psychosis, you

7  can file a petition for involuntarily commitment, right?

8  A.  Yeah.  Anybody can, yes.

9  Q.  Okay.  You didn't do that with Larry Price when he visited

10  you in July or August, right?

11  A.  Right.  I referred him to see the psych doctor first.

12  Q.  And he didn't do that, right?

13  A.  Say that again.  Sorry.

14  Q.  He didn't see the psych doctor, right?

15  A.  I'm not sure if he did or not.

16      MR. BALSON:  Objection, misstates evidence.

17  A.  I'm not a —

18  Q.  He didn't see the psych doctor?

19  A.  When I assigned him?

20  Q.  Right.

21  A.  I would assume so if he got prescribed medications.

22  Q.  Now back up.  My understanding was that in July and August

23  you saw him before he was arrested —

24  A.  Okay.  Yeah.

25  Q.  — before he was —

<u>The Estate of Larry Eugene Price v. Turn Key Health Clinics, LLC, et al.</u>

Case No. 2:23-cv-02008-PKH

Exhibit HH

## Hank Balson

| | |
|---|---|
| **From:** | Hank Balson |
| **Sent:** | Wednesday, October 4, 2023 1:39 PM |
| **To:** | Alexandra G. Ah Loy; owens@jowenslawfirm.com |
| **Cc:** | Erik Heipt; Edwin Budge; Sally Hartmann; Kimberly Parker; Miranda Lawrence; Rachel Culpepper; Zachary Williams; Lorna Pennington |
| **Subject:** | RE: next round of depositions |

Allie,

Let's go ahead and confirm the following depositions:

Wednesday, November 15, 10:00 AM Central time.................................................. **Morgan Matlock** (in person, Fort Smith)

Thursday, November 16, 9:00 AM Central time............................................ **Christeena Ferguson** (in person, Fort Smith)

Friday, November 17, 9:00 AM Central time.................................................. **Jawaun Lewis** (in person, Fort Smith)

Since Jason is not available on November 6, 7, or 8, please provide alternative options for the depositions of **Anaya**, **Jump**, and **Rambo**. I understand you are waiting to hear back from **Katie Green** to confirm when she is available. In addition, we would like to depose **Misty Williams**. Please let us know when you and she are available.

With regard to the Zoom depositions, is there a location you would like us to put in the subpoenas once we have the dates confirmed. If not, we will coordinate with our court reporter and arrange for a location in Fort Smith. We are happy to designate a different location if one is more convenient for the witnesses. Same goes for the in-person depositions: If there is a single location other than Fort Smith that works better for all three witnesses, please let me know.

Finally, please let us know if you will accept service of the deposition subpoenas for the non-party witnesses. If you are not authorized to do so, please provide us with their current or last-known addresses, phone numbers, and e-mail addresses as soon as possible.

Thank you.

-Hank


**From:** Alexandra G. Ah Loy <allieahloy@hallboothsmith.com>
**Sent:** Tuesday, October 3, 2023 2:45 PM
**To:** Hank Balson <hank@budgeandheipt.com>; owens@jowenslawfirm.com
**Cc:** Erik Heipt <erik@budgeandheipt.com>; Edwin Budge <ed@budgeandheipt.com>; Sally Hartmann <sally@budgeandheipt.com>; Kimberly Parker <kparker@hallboothsmith.com>; Miranda Lawrence <miranda@jowenslawfirm.com>; Rachel Culpepper <rachel@jowenslawfirm.com>; Zachary Williams <zwilliams@hallboothsmith.com>; Lorna Pennington <lpennington@hallboothsmith.com>
**Subject:** RE: next round of depositions

Rachelle Anaya can be available 11/6
Abbeygail Jump can be available 11/7
Tierra Franklin Rambo can be available 11/8
Katie Green is expected to call me tomorrow evening.

## Hank Balson

| | |
|---|---|
| **From:** | Hank Balson |
| **Sent:** | Monday, October 16, 2023 11:01 AM |
| **To:** | Alexandra G. Ah Loy; owens@jowenslawfirm.com |
| **Cc:** | Erik Heipt; Edwin Budge; Sally Hartmann; Miranda Lawrence; Rachel Culpepper; Zachary Williams; Lorna Pennington |
| **Subject:** | RE: next round of depositions |

Hi Allie,

Do you have any dates to propose for the remaining witness depositions identified below (Rambo, Jump, Anaya, Green, Williams, Tilley, and Raybourn)? If not, I ask that you please provide me with their service information (home and business addresses), plus the e-mail addresses and phone numbers for those who are former employees, as requested in Plaintiff's Interrogatory No. 1. Please provide dates or service/contact information for each witness by this Wednesday.

Thank you.

