UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

THE ESTATE OF LARRY EUGENE
PRICE JR., by and through its Special
Administrator, Rodney Price,

      PLAINTIFF,                    No. 2:23-cv-02008 PKH

      v.

TURN KEY HEALTH CLINICS, LLC, an
Oklahoma corporation; SEBASTIAN
COUNTY, ARKANSAS; JAWAUN
LEWIS, DO; CHRISTEENA FERGUSON;
and J. DOES 1-20,

      DEFENDANTS.

**TURN KEY HEALTH CLINIC, LLC'S RESPONSES TO PLAINTIFF'S
SEVENTH SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS
AND FOURTH SET OF INTERROGATORIES**

COMES NOW, Defendant, Turn Key Health Clinics, LLC ("Defendant"), and for its Responses to Plaintiff's Seventh Set of Requests for Production of Documents and Fourth Set of Interrogatories ("Plaintiff's Discovery"), responds and states as follows:

**GENERAL OBJECTIONS**

These general objections are asserted with respect to all requests answered herein, and in addition to the specific objections set forth below:

1.    Pursuant to the Federal Rule of Civil Procedure 26(b)(1) and the Federal Rule of Evidence 401, Defendant objects to any and all Requests that are not relevant to the subject matter of the pending action and not reasonably calculated to lead to the discovery of admissible evidence.

2. Defendant objects to Plaintiff's discovery requests to the extent they purport to impose duties or obligations in addition to, inconsistent with, or different from the requirements set forth in the Federal Rules of Civil Procedure and Federal Rules of Evidence.

3. Pursuant to the attorney/client privilege, Defendant objects to the production or disclosure of any information or document that pertains to or consists of confidential communications made for the purpose of facilitating the rendition of legal services to Defendant which are, therefore, subject to the attorney/client privilege. Defendant also objects to the production or disclosure of any document or information that constitutes attorney work product or was prepared in anticipation of litigation or trial for Defendant or any of its representatives, or that is otherwise beyond the scope of discovery or admitted by the Federal Rules.

4. Defendant objects to Plaintiff's discovery requests to the extent they purport to require Defendant to identify or produce information or documents that are not in its custody or control. Defendant may identify and produce relevant non-privileged and non-protected information or documents that are presently in the custody or control of Defendant.

5. Defendant does not concede the relevancy of any document or information requested by Plaintiff nor the relevancy or admissibility of any information provided, or documents produced in response thereto. The fact that information is provided, or documents produced in response to a particular Request does not mean that it such information and/or documentation is probative of any particular issue in this matter or admissible at trial.

6. Information provided herein is based upon the knowledge of Defendant, but the words used in the answering of Plaintiff's discovery requests are those of Defendant's counsel.

7. Defendant objects to any Request to the extent it exceeds the allowable scope of discovery under the Federal Rules of Civil Procedure.

8. If any work product or privileged document or information is inadvertently produced in responses to these or other discovery requests, Defendant reserves the privilege with respect to the document or information so inadvertently produced, as well as its right to object to inspection and copying of such document or information, and its right to demand return of such document or information or object to the admissibility thereof.

9. Defendant reserves the right to supplement, modify, and/or correct its Responses contained herein.

Subject to the foregoing objections, Defendant responds as follows:

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 51**: Please produce all Turn Key policies, procedures, protocols, and other documents pertaining to segregated inmates in each facility where Turn Key had a contract to provide services at any time since November 1, 2019. For purposes of this interrogatory, the term "segregated" shall have the same meaning(s) as the term (or the term "segregation") has in Turn Key's written policies, procedures, and protocols.

