```
                IN THE UNITED STATES DISTRICT COURT
                   WESTERN DISTRICT OF ARKANSAS
                        FORT SMITH DIVISION

THE ESTATE OF LARRY EUGENE
PRICE JR, by and through its Special
Administrator, Rodney Price,                          PLAINTIFF

   vs.                                Case No:  2:23-cv-02008-PKH

TURN KEY HEALTH CLINICS, LLC, et al,                  DEFENDANTS

                         The Deposition of:

                    MORGAN MATLOCK now MCGUIRT
             being taken on November 15 2023 @ 9:00 a.m.
         at the Judge's Room, Courtyard Marriott Downtown,
            900 Rogers Avenue, Fort Smith, Arkansas  72901


APPEARANCES:                                       ON BEHALF OF:

MR. ERIK J. HEIPT                                      PLAINTIFF
MR. HANK BALSON
MR. ED BUDGE (via Zoom)
Budge & Heipt
808 East Roy Street
Seattle, WA  98102

MS. ALEXANDRA G. AH LOY                               DEFENDANTS
MR. ZACHARY WILLIAMS (via Zoom)
Hall Booth Smith, PC              Turn Key Health Clinics, LLC
6301 Waterford Blvd., Ste 200     Jawaun Lewis, D.O.
Oklahoma City, OK  73118          Christeena Ferguson

MR. JASON OWENS                   Sebastian County, Arkansas
Jason Owens Law Firm, P.A.
1312 W. Oak Street
Conway, AR  72034

Other persons present:  Rodney Price



               RICK L. CONGDON, ARCCR #631
                  CERTIFIED COURT REPORTER
                      P. O. Box 8493
                 Fort Smith, Arkansas 72902
      email: rlcongdon@hotmail.com / cell phone: 479-652-0146
```

EXHIBIT 13

2

1  The deposition of Morgan Matlock now McGuirt was taken on
2  November 15, 2023, beginning at the hour of 9:00 a.m. at the
3  Judge's Room, Courtyard Marriott Downtown, 900 Rogers Avenue,
4  Fort Smith, Arkansas, before me, Rick L. Congdon, a Certified
5  Court Reporter, and for the cause now pending in the United
6  States District Court, Western District of Arkansas, Fort Smith
7  Division, said deposition was taken pursuant to Notice.

8                               I N D E X

9  WITNESS:                                                     PAGE

10     MORGAN MATLOCK now MCGUIRT

11     Direct Examination by Mr. Balson.......................3
       Cross Examination by Ms. Ah Loy......................122
12     Cross Examination by Mr. Owens.......................130
       Redirect Examination by Mr. Balson...................142
13

14 WITNESS CERTIFICATION....................................152

15 REPORTER'S CERTIFICATE...................................154

16 EXHIBITS MARKED FOR IDENTIFICATION AND ATTACHED

17 Deposition Exhibit No.  1 - TK Health HSA job description
   Deposition Exhibit No.  2 - 12/1/2020 TK Small Sites Audit doc
18 Deposition Exhibit No.  3 - TK Health Orientation Modules doc
   Deposition Exhibit No.  4 - I/O Record
19 Deposition Exhibit No.  5 - TK Health Policies & Procedures
   Deposition Exhibit No.  6 - 8/18/2021 Ebony Gaines email doc
20 Deposition Exhibit No.  7 - 8/18/2021 Kim Taulbee email doc

21

22

23

24

25

**EXHIBIT 13**

126

1   A. Yes.
2   Q. As set forth in the contract?
3   A. Yes.
4   Q. Does Sebastian County Jail have an infirmary?
5   A. A hospital-like area?  No.
6   Q. Were you ever aware of any specific instance where
7   Mr. Price was eating his feces or drinking his urine?
8   A. No.
9   Q. Did you ever personally observe that?
10  A. No.
11  Q. Did anyone ever report to you that Mr. Price was eating his
12  feces or drinking his urine?
13  A. No.
14  Q. In your opinion, are those food logs self-explanatory on
15  their face?
16  A. Yes.
17  Q. Do you think an average person, with no medical training,
18  could understand those food logs?
19  A. Yes.
20  Q. Are you concerned by what was written on the food logs?
21  A. No.
22  Q. Were they reassuring to you?
23  A. Yes.
24  Q. Considering the gaps in those food logs, would you be
25  concerned by the information that actually was submitted in the

**EXHIBIT 13**

127

1  food logs?
2  A.  No.  They were evidence that he was receiving meal and
3  drink and consuming it.
4  Q.  Is there anything in the food logs that were received that
5  would have prompted further follow-up by medical staff?
6  A.  No.
7  Q.  Did anyone ever notify you of any concerns regarding
8  Mr. Price's weight or his nutrition status?
9  A.  No.
10 Q.  Was there any point in time that Larry Price asked you for
11 medical care?
12 A.  No.
13 Q.  Was there any point in time that anyone asked you to go and
14 assess Mr. Price?
15 A.  No.  I wish that somebody would have, but no.
16 Q.  Was there any point in time that anyone asked you to try to
17 get Mr. Price moved to the state hospital sooner?
18 A.  No.
19 Q.  Were you ever aware that Mr. Price was suffering from
20 malnutrition?
21 A.  No.
22 Q.  Were you ever aware that Mr. Price was suffering from
23 dehydration?
24 A.  No.
25 Q.  Were you ever aware that the Guidance Center was not

EXHIBIT 13

128

1  rounding on Mr. Price?
2  A.  No.
3  Q.  Were nursing staff responsible for tracking what the
4  Guidance Center was doing?
5  A.  No.
6  Q.  Were you ever asked to coordinate mental health services
7  for Larry Price?
8  A.  No.
9  Q.  Were you ever asked to coordinate psychiatric services for
10 Mr. Price?
11 A.  No.
12 Q.  Did you ever receive any complaints that Larry Price had
13 diarrhea?
14 A.  No.
15 Q.  Did you ever see any evidence that Mr. Price had diarrhea?
16 A.  No.
17 Q.  Would a nurse in Turn Key's custom and practice always
18 review documents that are being scanned into the electronic
19 chart?
20 A.  Yes.
21 Q.  So is there ever a situation where a nurse would scan a
22 record into the chart without someone actually having reviewed
23 that record?
24 A.  No.
25 Q.  Were Turn Key staff in the habit of scanning records into

**EXHIBIT 13**