# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF ARKANSAS
# FORT SMITH DIVISION

| | |
|---|---|
| THE ESTATE OF LARRY EUGENE PRICE JR, by and through its Special Administrator, Rodney Price, <br><br> PLAINTIFF, <br><br> v. <br><br> TURN KEY HEALTH CLINICS, LLC, an Oklahoma corporation; SEBASTIAN COUNTY, ARKANSAS; JAWAUN LEWIS, DO; CHRISTEENA FERGUSON; and J. DOES 1-20, <br><br> DEFENDANTS. | No. 2:23-cv-02008 PKH |

## PLAINTIFF'S MOTION FOR LEAVE TO FILE REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL DISCOVERY FROM DEFENDANT TURN KEY HEALTH CLINICS

Pursuant to Section 5 of the Court's Amended Final Scheduling Order, Plaintiff requests leave to file a reply brief in support of its Motion to Compel Discovery from Defendant Turn Key Health Clinics. The issues presented in Plaintiff's discovery motion are numerous and interrelated. Plaintiff believes its proposed reply brief (attached to this motion as Exhibit 1) will assist the Court by clarifying disputed facts and providing additional legal authority to aid the Court's consideration of the parties' conflicting arguments.

1

Respectfully submitted this 2nd day of February, 2024.

                BUDGE & HEIPT, PLLC
                808 E. Roy St.
                Seattle, WA 98102
                (206) 624-3060

                s/ Hank Balson
                Erik J. Heipt erik@budgeandheipt.com
                Hank Balson hank@budgeandheipt.com
                Edwin S. Budge ed@budgeandheipt.com
                *Attorneys for Plaintiff*

# Exhibit 1

# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF ARKANSAS
# FORT SMITH DIVISION

| | |
|---|---|
| THE ESTATE OF LARRY EUGENE PRICE JR, by and through its Special Administrator, Rodney Price,<br><br>PLAINTIFF,<br><br>v.<br><br>TURN KEY HEALTH CLINICS, LLC, an Oklahoma corporation; SEBASTIAN COUNTY, ARKANSAS; JAWAUN LEWIS, DO; CHRISTEENA FERGUSON; and J. DOES 1-20,<br><br>DEFENDANTS. | No. 2:23-cv-02008 PKH |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO COMPEL DISCOVERY[1]**

---

[1] Turn Key's response brief contains numerous allegations of misconduct by Plaintiff's counsel. Although Plaintiff disputes the allegations and characterizations, it is focusing this reply on the substantive issues before the Court.

1

A.      **Materials from after Mr. Price's death are relevant and should be produced.**

> After the proponent of discovery makes a threshold showing of relevance, the party opposing it has the burden of showing its objections are valid by providing specific explanations or factual support as to how each discovery request is improper. The opposing party must demonstrate that the requested documents either do not come within the broad scope of relevance defined pursuant to Rule 26(b)(1) or else are of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.

*Whitt v. City of St. Louis*, No. 4:18-CV-1294 RLW, 2020 U.S. Dist. LEXIS 228094, at *5-6 (E.D. Mo. Dec. 4, 2020). Turn Key has not met its burden. Plaintiff's requests for materials generated after Mr. Price's death easily fall within the broad definition of relevance contemplated by Fed. R. Civ. P. 26(b)(a) and are reasonably calculated to lead to discovery of admissible evidence.

      1.      **Information About Deaths of Other Turn Key Patients (Interrogatory No. 13)**

Plaintiff's Interrogatory No. 13 seeks limited information about people who have died in Turn Key facilities since 2016: (1) the name and location of the jail where the person was confined at the time of death, (2) the date of death, (3) the cause of death, and (4) whether the death resulted in a claim for compensation against Turn Key or one of its employees. ECF 31 (Balson decl.) at ECF p. 20 (Ex. A). The interrogatory explicitly provides that Turn Key may replace the names of the decedents with coded identifiers to preserve confidentiality, rendering Defendant's HIPAA concerns moot. *See* 45 C.F.R. § 160.103 ("Protected Health Information" under HIPAA includes only *individually identifiable* information.)

