IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

| | | |
|---|---|---|
| THE ESTATE OF LARRY EUGENE PRICE, JR., by and through its Special Administrator, Rodney Price, | ) ) ) ) | |
| Plaintiffs, | ) ) | 2:23-cv-02008-PKH |
| v. | ) ) | |
| TURN KEY HEALTH CLINICS, LLC, an Oklahoma corporation; SEBASTIAN COUNTY, ARKANSAS; JAWAUN LEWIS, DO; CHRISTEENA FERGUSON; and J. DOES 1-20, | ) ) ) ) ) ) | |
| Defendants. | ) | |

**DEFENDANT TURN KEY HEALTH CLINICS, LLC'S
MEMORANDUM AND BRIEF IN SUPPORT OF ITS MOTION
FOR ENTRY OF PROTECTIVE ORDER UNDER RULE 26(c)**

COMES NOW Defendant, Turn Key Health Clinics, LLC, pursuant to Paragraph 8.a. of the Stipulated Protective Order (Dkt. # 24) and Fed. R. Civ. P. 26(c), and submits the following Memorandum and Brief in Support of its Motion for Protective Order:

**INTRODUCTION**

Plaintiff has objected to Turn Key's designation of certain documents exchanged in discovery as confidential and seeks them to no longer be protected by the protective order previously entered by this Court. See Dkt. # 37-1, *Email from Mr. Balson Challenging Confidential Designations*; Dkt. # 24, *Protective Order*. Turn Key believes in good faith that the challenged documents contain sensitive, confidential, and proprietary information constituting trade secrets,

1

and are therefore protected by statutory and common law privacy concerns. Thus, the documents should remain confidential.

## ARGUMENT AND AUTHORITIES

On February 29, 2024, Plaintiff's counsel notified Turn Key that Plaintiff objected to the following documents being designated as confidential:

| No. | Bates No. | Description of Document |
|---|---|---|
| 1. | TKHC 0257 | Turn Key's Internal Unusual Occurrence/Incident Report |
| 2. | TKHC 0295-0330 | Turn Key's Proposal to Sebastian County |
| 3. | TKHC 0331-0332 | Revisions to Turn Key proposal to Sebastian County |
| 4. | TKHC 0333-0339 | Turn Key's Proprietary Sebastian County Statistics |
| 5. | TKHC 0340-0509 | Turn Key's Proprietary Policies & Procedures for the Sebastian County Detention Center |
| 6. | TKHC 0510-0546 | Turn Key's Proprietary Nursing Protocols |
| 7. | TKHC 0835-0836 | Turn Key's Proprietary Health Services Administrator Job Descriptions for 2020 and 2021 |
| 8. | TKHC 0841 | 10/6/19 Internal Turn Key E-mail Communications |
| 9. | TKHC 0848-0853 | Internal Turn Key E-mail Communication (September 2019 E-mail and Attached Memo regarding ADC Inmates) |
| 10. | TKHC 0863-0870 TKHC 0873-0880 TKHC 0882-0904 | Proprietary Turn Key Forms |
| 11. | TKHC 0911-0914 | Turn Key's Proprietary Policy J-34: Mental Health Screening & Evaluation (9/20/19) |
| 12. | TKHC 0915 | 11/1/19 Internal Turn Key E-mail Communication from Chief Medical Officer Dr. Cooper to Turn Key Recipients regarding Turn Key Practices ("lab reminder & updates") |
| 13. | TKHC 0916-0917 | Turn Key Proprietary Monthly Health Services Report with 11/1/19 cover E-mail from Donna Newman |
| 14. | TKHC 0938-0939 | Turn Key Proprietary Data Collection Form with 11/15/19 Cover E-mail from Kara Black |
| 15. | TKHC 0977-0984 | 12/10/19 E-mail to Holwick with Attachment (Proposed Business Associate Agreement) |
| 16. | TKHC 0985-0988 | Internal Turn Key E-mail Communication December 2019 E-mails re "Follow up on Questionnaire" |
| 17. | TKHC 1019-1025 | Internal Legal Draft of Business Associate Agreement |
| 18. | TKHC 1201-1222 | Proprietary Turn Key Covid-19 Information |
| 19. | TKHC 1223-1232 | Tuberculosis Information |
| 20. | TKHC 1233-1239 | Turn Key's Internal Covid-19 Communications |

