UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

THE ESTATE OF LARRY EUGENE PRICE, JR.
by and through its Special Administrator, Rodney Price                    PLAINTIFF

v.                                    No. 2:23-cv-2008

TURN KEY HEALTH CLINICS, LLC;
SEBASTIAN COUNTY, ARKANSAS;
DO JAWAN LEWIS; CHRISTEENA FERGUSON;
and J. DOES 1-20                                              DEFENDANTS

## OPINION AND ORDER

Before the Court is Plaintiff The Estate of Larry Eugene Price, Jr.'s ("Estate") motion
(Doc. 30) to compel.  The Estate also filed a statement of facts (Doc. 31) in support of its motion.
Defendant Turn Key Health Clinics, LLC ("Turn Key") responded (Doc. 33) in opposition, and
the Estate replied (Doc. 36).  For the reasons given below, the motion will be GRANTED.

### I.      Background

This case arises out of the death of Mr. Price while he was in pretrial detention at the
Sebastian County Jail.  (Doc. 30, p. 4).  The Estate alleges, among other things, that Turn Key and
codefendant Sebastian County "maintained unconstitutional customs and practices that subjected
people in the jail to substantial risk of harm and that caused Mr. Price's death."  *Id.*   The Estate
brings claims under 42 U.S.C. § 1983 for violations of the Fourteenth Amendment of the United
States Constitution and under Arkansas' wrongful death and survival statutes for medical
negligence and violation of correctional standards.  *See* Doc. 2, pp. 27–28.

The Estate now moves to compel Turn Key's responses to four interrogatories and seven
requests for production.  It also seeks to compel production of a set of emails.  *See* Doc. 30.  The
Estate identified the specific discovery disputes in an appendix to its motion.  *Id.* at 26.  The parties

have engaged in several rounds of written discovery, with these disputes arising at various points. The parties have met and conferred about these issues, although Turn Key disputes that some of the issues were discussed in the required conferences.  (Doc. 33, p. 4).  This matter is now ripe for decision, and the Court will address the disputes one at a time.

## II.     Legal Standard

Under the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  Importantly, "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable."  *Id.*  District courts are vested with wide discretion in determining the scope of discovery.  *See, e.g.*, *Gov't of Ghana v. ProEnergy Servs., LLC*, 677 F.3d 340, 344 (8th Cir. 2012) (observing that "appellate review of a district court's discovery rulings is both narrow and deferential" and that a district court's discovery ruling will not be reversed "absent a gross abuse of discretion resulting in fundamental unfairness in the trial of the case" (internal alterations and quotation marks omitted)).

## III.    Discussion

The Court will first address Turn Key's privacy concerns about disclosing protected health information under the Health Insurance Portability and Accountability Act.  Turn Key argues that responding to several of the Estate's discovery requests will require it to disclose protected health information ("PHI") of witnesses or other inmates in the Sebastian County Jail.  *See* Doc. 33, pp. 15–20, 23.  Turn Key argues these individuals have not waived their HIPAA privacy rights, so it should not have to respond to the discovery.  The Estate has offered to sign a qualified protective order under the HIPAA regulations, but Turn Key refuses to agree to the order.  (Doc. 30, p. 19).

2

The Court can order the disclosure of PHI during a judicial proceeding.   45 C.F.R. § 164.5129(e)(1)(i).  Additionally, parties can disclose PHI under a qualified protective order even if a court does not order disclosure.  *Id.* § 164.5129(e)(1)(ii)(B).  Here, the parties have already agreed to a stipulated protective order.  *See* Doc. 24.  While not a HIPAA protective order in name, the protective order entered here meets the requirements of a qualified protective order under the HIPAA regulations.  The order in place (1) prohibits disclosure of confidential information for any purpose besides this proceeding and (2) requires the return or destruction of any confidential information (including PHI) after the proceeding.  *See id.* at 3–6, 9; 45 C.F.R. § 164.5129(e)(1)(v) (discussing requirements of HIPAA protective order).   Therefore, the Court sees no HIPAA concerns that the previously entered protective order does not address.  When the Court orders the disclosure of PHI in this Order, the parties are to designate it as confidential under the protective order and seek sealing of the information before entering it on the public docket.

