UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

THE ESTATE OF LARRY EUGENE PRICE, JR.
by and through its Special Administrator, Rodney Price                    PLAINTIFF

v.                                      No. 2:23-cv-2008

TURN KEY HEALTH CLINICS, LLC;
SEBASTIAN COUNTY, ARKANSAS;
DO JAWAN LEWIS; CHRISTEENA FERGUSON;
and J. DOES 1-20                                                         DEFENDANTS

**OPINION AND ORDER**

Before the Court is Defendant Turn Key Health Clinics, LLC's ("Turn Key") motion (Doc. 37) for a protective order. Turn Key also filed a brief in support of the motion (Doc. 38) and submitted documents for in camera review. Plaintiff The Estate of Larry Eugene Price, Jr. ("Estate") responded in opposition (Doc. 40) and filed two declarations in support of its response (Docs. 41, 42). For the reasons given below, the motion will be GRANTED IN PART AND DENIED IN PART.

**I.  Background**

This case arises out of the death of Mr. Price while he was in pretrial detention at the Sebastian County Jail. (Doc. 30, p. 4). The Estate alleges, among other things, that Turn Key and codefendant Sebastian County "maintained unconstitutional customs and practices that subjected people in the jail to substantial risk of harm and that caused Mr. Price's death." *Id.* The Estate brings claims under 42 U.S.C. § 1983 for violations of the Fourteenth Amendment of the United States Constitution and under Arkansas' wrongful death and survival statutes for medical negligence and violation of correctional standards. *See* Doc. 2, pp. 27–28.

1

Turn Key now moves for a protective order related to the confidentiality designation it gave certain documents produced in discovery. The parties previously agreed to a protective order that governs discovery in this case. *See* Doc. 24. Under that protective order, parties can label documents "Confidential," which dictates whether those documents must be filed under seal and whether the opposing party must restrict the sharing of those documents. *Id.* ¶ 2. The Estate challenged Turn Key's confidential designation for 43 documents. (Doc. 38, p. 3). Turn Key agreed to remove the confidentiality designation for two documents but argued 41 of the documents should retain the designation. *Id.* Turn Key asks the Court to find that these 41 documents should retain the confidentiality designation. Turn Key bases its argument largely on sweeping, conclusory language, stating:

> [The challenged documents] contain proprietary information protected by statutory and common law, including trade secret information. . . . Further, release of this proprietary business information would damage Turn Key by allowing its competitors access to the inner workings of Turn Key's business operations, such as policies and procedures concerning care, Turn Key-specific patient care forms and training materials, financial information, and contracts with business partners.

*Id.* at 5. Turn Key made specific arguments about only five documents. *Id.* at 7–8. The Estate's response addresses all of the documents and argues the Court should remove the confidentiality designations. *See* Doc. 40.

II. **Legal Standard**

A party may move for a protective order to protect the party "from annoyance, embarrassment, oppression, or undue burden or expense. . . ." Fed. R. Civ. P. 26(c)(1). This may include "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G). The party moving for a protective order bears the burden to show good cause for the order's issuance. *Gen. Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204, 1212 (8th Cir. 1973). Moreover,

2

"Rule 26 requires 'a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'" *Vallejo v. Amgen, Inc.*, 903 F.3d 733, 743 (8th Cir. 2018) (quoting *Gen. Dynamics Corp.*, 481 F.2d at 1212).

### III. Discussion

The Court will limit its discussion to the five documents Turn Key made specific arguments about. As stated above, Turn Key must show good cause for issuance of a protective order by more than stereotyped and conclusory statements. *Vallejo*, 903 F.3d at 743. Turn Key did not support its arguments concerning 36 of 41 documents with anything more than conclusory statements of the documents' sensitive nature or the risk of harm if said documents are not deemed confidential.[1] Therefore, the Court will deny the motion as to the following documents, using the numbering from Turn Key's motion at Docket Number 38: 1, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 17, 18, 20, 21, 22, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 35, 36, 37, 38, 39, 40, 41, 42, 43. Turn Key is directed to remove the confidential designation from those documents. The Court now turns to the documents which Turn Key specifically addressed.

#### A. Turn Key's Proposal and Revisions to Sebastian County (TKHC0925–0330; TKHC0331–0332)

Turn Key seeks to maintain the confidential designation on two documents related to its proposal to Sebastian County in 2019 when Turn Key bid for the contract. Turn Key argues these documents "contain sensitive financial information" that, if released, would allow its competitors to "obtain an unfair advantage in pricing, bidding, and negotiating existing and future health care contracts against Turn Key." (Doc. 38, p. 10). The Estate responds that it did not obtain the

---

[1] Turn Key asks the Court to review nearly 1,000 pages of documents which it did not address in its motion with particular and specific facts showing the need for a protective order. This fails to satisfy Turn Key's burden under Rule 26. "Judges are not like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991).

proposal from Turn Key, but instead Sebastian County produced the proposal with no confidential designation.  (Doc. 40, p. 12).  The Estate argues the protective order does not apply to documents "that are obtained independently and rightfully by the Receiving Party."  (Doc. 24, p. 10).  The Estate also emphasizes that Turn Key did not seek a protective order for this information in a timely manner, which undermines Turn Key's argument that it took reasonable steps to preserve the secrecy of the document.  (Doc. 40, p. 12).