-Hank

**From:** Hank Balson
**Sent:** Tuesday, October 10, 2023 3:21 PM
**To:** 'Alexandra G. Ah Loy' <allieahloy@hallboothsmith.com>; owens@jowenslawfirm.com
**Cc:** Erik Heipt <erik@budgeandheipt.com>; Edwin Budge <ed@budgeandheipt.com>; Sally Hartmann <sally@budgeandheipt.com>; Miranda Lawrence <miranda@jowenslawfirm.com>; Rachel Culpepper <rachel@jowenslawfirm.com>; Zachary Williams <zwilliams@hallboothsmith.com>; Lorna Pennington <lpennington@hallboothsmith.com>
**Subject:** RE: next round of depositions

Hi Allie,

We're not necessarily opposed to deposing Ferguson before Matlock, but before we confirm those dates, can you give us an update on scheduling the other witnesses we identified (Rambo, Jump, Anaya, Green, Williams)? Also, we would like to depose Absalom Tilley and Bethina Raybourn.

Thank you.

-Hank

**From:** Alexandra G. Ah Loy <allieahloy@hallboothsmith.com>
**Sent:** Tuesday, October 10, 2023 11:08 AM
**To:** Hank Balson <hank@budgeandheipt.com>; owens@jowenslawfirm.com
**Cc:** Erik Heipt <erik@budgeandheipt.com>; Edwin Budge <ed@budgeandheipt.com>; Sally Hartmann <sally@budgeandheipt.com>; Miranda Lawrence <miranda@jowenslawfirm.com>; Rachel Culpepper <rachel@jowenslawfirm.com>; Zachary Williams <zwilliams@hallboothsmith.com>; Lorna Pennington <lpennington@hallboothsmith.com>
**Subject:** RE: next round of depositions

**To:** Alexandra G. Ah Loy <allieahloy@hallboothsmith.com>; owens@jowenslawfirm.com
**Cc:** Erik Heipt <erik@budgeandheipt.com>; Edwin Budge <ed@budgeandheipt.com>; Sally Hartmann <sally@budgeandheipt.com>; Kimberly Parker <kparker@hallboothsmith.com>; Miranda Lawrence <miranda@jowenslawfirm.com>; Rachel Culpepper <rachel@jowenslawfirm.com>; Zachary Williams <zwilliams@hallboothsmith.com>; Lorna Pennington <lpennington@hallboothsmith.com>
**Subject:** next round of depositions

Hi Allie and Jason,

We would like to schedule the next round of depositions, which will focus on Turn Key witnesses. We propose the following schedule:

| | |
|---|---|
| Monday, October 16................... | Tierra Franklin Rambo, LPN (via Zoom) |
| ................. | Abbeygail Jump (via Zoom) |
| Tuesday, October 17 ................. | Rachelle Anaya, LPN (via Zoom) |
| ................. | Katie Green, RN (via Zoom) |
| Tuesday, October 24 ................. | Morgan Matlock, RN (in person, Fort Smith) |
| Wednesday, October 25............. | Christeena Ferguson, RN (in person, Fort Smith) |
| Friday, October 27   ................. | Jawaun Lewis, DO (via Zoom) |

These are all dates we reserved for depositions. Allie, when we set these dates aside, you indicated you had a trial set for the week of October 23rd, but you didn't expect it to go forward. Do you have an update on that?

The order of the first four witnesses is flexible. However, we would like to depose Matlock, Ferguson, and Lewis last, in the order they are listed above.

Allie, are you authorized to accept service of the deposition subpoenas and arrange for the appearance of Rambo, Jump, Anaya, Green, and Matlock? If not, please provide us with their current or last-known addresses, telephone numbers, and e-mail addresses as soon as possible.

Thanks in advance for your cooperation in scheduling these depositions. If the proposed dates are not workable, please suggest alternatives.

-Hank

Hank Balson
Budge & Heipt, PLLC
808 E. Roy St.
Seattle, WA 98102
(206) 624-3060
hank@budgeandheipt.com
www.budgeandheipt.com

## Hank Balson

| | |
|---|---|
| **From:** | Hank Balson |
| **Sent:** | Thursday, October 19, 2023 11:00 AM |
| **To:** | Alexandra G. Ah Loy; Erik Heipt; Edwin Budge |
| **Cc:** | owens@jowenslawfirm.com; Zachary Williams; Lorna Pennington; miranda@jowenslawfirm.com; Rachel Culpepper; Sally Hartmann |
| **Subject:** | RE: Price: Turn Key Supplementation & Depositions [IMAN-DMS.FID1951390] |

Thank you, Allie.

We will depose Ms. Anaya, Ms. Raybourne, and Dr. Tilley by zoom on 11/28. We will depose Ms. Jump by Zoom on December 22. We will depose Ms. Ferguson on November 14 and Ms. Matlock on November 15—both in person in Fort Smith. And as previously agreed, we will depose Dr. Lewis in person in Fort Smith on November 17. In addition to Katie Green, we still need dates for Ms. Rambo and Ms. Williams. **Please provide me with the contact information for these witnesses, as I previously requested and as called for by Plaintiff's Interrogatory No. 1.**



-Hank