**RESPONSE**: Objection. This Request is duplicative of Plaintiff's Request for Production No. 3, and Defendant has previously produced responsive, relevant documents. *See*. Further, policies, procedures, and protocols from other facilities, and which were not in effect at any time relevant to the care and treatment specifically at issue in this case, are not relevant to and have no bearing on the issues in this case. *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992) ("While the standard of relevance in the context of discovery is broader than in the context of admissibility (Rule 26(b) clearly states that inadmissibility is no grounds for objection to discovery…this often-intoned legal tenet should not be misapplied so as to allow fishing expeditions in discovery. Some threshold showing of relevance must be made before parties are

required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case."). Accordingly, Defendant refers Plaintiff to Defendant's Responses to Plaintiff's Request for Production No. 3 and documents produced on June 7, 2023, Turn Key's supplemental production of documents on July 31, 2023, and Turn Key's second supplemental production of documents on October 18, 2023.

**REQUEST FOR PRODUCTION NO. 52**: Please produce one or more documents that defines "small sites," as Turn Key uses that term (e.g., Turn Key's "small site" policies and procedures), as well as any other terms Turn Key uses to designate or categorize facilities with which it contracts. If Turn Key defines those terms differently now than it did in 2020 and 2021, please produce documents that show all definitions that have been used since 2020.

**RESPONSE**: Defendant objects to this Request as not being reasonably calculated to lead to the discovery of admissible evidence and as appearing to be falsely premised upon the predicate that Turn Key is required to maintain a document with definitions of common terms used within the correctional healthcare industry. No responsive documents exist from any period of time of which Defendant is aware. "Small sites" does not have a specific definition within Turn Key policy and procedure. It is a colloquial term used generally to describe or refer to non-accredited sites and/or sites where healthcare services are not provided twenty-four hours a day.

**REQUEST FOR PRODUCTION NO. 53**: Please produce Turn Key's policies and procedures for facilities other than those designated as "small sites" (e.g., "large sites"). You may limit your response to those policies and procedures in effect at any time since January 1, 2020.

**RESPONSE**: Objection. This Request is overbroad, duplicative, and requests information not reasonably calculated to obtain information relevant to this case. Turn Key has already produced all policies and procedures which may have any probative value to the claims and issues in this

specific case. Defendant refers Plaintiff to Defendant's Responses to Plaintiff's Request for Production No. 3 and documents produced on June 7, 2023, Turn Key's supplemental production of documents on July 31, 2023, and Turn Key's second supplemental production of documents on October 18, 2023.

The policies and procedures at facilities other than Sebastian County Detention Center have no relevance nor probative value to any of the events at issue in this case nor Turn Key's health care services provided at the Sebastian County Detention Center at the times relevant to this action, and as such this Request amounts to nothing more than an improper fishing expedition. *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992); *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352, 98 S. Ct. 2380, 2390, 57 L. Ed. 2d 253 (1978).

Defendant further directs Plaintiff to the sworn testimony of Defendant Jawaun Lewis, who testified in his deposition that Turn Key policies and procedures are not standardized across sites:

> Q: Are Turn Key's healthcare policies and procedures the same in every jail in which Turn Key contracts to provide healthcare?
>
> MS. AH LOY: Same objections.
>
> A. They can vary depending on the facility –
>
> BY MR. HEIPT:
>
> Q. Okay. And that's –
>
> A. -- under contract.
>
> Q. Sorry. I didn't mean to interrupt.
>
> A. That's okay. I say they can vary based on the facility and the contract.
>
> …
>
> Q. Right. But is there an automatic difference for large site versus small site facilities?

> A. I don't know if there's an automatic difference. Some facilities, like I said, have 40 plus hours of psych, some facilities have 120 hours of mental health, so it would depend on the contract and the facility.

*Deposition of Jawaun Lewis* at p. 97, ln. 1-12, 9-25.