Turn Key's main objection to Interrogatory 13 appears to be based on relevance. It argues, "The care and treatment provided to other patients, whose medical conditions were not the same as Mr. Price's and whose causes of death have no relationship to Mr. Price's, are plainly not relevant." Plaintiff's interrogatory is narrow and does not seek any information about care and treatment provided to other patients. Moreover, Turn Key's argument presumes, without evidence,

that there are no similarities between the other deaths and the death of Mr. Price. However, a party cannot withhold discovery based on its lawyers' unsupported assertions about what the discovery will or will not show. *See Whitt v. City of St. Louis*, 2020 U.S. Dist. LEXIS 228094, at *11 ("The City cannot avoid responding to [plaintiff's discovery request] by having its attorney offer unsworn factual assertions . . . through argument in [its brief]."); *Vallejo v. Amgen, Inc.*, 903 F.3d 733, 743 (8th Cir. 2018) ("We reject [defendant's] proposition that, as a general rule, attorney assertions in briefs to the court can adequately substitute for affidavits and other forms of evidence.").

In *Walls v. Starks*, No. 4:19-cv-398-DPM, 2020 U.S. Dist. LEXIS 211772 (E.D. Ark. Nov. 12, 2020), the Eastern District of Arkansas allowed the plaintiff in a *Monell* use-of-force case to conduct discovery regarding other uses of force going back 14-19 years. In *Whitt v. City of St. Louis*, the Eastern District of Missouri required a municipal defendant to respond to the plaintiff's discovery request for post-incident evidence, finding that "the clear majority of case law . . . supports the conclusion that subsequent incidents may be probative of what policies, practices, or accepted customs existed at the time of Plaintiff's arrest, which would be relevant to his *Monell* claims." *Whitt,* 2020 U.S. Dist. LEXIS 228094, at *25-26. This Court should order Turn Key to answer Interrogatory No. 13 so that Plaintiff may investigate whether other Turn Key deaths were the result of policies or customs similar to those that caused the death of Mr. Price.

**2.     Turn Key's Current Policies and Procedures (Request for Production No. 38)**

Turn Key argues it should not be required to produce its current policies and procedures because "[a]ny changes to policy following Mr. Price's death are a subsequent remedial measure," which is inadmissible under Fed. R. Evid. 407. ECF 33 at 13. But information need not be admissible at trial to be discoverable. Fed. R. Civ. P. 26(b)(1). Turn Key failed to meet its burden to demonstrate that the request is improper and its objection should be overruled.

3

### 3. E-mails

As it pertains to e-mails, Plaintiff's motion focuses on Turn Key's refusal to produce e-mails generated after August 30, 2021—the day after Mr. Price's death. ECF 30 at 13-14. Turn Key claims that Plaintiff omitted a "critical email" from its moving papers that is "dispositive of this issue." ECF 33 at 6 (citing ECF 33-12 at 2). Not only is the cited e-mail not dispositive of the issue, it does not even address it. The only reference to ESI in that e-mail is a single line that reads, "I can confirm our IT vendor completed the search as requested." That statement does not address the timeframe of Turn Key's ESI search. Indeed, the company continues to argue that "[e]mails generated after the time of Price's death have no bearing or relevancy to Plaintiff's claims in this case" and that Plaintiff's request for such e-mails should be denied. *Id*. at 8, 10.

Turn Key's claim that e-mails generated after Mr. Price's death "have no bearing or relevancy to Plaintiff's claims" is baffling. E-mails discussing Mr. Price's death and/or related investigations and mortality reviews would be highly relevant to Plaintiff's claims and could have been sent only after Mr. Price died. E-mails discussing the policies and practices at issue in this litigation are relevant to Plaintiff's *Monell* claims and fall squarely within the scope of authorized discovery under Fed. R. Civ. P. 26(b)(1).