| 21. | TKHC 1246 | Turn Key's Internal Covid-19 Plan of Action |
|---|---|---|
| 22. | TKHC 1252-1270 | E-mails from Chief Medical Officer Dr. Cooper to Internal Turn Key Recipients regarding Company COVID-19 Practice Updates |
| 23. | TKHC 1311-1636 | Turn Key's Proprietary Orientation and Training Slides |
| 24. | TKHC 1647-1656 | Internal Turn Key E-Mail Communications |
| 25. | TKHC 1679-1688 | Internal Turn Key E-Mail Communications |
| 26. | TKHC 1729 | 10/20/21 Internal Turn Key E-mail Communication |
| 27. | TKHC 1732 | 10/26/2020 Internal Turn Key E-mail Communication |
| 28. | TKHC 1758 | 11/23/2020 Internal Turn Key E-mail Communication |
| 29. | TKHC 1759-1981 | 12/1/2020 Internal Turn Key E-mail Communication with Attachments |
| 30. | TKHC 1982-1983 | 12/1/2020 Internal Turn Key E-mail Communication with Attachment |
| 31. | TKHC 1987-2209 | 12/15/2020 Internal Turn Key E-mail Communication with Attachments |
| 32. | TKHC 2240-2248 | 2021 Proprietary Turn Key Nursing Protocols with Cover E-mail |
| 33. | TKHC 2254 | 2/2/21 Internal Turn Key E-mail Communication |
| 34. | TKHC 2403-2628 | Proprietary Turn Key Orientation and Training Slides with Cover E-mail |
| 35. | TKHC 2629-2632 | Internal Turn Key E-mail Communications |
| 36. | TKHC 2647-2671 | Proprietary Turn Key Nursing Protocols with Cover E-mail |
| 37. | TKHC 2672-2709 | Internally Disseminated Turn Key Pharmaceutical Clinical Update with Cover E-mail |
| 38. | TKHC 2730-2731 | 06/14/21 Internal Turn Key E-mail Communication |
| 39. | TKHC 2736-2737 | Proprietary Turn Key Hunger Strike Protocol with Cover E-mail |
| 40. | TKHC 2750 | 07/28/21 Internal Turn Key E-mail Communication |
| 41. | TKHC 2751-2752 | Proprietary Turn Key FIT Guidelines with Cover E-mail |
| 42. | TKHC 2767-2776 | Proprietary Turn Key Nursing Protocols with Cover E-mail |
| 43. | TKHC 2966 | Proprietary Turn Key Intake & Output Patient Care Form |

See Dkt. # 37-1, *Email from Mr. Balson Challenging Confidential Designations*. Thereafter, upon further review of all such documents, Turn Key voluntarily withdrew its confidentiality designation on Designated Item Nos. 15 (12/10/19 E-mail to Holwick with attachment (proposed Business Associate Agreement) and 19 (Tuberculosis Information).

Protective Orders are addressed in Rule 26 of the Federal Rules of Civil Procedure. Rule 26 states in pertinent part:

> (1) In General. A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending—or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
>    (A) forbidding the disclosure or discovery;
>
>    (B) specifying terms, including time and place or the allocation of expenses, for the disclosure or discovery;
>
>    (C) prescribing a discovery method other than the one selected by the party seeking discovery;
>
>    (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;
>
>    (E) designating the persons who may be present while the discovery is conducted;
>
>    (F) requiring that a deposition be sealed and opened only on court order;
>
>    (G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and
>
>    (H) requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs.

Fed. R. Civ. P. 26(c).

The Eighth Circuit has explained that Rule 26(c) "requires that 'good cause' be shown for a protective order to be issued. The burden is therefore upon the movant to show the necessity of its issuance, which contemplates 'a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *General Dynamics Corp. v. Selb Manufacturing Co.*,

481 F.2d 1204, 1212 (8th Cir. 1973). Turn Key maintains that the remaining documents identified above, which have been challenged by Plaintiff, contain proprietary information protected by statutory and common law, including trade secret information. The information contained within these documents is of little interest to the public. Turn Key is not a public entity, and is not subject to any state or federal open record, FOIA, or "sunshine" acts. Further, release of this proprietary business information would damage Turn Key by allowing its competitors access to the inner workings of Turn Key's business operations, such as policies and procedures concerning care, Turn Key-specific patient care forms and training materials, financial information, and contracts with business partners. Such access would provide Turn Key's competitors an unfair advantage against Turn Key in bidding contracts for other healthcare services. Moreover, there is a public interest in inmates, who comprise Turn Key's entire patient base, not obtaining access to many of these documents. For these reasons, the documents should remain confidential.