Throughout its response, Turn Key argues that the Estate's motion and declaration in support of its motion place confidential and PHI on the public docket.  *See* Doc. 33, pp. 1–2 n.1. The Court is concerned that the Estate may have violated the protective order's provisions on sealing confidential information.   However, the Estate's potential disclosure is not a reason to prevent discovery.   Instead, any violation of the protective order can be addressed through a separate motion.   The Court cautions the Estate to carefully review the protective order.   If the Estate has violated the sealing provisions, the Court expects the Estate to file a motion to seal any confidential information it has placed on the docket.

*a.  Interrogatory 1*

The Estate first seeks contact information for non-party witnesses.  (Doc. 30, p. 24).  Turn Key objects, in part, because some of the individuals are represented by counsel.  (Doc. 33, p. 25).

3

Turn Key provides no legal authority to withhold the address and phone numbers of those represented by counsel. Instead, the Federal Rules of Civil Procedure require parties provide as initial disclosures "the name and, if known, the address and telephone number of each individual likely to have discoverable information. . . ." Fed. R. Civ. P. 26 (a)(1)(A)(i). **Therefore, Turn Key is directed to produce the last known addresses and phone numbers for the individuals identified in its response to Interrogatory 1.** *See* Doc. 31, pp. 70–78. Turn Key is also directed to indicate whether each individual is represented by counsel.

*b. Interrogatory 9*

The Estate seeks training checklists from six nurses: Morgan Matlock, Tierra Franklin Rambo, Abbeygail Jump, Rachelle Anaya, Katie Green, and Misty Williams. (Doc. 30, p. 15). In its response, Turn Key argues it has already produced all the checklists, pointing to an email stating it produced all employee training checklists in its possession, custody, and control. *See* Doc. 33, p. 14 (citing Doc. 33-12, p. 1). However, that is not what the email says. The December 18th email makes passing reference to records in general and states, "I believe we have previously answered most, if not all, of these questions and/or produced the requested documents." (Doc. 32-12, p. 1). This does not specifically answer the possession, custody, and control question, and it does not address if Turn Key's counsel found the training checklists after reviewing additional documents from Turn Key. *See* Doc. 33-11, p. 1. The Court is dubious of Turn Key's claim in its brief that it has no documents when its earlier communications do not specifically state that it does not have any responsive documents. **Therefore, Turn Key's counsel is directed to reexamine the documents provided by Turn Key and either provide all responsive documents in Turn Key's possession, custody, or control or inform the Estate that it has no such responsive documents in its possession, custody, or control.**

      *c.  Interrogatory 13*

The Estate seeks information about patients who have died in Turn Key facilities since January 1, 2016.  (Doc. 31, p. 20).  Turn Key argues it should not be obligated to respond to the interrogatory for three reasons: (1) relevance, (2) privacy concerns about medical information, and (3) the scope of the request.  (Doc. 33, pp. 10–12).  The Court has addressed the HIPAA privacy concerns above.  The Court will address each remaining argument in turn.

The Estate argues this information is relevant to its claims under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).  *Monell* liability can attach to a municipality based on an official municipal policy, unofficial custom, or deliberate indifference in failing to train or supervise.  *See Corwin v. City of Independence*, 829 F.3d 695, 699 (8th Cir. 2016); *see also Smith v. Insley's Inc.*, 499 F,3d 875, 880 (8th Cir. 2007) (discussing section 1983 standard for corporations).  The Estate explains that information about patient deaths before Mr. Price's death could show Turn Key knew about the risks of its policies or procedures.  Additionally, the Estate argues that discovery into deaths after Mr. Price's death could lead to evidence about Turn Key's deliberate indifference.