The Court agrees with Turn Key in part as it relates to the sensitive financial information in the documents.  A large part of the proposal contains information that is not sensitive.  For example, the proposal includes a cover page and letter which are not sensitive in nature.  Additionally, attached to the proposal is a list of lawsuits involving Turn Key, which is publicly available information.  However, the proposal also includes a section titled "Cost Proposal."  This section discusses the amount of the actual proposal and the services included in that amount.  The Court agrees this is sensitive information that, if revealed, would allow Turn Key's competitors to potentially undercut Turn Key's future proposals.  Therefore, the Court will direct that the pages containing cost information shall maintain the Confidential Designation.  To avoid any ambiguity, the motion is granted as to the following Bates numbered pages, and these pages are deemed confidential: TKHC0311, TKHC0316–TKHC0317, and TKHC0332.

Turn Key did not make specific arguments about how any of the other information is sensitive, or how revealing that information would cause harm.  Instead, Turn Key again relied on conclusory arguments.  This is insufficient under Rule 26.  *See Vallejo*, 903 F.3d at 743.  The remaining Bates numbered pages shall have the confidential designation removed.

### B. Internal Turn Key E-Mail Communication December 2019 E-mails re "Follow up on Questionnaire" (TKHC0985–0988)

Turn Key argues this document contains protected health information. (Doc. 38, p. 6). Because of that, Turn Key redacted part of the document to protect the individual's protected health information. The Estate responded that it has no objection to the redaction. (Doc. 40, p. 14). The unredacted information is not sensitive in nature. Therefore, the Court will deny the motion as to document number 16. Turn Key is directed to remove the confidentiality designation for this document, but both parties must maintain the redaction.

### C. Turn Key's Orientation and Training Slides (TKHC1311–1636; TKHC2403–2628)

The last document that Turn Key specifically mentioned should be kept confidential is its "Orientation Manual." (Doc. 38, p. 7). Unhelpfully, none of the documents Turn Key listed are titled "Orientation Manual." *Id.* at pp. 2–3. The only documents with "orientation" in the title are two sets of Turn Key's orientation slides. Therefore, the Court will assume that is what Turn Key is referring to, since Turn Key did not list the Bates numbered pages for the orientation manual. Turn Key seeks protection of this information because it contains information about "inmate manipulation tactics, procedural responses to emergent situations, and the internal operations of Turn Key. . . ." *Id.* at 8. If released, Turn Key is concerned it could result in safety and security concerns for inmates, detention staff, and medical personnel. *Id.* The Estate objects, citing Turn Key's conclusory arguments and its failure to specifically explain how release of the training slides would cause it harm. (Doc. 40, p. 16).

The Court agrees that some of the information in Turn Key's training slides should retain its confidentiality designation. Specifically, the Court agrees that the information about inmate manipulation tactics could potentially put inmates, detention staff, and Turn Key employees in danger if inmates could access that information. Therefore, the Court will order that those slides

5

containing information on manipulation tactics should retain their confidentiality designation. The motion is granted as to the following Bates numbered pages: TKHC1342–46, TKHC2430–35.

The remaining slides, however, do not contain sensitive information and Turn Key has not shown how their release would harm the company. First, the information in the slides is not a trade secret or otherwise sensitive. Under Arkansas law, to find information is a trade secret, courts must consider the extent to which information is known outside of a business and the ease with which others could acquire the information. *Walmart Inc. v. Cuker Interactive, LLC*, 949 F.3d 1101, 1108 (8th Cir. 2020) (citing *Saforo & Assocs., Inc. v. Porocel Corp.*, 991 S.W.2d 117, 120–22 (Ark. 1999)). The information other than inmate manipulation tactics in the training slides is public knowledge. For example, throughout the slides, Turn Key cites the other public documents that it based its training on.[2] The fact that Turn Key is compiling its slides based on publicly available information undercuts any argument that the slides should be protected as trade secrets. Other slides are trainings on relevant legal authority, discussing the importance of medical access in jail or relevant federal statutes such as the Prison Rape Elimination Act. This legal authority is also publicly available. Second, Turn Key has not said how the release of its training slides would harm the company. Therefore, Turn Key is directed to remove the confidentiality designation from all slides besides those Bates numbers specifically listed in the paragraph above.

### IV. Conclusion

IT IS THEREFORE ORDERED that Turn Key's motion for a protective order (Doc. 37) is GRANTED IN PART and DENIED IN PART as stated above.

---

[2] Although not on the docket because of the Court's in camera review of the documents, some examples of the sources for Turn Key's presentations can be found at TKHC1328, TKHC1353, TKHC1510, and TKHC2446.

IT IS SO ORDERED on this 21st day of May, 2024.

/s/ P. K. Holmes, III
P.K. HOLMES, III
U.S. DISTRICT JUDGE