Further, this Request seeks policies in place after Mr. Price's death. Practices, or customs in place or enacted after Mr. Price's death cannot be said to have contributed or caused the death of Mr. Price, and Plaintiff is not entitled to discovery of the same. When, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence, culpable conduct, a defect in a product, a defect in a product's design, or a need for a warning or instruction. Fed. R. Evid. 407; *See Connick v. Thompson*, 563 U.S. 51, 63, 131 S. Ct. 1350, 1360, 179 L. Ed. 2d 417 (2011) ("contemporaneous or subsequent conduct cannot establish a pattern of violations that would provide 'notice…and the opportunity to conform to constitutional dictates ....'"), *citing City of Canton, Ohio v. Harris*, 489 U.S. 378, 395, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989); *also, e.g., Walls v. Starks*, No. 4:19-CV-398-DPM, 2020 WL 6675632, at *6 (E.D. Ark. Nov. 12, 2020); *Brewington v. Keener*, 902 F.3d 796, 802 (8th Cir. 2018) (a plaintiff must show causation between the alleged injury and the alleged custom or policy); *Mettler v. Whitledge*, 165 F.3d 1197, 1205 (8th Cir. 1999) (explaining that an inadequate investigation after-the-fact "could not have caused" the underlying issue forming the basis of the lawsuit). Subsequent measures are of limited probative value as an admission of fault. *See Meller v. Heil Co.*, 745 F.2d 1297, 1299 (10th Cir.1984) (quoting FED. R. EVID. 407, Advisory Committee Note, 1972 Proposed Rule); *O'Dell v. Hercules, Inc.*, 904 F.2d 1194, 1204 (8th Cir. 1990).

**REQUEST FOR PRODUCTION NO. 54**: Please produce all e-mails to or from Jawaun Lewis, Alicia Irvin, Flint Junod, William Cooper, Donna Roberts, and/or Absalom Tilley

pertaining to Dr. Lewis's decision in 2021 to no longer work with non-Turn Key mental health providers at the facilities where Turn Key was contracted to provide medical care.

**RESPONSE**: Objection. This Request is duplicative and is not reasonably calculated to lead to the discovery of admissible evidence, as it requests documents created after the events at issue occurred with no probative value over the care at issue. Rule 407 prohibits the admission of evidence of subsequent remedial measures when the evidence is offered to prove negligence or culpable conduct. *Anderson v. Malloy*, 700 F.2d 1208, 1213 (8th Cir. 1983); *Jaeger v. Henningson, Durham & Richardson, Inc*., 714 F.2d 773, 776 (8th Cir. 1983). When, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence, culpable conduct, a defect in a product, a defect in a product's design, or a need for a warning or instruction. *See Connick v. Thompson*, 563 U.S. 51, 63, 131 S. Ct. 1350, 1360, 179 L. Ed. 2d 417 (2011) ("contemporaneous or subsequent conduct cannot establish a pattern of violations that would provide 'notice…and the opportunity to conform to constitutional dictates ....'"), *citing City of Canton, Ohio v. Harris*, 489 U.S. 378, 395, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989); *also, e.g., Walls v. Starks*, No. 4:19-CV-398-DPM, 2020 WL 6675632, at *6 (E.D. Ark. Nov. 12, 2020); *Brewington v. Keener*, 902 F.3d 796, 802 (8th Cir. 2018) (a plaintiff must show causation between the alleged injury and the alleged custom or policy); *Mettler v. Whitledge*, 165 F.3d 1197, 1205 (8th Cir. 1999) (explaining that an inadequate investigation after-the-fact "could not have caused" the underlying issue forming the basis of the lawsuit). Subsequent measures are of limited probative value as an admission of fault. *See Meller v. Heil Co*., 745 F.2d 1297, 1299 (10th Cir.1984) (quoting FED. R. EVID. 407, Advisory Committee Note, 1972 Proposed Rule); *O'Dell v. Hercules, Inc*., 904 F.2d 1194, 1204 (8th Cir. 1990).

Further, Plaintiff has already confirmed through deposition testimony that Dr. Lewis did not send any responsive emails prior to Larry Price's death:

> Q. At any point between August 19, 2020, and August 29, 2021, did you send or receive any emails or text messages relating in any way to Larry Price?
>
> A. I believe I mentioned an email to Dr. Cooper. I can't recall, but I may have sent the email.
>
> Q. You're talking about, though, after his death?
>
> A. Oh, after, yes.