### B.     Employee Training Checklists (Interrogatory No. 9)

Referring to the employee training checklists Turn Key agreed to produce in response to Plaintiff's Interrogatory No. 9, Defendant now claims for the first time that it "has no further documents to produce responsive to this Request." ECF 33 at 14. When counsel conducted their first discovery conference last July, Turn Key's attorney agreed to answer Interrogatory No. 9 by producing the training checklists of employees identified by Plaintiff, as authorized under Fed. R. Civ. P. 33(d). ECF 31 at ECF p. 158 (Ex. I). Relying on that agreement, Plaintiff identified six

4

employees and requested their training checklists on October 10, 2023. *Id*. at ECF p. 295 (Ex. U). Having not received the requested checklists, Plaintiff inquired further about them on October 25 (*id*. at ECF p. 248 (Ex. L)), November 21 (*id*. at ECF p. 278 (Ex. Q)), December 1 (*id*. at ECF p. 283 (Ex. R)), and December 19 (*id*. at ECF pp. 281-82 (Ex. R)). The first time Plaintiff was informed that Turn Key purportedly does not have the checklists and thus will not be producing them was in Defendant's response to this discovery motion. However, Turn Key offers no evidence to support its contention, such as a declaration by the person who looked for the checklists, stating what locations were searched and confirming that no checklists were located. Given the evidence Plaintiff presented regarding where Turn Key maintains employee training checklists (*see* ECF 30 at 15 n.5), the Court should require Defendant to provide Plaintiff with a sworn declaration from the person who searched for the records, stating where the checklists are usually maintained, what locations were searched and when, what was found, and why the checklists no longer exist.

**C.     Identity of nurses who trained jail officers regarding food logs (Interrogatory No. 19)**

In answering Plaintiff's Interrogatory No. 19, Turn Key stated that "its nurses, including but not limited to Christeena Ferguson, provided training via verbal instruction to detention staff responsible for monitoring Mr. Price on how to complete the Intake/Output forms." ECF 31 at ECF pp. 271-72 (Ex. P). Turn Key's General Counsel Austin Young verified the interrogatory answer under oath. *Id*. at ECF p. 275 (Ex. P). This means Mr. Young has knowledge and information to support his answer that Turn Key nurses other than Defendant Ferguson provided training to detention staff regarding the Intake/Output forms. Yet Turn Key contends—again without citation to any sworn declaration or other evidence—that it "has produced all information and records related to medical training of detention staff prior to Mr. Price's death (which is the actual training at issue in this lawsuit) within its possession, custody, and control which could be

5

located after conducting a diligent search" and that it "has no further documents or information to produce." ECF 33 at 15. These statements are inconsistent with Turn Key's answer to the interrogatory: If Turn Key is not aware of any specific nurses who provided food-log training to jail staff, other than Defendant Ferguson, then how does it know that "its nurses, including but not limited to Christeena Ferguson, provided training via verbal instruction to detention staff responsible for monitoring Mr. Price on how to complete the Intake/Output forms"?

**D.    Information About Non-Parties (Requests for Production Nos. 37, 42, 43, 46)**

Plaintiff explained in its motion how its discovery requests pertaining to Turn Key's treatment of non-parties is relevant to the issues in the case and calculated to lead to the discovery of admissible evidence. ECF 30 at 18-21. Turn Key ignores those explanations and argues that it "has already produced all relevant policies and procedures which were in effect prior to and during the dates of treatment at issue in this case." ECF 33 at 16. That argument misses the point. Even assuming that Defendant has produced all relevant written policies, Plaintiff is entitled to discovery that will shed light on the unwritten customs of both Turn Key and Sebastian County, which are relevant to Plaintiff's *Monell* claims. *See* ECF 30 at 19-21. Plaintiff's requests for documents pertaining to other detainees, including documents that will shed light on Defendants' customs for monitoring patients' food and fluid intake and output, are reasonably calculated to lead to discovery of admissible evidence. Turn Key has not satisfied its burden to demonstrate otherwise.

**E.    Turn Key's Financial Information (Requests for Production Nos. 20-22)**

Relying primarily on Arkansas state law, not binding on this Court, Turn Key argues that Plaintiff should be required to make a prima facie case for punitive damages before the company discloses financial information in response to Plaintiff's discovery requests. ECF 33 at 20. The only federal case cited by Defendant that arguably supports its position, at least in part, is *Chandler*