    **I.   The balance of harm to Turn Key versus the public interest in access to court filings favors the documents remaining confidential.**

When evaluating good cause for whether documents should remain confidential under Rule 26, the Court must weigh the competing interests regarding the common-law right of access to judicial records. *Andrews v. United States*, No. 2:20-CV-02094, 2021 WL 1148469, at *1 (W.D. Ark. Mar. 25, 2021) (not reported) (quoting *Bussing v. COR Clearing, LLC*, 2015 WL 4077993, at *2 (D. Neb. July 6, 2015); *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir.1981). In order to overcome the presumptive right to public records, the party seeking to seal information because it is allegedly trade secret or proprietary commercial information must show compelling reasons to keep the information secret—*i.e.*, that it is likely that public disclosure of the information will harm the party. *See In re Neal*, 461 F.3d 1048, 1053 (8th Cir. 2006) (describing

3

the right to public records as presumptively attaching absent "compelling reasons [to] justify non-disclosure"); *see also In re Cendant Corp.,* 260 F.3d 183, 196 (3d Cir.2001) ("[C]ontinued sealing must be based on current evidence to show how public dissemination of the pertinent materials now would cause the competitive harm [they] claim [ ].") (emphasis omitted) (citing *Leucadia*, 998 F.2d at 167); *Pichler v. UNITE, 238 F.R.D.* 405, 408 (E.D.Pa.2006) ("[The party seeking secrecy] cannot satisfy its burden with '[b]road allegations of harm, bereft of specific examples or articulated reasoning.' ... Instead, it must show with 'specificity' that the portion of the record it seeks to keep from the public contains the type of information courts protect and that its 'disclosure will work a clearly defined and serious injury to [it]' ") (quoting *In re Cendant Corp., 260* F.3d at 194); *Contratto v. Ethicon, Inc.*, 227 F.R.D. 304, 309–12 (N.D.Cal.2005) (rejecting defendants' confidentiality designations for materials, including communications with the FDA, because defendants failed to identify any "specific secret or otherwise show the specific harm that will result from disclosure of each document"); *Tinman v. Blue Cross & Blue Shield of Michigan*, 176 F.Supp.2d 743, 745 (E.D.Mich.2001) ("[C]ourts traditionally require that the party wishing to have confidential information in the court record kept under seal show that disclosure of the information will result in some sort of serious competitive or financial harm."). Good cause also exists for protection of medical records. *Andrews v. United States*, No. 2:20-CV-02094, 2021 WL 1148469, at *1 (W.D. Ark. Mar. 25, 2021).

Further, "modern cases on the common-law right of access say that 'the weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and resultant value of such information to those monitoring the federal courts.'" *IDT Corp. v. eBay*, 709 F.3d 1220, 1224 (8th Cir. 2013).

4

The following documents challenged by Plaintiff contain proprietary business information specific and unique to Turn Key Health Clinics:

| | | |
|---|---|---|
| TKHC 257 | TKHC 1019-1025 | TKHC 1987-2209 |
| TKHC 295-330 | TKHC 1233-1239 | TKHC 2240-2248 |
| TKHC 331-332 | TKHC 1201-1222 | TKHC 2672-2709 |
| TKHC 0510-0546 | TKHC 1246 | TKHC 2730-2731 |
| TKHC 0835-0836 | TKHC 1252-1270 | TKHC 2736-2737 |
| TKHC 0863-0870 | TKHC 1311-1636 | TKHC 2750 |
| TKHC 0873-0880 | TKHC 1647-1656 | TKHC 2751-2752 |
| TKHC 0882-0904 | TKHC 1679-1688 | TKHC 2767-2776 |
| TKHC 0911-0914 | TKHC 1729 | TKHC 2966 |
| TKHC 0915 | TKHC 1732 | TKHC 2254 |
| TKHC 0916-0917 | TKHC 1758 | TKHC 2403-2628 |
| TKHC 0938-0939 | TKHC 1759-1981 | TKHC 2629-2632 |
| TKHC 0977-0984 | TKHC 1982-1983 | TKHC 2647-2671 |