Turn Key argues that patient records unrelated to Mr. Price's care are not likely to inform the material issues in this case.  Turn Key does not respond to the Estate's arguments about its *Monell* claims.  Instead, Turn Key argues that the Estate should not be entitled to discovery into Turn Key's post-incident conduct.  Here, the incident is Mr. Price's death, so Turn Key asserts conduct after his death is not relevant.  Turn Key points out that certain Eighth Circuit courts have doubted whether post-incident conduct can be used to show a policy that was in effect at the time of an incident.  *See* Doc. 33, p. 9 (citing *Whitt v. City of St. Louis*, 2020 WL 7122615, at *9 (E.D. Mo. Dec. 4, 2020)).  However, in the only case Turn Key cites that dealt with a discovery motion,

the Court allowed discovery into post-incident evidence. *See Whitt*, 2020 WL 7122615, at \*9. This Court agrees that information about patient deaths before and after Mr. Price's death is relevant and within the broad scope of discovery.

Second, Turn Key argues the scope of the interrogatory is too broad. First, Turn Key suggests that the Estate desires information about patient deaths "at any point in time." (Doc. 33, p. 10). This is not the case. The Estate limits its request to deaths between January 1, 2016 and the present. The Court agrees this is a reasonable time frame. Second, Turn Key explains it has "numerous detention facilities . . . across several states." *Id.* at 12. Turn Key argues it would be unduly burdensome to require Turn Key to obtain, redact, and produce information about patient deaths. However, Turn Key does not explain, other than those general complaints, how burdensome that task would be. *See Jason M. Hatfield, P.A. v. Ornelas*, 2023 WL 3391461, at \*12 (W.D. Ark. May 11, 2023) (citing *Vallejo v. Amgen, Inc.*, 903 F.3d 733, 744 (8th Cir. 2018)) ("[T]he Eighth Circuit has stated that the burden at issue must be "objectively quantified" by the party resisting discovery.").

Therefore, **Turn Key is directed to respond in full to Interrogatory 13. Turn Key is directed to use unique coded identifiers to preserve its patients' confidentiality.**

### d. Interrogatory 19

The Estate seeks information about the identities of nurses who provided training to jail deputies about how to monitor patients' food and fluid intake and output via Turn Key's food logs. Initially, Turn Key responded in part "that its nurses, including but not limited to Christeena Ferguson, provided training via verbal instruction to detention staff responsible for monitoring Mr. Price on how to complete the Intake/Output forms. This training took place in person. Nursing staff would provide any additional training upon request by detention staff. It is impossible to

outline every single interaction between nursing and detention staff where the Intake/Output forms were discussed." (Doc. 31, p. 272). Turn Key, in its response brief, relies on this answer, answers to other interrogatories, and the deposition of one of Sebastian County's employees to suggest it fully responded to the interrogatory.

The Court will order Turn Key to supplement its response in two ways. First, Turn Key identifies "nurses" who provided training, but only listed one nurse: Christeena Ferguson. See Doc. 31, p. 272. **Turn Key is directed to provide the names of all other nurses who provided training or instruction to Sebastian County Jail deputies about monitoring patients' food and fluid intake and output.** Additionally, Turn Key admits in its response that it has produced "all information and records related to medical training of detention staff prior to Mr. Price's death (which is the actual training at issue in this lawsuit)." (Doc. 33, p. 15). For the same reasons cited above about the potential relevance of post-incident conduct, Turn Key should not self-impose a time limit of before Mr. Price's death. **Therefore, Turn Key is directed to respond to Interrogatory 19 with information about training of detention staff before and after Mr. Price's death.**

e. *Requests for Production 20–22*

The Estate seeks certain documents related to Turn Key's financial information in support of its claim for punitive damages. (Doc. 30, p. 22). Turn Key opposes the request, arguing the Estate cannot make a prima facie showing of its likelihood to recover punitive damages. (Doc. 33, p. 21). The Court will compel production of the financial information.