*Deposition of Jawaun Lewis* at p. 185, ln. 17-23

Plaintiff's counsel asked again, and again Dr. Lewis did not recall any communications prior to Price's death:

> Q. So there's an email to Dr. Cooper from after his death, but at any point between August 19, 2020, and the date of his death, between that, while he was still alive, did you get any text messages, emails, or did you send any relating to Larry Price?
>
> MS. AH LOY: I'm going to object to the form just as much -- you misstated his testimony that he said he can't recall if there was an email. Go ahead.
>
> A. Okay. I don't recall anything at that time, no.
>
> BY MR. HEIPT:
>
> Q. You don't recall any between August 19, 2020, and August 29, 2021?
>
> A. Not that I can recall.

*Deposition of Jawaun Lewis* at p. 185, ln. 24 - p. 186, ln. 11.

Moreover, as Plaintiff is well aware, Dr. Lewis unequivocally testified that Turn Key's decision in 2021, after Mr. Price's death, to no longer work in non-Turn Key facilities where Turn

Key does not provide *all* mental health services was a subsequent remedial measure taken in response to Mr. Price's death:

> Q. The change in practices you talked about earlier in your deposition and not discontinuing meds for non-compliance in segregation –
>
> A. Uh-huh.
>
> Q. -- was that a remedial measure in response to Larry Price's death?
>
> A. Yes.
>
> Q. The same thing, the change about no longer working with outside agencies for mental health, was that a remedial measure in response to Larry Price's death?
>
> A. Absolutely.

*Deposition of Jawaun Lewis* at p. 205, ln. 7-17.

**REQUEST FOR PRODUCTION NO. 55**: Please produce all e-mails to or from Jawaun Lewis, Alicia Irvin, Flint Junod, William Cooper, Donna Roberts, and/or Absalom Tilley pertaining to the Western Arkansas Counseling and Guidance Center (aka "the Guidance Center"), including all e-mails between any of those persons and a Guidance Center employee.

**RESPONSE**: Objection. This Request is duplicative and is not reasonably calculated to lead to the discovery of admissible evidence, as it requests documents created after the events at issue occurred with no probative value over the care at issue. Rule 407 prohibits the admission of evidence of subsequent remedial measures when the evidence is offered to prove negligence or culpable conduct. *Anderson v. Malloy*, 700 F.2d 1208, 1213 (8th Cir. 1983); *Jaeger v. Henningson, Durham & Richardson, Inc.*, 714 F.2d 773, 776 (8th Cir. 1983). When, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove

negligence, culpable conduct, a defect in a product, a defect in a product's design, or a need for a warning or instruction. *See Connick v. Thompson*, 563 U.S. 51, 63, 131 S. Ct. 1350, 1360, 179 L. Ed. 2d 417 (2011) ("contemporaneous or subsequent conduct cannot establish a pattern of violations that would provide 'notice…and the opportunity to conform to constitutional dictates ....'"), *citing City of Canton, Ohio v. Harris*, 489 U.S. 378, 395, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989); *also, e.g., Walls v. Starks*, No. 4:19-CV-398-DPM, 2020 WL 6675632, at *6 (E.D. Ark. Nov. 12, 2020); *Brewington v. Keener*, 902 F.3d 796, 802 (8th Cir. 2018) (a plaintiff must show causation between the alleged injury and the alleged custom or policy); *Mettler v. Whitledge*, 165 F.3d 1197, 1205 (8th Cir. 1999) (explaining that an inadequate investigation after-the-fact "could not have caused" the underlying issue forming the basis of the lawsuit). Subsequent measures are of limited probative value as an admission of fault. *See Meller v. Heil Co.*, 745 F.2d 1297, 1299 (10th Cir.1984) (quoting FED. R. EVID. 407, Advisory Committee Note, 1972 Proposed Rule); *O'Dell v. Hercules, Inc.*, 904 F.2d 1194, 1204 (8th Cir. 1990).