6

*v. Godsey*, decided over 15 years ago. No. 08-5069, 2008 U.S. Dist. LEXIS 129726 (W.D. Ark. Dec. 16, 2008).[2] In considering whether to require the plaintiff to make a prima facie case for punitive damages, the Court concluded, "a case-by-case approach is best in order to ensure that plaintiffs have the financial information necessary to assess the value of their claims, while also protecting defendants from unwarranted intrusions into their financial affairs." *Id*. at *3. In contrast, in a case decided less than two years ago, this Court wrote, "It is well-established that under federal law, evidence of the defendants' financial worth is relevant to a claim for punitive damages and [a] plaintiff seeking punitive damages is entitled to engage in discovery relating to the defendant's financial worth in advance of trial." *Truong Son Mkt., Inc. v. State Auto Prop. & Cas. Ins. Co.*, No. 2:21-CV-02058, 2022 U.S. Dist. LEXIS 87842, at *9 (W.D. Ark. May 16, 2022) (internal quotation marks and citation omitted; modification in original). The Court granted the plaintiff's motion to compel the defendant's financial information without consideration of whether the plaintiff had established a prima facie case for punitive damages. *Id*. The Court should follow its more recent precedent and require Turn Key to produce the requested financial records.[3]

**F.     Records Pertaining to Nurse Misty Williams (Request for Production No. 47)**

Turn Key does not dispute that the two documents it is withholding pertaining to the incident involving Larry Price and Misty Williams are relevant to Ms. Williams' anticipated trial testimony. Turn Key's only argument against producing the records is that "Ms. Williams has not waived her privacy rights under HIPAA." However, the HIPAA regulations explicitly allow healthcare providers to disclose an individual's protected health information in a judicial proceeding in response to a court order or in response to a discovery request if the party seeking

---

[2] The other federal case cited by Turn Key based its decision on Arkansas state law. *See Lodging Dev. & Mgmt. v. Days Inns Worldwide*, No. 3:00CV218 HW, 2001 U.S. Dist. LEXIS 26089, at *11 (E.D. Ark. Oct. 17, 2001).
[3] To the extent Turn Key is concerned about broad disclosure of its financial information, it may designate the records "CONFIDENTIAL" pursuant to the protective order (ECF 24), which will strictly limit further disclosure.

7

the information has requested a qualified protective order from the court. 45 C.F.R. § 164.512(e). The Court should enter the qualified protective order submitted by Plaintiff and order Turn Key to produce the remaining documents pertaining to Misty Williams.

### G.     Witness Contact Information (Interrogatory No. 1)

Plaintiff's request for non-party witness contact information is one of the most routine discovery requests in the world of civil litigation. Indeed, the civil rules require parties to provide such information at the outset of most cases, even without a discovery request. Fed. R. Civ. P. 26(a)(1)(A)(i). Turn Key asserts that "Plaintiff is not entitled to the addresses and phone numbers of individuals represented by counsel." ECF 33 at 25. But it has not offered any evidence that the witnesses listed in its answer to Interrogatory No. 1 are represented by counsel, nor has it offered any legal authority entitling it to withhold witness contact information if the witnesses are represented. Moreover, Defendant did not make an objection to Interrogatory No. 1 based on its purported attorney-client relationships . *See* ECF 31 at ECF p. 169 (Ex. K). Any such objection has therefore been waived. Fed. R. Civ. P. 33(b)(4).

## II.  CONCLUSION

Turn Key has not met its burden to demonstrate that Plaintiff's discovery requests seek irrelevant information, are not reasonably calculated to lead to the discovery of admissible evidence, or are otherwise improper. Plaintiff requests that the Court grant its motion and order Turn Key to fully respond to the discovery requests at issue.

Respectfully submitted this ___ day of _____, 2024.

        BUDGE & HEIPT, PLLC
808 E. Roy St.
Seattle, WA 98102
(206) 624-3060


 s/
Erik J. Heipt erik@budgeandheipt.com
Hank Balson hank@budgeandheipt.com
Edwin S. Budge ed@budgeandheipt.com
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned certifies that on the date stated below this document was filed with the Clerk of the Court for the United States District Court for the Western District of Arkansas via the CM/ECF system, which will send notification of such filing to the following e-mail addresses:

Alexandra G. Ah Loy
AllieAhLoy@hallboothsmith.com
Zachary Williams
zwilliams@hallboothsmith.com
Julie Hill
jhill@hallboothsmith.com

*Attorneys for Defendants Turn Key Health Clinics, LLC; Jawaun Lewis, DO; and Christeena Ferguson*

Jason Owens owens@jowenslawfirm.com

*Attorney for Defendant Sebastian County, Arkansas*

Dated this 2nd day of February, 2024.

  s/ Hank Balson
Hank Balson