These records include Turn Key's internal policies, procedures, and manuals created by Turn Key for use by Turn Key-employed medical personnel in the facilities in which they operate. These documents guide Turn Key's internal business operations. As with any other business, disclosure of Turn Key's proprietary business information to the public would result in serious competitive or financial harm to Turn Key by giving its competitors unfair insight into Turn Key's internal operations, policies, procedures, protocols, training materials, job descriptions, practice updates disseminated via email, and similar business and practice information. This would inevitably result in Turn Key's competitors gaining an unfair advantage in bidding and negotiating contracts to provide services similar to what Turn Key offers, resulting in lost business. Aside from aiding Turn Key's competitors in bidding and securing contracts, the materials listed by Plaintiff have little value to the public, and should remain confidential. Moreover, there is a public interest in precluding inmates—who make up Turn Key's entire patient base—from gaining ready access to Turn Key's internal business practices, policies, procedures, protocols, and patient care forms. For example, Turn Key's Orientation Manual (whose confidential designation Plaintiff also

5

challenges) contains portions on awareness of inmate manipulation tactics, procedural responses to emergent situations, and the internal operations of Turn Key which, if discovered by Turn Key's patients, could result in security and safety concerns for other inmates, detention staff, and medical personnel operating within detention facilities.

Additionally, these documents are replete with confidential policy and financial information. Thus, redaction is insufficient to maintain confidentiality of these documents in their entirety is insufficient to protect Turn Key's business interests from harm. *IDT Corp. v. eBay,* 709 F.3d 1220, 1224 (8th Cir. 2013); *See In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569, 574 (8th Cir.1988) (sealing of a document is permissible in instances where the confidential information may be so embedded in a pleading that line-by-line redaction is impossible); *Goff v. Graves*, 362 F.3d 543, 550 (8th Cir.2004) (redaction might be insufficient to protect the interests that justify sealing).

Finally, the documents within TKHC 0985-0988 contain protected health information. When balancing the right of public access to the harm of disclosure, "good cause also exists for protection of medical records." *Andrews v. United States*, No. 2:20-CV-02094, 2021 WL 1148469, at *1 (W.D. Ark. Mar. 25, 2021). Turn Key must note that it has previously objected to Plaintiff's improper disclosure of confidential information in violation of the Court's protective order, including other patient inmates' protected health information. See Dkt. # 33. Plaintiff's counsel has demonstrated a propensity to disseminate protected health information without taking adequate measures to prevent the public filing of the same, and the Court should consider Plaintiff's improper use of other protected and/or confidential information in this case in its analysis.

**II. Turn Key's business operations and financial information are trade secrets, and they are thus protected from disclosure under Federal Rule of Civil Procedure 26.**

6

The documents identified by Plaintiff should also remain confidential because they contain trade secret and confidential commercial information protected by Fed. R. Civ. P. 26. Turn Key acknowledges that while there is no absolute privilege against disclosure of trade secrets and similar confidential information, a party must make some threshold showing of relevance before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case. *Compare Fed. Open Mkt. Comm. of Fed. Reserve Sys. v. Merrill*, 443 U.S. 340, 362 (1979) with *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir.1992). The Eighth Circuit has stated that "Rule ... 26(c)[ (1)(G) ] anticipates that in certain cases, discovery of trade secrets should either be limited or not permitted." *In re Remington Arms Co.,* 952 F.2d 1029, 1032 (8th Cir.1991); *Earth Sci. Lab'ys, Inc. v. Alpine Tech. Servs., LLC*, No. 5:22-CV-05003, 2022 WL 1196986, at *1 (W.D. Ark. Apr. 21, 2022) (Trade secrets and other confidential commercial information fall squarely within the ambit of Rule 26(c)). Whether trade secrets are involved or not, and whether their revelation will cause damage to someone, are questions of fact, to be decided after receiving evidence. *In re Iowa Freedom of Info. Council*, 724 F.2d 658, 663 (8th Cir. 1983). Rule 26 provides in relevant part:

> The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
> ....
>
> (G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way[.]

Fed. R. Civ. P. 26(c).

In light of the protection afforded to trade secrets and other confidential commercial information by Rule 26(c)(7), the Eighth Circuit has adopted a burden-shifting test balancing the protection afforded to trade secrets and the right to access relevant discovery. First, the party

7

opposing discovery must show that the information is a "trade secret or other confidential research, development, or commercial information," under Rule 26(c)(7), and show that its disclosure would be harmful to the party's interest. *In re Remington Arms Co., Inc.*, 952 F.2d 1029, 1032 (8th Cir. 1991) The burden then shifts to the party seeking discovery to show that the information is relevant to the subject matter of the lawsuit and is necessary to prepare the case for trial. *Id*.