As this Court has recently explained: "'It is well-established that under federal law, evidence of the defendants' financial worth is relevant to a claim for punitive damages' and '[a] plaintiff seeking punitive damages is entitled to engage in discovery relating to the defendant's

7

financial worth in advance of trial.'" *Truong Son Mkt., Inc. v. State Auto Prop. & Cas. Ins. Co.*, 2022 WL 1538582, at *3 (W.D. Ark. May 16, 2022) (quoting *N. Dakota Fair Hous. Council, Inc. v. Allen*, 298 F. Supp. 2d 897, 899 (D.N.D. 2004)).   The Court sees no reason to depart from that principle here.   The caselaw that Turn Key cites requiring a prima facie showing of a claim for punitive damages before compelling discovery acknowledges courts should proceed on a case-by-case basis when deciding whether to compel a defendant's financial information.   *See Chandler v. Godsey*, 2008 WL 11337246, at *1 (W.D. Ark. Dec. 16, 2008).   Based on the record provided to the Court, the Court will compel production of the financial information.   The Court expresses no opinion on the underlying merits of the punitive damages claim.   **Turn Key is directed to produce documents in response to Requests for Production 20–22.**

   *f.   Requests for Production 37, 43, 46*

   The Estate seeks information about three Sebastian County jail detainees "whose circumstances, in one way or another, were similar to those of [Mr. Price]."  (Doc. 30, p. 20).  Turn Key argues that the records related to these detainees are irrelevant to the proceedings because those other detainees' medical care is not at issue in this lawsuit.  (Doc. 33, p. 16).  Turn Key also argues that the records are privileged under HIPAA.  *Id.*  The Court has already addressed Turn Key's HIPAA objections, so the Court will address only the relevance question.

   The requested documents are relevant because they may be relevant to the Estate's *Monell* claims.  Again, to prove its *Monell* claims, the Estate must tie constitutional violations to official municipal policies, unofficial customs, or a deliberate indifference in failing to train or supervise. *See Corwin*, 829 F.3d at 699.  Records pertaining to other inmates who share similarities with Mr. Price are relevant and could lead to admissible information to support the Estate's *Monell* claims. The other detainees all allegedly shared some type of similar circumstances with Mr. Price, such

as suffering from mental illness or needing their nutrition intake monitored.  Because of the similar circumstances, records about the care for these detainees are relevant because they may reveal unconstitutional policies or unofficial customs, or explain the deliberate indifference in failing to train or supervise.  **Therefore, Turn Key is directed to produce documents in response to Requests for Production 37, 43, and 46.**

> g.  *Request for Production 38*

The Estate seeks copies of Turn Key's current policies and procedures at the Sebastian County Jail.  (Doc. 30, p. 9).  The Estate argues the current policies may reveal if Turn Key has made any changes to the policies that were in place when Mr. Price died.  *Id.* at 13.  If the policies have changed, it could lead the Estate to evidence about why the changes were made.  *Id.*  If the policies have not changed, that may be evidence of Turn Key's deliberate indifference.  *Id.*  In opposition, Turn Key argues the current policies are irrelevant because it has already turned over the policies in place when Mr. Price died.  (Doc. 33, p. 12).  Turn Key also argues the new policies should not be discoverable because any changes would be subsequent remedial measures that are inadmissible under Federal Rule of Evidence 407.  *Id.* at 13.

The Court will order production of the current policies.  While Turn Key is correct that the policies may later be excluded under Rule 407, the Court cannot determine that issue now.  Additionally, discovery need not be admissible to be discoverable.  Fed. R. Civ. P. 26(b)(1).  The Court agrees that changes to the policy may lead to admissible evidence concerning the Estate's *Monell* claims, such as why the changes were made.  Also, a lack of changes to the policies may be evidence of Turn Key's deliberate indifference.  If Turn Key maintains that any policy changes should be excluded as subsequent remedial measures, it can reassert that argument later, for example, in a motion in limine.  **Therefore, Turn Key is directed to produce documents in**

response to Request for Production 38, including its current policies and procedures at the Sebastian County Jail.