Additionally, this Request is wholly duplicative of Plaintiff's Request for Production 17, for which Turn Key has previously produced all relevant e-mails responsive to this Request in existence prior to and during all dates of care at issue in this case. Defendant directs Plaintiff to its voluminous supplemental production of e-mails, Bates Nos. TKHC0837-2954, made on October 18, 2023. Communications with The Guidance Center prior to and including the dates of care at issue in this case were included within Defendant's previous document production.

**REQUEST FOR PRODUCTION NO. 56**: Please produce all e-mails between Turn Key and Sebastian County pertaining to the County's contract(s) with the Western Arkansas Counseling & Guidance Center (aka "the Guidance Center").

**RESPONSE**: Objection. This Request is duplicative and is not reasonably calculated to lead to the discovery of admissible evidence, as it requests documents created after the events at issue occurred with no probative value over the care at issue. Rule 407 prohibits the admission of evidence of subsequent remedial measures when the evidence is offered to prove negligence or culpable conduct. *Anderson v. Malloy*, 700 F.2d 1208, 1213 (8th Cir. 1983); *Jaeger v. Henningson, Durham & Richardson, Inc.*, 714 F.2d 773, 776 (8th Cir. 1983). When, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence, culpable conduct, a defect in a product, a defect in a product's design, or a need for a warning or instruction. *See Connick v. Thompson*, 563 U.S. 51, 63, 131 S. Ct. 1350, 1360, 179 L. Ed. 2d 417 (2011) ("contemporaneous or subsequent conduct cannot establish a pattern of violations that would provide 'notice…and the opportunity to conform to constitutional dictates ....'"), *citing City of Canton, Ohio v. Harris*, 489 U.S. 378, 395, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989); *also, e.g., Walls v. Starks*, No. 4:19-CV-398-DPM, 2020 WL 6675632, at *6 (E.D. Ark. Nov. 12, 2020); *Brewington v. Keener*, 902 F.3d 796, 802 (8th Cir. 2018) (a plaintiff must show causation between the alleged injury and the alleged custom or policy); *Mettler v. Whitledge*, 165 F.3d 1197, 1205 (8th Cir. 1999) (explaining that an inadequate investigation after-the-fact "could not have caused" the underlying issue forming the basis of the lawsuit). Subsequent measures are of limited probative value as an admission of fault. *See Meller v. Heil Co.*, 745 F.2d 1297, 1299 (10th Cir.1984) (quoting FED. R. EVID. 407, Advisory Committee Note, 1972 Proposed Rule); *O'Dell v. Hercules, Inc.*, 904 F.2d 1194, 1204 (8th Cir. 1990).

Additionally, this Request is wholly duplicative of Plaintiff's Request for Production 17, for which Turn Key has previously produced all relevant e-mails responsive to this Request in existence

prior to and during all dates of care at issue in this case. Defendant directs Plaintiff to its voluminous supplemental production of e-mails, Bates Nos. TKHC0837-2954, made on October 18, 2023. Communications with The Guidance Center prior to and including the dates of care at issue in this case were included within Defendant's previous document production.

**REQUEST FOR PRODUCTION NO. 57**: Dr. Lewis testified during his deposition that he participated in a meeting with other Turn Key staff and staff from the Western Arkansas Counseling & Guidance Center, where Turn Key staff conveyed their expectations to Guidance Center staff and shared with the Guidance Center one or more Turn Key policies pertaining to mental health procedures. Please produce all Turn Key policies that Turn Key shared with the Guidance Center in 2019, 2020, or 2021.

**RESPONSE**: Objection. This Request is duplicative. Turn Key has previously produced all relevant documents responsive to this Request. See Turn Key's Response to Request for Production No. 38. Defendant directs Plaintiff to its voluminous supplemental production of e-mails, Bates Nos. TKHC0837-2954, made on October 18, 2023. Responsive communications with The Guidance Center were included within Defendant's previous document production, inclusive of any policies and procedures shared with The Guidance Center.