As there is no standard or set definition for what constitutes a trade secret, the Restatement's description of a trade secret being "a process or device for continuous use in the operation of the business" is informative. Restatement (First) of Torts § 757 (1939). The Restatement also requires that the information "be used in one's business" and that it be the sort of information that gives the possessor "an opportunity to obtain an advantage over competitors who do not know or use it." *Id*. The Uniform Trade Secret Act defines a trade secret as information that "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use." Uniform Trade Secrets Act § 1(4)(i). The Uniform Trade Secrets Act also expands on the Restatement's definition, adding "program, method, [or] technique" to the list of information capable of being a "trade secret." Uniform Trade Secrets Act § 1(4).

Other courts have also helped define what is a trade secret. Operating and pricing policies can be considered trade secret. *Apple Inc. v. Samsung Electronics Co., Ltd.*, 727 F.3d 1214, 1222 (Fed. Cir. 2013). "Certain kinds of undisclosed financial data…fit[s] comfortably within the trade secrets concept." *Spinturf v. Southwest Recreational Industries*, D.C.Pa.2003, 216 F.R.D. 320, 324.

Strategy and management techniques can be considered trade secrets. *Madel v. U.S. Dept. of Justice*, 784 F.3d 448, 452 (8th Cir. 2015). [1]

The documents identified by Plaintiff contain trade secrets and other confidential commercial information deserving of protection under Rule 26(c)(1)(G), the Restatement, and the Uniform Trade Secret Act. As discussed above, the documents that Plaintiff contests as being improperly labeled confidential contain Turn Key's internal policies and procedures, training materials, internal communications discussing Turn Key practices and internal workings (which are not subject to any open records act as Turn Key is not a public entity), Turn Key's job descriptions and uniquely created patient care forms which Turn Key has developed and refined and relies upon as a competitive advantage in the healthcare industry. Indeed, when Turn Key exits a detention facility, it retains all copies of its proprietary business records, including its policies, procedures, protocols, training materials, job descriptions, and patient care forms—which are part and parcel of the Turn Key business model. These documents govern Turn Key's unique day-to-day business operations. Other documents, such as TKHC 0295-0330 and TKHC 0331-0332,

---

[1] Some courts have also looked to state statutes in determining what constitutes a trade secret. Under the Arkansas Trade Secrets Act, a trade secret is defined as "information, including a formula, pattern, compilation, program, device, method, technique, or process" that:

> (A) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

> (B) Is the subject of efforts that are reasonable under the circumstances to maintain their secrecy.

Ark.Code Ann. § 4–75–601(4)(A–B); *Se. X-Ray, Inc. v. Spears*, 929 F. Supp. 2d 867, 874 (W.D. Ark. 2013).

contain sensitive financial information. If this information were to be released to the public, Turn Key's competitors would obtain an unfair advantage in pricing, bidding, and negotiating existing and future health care contracts against Turn Key. This would result in financial harm to Turn Key. Thus, this information should remain designated as confidential.

## CONCLUSION

The documents to which Plaintiff challenges confidentiality contain proprietary business and financial information protected by statutory and common law. If these documents were to be publicly disclosed, Turn Key would inevitably suffer financial harm. Furthermore, Turn Key's entire patient base is comprised of inmates, and the disclosure of many of Turn Key's confidential operational policies, practices, and protocols could result in safety and security risks to other inmates, detention personnel, and medical personnel in the facilities in which Turn Key operates. Thus, these documents should remain confidential, and be required to be filed under seal.

WHEREFORE, Defendant Turn Key Health Clinics, LLC respectfully requests this Court to find the confidentially-designated documents challenged by Plaintiff as confidential and issue an Order protecting such documents from disclosure in the public record consistent with the Protective Order on file in this matter (Dkt. # 24).

Respectfully submitted,

Alexandra G. Ah Loy, AR Bar #2020020
Zachary Williams, OBA #34050
HALL BOOTH SMITH, P.C.
6301 Waterford Blvd., Ste. 200
Oklahoma City, OK 73118
Telephone: (405) 513-7111
Facsimile: (405) 768-1414
E-Mail: AllieAhLoy@hallboothsmith.com
E-Mail: zwilliams@hallboothsmith.com
*Attorneys for Defendants Turn Key Health*

10

*Clinics, LLC, Jawaun Lewis, D.O., and Christeena Ferguson*

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of March, 2024, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

| | |
|---|---|
| Edwin Budge | ed@budgeandheipt.com |
| Erik Heipt | erik@budgeandheipt.com |
| Hank Balson | hand@budgeandheipt.com |
| Jason E. Owens | owens@jowenslawfirm.com |

*s/ Alexandra G. Ah Loy*