    *h.   Request for Production 42*

The Estate seeks all food and fluid input/output records that Turn Key created for detainees at the Sebastian County jail from September 11, 2019 to the present. (Doc. 30, p. 19). In its response, Turn Key made the same objections it made to the records about other detainees' records: relevance and HIPAA concerns. (Doc. 33, pp. 15–20). However, Turn Key does not specifically mention this request for production in its response. The Court has previously addressed the HIPAA concerns.

The nutrition input/output records are relevant because the Estate has alleged that Turn Key relied on untrained detention officers to document detainees' nutrition when necessary to address a medical concern. (Doc. 30, p. 19). And because the Estate is alleging a *Monell* claim, nutrition input/output records of other detainees are relevant and may lead to admissible evidence about Turn Key's official policies, unofficial customs, or the deliberate indifference in failing to train or supervise. Therefore, the Court finds that the requested nutrition input/output records should be discoverable.

While Turn Key does not address these records in its response, its initial discovery response lodges objections about the scope of the request, the request's undue burden, and the potential to lead to admissible evidence. The Court believes the scope of this request is appropriate. The Estate only seeks documents starting in September 2019. This five-year period is not too broad in scope, and as discussed above, records after Mr. Price's death are discoverable. *See Whitt*, 2020 WL 7122615, at *9. Additionally, Turn Key has not objectively quantified how the request would

be unduly burdensome. *See Jason M. Hatfield, P.A.*, 2023 WL 3391461, at *12. **Therefore, Turn Key is directed to respond in full to Request for Production 42.**

    *i.   Request for Production 47*

The Estate seeks two documents related to an incident between nurse Misty Williams and Mr. Price. In the incident report, Ms. Williams alleged Mr. Price grabbed her arm and threatened to kill her when she was dispensing medication. (Doc. 30, p. 23). Turn Key is withholding a worker's compensation form and note from Ms. Williams' physician because Ms. Williams has not waived her HIPAA rights. (Doc. 33, p. 23; Doc. 31, p. 266). The Court has addressed Turn Key's HIPAA concerns above. **Therefore, Turn Key is directed to produce the two documents it withheld in response to Request for Production 47.** Turn Key is directed to label these documents as Confidential under the stipulated protective order entered earlier in this case. *See* Doc. 24.

    *j.   Emails*

The Estate seeks emails generated after August 30, 2021 that contain a list of search terms related to the material issues in this case. The full list of terms does not need to be included here, but it is available on the docket. *See* Doc. 31, pp. 163–65. Turn Key argues the request is moot because it has already produced the emails. However, Turn Key limited the search of emails, in part, by only searching emails generated before August 30, 2021, which is the day after Mr. Price's death. *See id.* The Estate seeks emails generated after Mr. Price's death as well because they may lead to admissible evidence to support its *Monell* claims. Turn Key argues that the Estate is not entitled to emails generated after Mr. Price's death. But the Court has previously explained that information from after Mr. Price's death may be relevant to the Estate's *Monell* claims. *See Whitt*, 2020 WL 7122615, at *9. Because of this, Turn Key should have run the requested search

parameters without its self-imposed time limit.  **Therefore, Turn Key is directed to re-run the search of its emails with the same parameters, including emails generated from October 1, 2019 to the present.**

## IV.    Payment of Expenses

Under Federal Rule of Civil Procedure 37(a)(5)(A), a party can recover its reasonable expenses, including attorney's fees, if a motion to compel is granted.  The Estate is directed to file an affidavit documenting its fees and expenses incurred in bringing the instant motion by April 19, 2024.  Turn Key will be given 7 days to file any objections.

## V.    Conclusion

IT IS THEREFORE ORDERED that the Estate's motion to compel (Doc. 30) is GRANTED.

IT IS SO ORDERED on this 5th day of April, 2024.

/s/ P. K. Holmes, III
P.K. HOLMES, III
U.S. DISTRICT JUDGE

12