**REQUEST FOR PRODUCTION NO. 58**: Please produce all contracts in which Turn Key agreed to provide medical and/or mental health services in a local jail in 2020 and/or 2021.

**RESPONSE**: Objection. This Request is duplicative. See Defendant's Response to Plaintiff's Request for Production No. 33. This Request also seeks information not reasonably calculated to obtain information relevant to this case. Turn Key has previously produced their contract and relevant amendment(s) thereto with Sebastian County. Contracts with other jails and contracts in place after the events at issue are not relevant to any issue in this case. *Hofer v. Mack*

*Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992) ("While the standard of relevance in the context of discovery is broader than in the context of admissibility (Rule 26(b) clearly states that inadmissibility is no grounds for objection to discovery…this often-intoned legal tenet should not be misapplied so as to allow fishing expeditions in discovery. Some threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case."). Additionally, this Request is vague. "Local jail" is not a term defined by Plaintiff or Turn Key policies and procedures, leaving Turn Key to guess what contracts would or would not be responsive to Plaintiff's Request. Regardless, no such contracts of wholly unrelated facilities have any probative value over any of the issues in this case.

**REQUEST FOR PRODUCTION NO. 59**: Please produce all sample policies Turn Key shared with Sebastian County representative as part of Turn Key's efforts to secure a contract to provides services at the Sebastian County Jail.

**RESPONSE**: Turn Key did not share any sample policies with Sebastian County representatives as part of the bidding process. And so, Turn Key has no responsive documents.

**REQUEST FOR PRODUCTION NO. 60**: Please produce all declarations and affidavits of Dr. William Cooper that have been filed in connection with any lawsuits in which Turn Key was named as a defendant, including any exhibits or attachments to those declarations and affidavits.

**RESPONSE**: Objection. This Request is overbroad, unduly burdensome, and is not reasonably calculated to lead to the discovery of admissible evidence. Turn Key is not in possession of "all declarations and affidavits" filed in connection with any lawsuits where Dr. Cooper may have prepared "declarations and affidavits," nor does Turn Key maintain a record of the same. As

Turn Key is not represented by the same counsel in every case, this Request would require Turn Key to expend considerable time and expense to coordinate with several different law firms to search through cases filed in several states, all just to obtain information that has no probative value or relevance to the care at issue in this case. *Roberts v. Shawnee Mission Ford, Inc.*, 352 F.3d 358, 361 (8th Cir. 2003) (holding that discovery may be limited if the burden or expense of the proposed discovery outweighs its likely benefit); *Cave v. Thurston*, No. 4:18-CV-00342-KGB, 2021 WL 4936185, at *7 (E.D. Ark. Oct. 22, 2021). Such a request is the definition of an impermissible fishing expedition. *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992); *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352, 98 S. Ct. 2380, 2390, 57 L. Ed. 2d 253 (1978). To the best of Defendant's information and belief, there are no declarations or affidavits prepared by Dr. William Cooper related to the healthcare services at the Sebastian County Detention Center.

**REQUEST FOR PRODUCTION NO. 61**: Please produce all e-mails to or from William Cooper, Donna Roberts, Jawaun Lewis, Alicia Irvin, and/or Absalom Tilley pertaining to policies or procedures regarding segregated inmates or conducting medical or mental health rounds in segregation units.

**RESPONSE**: Objection. This Request is duplicative of Plaintiff's Request for Production No. 34. Significantly, Dr. Lewis has already testified unequivocally that Turn Key was not responsible for, and was not contracted to, perform segregation rounds or conducting medical or mental health rounds of inmates housed in the segregation units in the Sebastian County Detention Center.

> Q. They're not responsible -- the healthcare staff is not responsible for seg rounds?
>
> A. No. Just the mental health team does seg rounds.

*Deposition of Jawaun Lewis* at p. 90, ln. 14-16;

> Q. So your position is that if there is mental health, the nurses have no obligation to do seg rounds?
>
> A. No, absolutely not.
>
> Q. In any Turn Key facility?
>
> A. No.

*Deposition of Jawaun Lewis* at p. 91, ln. 1-5.

Further, as Plaintiff is well aware, Dr. Lewis's testimony was clear that The Guidance Center—and not Turn Key personnel—w

as responsible for all segregation rounds at the Sebastian County Detention Center at all times relevant to Mr. Price's incarceration at the Sebastian County Detention Center:

> Q. When you had the meeting at the Guidance Center where you discussed mental health operations in the jail, did you specifically discuss that Turn Key's mental health professionals do weekly segregation rounds?
>
> A. Yes.
>
> Q. Did they express to you that they would be doing that as well?
>
> A. Yes.

*Deposition of Jawaun Lewis* at p. 207, ln. 4-11.

In addition, this Request is overly broad, as it is not limited in time, scope, or location. This Request would require Turn Key to search through and review all emails between William Cooper, Donna Roberts, Jawaun Lewis, Alicia Irvin, and/or Absalom Tilley concerning segregated inmates, including review of thousands, if not tens of thousands, of emails pertaining to innumerable sites wholly unrelated to this case. Further, Plaintiff's Request is not limited to emails generated by these individuals through their employment with Turn Key, and thus seeks documents outside of Turn Key's custody and control. Finally, Turn Key has already produced all

15
**EXHIBIT 10**

communications related to operations in Sebastian County Detention Center prior to and including the dates of care at issue in this case. As such, the remainder of Plaintiff's Request is not reasonably calculated to lead to the discovery of admissible evidence, constitutes no more than a clear fishing expedition, and exceeds the permissible bounds of reasonable discovery under the Federal Rules of Civil Procedure.

## INTERROGATORIES

**INTERROGATORY NO. 20**: Please describe with specificity the steps you took to locate all electronically stored information ("ESI") responsive to Plaintiff's requests for production in this matter. Please include in your description (a) the identity of all locations you searched (i.e., whose computer hard drives, whose mobile phones, which network storage locations, which external storage devices); (b) whether you searched for ESI that may have been archived or deleted; (c) the search terms and combinations you used; and (d) the identity of the person(s) who performed the searches.

**ANSWER**: Objection. This Interrogatory is duplicative. Defendant Turn Key has already stated that it transmitted Plaintiff's request for ESI to its third-party IT vendor to complete the ESI search as requested, extensively detailed the search parameters performed, and provided Plaintiff with all relevant and responsive documents. For Plaintiff's reference, the relevant email correspondence confirming these communications is produced with this Interrogatory Answer. Thus, as Plaintiff has previously made this request of Defendant, and Defendant has answered fully and completely on multiple occasions, this Interrogatory is oppressive and serves no purpose other than to harass Defendant.

EXHIBIT 10

Respectfully submitted,

Alexandra G. Ah Loy, AR Bar #2020020
Zachary Williams, OK Bar #34050
HALL BOOTH SMITH, P.C.
6301 Waterford Blvd., Ste. 200
Oklahoma City, OK 73118
Telephone: (405) 513-7111
Facsimile: (405) 768-1414
E-Mail: AllieAhLoy@hallboothsmith.com
E-Mail: zwilliams@hallboothsmith.com
*Attorneys for Defendants Turn Key Health Clinics, LLC, Jawaun Lewis, D.O., and Christeena Ferguson*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing *Responses to Plaintiff's Seventh Set of Interrogatories and Requests for Production* was mailed via e-mail on the 4th day of January, 2024 to the following:

Edwin Budge: ed@budgeandheipt.com
Erik Heipt: erik@budgeandheipt.com
Hank Balson: hank@budgeandheipt.com
Jason Owens: owens@jowenslawfirm.com

ALEXANDRA G. AH LOY

**EXHIBIT 10**